UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

)
VR Optics, LLC,                            )

                   )    No. 1:16-cv-6392 (JPO)

          Plaintiff,     )

                   )    **FIRST AMENDED ANSWER TO**

     v.                )    **COMPLAINT AND**

                   )    **COUNTERCLAIMS**

Peloton Interactive, Inc.,     )

                   )    **JURY TRIAL DEMAND**

         Defendant.    )

_____)

Defendant Peloton Interactive, Inc. ("Peloton") hereby responds to and answers Plaintiff

VR Optics, LLC's ("VR Optics") Complaint for Patent Infringement as follows:

### THE PARTIES

1.    Peloton lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

2.    Peloton admits that it is a Delaware corporation. Peloton denies the remaining allegations of this paragraph.

### JURISDICTION AND VENUE

3.    This paragraph states a legal conclusion to which no response is required.

4.    This paragraph states a legal conclusion to which no response is required.

5.    Peloton admits that its corporate headquarters are located in this Judicial District and that it is doing business in this Judicial District. The remainder of this paragraph states a legal conclusion to which no response is required.

6.    Peloton denies that it caused tortious injury and denies infringement of any patent. Peloton admits that it conducts business and engages in a persistent course of conduct in

New York, and derives substantial revenue from its products and services used and/or sold in New York. The remainder of this paragraph states a legal conclusion to which no response is required.

7.      This paragraph states a legal conclusion to which no response is required

## FACTUAL BACKGROUND

8.      Peloton lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

9.      Peloton admits that it sells the Peloton bike. Peloton admits that the display on the Peloton bike can display live and previously recorded class content, as well as certain data relating to past and current user performance. Peloton denies the remaining allegations of this paragraph.

10.      Denied.

## COUNT I:
## INFRINGEMENT OF U.S. PATENT NO. 6,902,513

11.      Peloton incorporates paragraphs 1-10 above as if set forth here in full.

12.      Peloton admits that Exhibit A appears to be a copy of the '513 Patent. Peloton lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and on that basis denies those allegations.

13.      Peloton lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

14.      Peloton admits that it has used the Peloton bike. Peloton admits that it offers video content including live and on-demand studio cycling classes. Peloton admits that the computer on the Peloton bike is wi-fi enabled, has a touchscreen, and includes ANT+ wireless communication capabilities, speakers, a headphone jack, and a forward facing camera. Peloton

admits that the computer on the Peloton bike can display total distance, cadence, power output, resistance level and calories, as well as a leaderboard that can rank users based on their performance. Peloton denies the remaining allegations of this paragraph.

15.     Peloton admits that it offers an application for use on certain mobile devices and that subject to certain conditions it offers this application for a 14-day free trial. Peloton admits that it charges its customers a subscription fee for access to its content. Peloton admits that it has used its products. Peloton denies the remaining allegations of this paragraph.

16.     Denied.

17.     Peloton admits that it actively markets and promotes its products. Peloton denies the remaining allegations of this paragraph.

18.     Peloton admits that it has known of the existence of the '513 Patent since at least March 4, 2014. Peloton lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and on that basis denies those allegations.

19.     Peloton lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

20.     Peloton admits that it continues to actively market and promote its products. Peloton denies the remaining allegations of this paragraph.

21.     Denied.

22.     Denied.

23.     Denied.

24.     Peloton admits that it has supplied the Peloton bike to purchasers located outside the United States. Peloton denies the remaining allegations of this paragraph.

25.     Denied.

## AFFIRMATIVE DEFENSES

As and for its affirmative defenses, Peloton alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

Peloton denies each and every allegation of the Complaint not herein specifically admitted.

### SECOND AFFIRMATIVE DEFENSE

VR Optics has failed to state a claim upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

Peloton does not infringe and has not infringed any valid and enforceable claim of the '513 Patent.

### FOURTH AFFIRMATIVE DEFENSE

The '513 Patent is invalid for failure to meet the requirements of 35 U.S.C. and 37 C.F.R. including without limitation 35 U.S.C. §§ 101, 102, 103 and/or 112.

### FIFTH AFFIRMATIVE DEFENSE

VR Optics's claim is barred, at least in part, by one or more of the doctrines of unclean hands, laches, estoppel, waiver and/or acquiescence.

### SIXTH AFFIRMATIVE DEFENSE

VR Optics's claim is barred, in whole or in part, by the doctrine of prosecution history estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

VR Optics's claim for damages, if any, against Peloton is statutorily limited by 35 U.S.C. § 287.

## EIGHTH AFFIRMATIVE DEFENSE

VR Optics is not entitled to any injunctive relief as it has, at a minimum, an adequate remedy at law and no irreparable alleged injury.

## NINTH AFFIRMATIVE DEFENSE

Peloton has not induced any infringement of any valid and enforceable claim of the '513 Patent.

## TENTH AFFIRMATIVE DEFENSE

Peloton has not contributed to any infringement of any valid and enforceable claim of the '513 Patent.

## ELEVENTH AFFIRMATIVE DEFENSE

Peloton has acted in good faith and without intent to infringe at all times, thereby precluding VR Optics, even if it prevails, from recovering enhanced damages under 35 U.S.C. § 284 or reasonable attorneys' fees and/or costs under 35 U.S.C. § 285.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent VR Optics asserts any claim and/or requests damages for alleged infringement occurring more than six years before the filing of this action, such claims and relief are barred by 35 U.S.C. § 286.

## THIRTEENTH AFFIRMATIVE DEFENSE

VR Optics's claim for relief is barred, in whole or in part, by the doctrine of prosecution disclaimer.

## FOURTEENTH AFFIRMATIVE DEFENSE

Other parties, including Villency Design Group, L.L.C., are liable for all damages whatsoever, including, but not limited to, fees, costs and expenses, requested by Plaintiff in this Complaint.

## FIFTEENTH AFFIRMATIVE DEFENSE

Peloton reserves the right to assert additional affirmative defenses as they are discovered in the course of this litigation.

## PRAYER FOR RELIEF

WHEREFORE, Peloton denies any allegations in VR Optics's Prayer for Relief and denies that VR Optics is entitled to any of the requested relief.

## DEMAND FOR JURY TRIAL

Peloton hereby demands a jury trial as to all issues that are so triable.

## COUNTERCLAIMS

Counterclaimant Peloton hereby alleges the following counterclaims against VR Optics:

## PARTIES

26.     Peloton is a company organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

27.     VR Optics is a New York limited liability company with its principal place of business at 430 West Broadway, Suite 2B, New York, NY 10012.

## JURISDICTION AND VENUE

28.     Peloton's declaratory judgment counterclaims are based upon the Patent Laws of the United States, Title 35 of the United States Code, Section 1, *et seq*. This Court has subject

matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

29. Peloton's claim for tortious interference with contract under the laws of the State of New York arises out of and is directly related to VR Optics's patent infringement claim asserted in this action. Accordingly, this Court has supplemental jurisdiction over Peloton's tortious interference claim because it forms part of the same case and controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

30. VR Optics has submitted to the personal jurisdiction of this Court by filing this action.

31. VR Optics has submitted to this venue by filing this action.

## FACTS

32. There is an actual justiciable case or controversy between VR Optics and Peloton arising under the Patent Laws, 35 U.S.C. § 1, *et seq*. This case or controversy arises, inter alia, as a result of VR Optics's filing this action which alleges that Peloton infringes U.S. Patent No. 6,902,513 ("'513 Patent") and Peloton's answer to said infringement claim which asserts the non-infringement and invalidity of the '513 Patent.

33. The '513 Patent purports to be "generally directed to a computerized fitness equipment that is designed to simulate, emulate, or implement actual race conditions with other users." Each and every claim of the '513 Patent requires "fitness equipment" such as an "exercise bike." As set forth more fully below, Villency Design Group, L.L.C. ("Villency Design Group") designed and developed the exercise bike that is required in the '513 Patent's claims.

34.     The '513 Patent cannot be reasonably read to cover the accused products, and VR Optics's infringement allegations depend on unreasonable and unsupported claim constructions.

35.     By its Complaint, however, VR Optics alleges that Peloton infringes the '513 Patent because Peloton "has created and used, or actively induced others to use, a system for interactive fitness that includes the Peloton interactive fitness equipment."

36.     Founded in New York in 2012, Peloton has developed a new concept in-home fitness that delivers live and archived studio cycling classes to home users via a stationary bike with an integrated tablet computer.

37.     Villency Design Group is a consumer product development company.

38.     In 2012, Peloton hired Villency Design Group to design an interactive stationary bike with an integrated tablet computer (the "Peloton Bike").

39.     Villency Design Group and Peloton entered into a first written agreement related to the design, development and manufacture of the Peloton Bike in 2012.

40.     Villency Design Group and Peloton entered into a second, superseding written agreement in 2014.

41.     In those agreements, Villency Design Group represented and warranted that the Peloton Bike did not and would not infringe upon the rights of any third party.

42.     In those agreements, Villency Design Group also agreed to indemnify, defend and hold harmless Peloton from any third-party intellectual property infringement claims arising out of or relating to any violation or alleged violation of any intellectual property rights regarding the design of the Peloton Bike.

43.     Villency Design Group and Mr. Villency have asserted and continue to assert that Villency Design Group created the interactive exercise bike now being sold by Peloton.

44.     During the course of Villency Design Group's relationship with Peloton, the owners of Villency Design Group, Mr. Villency and Mr. Coffey, learned of the existence of the '513 Patent.

45.     On information and belief, Villency Design Group, Mr. Villency and Mr. Coffey learned of the existence of the '513 Patent before the 2014 Agreement expired.

46.     On information and belief, Villency Design Group, Mr. Villency and Mr. Coffee determined that the Peloton Bike potentially infringed one or more claims of the '513 Patent before the 2014 Agreement expired.

47.     On information and belief, Mr. Villency and Mr. Coffee conceived of the idea to acquire the '513 Patent and assert it against the Peloton Bike before the 2014 Agreement expired.

48.     At some time prior to June 20, 2016, Mr. Villency and Mr. Coffey created Plaintiff VR Optics.

49.     VR Optics is a New York limited liability company, with its principal place of business in the same office as Villency Design Group at 430 West Broadway 2B, New York, NY 10012.

50.     Villency Design Group is owned and controlled by Eric Villency and Joseph Coffey.

51.     VR Optics is also owned and controlled by Eric Villency and Joseph Coffey.

52.     On or about June 20, 2016, Mr. Coffey and Mr. Villency filed documents registering VR Optics, LLC with the New York Department of State.

53.     On information and belief, VR Optics was formed by Mr. Villency and Mr. Coffey to acquire the '513 Patent and assert it against Peloton.

54.     On information and belief, Mr. Villency and Mr. Coffey initiated their efforts to acquire the '513 Patent prior to June 20, 2016.

55.     Notwithstanding their company Villency Design Group's longstanding relationship with Peloton, and their own individual relationships with Peloton and its senior management team, Mr. Villency and Mr. Coffey sought to acquire the '513 Patent to enforce it against Peloton.

56.     Despite its knowledge of the '513 Patent and the imminent likelihood of an infringement claim against Peloton Bike, and its ongoing contractual relationship with Peloton, Villency Design Group chose not to inform Peloton of that potential infringement claim or that its representations and warranties that the Peloton Bike does not infringe upon the rights of any third party might not be true.

57.     Villency Design Group also took no steps to collaborate with Peloton to modify, change, or update the design of the Peloton Bike in light of its knowledge of the alleged infringement of the '513 Patent.

58.     On August 3, 2016, VR Optics executed an agreement to purchase the '513 Patent from Microsoft Technology Licensing, LLC ("Microsoft")

59.     On August 4, 2016, VR Optics recorded the assignment of the '513 Patent to VR Optics.

60.     On August 11, 2016, VR Optics filed the Complaint initiating this action alleging that the Peloton Bike designed by the Villency Design Group infringes the '513 Patent.

61.     On information and belief, VR Optics has also attempted to sell the '513 Patent to direct competitors of Peloton.

**The 2012 Agreement**

62.     On April 6, 2012, Villency Design Group and Peloton entered into a Design, Development and Manufacturing Agreement ("Peloton Bike Design Agreement").

63.     In Section 1.1 of the Peloton Bike Design Agreement, the parties agreed that "Villency shall design, develop and engineer a stationary cycling Device Bike, incorporating the placement and design of the flat screen interactive table, in accordance with the specifications" mutually agreed to between Villency and Peloton.

64.     Section 1.1 further states that Villency Design Group "shall identify and source a factory […] to manufacture the Bike." Section 2.1 of the Peloton Bike Design Agreement states that "Villency shall be responsible for all aspects of manufacturing the Bikes in compliance with the Device Bike Specifications mutually agreed to by Peloton and Villency[.]"

65.     In Section 1.3, Villency Design Group acknowledges that the final design and manufacture of the Device Bike "will be a collaborative process" between Villency Design Group and Peloton.

66.     In section 2.7, Villency Design Group expressly represented and warranted that, among other promises, "the Bike Intellectual Property ***does not and will not*** infringe upon the rights of any third party."

67.     The Peloton Bike Design Agreement defines "Bike Intellectual Property" broadly to include:

> all intellectual property relating to the Device Bikes, including, without limitations, all designs (including without limitation, those created by Villency prior to or during the term of this Agreement), inventions, improvements, discoveries, data, concepts, ideas, processes, methods, techniques, know-how, and information respecting the Bikes conceived, made or produced by Villency prior to and/or during the course of performing the Product Development Services and/or Manufacturing Services under this Agreement, or made or produced as the result of the joint efforts of Peloton and Villency prior to or during the term of this Agreement (collectively, the "Bike Intellectual Property").

Peloton Bike Design Agreement § 1.7(a).

68.    Section 5.6 of the Peloton Bike Design Agreement states, in relevant part, as follows:

> SURVIVAL.  The termination or expiration of this Agreement shall be without prejudice . . . [to] (b) the rights and remedies of either party with respect to any previous breach or default under any representation, warranty or covenant herein contained; and (c) rights under any provision of this agreement which expressly and necessarily calls for performance after expiration or termination.

69.    Section 6.1 of the Peloton Bike Design Agreement states, in relevant part, as follows:

> VILLENCY INDEMNITY.   Villency agrees to indemnify, defend and hold harmless Peloton [ . . .] against any third party claim [ . . .] (b) arising out of or relating to any violation or alleged violation of any Villency representations or warranties.

70.    Villency Design Group's representation and warranty that the Device Bike does not and will not infringe upon the rights of any third party survives termination of the Peloton Bike Design Agreement.

71.    The Device Bike contemplated by the Peloton Bike Design Agreement is the same instrumentality that Mr. Villency and Mr. Coffey, through the newly formed entity VR Optics, now accuse of infringing the '513 Patent.

72.    Accordingly, under the Peloton Bike Design Agreement, Villency Design Group was responsible for designing, developing and manufacturing of the very device its owners now accuse of infringement through the newly formed entity VR Optics.

73.    When it executed the agreement, Villency Design Group represented and warranted that the Peloton Bike *did not and would not* infringe upon the rights of any third party and thus was free of the infringement claim VR Optics now asserts.

**The 2014 Development Agreement**

74.     On June 24, 2014, Villency Design Group and Peloton entered a superseding agreement entitled "Bike Development and Services Agreement" (hereafter "Peloton Bike Development Agreement").

75.     The Peloton Bike Development Agreement expired on June 24, 2016, after Mr. Villency and Mr. Coffey had already formed and registered VR Optics, LLC with the New York Department of State.

76.     The 2014 Peloton Bike Development Agreement states, *inter alia*, that "Villency [Design Group] designed, developed and managed the manufacture of the [Peloton] Bike[.]"

77.     Section 1.1 of the Peloton Bike Development Agreement sets forth the scope of Villency Design Group's work with respect to Peloton's "proprietary indoor cycling bikes ('Bikes')" including: (1) managing all aspects of the Factory relationship, (2) managing with the Factory all Bike improvements; (3) managing Bike quality control; (4) overseeing the testing and development of new components; and (5) communicating on a weekly basis, by written report to Peloton, all Bike development progress and issues.

78.     Section 1.3 of the Peloton Bike Development Agreement states that "Peloton and Villency [Design Group] acknowledge that the continued design, development and manufacture of the [Peloton] Bike will be a collaborative process[.]"

79.     Under the Peloton Bike Development Agreement, Villency Design Group was responsible for modifications, changes and/or updates to the Peloton Bike.  Peloton Bike Development Agreement § 1.5.

80.     As in the Peloton Bike Design Agreement, Villency Design Group once again represented and warranted that, *inter alia*, the "Bike Intellectual Property ***does not and will not***

infringe upon the rights of any third parties."  Peloton Bike Development Agreement § 8.2(a)(3) (emphasis added).

81.     Like the Peloton Bike Design Agreement, Section 1.7(a) of the Peloton Bike Development Agreement defined "Bike Intellectual Property" broadly to include:

> all intellectual property relating to the Bikes, including, without limitation, all designs (including, without limitation, those created by Villency prior to or during the Term of this Agreement), inventions, improvements, discoveries, data, concepts, ideas, processes, methods, techniques, know-how, and information respecting the Bikes conceived, made or produced by Villency prior to and/or during the course of performing the Product Development Services and/or Manufacturing Services under this Agreement, or made or produced as the result of the joint efforts of Peloton and Villency prior to or during the Term of this Agreement (collectively, the "Bike Intellectual Property").

82.     Villency Design Group's representations and warranties in the Peloton Bike Development Agreement, including that the Peloton Bike does not and will not infringe upon the rights of third parties, survive the agreement's termination or expiration.

83.     Section 5.6 of the Peloton Bike Development Agreement states in relevant part as follows:

> SURVIVAL.  The termination or expiration of this Agreement shall be without prejudice [to] (b) the rights and remedies of either party with respect to any previous breach or default under any representation, warranty or covenant herein contained; and (c) rights under any provision of this agreement which expressly and necessarily calls for performance after expiration or termination.

84.     Section 7.1 of the Peloton Bike Development Agreement states in relevant part as follows:

> VILLENCY INDEMNITY.  Villency agrees to indemnify, defend and hold harmless Peloton [ . . .] against any claim [ . . .] (b) arising out of, or relating to, any violation or alleged violation of any intellectual property rights regarding any Bike Intellectual Property.

85.     Villency Design Group's representation and warranty that the Peloton Bike does not and will not infringe upon the rights of any third party and the associated indemnity both survive any termination of the Peloton Bike Development Agreement.

86.     The Peloton Bike contemplated by the Peloton Bike Development Agreement is the same instrumentality that VR Optics, now accuses of infringing the '513 Patent.

**Villency Design Group's Breach of Contract**

87.     All conditions precedent to the performance of both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement have occurred.

88.     Peloton has fully performed its obligations under both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement.

89.     Through both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement, Villency Design Group represented and warranted that the Peloton Bike does not and will not infringe upon the rights of any third parties, including any intellectual property rights.

90.     Through the Peloton Bike Development Agreement, Villency Design Group agreed to indemnify, defend and hold harmless Peloton from any and all third party claims, including intellectual property claims.

91.     Through the Peloton Bike Development Agreement, Villency agreed to collaborate with Peloton in the continued design, development and manufacture of the Peloton Bike and provide Peloton with weekly communications as to all development progress and issues.

92.     The patent infringement claims VR Optics asserts in the VR Optics Complaint are directly contrary to Villency Design Group's representations and warranties under each of the Peloton Bike Design Agreement and the Peloton Bike Development Agreement.

93.     To the extent that the Peloton Bike infringes upon the '513 Patent, Villency Design Group breached Peloton Bike Development Agreement whenever it represented and warranted under each agreement that the Peloton Bike ***did not and would not*** infringe upon the rights of any third parties.

94.     To the extent that the Peloton Bike infringes on the '513 Patent, Villency Design Group breached the Peloton Bike Development Agreement because the representation and warranty that the Peloton Bike ***would not*** infringe upon the rights of any third parties was false.

95.     Villency Design Group's failure to communicate with Peloton as to possible infringement after it learned of the '513 Patent breached Villency Design Group's responsibility to give Peloton periodic updates about development issues under the Peloton Bike Development Agreement.

96.     The patent infringement claims VR Optics asserts are claims for which Villency Design Group expressly promised to defend, hold harmless and indemnify Peloton under the Peloton Bike Development Agreement.

97.     On September 9, 2016, Peloton formally requested that Villency Design Group indemnify, defend and hold harmless Peloton from the claims of the VR Optics Complaint. Peloton's demand was in writing and delivered in the manner set forth in the Peloton Bike Development Agreement.

98.     Villency Design Group has refused to honor its defense and indemnification obligations.

99.     Villency Design Group's refusal to honor its defense and indemnification obligations constitutes a breach of each of the Peloton Bike Development Agreement.

100.     The Peloton Bike Development Agreement preserves Peloton's rights and remedies with respect to the foregoing breaches, including Peloton's rights of defense and indemnification with respect to Villency Design Group's breach of its representations and warranties.

101.     Villency Design Group's breach of each of the Peloton Bike Development Agreement have proximately caused Peloton harm, including, but not limited to, fees and costs associated with the defense of VR Optics's claims asserted in the Patent Action.

**Villency Design Group's Fraudulent Concealment**

102.     Despite its awareness of the '513 Patent and of the imminent likelihood of an infringement claim against the Peloton Bike, Villency Design Group took no steps to inform Peloton of any potential infringement claim or that its prior and ongoing representations and warranties of non-infringement might not be true.

103.     Villency Design Group had an affirmative duty to disclose this information due to: (1) the misleading nature of its prior and ongoing representations and warranties of non-infringement; (2) its contractual relationship with Peloton and its express obligation to report any development issues; (3) its superior knowledge of Mr. Villency's and Mr. Coffey's efforts to acquire the '513 Patent and their impending infringement suit; and (4) its knowledge that Peloton acted upon the allegedly mistaken knowledge that the Peloton Bikes did not infringe upon any third-party's intellectual property rights.

104.     Notwithstanding its duty to disclose, Villency Design Group intentionally withheld this information to defraud Peloton and carry out Mr. Villency's and Mr. Coffey's scheme of creating VR Optics, acquiring the '513 Patent, and suing Peloton.

105.     Villency Design Group's deliberate concealment of the potential infringement claim constitutes a material omission and a willful act of misconduct.

106.     Peloton reasonably and justifiably relied on Villency Design Group's ongoing representations and warranties of non-infringement as well as its silence as to any possible infringement issues.

107.     If Villency Design Group, Mr. Villency, and Mr. Coffey had informed Peloton of the imminent likelihood of an infringement claim against the Peloton Bike, Peloton could have purchased the '513 Patent from Microsoft Technology Licensing, LLC.  Villency Design Group intentionally failed to inform Peloton of the imminent likelihood of an infringement claim so that Mr. Villency and Mr. Coffey could purchase the '513 Patent, form VR Optics, and assert the patent against Peloton.

108.     Peloton has no adequate remedy at law.

## FIRST COUNTERCLAIM

(Declaratory Judgment of Non-Infringement of the '513 Patent)

109.     Peloton realleges the allegations of the foregoing paragraphs.

110.     An actual case or controversy exists between Peloton and VR Optics as to whether or not the '513 Patent is not infringed by Peloton.

111.     Peloton does not infringe any claim of the '513 Patent either directly, indirectly, contributorily, or otherwise, and Peloton has not induced others to infringe any claim of the '513 Patent.

112.     Peloton requests a declaratory judgment that the '513 Patent has not been and is not being infringed directly or indirectly by Peloton.

## SECOND COUNTERCLAIM

### (Declaratory Judgment of Invalidity of the '513 Patent)

113.     Peloton realleges the allegations of the foregoing paragraphs.

114.     An actual case or controversy exists between Peloton and VR Optics as to whether or not the '513 Patent is invalid.

115.     Peloton requests a declaratory judgment that the '513 Patent is invalid.

## THIRD COUNTERCLAIM

### (Intentional Interference with Contractual Relationship)

116.     Peloton realleges the allegations of the foregoing paragraphs.

117.     Mr. Villency and Mr. Coffey own both Villency Design Group and VR Optics.

118.     Mr. Villency and Mr. Coffey control both Villency Design Group and VR Optics.

119.     Mr. Villency and Mr. Coffey have knowledge of the contents of both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement.

120.     Without reasonable legal or moral justification or excuse, VR Optics induced Villency Design Group to breach the Peloton Bike Development Agreement and conceal the alleged infringement of the '513 Patent in the manner set forth above in order to carry out a scheme to acquire the '513 Patent and sue Peloton.

121.     VR Optics acted with malice and for the purpose of harming Peloton and, in fact, injured the contractual relationship between Peloton and Villency Design Group.

122.    The conduct of VR Optics has proximately caused Peloton harm, including, but not limited to, fees and costs associated with the defense of VR Optics's patent infringement claims.

123.    VR Optics interference with the contractual relationship between Peloton and Villency Design Group has been deliberate and willful.

## PRAYER FOR RELIEF

WHEREFORE, Peloton prays for judgment on its counterclaims against VR Optics as follows:

A.      A judgment in favor of Peloton denying VR Optics all relief requested in its complaint in this action and dismissing VR Optics's complaint for patent infringement with prejudice;

B.      A judgment in favor of Peloton on all of its counterclaims;

C.      A declaration and judgment that Peloton has not infringed any claim of the '513 Patent;

D.      A declaration and judgment that the '513 Patent is invalid;

E.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award to Peloton of its reasonable costs, attorneys' fees, and expert fees incurred in this action;

F.      A declaration and judgment that VR Optics has intentionally interfered with Peloton's contract with Villency Design Group L.L.C., causing the latter to breach and thereby causing harm to Peloton;

G.      A judgment that VR Optics shall take nothing by this action;

H.      A judgment for all sums reasonably incurred by Peloton in the defense of this Action, including but not limited to attorneys' fees, costs and expenses;

I.       A judgment for all damages and enhancements due to the willful conduct of VR Optics; and

J.       Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Peloton hereby demands a jury trial as to all issues that are so triable.

December 30, 2016                                        Respectfully submitted,

<u>/s/ *Steven G. Schortgen*</u>
Steven G. Schortgen (admitted *Pro Hac Vice*)
Jennifer Klein Ayers (admitted *Pro Hac Vice*)
K&L GATES LLP
1717 Main St., Suite 2800
Dallas, Texas 75201
Tel: 214.939.5500
Fax: 214.939.5849
Steven.Schortgen@klgates.com
Jennifer.Ayers@klgates.com

Eric A. Prager
K&L GATES LLP
599 Lexington Avenue
New York, NY 10022
Tel: 212.536.3900
Fax: 212.536.3901
eric.prager@klgates.com

*Counsel for Defendant Peloton*
*Interactive, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 30, 2016, the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system.


/s/ *Steven G. Schortgen*
Steven G. Schortgen