UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VR Optics, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:16-cv-06392-JPO |
| Peloton Interactive, Inc., | ) ***AMENDED* THIRD-PARTY COMPLAINT AND INTERPLEADER** |
| Defendant. | ) |
| Peloton Interactive, Inc., | ) |
| Defendant and Third-party Plaintiff, | ) |
| v. | ) |
| Villency Design Group, L.L.C., Eric Villency, and Joseph Coffey, | ) |
| Third-party Defendants. | ) |

Third-party Plaintiff Peloton Interactive, Inc. ("Peloton") brings this Amended Third-party Complaint and Interpleader against Villency Design Group, L.L.C. ("Villency Design Group"), Eric Villency, and Joseph Coffey, and would respectfully show the Court as follows:

## THE PARTIES

1. Peloton is a Delaware corporation, with a principal place of business at 125 West 25th Street, 11th Floor, New York, N.Y. 10001. Peloton is the legal successor to Peloton Interactive, LLC.

2. Villency Design Group is a Delaware limited liability corporation, with a principal place of business at 430 West Broadway 2B, New York, NY 10012.

3. Eric Villency is an individual resident of this District, residing at 58 West 58th Street, New York, NY 10019.

4. Joseph Coffey is an individual resident of this District, residing at the Hotel des Artistes, 1 West 67th Street, New York, NY 10023.

## JURISDICTION AND VENUE

5. Peloton's third-party claims herein arise out of and are directly related to claims pending before this Court in *VR Optics, LLC v. Peloton Interactive, Inc.,* No. 1:16-cv-6392 (RA) (the "Patent Action").

6. The Complaint in the Patent Action alleges that VR Optics, LLC ("VR Optics") is the owner and assignee of all right, title, and interest to U.S. Patent No. 6,902,513 ("'513 Patent"), entitled "Interactive Fitness Equipment" and that Peloton is infringing one or more claims of the '513 Patent.

7. The '513 Patent issued on June 7, 2005.

8. The '513 Patent purports to be "generally directed to a computerized fitness equipment that is designed to simulate, emulate, or implement actual race conditions with other users." Each and every claim of the '513 Patent requires "fitness equipment" such as an "exercise bike." As set forth more fully below, Villency Design Group designed and developed the exercise bike that is required in the '513 Patent's claims.

9. By its Complaint, VR Optics alleges that Peloton infringes the '513 Patent because Peloton "has created and used, or actively induced others to use, a system for interactive fitness that includes the Peloton interactive fitness equipment."

10. As set forth more fully below, Villency Design Group is liable for any and all damages, liability, costs, expenses and attorneys' fees Peloton incurs in relation to the Patent Action and any alleged infringement relating to accused Peloton fitness equipment.

11. As set forth more fully below, Eric Villency and Joseph Coffey have tortiously interfered with the contractual relationship between Peloton and Villency Design Group by forming VR Optics to acquire the '513 Patent and enforce it against Peloton.

12. Accordingly, this Court has supplemental jurisdiction over the claims asserted in this Third-party Complaint because those claims arise out of the same facts and circumstances as the claims asserted in the VR Optics Complaint and they form part of the same case and controversy under Article III of the United States Constitution.  28 U.S.C. 1367.

13. Venue is proper because a substantial portion of the acts giving rise to the claims occurred in this District.

14. The Court has personal jurisdiction over Villency Design Group because, as set forth more fully below, Villency Design Group has consented to such jurisdiction.  The Court has personal jurisdiction over both Eric Villency and Joe Coffey because they are residents of this District.

## FACTUAL BACKGROUND

**Brief Statement of the Case**

15. Villency Design Group is a consumer product development company.

16. Founded in New York in 2012, Peloton has developed a new concept for in-home fitness that delivers live and archived studio cycling classes to home users via a stationary bike with an integrated tablet computer.

17. In 2012, Peloton hired Villency Design Group to design an interactive stationary bike with an integrated tablet computer (the "Peloton Bike").

18. Villency Design Group and Peloton entered into a first written agreement related to the design, development and manufacture of the Peloton Bike in 2012.

19. Villency Design Group and Peloton entered into a second, superseding written agreement in 2014.

20. In those agreements, Villency Design Group represented and warranted that the Peloton Bike did not and would not infringe upon the rights of any third party.

21. In those agreements, Villency Design Group also agreed to indemnify, defend and hold harmless Peloton from any third-party intellectual property infringement claims arising out of or relating to any violation or alleged violation of any intellectual property rights regarding the design of the Peloton Bike.

22. Villency Design Group and Mr. Villency have asserted and continue to assert that Villency Design Group created the interactive exercise bike now being sold by Peloton.

23. During the course of Villency Design Group's relationship with Peloton, the owners of Villency Design Group, Mr. Villency and Mr. Coffey, learned of the existence of the '513 Patent.

24. On information and belief, Villency Design Group, Mr. Villency and Mr. Coffey learned of the existence of the '513 Patent before the 2014 Agreement expired.

25. On information and belief, Villency Design Group, Mr. Villency and Mr. Coffey determined that the Peloton Bike potentially infringed one or more claims of the '513 Patent before the 2014 Agreement expired.

26. On information and belief, Mr. Villency and Mr. Coffey conceived of the idea to acquire the '513 Patent and assert it against the Peloton Bike before the 2014 Agreement expired.

27. At some time prior to June 20, 2016, Mr. Villency and Mr. Coffey created a New York limited liability company called VR Optics, LLC ("VR Optics").

28. VR Optics is a New York limited liability company, with its principal place of business in the same office as Villency Design Group at 430 West Broadway 2B, New York, NY 10012.

29. Villency Design Group is owned and controlled by Eric Villency and Joseph Coffey.

30. VR Optics is also owned and controlled by Eric Villency and Joseph Coffey.

31. On or about June 20, 2016, Mr. Coffey and Mr. Villency filed documents registering VR Optics, LLC with the New York Department of State.

32. On information and belief, VR Optics was formed by Mr. Villency and Mr. Coffey to acquire the '513 Patent and assert it against Peloton.

33. On information and belief, Mr. Villency and Mr. Coffey initiated their efforts to acquire the '513 Patent prior to June 20, 2016.

34. Notwithstanding their company Villency Design Group's longstanding relationship with Peloton, and their own individual relationships with Peloton and its senior management team, Mr. Villency and Mr. Coffey sought to acquire the '513 Patent to enforce it against Peloton.

35. Despite its knowledge of the '513 Patent and the imminent likelihood of an infringement claim against the Peloton Bike, and its ongoing contractual relationship with Peloton, Villency Design Group chose not to inform Peloton of that potential infringement claim

or that its representations and warranties that the Peloton Bike does not infringe upon the rights of any third party might not be true.

36. Villency Design Group also took no steps to collaborate with Peloton to modify, change or update the design of the Peloton Bike in light of its knowledge of the alleged infringement of the '513 Patent.

37. On August 3, 2016, VR Optics executed an agreement to purchase the '513 Patent from Microsoft Technology Licensing, LLC ("Microsoft").

38. On August 4, 2016, VR Optics recorded the assignment of the '513 Patent to VR Optics.

39. On August 11, 2016, VR Optics filed the VR Optics Complaint alleging that the Peloton Bike designed by the Villency Design Group infringes the '513 Patent.

40. On information and belief, VR Optics has also attempted to sell the '513 Patent to direct competitors of Peloton.

**The 2012 Agreement**

41. On April 6, 2012, Villency Design Group and Peloton entered into a Design, Development and Manufacturing Agreement ("Peloton Bike Design Agreement").

42. In the Peloton Bike Design Agreement, Villency Design Group consented to personal jurisdiction in New York.

43. In Section 1.1 of the Peloton Bike Design Agreement, the parties agreed that "Villency shall design, develop and engineer a stationary cycling Device Bike, incorporating the placement and design of the flat screen interactive table, in accordance with the specifications" mutually agreed to between Villency and Peloton.

44. Section 1.1 further states that Villency Design Group "shall identify and source a factory […] to manufacture the Bike." Section 2.1 of the Peloton Bike Design Agreement states that "Villency shall be responsible for all aspects of manufacturing the Bikes in compliance with the Device Bike Specifications mutually agreed to by Peloton and Villency[.]"

45. In Section 1.3, Villency Design Group acknowledges that the final design and manufacture of the Device Bike "will be a collaborative process" between Villency Design Group and Peloton.

46. In section 2.7, Villency Design Group expressly represented and warranted that, among other promises, "the Bike Intellectual Property ***does not and will not*** infringe upon the rights of any third party."

47. The Peloton Bike Design Agreement defines "Bike Intellectual Property" broadly to include:

> all intellectual property relating to the Device Bikes, including, without limitations, all designs (including without limitation, those created by Villency prior to or during the term of this Agreement), inventions, improvements, discoveries, data, concepts, ideas, processes, methods, techniques, know-how, and information respecting the Bikes conceived, made or produced by Villency prior to and/or during the course of performing the Product Development Services and/or Manufacturing Services under this Agreement, or made or produced as the result of the joint efforts of Peloton and Villency prior to or during the term of this Agreement (collectively, the "Bike Intellectual Property").

Peloton Bike Design Agreement § 1.7(a).

48. Section 5.6 of the Peloton Bike Design Agreement states, in relevant part, as follows:

> SURVIVAL. The termination or expiration of this Agreement shall be without prejudice . . . [to] (b) the rights and remedies of either party with respect to any previous breach or default under any representation, warranty or covenant herein contained; and (c) rights under any provision of this agreement which expressly and necessarily calls for performance after expiration or termination.

49. Section 6.1 of the Peloton Bike Design Agreement states, in relevant part, as follows:

> VILLENCY INDEMNITY.  Villency agrees to indemnify, defend and hold harmless Peloton [ . . .] against any third party claim [ . . .] (b) arising out of or relating to any violation or alleged violation of any Villency representations or warranties.

50. Villency Design Group's representation and warranty that the Device Bike does not and will not infringe upon the rights of any third party survives termination of the Peloton Bike Design Agreement.

51. The Device Bike contemplated by the Peloton Bike Design Agreement is the same instrumentality that Mr. Villency and Mr. Coffey, through the newly formed entity VR Optics, now accuse of infringing the '513 Patent.

52. Accordingly, under the Peloton Bike Design Agreement, Villency Design Group was responsible for designing, developing and manufacturing of the very device its owners now accuse of infringement through the newly formed entity VR Optics.

53. When it executed the agreement, Villency Design Group represented and warranted that the Peloton Bike ***did not and would not*** infringe upon the rights of any third party and thus was free of the infringement claim VR Optics now asserts.

**The 2014 Development Agreement**

54. On June 24, 2014, Villency Design Group and Peloton entered a superseding agreement entitled "Bike Development and Services Agreement" (hereafter "Peloton Bike Development Agreement").

55. The Peloton Bike Development Agreement expired on June 24, 2016, after Mr. Villency and Mr. Coffey had already formed and registered VR Optics, LLC with the New York Department of State.

56. In the Peloton Bike Development Agreement, Villency Design Group consented to personal jurisdiction in New York.

57. The 2014 Peloton Bike Development Agreement states, *inter alia*, that "Villency [Design Group] designed, developed and managed the manufacture of the [Peloton] Bike[.]"

58. Section 1.1 of the Peloton Bike Development Agreement sets forth the scope of Villency Design Group's work with respect to Peloton's "proprietary indoor cycling bikes ('Bikes')" including: (1) managing all aspects of the Factory relationship, (2) managing with the Factory all Bike improvements; (3) managing Bike quality control; (4) overseeing the testing and development of new components; and (5) communicating on a weekly basis, by written report to Peloton, all Bike development progress and issues.

59. Section 1.3 of the Peloton Bike Development Agreement states that "Peloton and Villency [Design Group] acknowledge that the continued design, development and manufacture of the [Peloton] Bike will be a collaborative process[.]"

60. Under the Peloton Bike Development Agreement, Villency Design Group was responsible for modifications, changes and/or updates to the Peloton Bike. Peloton Bike Development Agreement § 1.5.

61. As in the Peloton Bike Design Agreement, Villency Design Group once again represented and warranted that, *inter alia*, the "Bike Intellectual Property **does not and will not** infringe upon the rights of any third parties." Peloton Bike Development Agreement § 8.2(a)(3) (emphasis added).

62. Like the Peloton Bike Design Agreement, Section 1.7(a) of the Peloton Bike Development Agreement defined "Bike Intellectual Property" broadly to include:

> all intellectual property relating to the Bikes, including, without limitation, all designs (including, without limitation, those created by Villency prior to or during the Term of

this Agreement), inventions, improvements, discoveries, data, concepts, ideas, processes, methods, techniques, know-how, and information respecting the Bikes conceived, made or produced by Villency prior to and/or during the course of performing the Product Development Services and/or Manufacturing Services under this Agreement, or made or produced as the result of the joint efforts of Peloton and Villency prior to or during the Term of this Agreement (collectively, the "Bike Intellectual Property").

63.     Villency Design Group's representations and warranties in the Peloton Bike Development Agreement, including that the Peloton Bike does not and will not infringe upon the rights of third parties, survive the agreement's termination or expiration.

64.     Section 5.6 of the Peloton Bike Development Agreement states in relevant part as follows:

> SURVIVAL.  The termination or expiration of this Agreement shall be without prejudice [to] (b) the rights and remedies of either party with respect to any previous breach or default under any representation, warranty or covenant herein contained; and (c) rights under any provision of this agreement which expressly and necessarily calls for performance after expiration or termination.

65.     Section 7.1 of the Peloton Bike Development Agreement states in relevant part as follows:

> VILLENCY INDEMNITY.  Villency agrees to indemnify, defend and hold harmless Peloton [ . . .] against any claim [ . . .] (b) arising out of, or relating to, any violation or alleged violation of any intellectual property rights regarding any Bike Intellectual Property.

66.     Villency Design Group's representation and warranty that the Peloton Bike does not and will not infringe upon the rights of any third party and the associated indemnity both survive any termination of the Peloton Bike Development Agreement.

67.     The Peloton Bike contemplated by the Peloton Bike Development Agreement is the same instrumentality that Mr. Villency and Mr. Coffey, through the newly formed entity VR Optics, now accuse of infringing the '513 Patent.

68.     Peloton has no adequate remedy at law.

## COUNT ONE – BREACH OF CONTRACT
### (As to Villency Design Group)

69. Peloton incorporates all of the foregoing paragraphs as if set forth fully herein.

70. All conditions precedent to the performance of both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement have occurred.

71. Peloton has fully performed its obligations under both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement.

72. Through both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement, Villency Design Group represented and warranted that the Peloton Bike does not and will not infringe upon the rights of any third parties, including any intellectual property rights.

73. Through the Peloton Bike Development Agreement, Villency Design Group agreed to indemnify, defend and hold harmless Peloton from any and all third party claims, including intellectual property claims.

74. Through the Peloton Bike Development Agreement, Villency agreed to collaborate with Peloton in the continued design, development and manufacture of the Peloton Bike and provide Peloton with weekly communications as to all development progress and issues.

75. The patent infringement claims VR Optics asserts in the VR Optics Complaint are directly contrary to Villency Design Group's representations and warranties under each of the Peloton Bike Design Agreement and the Peloton Bike Development Agreement.

76. To the extent that the Peloton Bike infringes upon the '513 Patent, Villency Design Group breached the Peloton Bike Design Agreement and the Peloton Bike Development

Agreement whenever it represented and warranted under each agreement that the Peloton Bike *did not* infringe upon the rights of any third parties.

77. To the extent that the Peloton Bike infringes upon the '513 Patent, Villency Design Group breached the Peloton Bike Design Agreement on the day that it executed the agreement because the representation and warranty that the Peloton Bike did not then infringe upon the rights of any third parties was false.

78. To the extent that the Peloton Bike infringes upon the '513 Patent, Villency Design Group breached the Peloton Bike Development Agreement on the day that it executed the agreement because the representation and warranty that the Peloton Bike did not then infringe upon the rights of any third parties was false.

79. To the extent that the Peloton Bike infringes on the '513 Patent, Villency Design Group breached the Peloton Bike Design Agreement and the Peloton Bike Development Agreement because it represented and warranted under each agreement that the Peloton Bike *would not* infringe upon the rights of any third parties.

80. To the extent that the Peloton Bike infringes on the '513 Patent, Villency Design Group breached the Peloton Bike Design Agreement on the day that it executed the agreement because the representation and warranty that the Peloton Bike *would not* infringe upon the rights of any third parties was false.

81. To the extent that the Peloton Bike infringes on the '513 Patent, Villency Design Group breached the Peloton Bike Development Agreement on the day that it executed the agreement because the representation and warranty that the Peloton Bike *would not* infringe upon the rights of any third parties was false.

82. Villency Design Group's failure to communicate with Peloton as to possible infringement after it learned of the '513 Patent breached Villency Design Group's responsibility to give Peloton periodic updates about development issues under the Peloton Bike Development Agreement.

83. The patent infringement claims VR Optics asserts are claims for which Villency Design Group expressly promised to defend, hold harmless and indemnify Peloton under the Peloton Bike Development Agreement.

84. On September 9, 2016, Peloton formally requested that Villency Design Group indemnify, defend and hold harmless Peloton from the claims of the VR Optics Complaint. Peloton's demand was in writing and delivered in the manner set forth in the Peloton Bike Development Agreement.

85. Villency Design Group has refused to honor its defense and indemnification obligations.

86. Villency Design Group's refusal to honor its defense and indemnification obligations constitutes a breach of each of the Peloton Bike Development Agreement.

87. The Peloton Bike Development Agreement preserves Peloton's rights and remedies with respect to the foregoing breaches, including Peloton's rights of defense and indemnification with respect to Villency Design Group's breach of its representations and warranties.

88. Villency Design Group's breach of each of the Peloton Bike Design Agreement and the Peloton Bike Development Agreement have proximately caused Peloton harm, including, but not limited to, fees and costs associated with the defense of VR Optics' claims asserted in the Patent Action.

## COUNT TWO – FRAUDULENT CONCEALMENT
### (As To Villency Design Group)

89. Peloton incorporates all of the foregoing paragraphs as if set forth fully herein.

90. Despite its awareness of the '513 Patent and of the imminent likelihood of an infringement claim against the Peloton Bike, Villency Design Group took no steps to inform Peloton of any potential infringement claim or that its prior and ongoing representations and warranties of non-infringement might not be true.

91. Villency Design Group had an affirmative duty to disclose this information due to: (1) the misleading nature of its prior and ongoing representations and warranties of non-infringement; (2) its contractual relationship with Peloton and its express obligation to report any development issues; (3) its superior knowledge of Mr. Villency's and Mr. Coffey's efforts to acquire the '513 Patent and their impending infringement suit; and (4) its knowledge that Peloton acted upon the allegedly mistaken knowledge that the Peloton Bikes did not infringe upon any third-party's intellectual property rights.

92. Notwithstanding its duty to disclose, Villency Design Group intentionally withheld this information to defraud Peloton and carry out Mr. Villency's and Mr. Coffey's scheme of creating VR Optics, acquiring the '513 Patent, and suing Peloton.

93. Villency Design Group's deliberate concealment of the potential infringement claim constitutes a material omission and a willful act of misconduct.

94. Peloton reasonably and justifiably relied on Villency Design Group's ongoing representations and warranties of non-infringement as well as its silence as to any possible infringement issues.

95. Peloton would not have agreed to either the Peloton Bike Design Agreement or the Peloton Bike Development Agreement without the non-infringement representations and warranties.

96. If Villency Design Group, Mr. Villency, and Mr. Coffey had informed Peloton of the imminent likelihood of an infringement claim against the Peloton Bike, Peloton could have purchased the '513 Patent from Microsoft Technology Licensing, LLC. Villency Design Group intentionally failed to inform Peloton of the imminent likelihood of an infringement claim so that Mr. Villency and Mr. Coffey could purchase the '513 Patent, form VR Optics, and assert the patent against Peloton.

97. Peloton's reliance on Villency Design Group's material omissions has caused Peloton harm, including, but not limited to, fees and costs associated with the defense of VR Optics' claims asserted in the Patent Action.

### COUNT THREE – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (As To Villency Design Group)

98. Peloton incorporates all of the foregoing paragraphs as if set forth fully herein.

99. Both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement are governed by New York law.

100. A covenant of good faith and fair dealing is associated with both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement.

101. In order to deprive Peloton of the benefits of each of the Peloton Bike Design Agreement and the Peloton Bike Development Agreement, Villency Design Group, through its owners Eric Villency and Joseph Coffey, formed VR Optics to acquire the '513 Patent and assert it against Peloton.

102. By forming VR Optics, acquiring the '513 Patent, and asserting the '513 Patent against Peloton, Villency Design Group acts to withhold the benefits of both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement from Peloton.

103. These actions breach the covenant of good faith and fair dealing associated with both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement.

104. Because these actions were taken by the common owners of Villency Design Group and VR Optics, Villency Design Group's conduct is deliberate and willful.

105. Villency Design Group's conduct has proximately caused Peloton harm, including, but not limited to, fees and costs associated with the defense of VR Optics' patent infringement claims.

### COUNT FOUR -- INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
**(Against Villency and Coffey)**

106. Peloton incorporates all of the foregoing paragraphs as if set forth fully herein.

107. Mr. Villency and Mr. Coffey own both Villency Design Group and VR Optics.

108. Mr. Villency and Mr. Coffey control both Villency Design Group and VR Optics.

109. Mr. Villency and Mr. Coffey have knowledge of the contents of both the Peloton Bike Design Agreement and the Peloton Bike Development Agreement.

110. Without reasonable legal or moral justification or excuse, Mr. Villency and Mr. Coffey induced Villency Design Group to breach the Peloton Bike Development Agreement and conceal the alleged infringement of the '513 Patent in the manner set forth above in order to carry out their own personal scheme of creating VR Optics, acquiring the '513 Patent, and suing Peloton.

111. Eric Villency and Joseph Coffey acted with malice and for the purpose of procuring personal pecuniary benefit at the expense of harm to Peloton and, in fact, injured the contractual relationship between Peloton and Villency Design Group.

112. The conduct of Eric Villency and Joseph Coffey has proximately caused Peloton harm, including, but not limited to, fees and costs associated with the defense of VR Optics's patent infringement claims.

113. The conduct Eric Villency and Joseph Coffey interfering with the contractual relationship between Peloton and Villency Design Group has been deliberate and willful.

## PRAYER FOR RELIEF

WHEREFORE, Peloton prays for judgment on its claims against Villency Design Group, Eric Villency, and Joseph Coffey as follows:

A. For all sums that may be adjudged against Peloton in favor of VR Optics in the Patent Action;

B. For all sums reasonably incurred by Peloton in the defense of the Patent Action and this Action, including but not limited to attorneys' fees, costs and expenses;

C. For all damages and enhancements due to the willful conduct of Villency Design Group, Eric Villency, and Joseph Coffey; and

D. For such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Peloton hereby demands a jury trial as to all issues that are so triable.

December 30, 2016

Respectfully submitted,

/s/ *Steven G. Schortgen*
Steven G. Schortgen (admitted *Pro Hac Vice*)
Jennifer Klein Ayers (admitted *Pro Hac Vice*)
K&L GATES LLP
1717 Main St., Suite 2800
Dallas, Texas 75201
Tel: 214.939.5500
Fax: 214.939.5849
Steven.Schortgen@klgates.com
Jennifer.Ayers@klgates.com

Eric A. Prager
K&L GATES LLP
599 Lexington Avenue
New York, NY 10022
Tel: 212.536.3900
Fax: 212.536.3901
eric.prager@klgates.com

*Counsel for Third-party Plaintiff*
*Peloton Interactive, Inc*.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 30, 2016, the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system.

/s/ *Steven G. Schortgen*
Steven G. Schortgen