UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

VR OPTICS, LLC, a Delaware Corporation,

                     Plaintiff,

                -v-

PELOTON INTERACTIVE, INC.,

                     Defendant.

---------------------------------------------------------------

PELOTON INTERACTIVE, INC.,

                     Third-Party Plaintiff,

                -v-

VILLENCY DESIGN GROUP, LLC, ERIC VILLENCY, and JOSEPH COFFEY,

                     Third-Party Defendants.

16-CV-6392 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

On August 11, 2016, Plaintiff and Counterclaim Defendant VR Optics, LLC ("VR Optics") filed this patent infringement suit against Defendant and Third-Party Plaintiff Peloton Interactive, Inc. ("Peloton"), alleging that Peloton's interactive fitness equipment infringes U.S. Patent No. 6,902,513, entitled "Interactive Fitness Equipment" ("the '513 patent"). (*See* Dkt. No. 1 ("Compl.").) On December 30, 2016, Peloton filed an Amended Third-Party Complaint against Third-Party Defendants Villency Design Group, LLC ("VDG"), Eric Villency, and Joseph Coffey (Dkt. No. 42 ("TP Compl.")), as well as an Amended Answer and Counterclaims against VR Optics (Dkt. No. 41 ("Countercl.")). Now, VR Optics, VDG, Villency, and Coffey

1

("Movants") move to dismiss Peloton's claims. (Dkt. No. 46; Dkt. No. 49.)[1] For the reasons that follow, the motions to dismiss are denied.

## I. Background

The following facts are taken from the Amended Third-Party Complaint and are presumed true for the purposes of this motion.

Peloton provides live and archived studio cycling classes to users in their homes by way of a stationary bike with an integrated tablet computer. (TP Compl. ¶ 16.) VDG is a consumer product development company owned by Villency and Coffey. (*Id.* ¶¶ 15, 23.) In 2012, pursuant to a written agreement, Peloton hired VDG to design, develop, and manufacture an interactive stationary bike with an integrated tablet computer. (*Id.* ¶¶ 17–18; Dkt. No. 48-1 (the "2012 Agreement").) In 2014, the parties entered into a second, superseding agreement. (TP Compl. ¶ 19; Dkt. No. 48-2 (the "2014 Agreement").)

Before the 2014 Agreement expired, Villency and Coffey learned of the existence of the '513 patent. (TP Compl. ¶¶ 23–24.) Indeed, they determined that the bike they were designing for Peloton potentially infringed the '513 patent. (*Id.* ¶ 25.) Yet they did not inform Peloton of the potential infringement claim nor endeavor to invent around the claims of the '513 patent. (*Id.* ¶¶ 35–36.)

Instead, Villency and Coffey sought to acquire the '513 patent and assert it against Peloton. (*Id.* ¶ 26.) Accordingly, they created VR Optics, acquired the '513 patent, and filed the present lawsuit. (*Id.* ¶¶ 27–34, 37–39.)

---

[1] The motion to dismiss filed by VR Optics, VDG, and Villency is at Docket Number 46. The motion to dismiss filed by Coffey is at Docket Number 49. The two motions are identical.

Peloton now seeks indemnification for this action and to hold VDG liable for allegedly breaching both the 2012 Agreement and the 2014 Agreement (*id.* ¶¶ 69–88); fraudulently concealing its awareness of the '513 patent and the likelihood of a patent infringement claim against Peloton (*id.* ¶¶ 89–97); and breaching the covenant of good faith and fair dealing (*id.* ¶¶ 98–105). Peloton also claims that Villency, Coffee, and VR Optics intentionally interfered with the contractual relationship between Peloton and VDG. (*Id.* ¶¶ 106–13; Countercl. ¶¶ 116–23.)

## II. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating whether a complaint meets these requirements, courts assume that all "factual allegations contained in the complaint" are true, *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)), and "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "[A] Rule 12(b)(6) motion must be resolved by looking only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken." *Rhee-Karn v. Burnett*, No. 13 Civ. 6132, 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014) (citing *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

### III. Discussion

#### A. Breach of Contract

Movants challenge Peloton's breach of contract claim against VDG. First, they argue that neither the 2012 Agreement nor the 2014 Agreement is still operative: The 2012 Agreement was terminated and superseded by the 2014 Agreement, and the 2014 Agreement—along with its warranties, representations, and indemnification provision—expired by its terms in June 2016. (Dkt. No. 47 at 10–11.) Even assuming that the 2014 Agreement's indemnification provision survived its termination, Movants argue that the provision creates no obligations with respect to the '513 patent. (*Id.* at 11–13.)

Both the 2012 Agreement and the 2014 Agreement dictate that New York law applies, and the parties do not argue otherwise. (2012 Agreement § 7.3(e); 2014 Agreement § 8.3(e).) In New York, "if 'a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence.'" *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) (quoting *Ruttenberg v. Davidge Data Sys. Corp.*, 626 N.Y.S.2d 174, 175 (App. Div. 1st Dep't 1995)).

First, while the parties do not dispute that the 2012 Agreement was superseded by the 2014 Agreement, Peloton's Amended Third-Party Complaint alleges a breach of that contract *before* it expired. The 2012 Agreement expressly provides that "the Bike Intellectual Property does not and will not infringe upon the rights of any third party." (2012 Agreement § 2.7(c).) Peloton alleges that "[VDG] breached the [2012 Agreement] on the day that it executed the agreement because the representation and warranty that the Peloton Bike did not then infringe upon the rights of any third parties was false." (TP Compl. ¶ 77; *see also id.* ¶ 80 (alleging that "[VDG] breached the [2012 Agreement] on the day that it executed the agreement because the

4

representation and warranty that the Peloton Bike *would not* infringe upon the rights of any third parties was false").) Movants provide no reason why Peloton cannot state a claim for breach of the 2012 Agreement based upon conduct that occurred while the contract was in effect.

Second, Movants argue that the representations, warranties, and indemnity provisions do not survive termination of the 2014 Agreement. But, again, the Amended Third-Party Complaint alleges a breach of that contract *before* the agreement expired. (*See id.* ¶¶ 78, 81.) Moreover, the 2014 Agreement contains a survival clause, which states that "[a]ll representations and warranties of [VDG] and Peloton contained in this Agreement will survive the termination of this Agreement." (2014 Agreement § 8.3(b).) Section 8.2, titled "REPRESENTATIONS AND WARRANTIES," expressly provides that "the Bike Intellectual Property does not and will not infringe upon the rights of any third party." (*Id.* § 8.2(a)(3).) Under the 2014 Agreement, therefore, VDG's obligation to provide "Bike Intellectual Property" that does not infringe a third-party patent unambiguously survived the contract's termination in June 2016.

To avoid liability for breach of contract, Movants argue that the Bike Intellectual Property provided by VDG to Peloton does not infringe the '513 patent *until* Peloton adds certain elements required by the patent's claims.[2] In particular, Movants argue that "VDG's scope of work was limited to designing and manufacturing certain aspects of the physical bike itself (as opposed to the [interactive fitness system ('Interactive System')] or the [flat-screen interactive

---

[2] Peloton's claim for breach of contract is premised on the assumption that the Bike Intellectual Property provided by VDG for Peloton pursuant to the 2012 and 2014 Agreements potentially infringes the '513 patent. This puts Peloton in a precarious position: To state a claim for breach of contract, it must allege that the Bike Intellectual Property infringes the '513 patent; yet to prevail as a defendant in this patent infringement suit, it will need to demonstrate either that its product does not infringe the '513 patent or that the '513 patent is invalid.

5

device ('Device')])" and that "VDG did not design, make or produce the Interactive System or the Device." (Dkt. No. 47 at 12.)

Peloton argues that the scope of the agreement was broader, such that VDG provided "allegedly infringing contributions." (Dkt. No. 53 at 22.) Peloton's claim for breach of contract hinges on whether the product produced by VDG contributorily infringes the '513 patent.

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (quoting 35 U.S.C. § 271(c)). Contributory infringement requires, among other things, "that the components sold or offered for sale have no substantial non-infringing uses." *Id.*

Under the 2012 Agreement, the parties agreed that "[VDG] shall design, develop and engineer a stationary cycling Device Bike, incorporating the placement and design of [a] flat screen interactive table[t], in accordance with the specifications" agreed upon by VDG and Peloton. (2012 Agreement § 1.1.) "Device Bike" is defined in the 2012 Agreement as an "indoor cycling bike[]" with a "flat-screen interactive device . . . mounted on or adjacent [to] the handlebar[s]." (*Id.* at pmbl.) Under the 2014 Agreement, which the parties entered into as a "more comprehensive agreement to include servicing of the Bike" (Dkt. No. 48-2 at pmbl.), VDG agreed to (1) make design adjustments, (2) manage all aspects of the Factory relationship, (3) manage with the Factory all Bike improvements; (4) manage Bike quality control; (5) oversee the testing and development of new components; and (6) communicate on a weekly basis, by written report to Peloton, all Bike development progress and issues. (Dkt. 48-2 at §§ 1.1(a)–(g).)

Movants argue that the products made pursuant to the 2012 and 2014 Agreements "can be used as a spinning bike independent of the infringing [Peloton interactive fitness system]." (Dkt. No. 55 at 2.) Certainly, if there is no contributory or direct infringement of the product created pursuant to the Agreements, there is no breach of contract.

However, at the motion to dismiss stage, "draw[ing] all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d at 95, the Court cannot determine whether the products produced by VDG pursuant to the 2012 and 2014 Agreements "carry out functions constituting substantial non-infringing uses. This is, at best, a matter to be established with an evidentiary record at summary judgment." *Regents of the Univ. of Cal. v. Bos. Sci. Corp.*, No. 16 Civ. 6266, 2017 WL 2335543, at *2 (N.D. Cal. May 30, 2017). Movants' motion to dismiss Peloton's breach of contract claims is therefore denied.

B.  **Covenant of Good Faith and Fair Dealing**

Peloton also alleges that VDG breached the covenant of good faith and fair dealing. Under New York law, "[i]mplicit in every contract is an implied covenant of good faith and fair dealing." *Gutierrez v. Gov't Emps. Ins. Co.*, 25 N.Y.S.3d 625, 625 (App. Div. 2d Dep't 2016). This represents "a pledge that neither party to the contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such conduct." *Id.*

Peloton accuses VDG, through Villency and Coffey, of breaching the covenant of good faith and fair dealing. (TP Compl. ¶¶ 98–105.) Movants argue that Peloton's claim for breach of the covenant of good faith and fair dealing should be dismissed as duplicative of Peloton's breach of contract claim. However, a claim for a covenant of good faith and fair dealing "is not

7

necessarily duplicative of a cause of action alleging breach of contract." *Gutierrez*, 25 N.Y.S.3d at 625.

Here, Peloton's allegation for breach of the covenant of good faith and fair dealing is distinct from Peloton's allegation for breach of contract. Peloton's Amended Third-Party Complaint alleges that VDG, through Villency and Coffey, "formed VR Optics to acquire the '513 Patent and assert it against Peloton." (TP Compl. ¶ 101.) And that "[b]y forming VR Optics, acquiring the '513 Patent, and asserting the '513 Patent against Peloton, [VDG] acts to withhold the benefits of both the [2012 Agreement] and the [2014 Agreement] from Peloton." (*Id.* ¶ 102.)

Peloton states a claim for breach of an implied covenant of good faith by alleging "conduct that while technically not constituting a breach of contract, nevertheless deprives the plaintiff of the benefit of its bargain." *Konecranes, Inc. v. Cranetech, Inc.*, No. 03 Civ. 6082, 2005 WL 246916, at *3 (W.D.N.Y. Feb. 2, 2005). Accordingly, based on the allegations alone, a reasonable finder of fact could determine that the decision to form VR Optics, acquire the '513 patent, and assert it against Peloton violated the spirit of the 2012 and 2014 Agreements, and therefore violated an implied covenant of good faith and fair dealing. Movants' motion to dismiss Peloton's claim for breach of the covenant of good faith and fair dealing is therefore denied.

### C. Fraudulent Concealment

Peloton also alleges that VDG fraudulently concealed its awareness of the '513 patent and of the likelihood of an infringement claim against Peloton. (TP Compl. ¶¶ 89–97.)

"The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such

disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 314 (S.D.N.Y. 2013) (quoting *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 124 (E.D.N.Y. 2011)) (internal quotation marks omitted). "With respect to the duty to disclose, 'New York recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair.'" *Id.* (quoting *Miele v. Am. Tobacco Co.*, 770 N.Y.S.2d 386, 391 (App. Div. 2d Dep't 2003)).

Movants argue that this claim should be dismissed based on Peloton's prior admissions in its original Third-Party Complaint. (Dkt. No. 47 at 13–15 (citing Dkt. No. 17).) In particular, the original Third-Party Complaint alleged that "Mr. Villency and Mr. Coffey learned of the '513 patent from an employee of Peloton." (Dkt. No. 17 ¶ 21.) In the Amended Third-Party Complaint, this allegation is removed. Peloton now alleges that, "[d]espite its awareness of the '513 Patent and of the imminent likelihood of an infringement claim against the Peloton Bike, [VDG] took no steps to inform Peloton of any potential infringement claim or that its prior and ongoing representations and warranties of non-infringement might not be true." (TP Compl. ¶ 90.) Movants argue that Peloton's admissions in its original Third-Party Complaint "negate its claim for fraudulent concealment" and warrant dismissal of the claim. (Dkt. No. 47 at 13.)

Movants confuse the admission in the original Third-Party Complaint—that Peloton was aware of the '513 patent—with Peloton's actual claim of fraudulent concealment. That is, Peloton is not alleging that VDG fraudulently concealed the existence of the '513 patent; Peloton alleges that VDG fraudulently concealed the "imminent likelihood of an infringement claim against the Peloton Bike." (TP Compl. ¶ 90.) Villency and Coffey had "superior knowledge" of

9

their own efforts to acquire the '513 patent, to form VR Optics, and to file the present suit, yet they did not inform Peloton. (*Id.* ¶ 91.) As alleged, the concealment of this information rendered the transaction "inherently unfair." *De Sole*, 974 F. Supp. 2d at 314 (quoting *Miele*, 770 N.Y.S.2d at 391). Accordingly, Movants' motion to dismiss Peloton's claim for fraudulent concealment is denied.

### C. Tortious Interference with Contract

Peloton alleges tortious interference with contract against Villency and Coffey (TP Compl. ¶¶ 106–13), and against VR Optics (Countercl. ¶¶ 116–23). "Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)).

When adjudicating this tort, New York courts seek "to strike a balance between two valued interests: protection of enforceable contracts, which lends stability and predictability to parties' dealings, and promotion of free and robust competition in the marketplace." *White Plains Coat & Apron Co. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007). New York courts have, therefore, developed an "economic interest defense" to claims of tortious interference with contract.[3] "The defense applies when the defendant 'acted to protect its own legal or financial

---

[3] Peloton argues that the economic interest defense is not applicable to a claim alleging tortious interference with a contractual relationship where the alleged interference is with an existing contract, as opposed to a prospective economic relationship. (Dkt. No. 53 at 13 (citing *Island Rehab. Servs. Corp. v. Maimonides Med. Ctr.*, 859 N.Y.S.2d 903, at *8 (Sup. Ct. 2008) (unreported disposition)).) However, the Court concludes that the better reading of the

stake in the breaching party's business.' Unless there is a showing of malice or illegality, a defendant's economic interest in the breaching party's affairs bars an action for tortious interference with contract." *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, No. 16 Civ. 3800, 2017 WL 933111, at *11 (S.D.N.Y. Mar. 8, 2017) (quoting *White Plains Coat & Apron*, 867 N.E.2d at 383).

The defense of economic interest does not apply, however, where the allegedly interfering parties acted to protect their own interest instead of their interest in the breaching party's business. *See Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 484 (E.D.N.Y. 2012) ("[T]he defense . . . only applies when the alleged interfering parties have acted to protect their interest in the breaching party's business . . . not their own.") Based on the pleadings and Movants' own arguments, Peloton argues that the economic interest defense does not apply to Coffey, Villency, or VR Optics because they were acting in their *own* interest, and not their interest in VDG, the breaching party. For instance, the Amended Third-Party Complaint alleges that, "Mr. Villency and Mr. Coffey induced [VDG] to breach the [2014 Agreement] and conceal[ed] the alleged infringement of the '513 Patent . . . *in order to carry out their own personal scheme* of creating VR Optics, acquiring the '513 Patent, and suing Peloton." (TP Compl. ¶ 110 (emphasis added); *see also id.* ¶ 111 ("Eric Villency and Joseph Coffey acted with malice and *for the purpose of procuring personal pecuniary benefit* at the expense of harm

---

opinions of the New York courts is that the economic interest defense is available as a defense to claims of tortious interference with existing contracts, as courts in this Circuit consistently apply the defense in cases concerning existing contracts. *See, e.g.*, *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 441–42 (S.D.N.Y. 2016) (applying the defense to an existing contract); *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 431–34 (S.D.N.Y. 2007) (same); *see also White Plains Coat & Apron*, 867 N.E.2d at 383 (noting that "New York law recognizes the tort of interference with both prospective and existing contracts").

to Peloton and, in fact, injured the contractual relationship between Peloton and [VDG].")
(emphasis added).) Indeed, Movants admit that "any actions taken by Villency and Coffey
and/or VR Optics were for their own economic interest." (Dkt. No. 47 at 9.) Peloton argues,
therefore, that the defense of economic interest is not available to Villency, Coffey, or VR
Optics.

However, "[s]everal courts in the Second Circuit have refused to apply the economic
interest defense at the pleading stage to dismiss complaints for tortious interference with
contract, explaining that the facts of the pleadings were not sufficiently developed to show
entitlement to the defense." *Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, No. 11 Civ. 5832, 2012 WL 3542196, at *9 (S.D.N.Y. Aug. 15, 2012) (collecting cases).
Here, the pleadings allege that "actions taken by Villency and Coffey and/or VR Optics were for
their own economic interest" (Dkt. No. 47 at 9), but do not, as a matter of law, establish that their
actions were taken "to protect their interest in the breaching party's business," *Dell's Maraschino Cherries*, 887 F. Supp. 2d at 484. The Court does not, therefore, dismiss Peloton's tortious
interference claims at the motion-to-dismiss stage based on the economic interest defense.

Movants also argue that Villency and Coffee cannot be personally liable for tortious
interference because they were principals of VDG. (Dkt. No. 47 at 6–8.) "Generally, 'a
corporate officer who is charged with inducing the breach of a contract between the corporation
and a third party is immune from liability if it appears that he is acting in good faith as an officer
and did not commit independent torts or predatory acts against another.'" *Nahabedian v. Intercloud Sys., Inc.*, No. 15 Civ. 669, 2016 WL 155084, at *6 (S.D.N.Y. Jan. 12, 2016) (quoting
*G.D. Searle & Co. v. Medicore Commc'ns, Inc.*, 843 F. Supp. 895, 911 (S.D.N.Y. 1994)).
However, if "the acts of the defendant corporate officers which resulted in the tortious
interference with contract either were beyond the scope of their employment or, if not, were

motivated by their personal gain, as distinguished from gain for the corporation," they may be liable. *Id.* at *6 (quoting *Petkanas v. Kooyman*, 759 N.Y.S.2d 1, 2 (App. Div. 1st Dep't 2003)). As already described, the pleadings allege—and Movants admit—that Villency and Coffey were acting for personal gain. "The general rule . . . is that an 'officer or director is liable when he acts for his personal, rather than the corporate interests.'" *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 744 N.Y.S.2d 384, 390 (App. Div. 1st Dep't 2002) (quoting *Hoag v. Chancellor, Inc.*, 677 N.Y.S.2d 531, 534 (App. Div. 1st Dep't 1998)). As alleged in the Amended Third-Party Complaint, Villency and Coffey are not entitled corporate officer immunity on the tortious interference claim.

Accordingly, Movants' motion to dismiss Peloton's claim for tortious interference against Villency and Coffey and Peloton's counterclaim against VR Optics is denied.

## IV. Conclusion

For the foregoing reasons, Movants' motion to dismiss is DENIED. The Clerk of Court is directed to close the motions at Docket Numbers 34, 37, 46, and 49.

SO ORDERED.

Dated: August 18, 2017
      New York, New York

                                         J. PAUL OETKEN
                                         United States District Judge