# BakerHostetler

Baker&Hostetler LLP

191 North Wacker Drive
Suite 3100
Chicago, IL 60606-1901

T 312.416.6200
F 312.416.6201
www.bakerlaw.com

Michael D. Gannon
direct dial: 312.416.6294
mgannon@bakerlaw.com

February 1, 2019

**By CM/ECF**
The Honorable J. Paul Oetken
United States District Court Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re: VR Optics, LLC v. Peloton Interactive, Inc. v. Villency Design Grp., et al., No. 1:16-cv-6392 (JPO) (S.D.N.Y.) — Letter Motion to Compel Production of Documents**

Honorable Judge Oetken:

Pursuant to Paragraph 4(B) of Judge Oetken's Individual Practices in Civil Cases, Plaintiff VR Optics, LLC and Third-Party Defendants Villency Design Group, LLC, Eric Villency, and Joseph Coffey (collectively "VRO/VDG") submit this letter motion to compel the production of certain documents withheld as privileged by Defendant Peloton Interactive, Inc. ("Peloton"). Specifically, Peloton waived privilege by disclosing opinions of counsel relating to the patent-in-suit to numerous third parties.

On November 21, 2018, Peloton served its privilege log in this case (attached as *Exhibit A*), which included assertions of privilege for certain communications between Peloton and its intellectual property counsel that appear to relate to the asserted patent in this case – U.S. Patent No. 6,902,513 (the "McClure patent"). *See, e.g.*, *Ex. A* at 3 (PRIV040-044). On December 18, 2018, Peloton clawed back as privileged three documents it had produced in discovery, at least one of which was ████████████████████████████████████████████. *See* December 18, 2018 Claw Back Letter (attached as *Exhibit B*).

VRO/VDG is not claiming here that Peloton's apparently inadvertent production of these documents constituted a waiver. Rather, VRO/VDG recently discovered in its deposition of Peloton's CEO, John Foley, that Mr. Foley ████████████████████████████████████████
████████████████████████████████████████████.

Accordingly, VRO/VDG respectfully requests that the Court compel the production of all documents reflecting communications with Peloton's IP counsel regarding the McClure patent—those identified in Peloton's privilege log, the documents clawed back by Peloton, as well as all

February 1, 2019
Page 2

other documents reflecting such communications including all email correspondence to and from Peloton's IP counsel and internal to Peloton that relate to the McClure patent.  The parties engaged in a meet and confer on February 1, 2019, but were unsuccessful in resolving this issue.

Mr. Foley waived privilege with respect to Peloton's communications with its IP counsel regarding the McClure patent by sharing the substance of those communications with ▌ third parties.

First, Mr. Foley testified ▌. When asked for further specifics as to ▌

According to Mr. Foley, ▌ Mr. Foley testified ▌



February 1, 2019
Page 3



Mr. Foley also shared the substance of Peloton's IP counsel communications regarding the McClure patent on three separate occasions in 2016 by email with third-party individuals Mr. Foley thought might have an interest in the patent.

February 1, 2019
Page 4



The three emails are attached together as *Exhibit D*.

The above communications—███████████████████████████, and each of the three recipients of the emails regarding prior art—individually and collectively constitute a waiver of any privilege that might attach to Peloton's communications with its IP counsel regarding the McClure patent.

VRO/VDG anticipates that Peloton may attempt to salvage privilege (at least in part) by arguing that ███████████████████████ were protected by the common interest doctrine. There is no support for such an argument.

The common interest doctrine is "an exception to the general rule that voluntary disclosure of confidential, privileged material to a third party waives any applicable privilege." *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y. 2009). In the Second Circuit, common interest only applies "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). For example, common interest can extend to "communications made in confidence to an accountant assisting lawyers who are conducting a joint defense on behalf of the communicating clients." *Id.* at 244. Nor is any alleged shared "commercial" interest sufficient to invoke the doctrine. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995). Rather, the parties must share a common "legal" interest manifested in a "demonstrated cooperation in formulating a common legal strategy." *Id.*

Here, Peloton cannot point to any joint defense effort or legal strategy reached by the parties in 2012 or later, or any basis for arguing that the parties had a collective interest in such a strategy. Indeed, █████████████████████████████████████████████████████████████

In any event, even assuming applicability of the common interest doctrine, the doctrine would only protect ████████████████████████████████████████ from disclosure to other third parties. *Johnson Matthey, Inc. v. Research Corp.*, No. 01-cv-8115-MBM-FM, 2002 WL 1728566, at *7 (S.D.N.Y. July 24, 2002) ("[E]ven if JM could establish the existence of a common legal interest, it would not be able to avoid the disclosure to Research of its privileged communications with Bristows. Although the common interest exception bars the disclosure of such communications to third parties, it does not affect the rights of a party's former joint defense partner in subsequent litigation involving the two of them."). There is no basis for Peloton to now withhold documents and information from VDG/VRO that Peloton alleges it shared freely with the parties prior to litigation. *See In re Chevron Corp.*, 650 F.3d 276, 290 n.19 (3d Cir. 2011) ("[T]he community-of-interest doctrine . . . protects the confidentiality of privileged communications shared by parties with common legal interests ***against a common adversary***." (emphasis added)).

February 1, 2019
Page 5

Finally, setting aside █████████████████████████, Mr. Foley unambiguously waived privileged by disclosing the substance of Peloton's IP counsel opinions to ███████████ and again in the prior art emails to third-parties in 2016.  Each of these disclosures provides an independent basis for waiver.

Because Peloton waived attorney-client privilege with respect to its IP counsel's opinions regarding the McClure patent, VRO/VDG respectfully requests that the Court compel the production of all documents reflecting communications regarding the McClure patent—those identified in Peloton's privilege log, the documents clawed back by Peloton, as well as all other documents reflecting such communications including all email correspondence to and from Peloton's IP counsel and internal to Peloton that relate to the McClure patent and all opinions relating to infringement and/or validity.

Sincerely,

*/s/ Michael D. Gannon*

Michael D. Gannon
Counsel for VR Optics, LLC