**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VR Optics, LLC, | |
| Plaintiff, | No. 1:16-cv-06392-JPO |
| v. | |
| Peloton Interactive, Inc., | |
| Defendant. | |
| Peloton Interactive, Inc., | |
| Defendant and Third-party Plaintiff, | |
| v. | |
| Villency Design Group, L.L.C., Eric Villency, and Joseph Coffey | |
| Defendant. | |

### PELOTON INTERACTIVE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO PRECLUDE THE EXPERT OPINIONS AND TESTIMONY OF STEVEN LENZ

Dated: July 1, 2019

Steven G. Schortgen (*pro hac vice*)
  *SSchortgen@SheppardMullin.com*
Jennifer Klein Ayers (*pro hac vice*)
  *JAyers@SheppardMullin.com*
Galyn Gafford (*pro hac vice*)
  *GGafford@SheppardMullin.com*
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
2200 Ross Avenue, 24th Floor
Dallas, TX  75201-6776
Tel:    (469) 391-7400
Fax:    (469) 391-7401

Respectfully submitted,

Paul W. Garrity
  *PGarrity@SheppardMullin.com*
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701

**Attorneys for Defendant and Third-Party Plaintiff PELOTON INTERACTIVE, INC.**

# TABLE OF CONTENTS

Page

I.  LEGAL STANDARD................................................................................................1

II. LENZ FAILS TO FOLLOW FAITHFULLY THE COURT'S CLAIM
    CONSTRUCTION ORDER. .................................................................................2

    A.  Lenz Misconstrues the Court's The "Drive/Control the Display"
        Limitation.....................................................................................................3

        1.  Court's Construction: "Comparison" between performances equals
            "difference" between performances.............................................................3

        2.  Lenz's Misconstruction: Display must be "based on a difference."............6

        3.  Lenz improperly adds an additional limitation in his interpretation
            of the Court's construction.........................................................................12

        4.  The '513 specification and figures confirm both the Court's
            construction and that Lenz's interpretation is in error. ............................14

    B.  Lenz's Opinion Mocks This Court's "Course Data" Construction. .....................17

        1.  Peloton instructor directions are not "course data" as construed by
            the Court......................................................................................................18

        2.  Peloton's scenic videos are not "course data" as construed by the
            Court.............................................................................................................20

III. LENZ SHOULD BE PRECLUDED FROM OFFERING SOURCE CODE
     OPINIONS.............................................................................................................22

IV. LENZ SHOULD BE PRECLUDED FROM OFFERING OPINIONS NOT
    DISCLOSED IN HIS EXPERT REPORTS .........................................................24

V.  CONCLUSION......................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Exergen Corp. v. Wal-Mart Stores, Inc.*
   575 F.3d 1312 (Fed. Cir. 2009)..............................................................................2, 3, 19

*Finjan, Inc. v. Secure Computing Corp.*
   626 F.3d 1197 (Fed. Cir. 2010).....................................................................................2

*Hebert v. Lisle*
   99 F.3d 1109 (Fed. Cir. 1996).....................................................................................12

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*
   589 F.3d 1179 (Fed. Cir. 2009).....................................................................................1

*Liquid Dynamics Corp. v. Vaughan Co.*
   449 F.3d 1209 (Fed. Cir. 2006)..............................................................................2, 3, 12

*Markman v. Westview Instruments, Inc.*
   52 F.3d 967 (Fed. Cir. 1995).....................................................................................1, 6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*
   521 F.3d 1351 (Fed. Cir. 2008).....................................................................................1

**Other Authorities**                                                                                  **Page(s)**

Fed. R. Civ. P. 26(a)(2)..............................................................................................24, 25

Fed. R. Civ. P. 26(a)(2)(B)(i)..........................................................................................25

Federal Rule of Evidence 702..........................................................................................23

Rule 26................................................................................................................24

U.S. Patent No. 5,213,555..............................................................................................13

U.S. Patent No. 6,902,513..........................................1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 14, 15, 17, 22

U.S. Patent No. 6,921,351..............................................................................................11

U.S. Patent No. 6,997,852..............................................................................................11

Peloton Interactive Inc. ("Peloton") provides this Memorandum of Law in support of its Motion to Preclude certain opinions of VR Optics, LLC's ("VRO") technical expert Steven Lenz contained in his infringement and invalidity reports. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ While Shasha conducted a multi-day source code review of Peloton's source code, VRO/VDG chose not disclose any opinions or report for Dr. Shasha.[1] As a matter of law, Lenz cannot rely upon Shasha's undisclosed opinions in forming his own opinions.[2]

## I.    LEGAL STANDARD.

Claim construction is a matter of law.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).  The purpose of claim construction is to resolve the meaning and technical scope of disputed claim terms, and when the parties dispute the scope of a claim term, "it is the court's duty to resolve it."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).  Of course, an expert's infringement opinion must use "the claim construction adopted by the court."  *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009).

---

[1] Likely because Dr. Shasha's "opinions" were not helpful to VRO's strained interpretation of the '513 Patent and its alleged infringement case.

[2] ████████████████████████████████████████████████████████
████████████████████████████████████

Expert opinions in patent litigation must be based on the Court's claim construction in order to be considered relevant and reliable. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010) (affirming the district court's exclusion of expert testimony that imposed a claim construction rejected by the district court). Expert testimony based on an claim construction inconsistent with the Court's is properly excluded as irrelevant and on the basis that the evidence could confuse the jury. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial."). "No party may contradict the court's construction to the jury." *Id.* At issue in the present motion is the Court's construction for two terms: 1) "logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed" from Claims 1 and 6[3]; and 2) "course data" from claim 5.[4] In both instances, Lenz failed faithfully to follow the Court's construction and his opinions should be excluded.

## II.  LENZ FAILS TO FOLLOW FAITHFULLY THE COURT'S CLAIM CONSTRUCTION ORDER.

Lenz misconstrues the Court's claim constructions and the teachings of the '513 patent in a veiled attempt to avoid dispositive invalidating prior art references and to concoct an infringement theory that does not actually fit. His opinions based on misconstrued reading of the Court's claim constructions should be excluded, however, because opinion evidence based upon a

---

[3] Claim 6 has an identical limitation except the word "drive" from claim 1 is replaced with the word "control" in claim 6. For purposes of this motion, these two will be treated as identical limitations because this *Daubert* dispute does not revolve around the "drive"/"control" difference.
[4] U.S. Patent 6,902,513 attached as Ex. A

mistaken construction of a patent term is properly excludable under *Daubert*. *See Liquid Dynamics*, 449 F.3d at 1224 (Expert testimony based on claim construction inconsistent with the Court's properly excluded); *see also Exergen*, 575 F.3d at 1321.

**A.    Lenz Misconstrues the Court's The "Drive/Control the Display" Limitation.**

Lenz fails to faithfully adhere to the Court's construction of the "drive/control the display" limitations from claims 1 and 6 of the '513 patent.  In particular, Lenz fabricates a substantive additional claim limitation not endorsed by the Court and contrary to its written opinion.

1.    Court's Construction: "Comparison" between performances equals "difference" between performances.

During Markman, the parties' proffered constructions for the limitation *drive/control the display* as follows:

| Claim Term | VRO's Proposed Construction | Peloton's Proposed Construction |
|---|---|---|
| "logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed" (Claim 1) | "logic configured to drive the display to visually display a difference in performance between the fitness equipment and at least one remote fitness equipment based on a difference between the first and second performance parameters" | Plain and ordinary meaning[5] |

The Court found "VR Optics' proposed construction to be fully consistent with the plain and ordinary meaning of the claim term[]."  (Dkt. No. 112, p. 27).  The Court further explained:

The only substantive phrase added by VR Optics' proposed construction is the phrase "a *difference* in performance" (emphasis added). ***This addition does not alter the scope of the patent's already-claimed functions.*** As used in the '513 patent, ***the display of a "comparison" between the performances of two users would look identical to the display of a "difference" between the performances***

[5] Peloton asserted that the "logic configured to" portion of this claim construction was indefinite, but to the extent the claim limitation is definite, Peloton asserted it should be afforded its plain and ordinary meaning.

*of those two users.* VR Optics' proposal is also consistent with all of the numerous descriptions of the "comparison" displays provided in the specification. (*See, e.g.* Dkt. No. 1-1 at col. 5 ll. 29–33 ("The displays, however, on the various fitness equipment may provide a visual read indication [that] show[s] where the particular user is in relation to the user or users that are operating the coupled fitness equipment."); fig. 2.).

(*Id.*) (emphasis added).

The Court was clear in its claim construction Order that "***the display of a "comparison" between the performances of two users would look identical to the display of a "difference" between the performances of those two users.***" (*Id.*) Lenz, however, myopically seized upon the language "based on a difference" (added by VRO in its proposed construction) to arrive at a very different applied meaning of these terms. The Court in its claim construction order focused exclusively on the first addition in VRO's proposed construction—"a difference in performance"—and did not address VRO's second addition—"based on a difference." A comparison of the actual claim language to the Court's construction is instructive:

Claim 1 language: "logic configured to drive the display in response to both the first and second performance parameters, such that *a performance comparison* between the fitness equipment and at least one remote fitness equipment *is visually displayed*"

Court's construction: "logic configured to drive the display *to visually display a difference in performance* between the fitness equipment and at least one remote fitness equipment *based on a difference* between the first and second performance parameters"

The Court stated in its claim construction order, "the only substantive phrase added by VR Optics' proposed construction is the phrase 'a difference in performance,' which "does not alter the scope of the patent's already-claimed functions." (Dkt. No. 112, p. 27).

To support its determination that VRO's proposed construction was consistent with the claim language, the Court cited to the patent specification, which explains how a difference in performance can be shown by displaying the relative positions of the users: "the displays, however, on the various fitness equipment may provide a visual read indication [that] *show[s] where the particular user is in relation to the user or users* that are operating the coupled fitness equipment." (*Id.* (emphasis added), citing '513 patent at Col. 5, ll. 29-33). In further support, the Court cited figure 2 from the '513 patent. The Court did not parse out any individual reference numerals, or aspects of the drawing , but rather cited to the figure in its entirety including dots 204 and 206, seen below. The dots 204 and 206 represent the current performances of competitors and are a visual display of a performance comparison between the two competitors, as required by the plain language of the claim. These dots 204 and 206



**FIG. 2**

*also constitute* a visual display of "a difference in performance" between the competitors as required by the Court's construction. Again, the Court importantly found that "*the display of a 'comparison' between the performances of two users would look identical to the display of a 'difference' between the performances of those two users*." (Dkt. No. 112, p. 27). The Court further confirmed its understanding that the display of a comparison and a display of a difference are synonymous when it concluded that "a restatement of these disputed claim terms in plainer language may be helpful for the fact-finder." (*Id.* at p. 28).

2.  Lenz's Misconstruction: Display must be "based on a difference."

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████   Lenz's misconstruction is so fundamental and contrary to the Court's *Markman*

Order, that it cannot be cured on cross-examination and *Daubert* and its progeny require exclusion.

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



FIG. 12

Fig. 4

Peloton deposed Lenz on May 1, 2019 on the bases for his validity opinions, and specifically on his interpretation of the drive/control the display limitation. He provided the following convoluted interpretation of the Court's claim construction.:

Q. Why is not the display of the bikes and who's closer to the finish line and who's further from the finish line based upon the comparison of our performance parameters? Why is that not visually displaying a difference?

A. Because that's what the Court said. In their Markman order, he -- when you go through the whole background of the -- on the Markman, the judge stated in there that it needed to display a difference in performance.

Q. I'm asking -- I understand what the Court said. I'm asking, tell the Court why a visual representation of racers showing who's further ahead in the race and who's further behind in the race, if that visual display of who's ahead and who's behind in the race is based upon a comparison of performance parameters, why is that not visually displaying a difference based upon the parameters?

A. When the judge looked at Figure 2 in -- in the McClure patent, he did not say that the display of the two dots was a performance comparison. The performance comparison was in 208 and 210 where it showed the leads by and trails by.

Q. What was that last word?

A. The lead by and trail by.

Q. Okay. So -- so you've interpreted the Court's Markman construction, the way you interpreted what Judge Oetken did, is that simply showing the position on a track closer to the finish line or further from a finish line, ***even if based upon a comparison of the performance parameters obtained from operating components and communicated back and forth between fitness and remote fitness equipment, that that kind of a display is not displaying the difference in the performance parameters, correct***?

A. ***Correct***.

(Ex. E, Lenz 5/1/19 Dep. 280:6 – 281:22) (emphasis added).



[REDACTED]

During his deposition, Lenz opined that the dots 204 and 206 in figure 2 on the elliptical track do not visually display a performance comparison or a difference in performance because they are not placed on the track ***based on a difference*** in user performance:

> Q. So items 204 and 206 are information in the McClure patent that is obtained from the operating components, correct?
>
> A. Their position is.
>
> Q. Right. And it is your opinion to the Court that -- that if you have an elliptical racetrack like in Figure 2 and I simply show who's ahead and who's behind in total distance, that that is not visually displaying a difference in performance between the fitness equipment and the remote fitness equipment based on a difference between the first and second performance parameters, correct?

A. That's not my claims construction. That is from the Markman order in the way the Court interpreted the claims construction.

…

Q. And why is it that you think displaying a dot of who's ahead and who's behind is not visually displaying a difference in the performance based on a difference between first and second performance parameters? Why are the dots not a visual display of a difference in performance?

…

A. My belief is that there is nothing that says that these two were placed on the track based on a difference in a performance criteria. There is -- there is no – nothing in here that states that those -- that the performance criteria were -- were compared to each other to place these two dots on the track.

(Ex. E at 263:8 – 266:12). Thus, even though Lenz admits he understands that the dots represent the racers in the virtual race and that their position on the track is being obtained from the operating components of the fitness equipment, he opines the dots do not meet the Court's construction because they "were not placed on the track based on a difference in performance criteria."

Lenz further opines that the Court, relied on the same understanding in reaching its claim construction. According to Lenz, when considering figure 2, the Court excluded the dots 204 and 206 from his construction: "When the judge looked at Figure 2 in -- in the McClure patent, he did not say that the display of the two dots was a performance comparison. The performance comparison was in 208 and 210 where it showed the leads by and trails by." (Ex. E at 281:2-7). There is no indication in the order that the Court intended to exclude dots 204 and 206 from his interpretation of the claims' plain language as "visually displaying a difference in performance."







FIG. 12

3.     Lenz improperly adds an additional limitation in his interpretation of the Court's construction.

Lenz further adds an additional limitation to the Court's construction opining that the comparison "based on a difference" must be performed by the fitness equipment and not the user. Specifically, he testified that because the display must be based on a difference, the comparison of the performance to obtain the difference cannot be done by the user making a visual comparison of the respective position of the dots being displayed on the screen:

> Q. Would you agree that displaying dots on a track showing who's further ahead and who's behind, if those dots are based upon a comparison of performance parameters obtained from operating components on fitness equipment and communicated back and forth in the appropriate way from fitness equipment and remote fitness equipment, would you agree that those dots on an elliptical track are at least a comparison of the performance? Even if not displaying a difference. Is it at least a comparison of the performance of those two riders?

> A. When they're placed on the track based on just their own numbers, it is not a comparison. The -- the user, whoever is looking at that display, is the one that is having to do the comparison, not the machine.

(Ex. E at 281:23 – 282:24).

Lenz further confirmed this erroneous opinion when testifying about the specific virtual race display from a prior art patent—U.S. Patent No. 5,213,555 to Hood. Hood contains the following figure 4.



**Fig. 4**

When questioned whether he believed figure 4 met the Court's construction for displaying a difference in performance, he testified:

> Q. But by looking at just the position of each racer on the screen in Figure 4, a racer would know who was in first, who was in second, who was in third, fourth and fifth place at that moment in time in that race; regardless of their distance, they would know who was in first and who was in last, right?
>
> A. There would be nothing on the screen telling them that. They would have to do a mental comparison on their own in order to determine that. And if it was close, they wouldn't be able to tell.

(Ex. E at 116:5-18). He further testified that figure 4 did not meet the claim limitation because "there is nothing on here that indicates definitively to the user that they are in first, second or third or fourth or fifth place" despite the clear visual depiction. (*Id.* at 119:5-9).

This additional limitation he adds in his interpretation of the Court's construction moves the Court's construction even further from the plain language of the claim, which merely requires "that ***a performance comparison*** between the fitness equipment and at least one remote fitness equipment ***is visually displayed***."

> 4. The '513 specification and figures confirm both the Court's construction and that Lenz's interpretation is in error.

As set forth above, Lenz's opinions based on his misinterpretation of the Court's construction goes against the specific citations offered by the Court in construing the claim terms (*e.g.*, figure 2 and Col. 5, ll. 29-33) and should be excluded for that reason alone. Additionally, his opinions based on his misinterpretation should be excluded based on the plain language of the claims as supported by teachings of the '513 patent specification and figures. A discussion of the '513 patent's teachings is warranted.

In his Summary of the Invention, the inventor crystalized his invention:

> The achieve the advantages and novel features, the present invention is generally directed to computerized fitness equipment that is designed to simulate, emulate, or implement actual race conditions with other users.

(Ex. A, at col. 2, ll. 56-59). In order to implement these virtual races, a display showing where the user is in comparison to where a competitor is located is essential. *See* (*Id.* at col. 5 ll. 29–33, "the displays, however, on the various fitness equipment may provide a visual read indication [that] show[s] where the particular user is in relation to the user or users that are operating the coupled fitness equipment."). The specification further describes the display as "providing each user with a visual indication of his or her respective position in a competitive 'race,' the invention stimulates a competitive nature within the respective users thereby making the exercise more motivating and therefore effective." (*Id.* at col. 5, ll. 44-48).

The '513 patent provides five figures showing examples of the display of a virtual race—figures 2 (shown and discussed above), 3, 4, 5A and 5B. In discussing each of these performance comparison displays, the specification provides: "One significant point is that providing such a display having competitive or comparative information results in a more interactive environment, thereby increasing the level or sense of competition, and therefore motivation for the user." (*Id.* at col. 11, ll. 51-55). Specifically describing figures 3 through 5B, the patent provides:

> For example, FIG. 3 illustrates a view that a user may see when looking rearwardly over his or her right shoulder. The cyclist illustrated in this figure represents a currently-competing cyclist that is trailing the current user. Likewise, FIG. 4 illustrates a view which may be seen if a user is peering over his or her left shoulder. In this figure, a competing cyclist is illustrated as being even further behind the current user.

> Of course, the concepts of the invention are readily extendable to a large number of concurrently-competing users. In this regard, reference is made to FIGS. 5A and 5B, which illustrates a cycling event having a large number of competitors. FIG. 5A illustrates a view a user may see when looking forward, in a scenario where a user trails a large number of cyclists. Likewise, the view of FIG. 5 may illustrate a view that the user would see when peering rearwardly at cyclists which may be trailing the user. Using known computing techniques, the data for all "competitors" may be tracked for instantaneous display.

(*Id.* at col. 12, ll. 14-32). ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████

There is no doubt, however, that those four figures meet the claim's plain language, which only requires "logic configured to drive the display in response to both the first and second performance parameters, such that ***a performance comparison*** between the fitness equipment and at least one remote fitness equipment ***is visually displayed***." As the patent specification provides in reference to these displays:

> Each fitness equipment may track the current user's progress on a given course based upon continual monitoring of the speed at which the user is cycling. This information may be exchanged over the communication links to one or more remote devices, which may compare and correlate this information for instantaneous comparison and display to the user or users of that remote equipment.

(*Id.* at col. 12, ll. 4-11). The displays in figures 3-5B, where users are positioned in the virtual race based on their own individual performance and no calculated difference is shown, are described in the specification as providing "instantaneous comparison and display to the user or users of that remote equipment." (*Id.*). As the Court found its proposed construction of the claim terms consistent with their plain and ordinary meaning, Lenz's opinions based on his interpretation that incorporates additional limitations and runs afoul of the specification must be excluded.

**B.      Lenz's Opinion Mocks This Court's "Course Data" Construction.**

Lenz's opinion concerning "course data" mocks this court's construction. ██████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ This absurd

opinion is at odds with the Court's construction and should be excluded.

The parties' previously submitted constructions for the "course data" limitation are shown

in the chart below:

| Claim Term | Plaintiff's Proposed Construction | Peloton's Proposed Construction |
|---|---|---|
| "course data" (Claim 5) | "data defining a particular interactive exercise activity (for example, a spin class, a treadmill class, a race, etc.)" | "data defining at least a route and a distance" |

The Court found, based on the specification of the '513 patent, that Peloton's proposed

construction was proper and rejected VRO's proposed construction.  Specifically, the Court found

that "Peloton's construction of 'course' is consistent with the use of the phrase in each of the '513

patent's claim limitations."  (Dkt. No. 112, p. 12).  The Court also found that "the specification

uses the word 'courses' in parallel with the phrase 'racing circuits,' and it frequently uses spatial

and physical descriptors such as 'layout, distances, terrain, scenery, etc.' to describe a 'course.'"

(*Id.*).  Further, the Court specifically stated that:

> The consistent usage of the word "course" to refer to racing activities in all of the
> '513 patent's preferred embodiments and claim limitations, contrasted with the
> patentee's use of a different word in the background section to describe "Spinning
> Classes" and "Treadmill Classes," confirms rather than rebuts the propriety of
> Peloton's proposed construction.

(*Id.* at p. 13).  Accordingly, the Court construed "course data" as "data defining at least a route and

distance," and concluded that no further construction of "course" was necessary in light of that

construction of "course data."  (*Id.*).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████ These opinions should be

excluded.

1.  Peloton instructor directions are not "course data" as construed by the Court.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ He later conceded

during his deposition (after a review of the Court's order) that "course" must also include both a

route and distance:

> Q. Did you understand from reading the Markman order that it was the Court's intent that "course data" and "course" be construed consistently with each other?
>
> A. Well, you said "course data" defines at least a -- a -- a route and a distance, and then "course" doesn't need anything else. So "course" would be a route and a distance.
>
> Q. Yeah. So in other words, when the Court says I don't need to construe the word "course" because I've already construed the word "course data," did you understood -- did you understand that Judge Oetken intended those terms to be construed consistently?
>
> A. Well, they're slightly different terms but I guess the -- the "course" in both of them means the same thing.

(Ex. E at 173:20 – 174: 12).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████



█████████ Lenz's deposition testimony further confirmed this opinion:

Q: It's your opinion that when an instructor instructs the students of a Peloton exercise class, that that instruction, ***those verbal instructions from the Peloton instructor, are the equivalent of course data***, meaning data defining at least a route and distance? That is your opinion, correct?

A. I believe my opinion is stated here, and, ***yes, it -- it -- the instructor's directions are equivalent to a route***.

Q. And you have written, "There is no substantial difference between a route over a road and a route over which an instructor guides users according to his or her structured plan that defines his or her 'unique ride.'" Do you see that?

A. Yes.

Q. So your opinion to the Court is that when an instructor guides users in an exercise class according to that instructor's structured plan, that that is data defining at least a route and distance, correct?

A. Correct.

Q. Your opinion to the Court is that an instructor's oral communication to its class about what's coming up next and how to motivate them, their, quote, so-called structured plan that defines the instructor's unique ride, that that is "data defining at least a route and distance" in claim 5, correct?

A. Yes.

(Ex. G at  304:14 – 306:13).

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



2.      Peloton's scenic videos are not "course data" as construed by the Court.

Peloton bikes and treadmills offer users the option of taking a "scenic ride/run."

This movie is entirely non-interactive, and the scenery movie plays for a fixed length of time whether the user pedals fast, slow or even dismounts the bike/tread and walks away.  (Ex. I at 153: 9-16).



██████████████████████████████████████████

████████████████████████████████ As the Court found, the specification exclusively uses the word "course" to refer to courses involving route and distance, such as "racing courses" with spatial and physical descriptors such as "layout, distances, terrain, scenery, etc." to describe a "course." (Dkt. No. 112, p. 12). Importantly, the Court found that " all of the figures in the '513 patent displaying what a user would experience or perceive when using the invention represent the user traversing a race course or a physical space." (*Id.*). ████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

## III. LENZ SHOULD BE PRECLUDED FROM OFFERING SOURCE CODE OPINIONS.

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

First, Lenz should be precluded from offering any testimony on Peloton's source code because he's not qualified under Federal Rule of Evidence 702, which Lenz readily admitted:

> Q. Are you offering yourself or do you believe that you are -- have expertise in the review and examination of the source code in this case, or is that beyond your expertise?
>
> A. I would not consider myself an expert in software, no.

(*Id*. at 12:22 – 13:3).

> Q. Are you -- are you a person who has expertise in reading and interpreting Java source code? I assume not.
>
> A. I am not.
>
> Q. Okay. And whatever language -- and when you said "the machine," are you referring to the -- that tablet that is associated with either a Peloton bike or a Peloton treadmill?
>
> A. Correct.
>
> Q. Okay. Whatever source code there is contained within a Peloton bike or a Peloton treadmill, do you believe you're an expert in reviewing and interpreting that source code? I assume not.
>
> A. I am not.

(Ex. G at 14:6-20).

Second, Lenz should be precluded from offering any testimony on Peloton's source code because he cannot verify independently whether his testimony is reliable. Lenz admitted that his opinions regarding the function of Peloton's source code were not his own, but at best were those opinions of Dr. Shasha as fed to him by VRO's counsel. Mr. Lenz testified:

> Q. But any opinions that were offered about what source code performed what functions were -- were opinions that were given by Dr. Shasha, correct?
>
> A. Dr. Shasha identified those to me, and we discussed them at the time.
>
> Q. Right. But you don't have an independent basis as a source code expert to look at that source code, whatever it was, and to opine whether it performed specific functions on your own, correct?
>
> A. Again, I am not a software expert, so I -- I probably do not have that expertise.
>
> Q. And so, to the extent you are offering any opinions that Peloton source code performs any particular function, you're relying upon what Dr. Shasha told you, correct?

A. I'm relying on his -- his findings and explanations that -- that I understood when we were talking, yes.

(*Id*. at 58:15 – 59:15).

Because Lenz lacks any software background and because Dr. Shasha was not disclosed in this case, Lenz was forced to admit during his deposition that large portions of his opinion were, in fact, authored by VRO's trial counsel at Baker Hostetler. He testified:

Q. Okay. You can't tell the Court what percentage of your report in this case marked as Exhibit 2 was typed by you and a rough approximation of what percentage was typed by counsel?

A. Correct.

Q. Okay. But you do concede that significant portions of your report as Exhibit 2 were typed by counsel, correct?

A. Yes.

(*Id*. at 353:3-11). In numerous instances, Lenz could not state under oath that he had, in fact, authored his own report. (*Id*. at 76:15 – 77:19; 148:17-149:4; 348:16 – 349:7; 349:21 – 350:3; 352:10 – 353:11; 355:9-20; Ex. E, at 142:20 – 143:19; 144:15 – 147:14; 209:23 – 210:21; 236:24 – 237:17; 376:4-24). Moreover, key assumptions he was forced to make (especially as they related to source code content) were provided by VRO's trial counsel. (Ex. G, at 76:15 – 77:19). Lenz lacked any ability or expertise to analyze or verify these assumptions on his own accord. (*Id*., at 12:22 – 13:3; 14:6-20). Lenz should be precluded from offering any opinion as to Peloton's source code as he is not qualified as an expert in source code and he cannot testify concerning the reliability of any opinion he would offer.

## IV. <u>LENZ SHOULD BE PRECLUDED FROM OFFERING OPINIONS NOT DISCLOSED IN HIS EXPERT REPORTS</u>

Rule 26 requires the parties to disclose the identities of each expert and, for retained experts, requires that the disclosure include the experts' written reports. Fed. R. Civ. P. 26(a)(2). Parties must make these expert disclosures at the times and in the sequence that the court orders.

*Id.*  Further, the rule requires that the experts' written reports contain "*a complete statement of all opinions* the witness will express and the basis and reasons for them."  *Id.* at 26(a)(2)(B)(i).  Lenz should be precluded from offering any opinions that are not set forth in his expert reports, including opinions concerning the presence or absence of limitations in prior art references not expressly disclosed in his expert report.

## V.    <u>CONCLUSION</u>

Lenz's opinions based on his interpretation of the Court's construction for "logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed" should be excluded as they are based on an incorrect interpretation of the Court's construction.  Further, his opinions on the claim term "course data" from claim 5 should be excluded as they are based on the same arguments rejected by the Court during claim construction or based on an interpretation of the Court's order that would include a non-interactive scenic video.  Lenz should additionally be prohibited from offering any opinions concerning Peloton's source code, its function or its location.  Lenz should  be prohibited from relying upon any opinions provided by VRO's undisclosed expert Dr. Shasha or factual assumptions provided by trial counsel that Lenz did not independently possess the expertise to validate.  Finally, Lenz should be precluded from offering any opinions that are not set forth in his expert reports, including opinions concerning the presence or absence of limitations in prior art references not expressly disclosed in his expert report.