Paul W. Garrity
  *PGarrity@SheppardMullin.com*
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701

Steven G. Schortgen (*pro hac vice*)
  *SSchortgen@SheppardMullin.com*
Jennifer Klein Ayers (*pro hac vice*)
  *JAyers@SheppardMullin.com*
Galyn Gafford (*pro hac vice*)
  *GGafford@SheppardMullin.com*
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 24th Floor
Dallas, TX  75201-6776
Tel:    (469) 391-7400
Fax:    (469) 391-7401

Attorneys for Defendant and Third-Party
Plaintiff PELOTON INTERACTIVE, INC.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VR OPTICS, LLC,<br><br>                              Plaintiff,<br><br>                 -v-<br><br>PELOTON INTERACTIVE, INC.,<br>                              Defendant. | 16-CV-6392 (JPO) |
| PELOTON INTERACTIVE, INC.,<br>                       Third-Party Plaintiff,<br><br>                 -v-<br><br>VILLENCY DESIGN GROUP, LLC; ERIC<br>VILLENCY; and JOSEPH COFFEY,<br>                       Third-Party Defendants. | **PELOTON'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS AGAINST VILLENCY DESIGN GROUP, ERIC VILLENCY AND JOSEPH COFFEY** |

SMRH:4845-2234-9975.9

Pursuant to Federal Rule of Civil Procedure 56(c), Local Civil Rule 56.1, and Judge Oetken's Individual Practices Section 3(E), Defendant and Third-Party Plaintiff Peloton Interactive, Inc. ("Peloton") submits this Statement of Material Facts in connection with its Motion for Summary Judgment As to Claims Against Villency Design Group, Eric Villency and Joseph Coffey, and states as follows:

**The Parties**

1.    Defendant Peloton Interactive, Inc. ("Peloton") was founded in New York in 2012.[1]

2.    Peloton's predecessor-in-interest was an entity named Peloton Interactive, LLC. Peloton Interactive, Inc. is the legal successor to Peloton Interactive, LLC.[2]

3.    Peloton is a hardware, software and media company that brings fitness class experiences to users in their homes through live and on-demand content.[3]

4.    Peloton's Chief Executive Officer, John Foley ("Foley") conceived of the Peloton at-home cycling studio experience in 2011.[4]

5.    In 2012, Peloton contracted with Third-Party Defendant Villency Design Group, LLC (n/k/a 430 West Broadway, LLC) ("VDG") to design Peloton's first product – an interactive stationary exercise bike equipped with a computerized touchscreen console and streaming technology ("Peloton Bike").[5]

---

[1] Ex. A, Foley Dep. 48:10-16; Ex. B, Cortese Dep. 13:3-5; Ex. C, "About the Company," PELOTON214232-234 (Cortese Dep. Ex. 2).
[2] Ex. D, Kushi Dep. 30:2-8; Ex. B, Cortese Dep. 298:16-20. In this Statement of Material Facts, the term "Peloton" refers to Peloton Interactive, Inc. and Peloton Interactive, LLC, individually or collectively, as context requires.
[3] Ex. A, Foley Dep. 51:3-52:6, 63:13-66:9; Ex. C, "About the Company," PELOTON214232-234 (Cortese Dep. Ex. 2).
[4] Ex. A, Foley Dep. 29:12-30:5, 48:21-50:22.
[5] Ex. A, Foley Dep. 144:2-145:21; Ex. E, Villency Dep. 16:2-14; Ex. B, Cortese Dep. 275:18-276:20; Ex. F, 2012 Design, Development and Manufacturing Agreement, V_000052-065 (Coffey Dep. Ex. 28).

6.      VDG is a Delaware limited liability company with a principal place of business at 430 West Broadway, New York, New York, 10012.[6]

7.      Third-Party Defendant Eric Villency ("Villency") owns ████████ interest in VDG and is also a managing member of VDG.[7]

8.      Third-Party Defendant Joseph Coffey ("Coffey") owns ████████ interest in VDG and is also a managing member of VDG.[8]

9.      No other individuals or entities are managers or members of VDG.[9]

10.     From June 27, 2011, until today, Villency and Coffey have owned and controlled VDG.[10]

11.     In 2015, VDG changed its name to 430 W. Broadway LLC.[11]

12.     430 W. Broadway LLC and VDG are the same entity.[12]

13.     Plaintiff VR Optics, LLC ("VRO") is a New York limited liability company with a principal place of business at 430 West Broadway, New York, New York, 10012.[13]

14.     VDG and VRO share the same principal place of business.[14]

15.     Villency and Coffey formed VRO as a "single purpose entity." It is "just a []  holding company" for United States Patent No. 6,902,513 ("'513 Patent"), entitled "Interactive Fitness Equipment."[15]

---

[6] Ex. G, Operating Agreement of Villency Design Group, LLC, V_031619-678 at V_031649-78.
[7] Ex. E, Villency Dep. 20:4-21:25; Ex. H, Coffey Dep. 39:5-40:11; Ex. G, Operating Agreement of Villency Design Group, LLC, at V_031665 (Agreement Exhibit A); *id.*, § 4.1. ("Eric Villency and Joseph Coffey (Manager(s)) shall manage the Company."); *see also id.*, V_031664.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] Ex. I, Certificate of Formation of Villency Design Group (Coffey Dep. Ex. 3); Ex. H, Coffey Dep. 47:21-48:2.
[12] Ex. E, Villency Dep. 20:4-21:25; Ex. H, Coffey Dep. 47:10-12.
[13] Ex. H, Coffey Dep. 88:13-89:6, Ex. J, Articles of Incorporation of VR Optics, LLC, V_000001-03 (Coffey Dep. Ex. 5).
[14] Ex. H, Coffey Dep. 89:3-9.
[15] Ex. E, Villency Dep. 26:16-27:6.

16.     VRO has a single asset – the '513 Patent.[16]

17.     Apart from the '513 Patent, VRO has never ███████████████████████
███████████████[17]

18.     Villency and Coffey each own a ████████ interest in VRO.[18]

19.     Villency and Coffey are both managing members of VRO.[19]

20.     No other individuals or entities are managers or members of VRO, and no other individuals or entities own any interest in VRO.[20]

21.     Coffey is an attorney actively licensed in the State of New York.[21]

**The 2012 Design, Development and Manufacturing Agreement.**

22.     Peloton's Chief Executive Officer and Co-Founder, John Foley, sought to partner with VDG for the design and manufacture of Peloton's interactive stationary bike, particularly because of ███████████████████████████████████████[22]

23.     Peloton and VDG entered into a valid, written contract effective on April 5, 2012, entitled "Design, Development and Manufacturing Agreement" ("2012 Agreement").[23]

24.     Villency executed the 2012 Agreement on behalf of VDG as a "Manager Member."[24]

25.     Coffey drafted the 2012 Agreement.[25]

---

[16] Ex. H, Coffey Dep. 91:18-20.
[17] Ex. H, Coffey Dep. 91:12-93:8.
[18] Ex. E, Villency Dep. 22:11-17.
[19] Ex. H, Coffey Dep. 90:22-91:1.
[20] Ex. H, Coffey Dep. 91:6-11.
[21] Ex. H, Coffey Dep. 17:17-25; Ex. K, New York State Bar Attorney Information for J. Coffey.
[22] Ex. A, Foley Dep. 144:2-145:21; Ex. E, Villency Dep. 16:2-11; Ex. B, Cortese Dep., 275:18-276:20.
[23] Ex. E, Villency Dep. 56:8 – 58:3; Ex. F, 2012 Agreement (Coffey Dep. Ex. 28).
[24] Ex. E, Villency Dep. 56:13-22, Ex. F, 2012 Agreement, p. 13 (Coffey Dep. Ex. 28).
[25] Ex. H, Coffey Dep. 225:2-8.

SMRH:4845-2234-9975.9

26.     Coffey reviewed the 2012 Agreement and provided legal counsel to VDG and Villency prior to Villency executing the 2012 Agreement.[26]

27.     Peloton and VDG negotiated the 2012 Agreement in an arms-length transaction between Peloton and VDG.[27]

28.     Upon executing the 2012 Agreement, Peloton became VDG's ████████ ██████████████████████████████████████████.[28]

29.     The 2012 Agreement inures to the benefit of, and is binding upon, Peloton Interactive, LLC and Villency Design Group, LLC, and each of their respective successors.[29]

30.     The 2012 Agreement is governed by and must be construed in accordance with the laws of the State of New York.[30]

31.     There is no dispute that Peloton fully performed each of its obligations under the 2012 Agreement.[31]

32.     In the 2012 Agreement, "██████████████████████████████████ ████████████████████████████████████████████████████████ ███████████[32]

33.     The 2012 Agreement obligated VDG to



[33]

---

[26] Ex. H, Coffey Dep., 220:18-230:25
[27] Id.
[28] Ex. H, Coffey Dep., 78:6-79:5.
[29] Ex. F, 2012 Agreement, § 7.3(h) (Coffey Dep. Ex. 28).
[30] Ex. F, 2012 Agreement, § 7.3(e) (Coffey Dep. Ex. 28).
[31] Doc. 59, Third-Party Defs' Answer, ¶ 71; Ex. H, Coffey Dep. 235:10-237:5.
[32] Ex. F, 2012 Agreement, p. 1 (Coffey Dep. Ex. 28).
[33] Ex. F, 2012 Agreement, § 1.1 (Coffey Dep. Ex. 28) (emphasis in original).

34.     In Section 1.3 of the 2012 Agreement, VDG acknowledges ███████████████████████

███████████████████████████████████████████████████████████.[34]

35.     In Section 2.1 of the 2012 Agreement, VDG agreed:

████████████████████████████████████████████████

████████████████████████████████████████████████

36.     The 2012 Agreement ███████████████████████████████:

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████.[35]

37.     Under the 2012 Agreement, Peloton's █████████████████████████████"

████████████████████████████████████████████████

████████████████████████████████████████████████[36]

38.     In other words, ███████████████████████████████████

███████████████████."[37]

39.     Section 1.8 of the 2012 Agreement states:

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[34] Ex. F, 2012 Agreement, § 1.3 (Coffey Dep. Ex. 28).
[35] Ex. F, 2012 Agreement, § 1.7 (Coffey Dep. Ex. 28) (emphasis supplied).
[36] Ex. F, 2012 Agreement, § 1.7 (Coffey Dep. Ex. 28) (emphasis supplied).
[37] *Id.*



[38]

40.    In Section 2.7(c) of the 2012 Agreement, VDG expressly represented and warranted

to Peloton ██████████████████████████████████████████████████████████████

████████████████ [39]

41.    In Section 6.1 of the 2012 Agreement, VDG agreed ████████████████████



███████████████████████████ [40]

42.    Section 5.6 of the 2012 Agreement states:

████████████████████████████████████████████████

43.    Peloton fully performed each of its obligations under the 2012 Agreement.[42]

44.    Peloton paid the Base Fee in full under the terms of the 2012 Agreement.[43]

45.    All warranties made by VDG in the 2012 Agreement survived the expiration or

termination of the 2012 Agreement.[44]

---

[38] Ex. F, 2012 Agreement, § 1.8 (Coffey Dep. Ex. 28) (bold and italics supplied).
[39] Ex. F, 2012 Agreement, § 2.7(c) (Coffey Dep. Ex. 28).
[40] Ex. F, 2012 Agreement, § 6.1 (Coffey Dep. Ex. 28).
[41] Ex. F, 2012 Agreement, § 5.6 (Coffey Dep. Ex. 28).
[42] Ex. H, Coffey Dep., 235:10-237:5, 239:14-19; Doc. 59, Third-Party Defs' Answer, ¶ 71.
[43] *Id.*
[44] Ex. F, 2012 Agreement, § 7.3(b) (Coffey Dep. Ex. 28).

46.     VDG began working █████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████

47.     VDG's "primary focus" █████████████████████████████████

████████████████████████████████████████████████

48.     VDG itself or through its contractors ████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████

49.     The Device Bike contemplated in the 2012 Agreement is the same instrumentality

that Villency and Coffey now accuse of infringing the '513 Patent through Plaintiff VRO.[48]

**The 2014 Bike Development and Services Agreement**

50.     On June 24, 2014, Peloton and VDG executed a valid, written contract, entitled

"Bike Development and Services Agreement" ("2014 Agreement").[49]

---

[45] Ex. A, Foley Dep. 151:8-153:15.

[46] Ex. B, Cortese Dep., 59:13-18, 270:8-10; Ex. H, Coffey Dep., 244:20-245:1.

[47] Ex. B, Cortese Dep., 57:20-24, 63:23-65:4, 66:10-24, 72:22-73:4, 107:17-108:12, 109:21-110:13, 202:15-203:4, 251:3-252:7, 289:25-290:16, 313:2-10, 313:15-314:14; Ex. E, Villency Dep., 67:9-21, 69:12-20, 72:3-8, 89:18-90:11, 111:6-23, 122:12-17, 204:16-207:4; Ex. L, January 14, 2015 e-mail chain between Villency and Cortese, (Villency Dep. Ex. 7); Ex. M, Milstein Dep., 92:25-94:12, 144:13-145:24; Ex, N, April 24, 2012 e-mail from Cortese to Milstein, copying Villency and Foley (Milstein Dep. Ex. 3); Ex. O, April 26, 2012, e-mail chain between Cortese and Milstein (Milstein Dep. Ex. 4).

[48] *Id.*; Doc. 1, Complaint; Ex. P, Lenz 2019.03.01 Infringement Report, at ¶ 17.

[49] Ex. Q, 2014 Agreement, (Villency Dep., Ex. 13); Ex. H, Coffey Dep., 232:25-233:7.

51.     Peloton and VDG negotiated the 2014 Agreement in an arms-length transaction between Peloton and VDG.[50]

52.     Villency executed the 2014 Agreement on behalf of VDG.[51]

53.     Coffey reviewed the 2014 Agreement and provided legal counsel to VDG and Villency prior to Villency executing the 2014 Agreement.[52]

54.     The 2014 Agreement inures to the benefit of, and is binding upon, Peloton Interactive, LLC and Villency Design Group, LLC, and each of their respective successors.[53]

55.     The 2014 Agreement is governed by and must be construed in accordance with the laws of the State of New York.[54]

56.     The 2014 Agreement expired on June 24, 2016 – two years after Peloton and VDG executed the 2014 Agreement.[55]

57.     The 2014 Agreement expired because its term ended. Peloton did not terminate the 2014 Agreement.  This was in part because as Peloton grew, it required VDG's services less. [56]

58.     Peloton fully performed all its obligations under the 2014 Agreement.[57]

59.     The 2014 Agreement defines ████████████████████████████████
████████████

---

[50] Ex. H, Coffey Dep., 245:10-20; Ex. E, Villency Dep., 159:21 – 163:2; Ex. A, Foley Dep., 311:20 – 312:14.
[51] Ex. Q, 2014 Agreement, Signature Page (Villency Dep. Ex. 13); Ex. H, Coffey Dep., 17:11-20; 72:16-73:17; 232:15-234:7; 245:10-20.
[52] Id.; see also Ex. H, Coffey Dep. 233:17-24, 245:8-20.
[53] Ex. Q, 2014 Agreement, § 8.3(h) (Villency Dep. Ex. 13).
[54] Ex. Q, 2014 Agreement, § 8.3(e) (Villency Dep. Ex. 13)..
[55] Ex. Q, 2014 Agreement, § 5.1 (Villency Dep. Ex. 13); Ex. H, Coffey Dep., 258:12-259:19
[56] Ex. Q, 2014 Agreement, § 5.1 (Villency Dep. Ex. 13); Ex. A, Foley Dep. 271:12-19, 274:15-275:9, 289:2-290:16
[57] Doc. 59, Third-Party Defs' Answer, ¶ 71; Ex. H, Coffey Dep. 178:20-183:7, 239:14-16; Ex. R, June 27, 2016, invoice to Peloton from VDG (Coffey Dep. Ex. 20); Ex. A, Foley Dep. 271:21-273:3, 318:18-319:4.
[58] Ex. Q, 2014 Agreement, p. 1 (Villency Dep. Ex. 13).

60.     In the 2014 Agreement, VDG admitted ████████████████████████

████████████████.[59]

61.     The 2014 Agreement states █████████████████████████████████

███████████,"[60]

62.     The 2014  Agreement  obligated  VDG ███████████████████████

█████████████████████████████████████[61]

63.     In the 2014 Agreement, VDG agreed █████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████

64.     In  the  2014  Agreement,  VDG  agreed ████████████████████

█████████████████████████████████████████████████████████████

██████████████

65.     In the 2014 Agreement, VDG agreed █████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████

66.     In the 2014 Agreement, VDG agreed █████████████████████████

█████████████████████

67.     The 2014 Agreement ████████████████████████████████████████

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

[59] *Id*.
[60] *Id*.
[61] Ex. Q, 2014 Agreement, § 1 (Villency Dep. Ex. 13)..
[62] Ex. Q, 2014 Agreement, § 1.1(b) (Villency Dep. Ex. 13).
[63] Ex. Q, 2014 Agreement, § 1.1(c) (Villency Dep. Ex. 13).
[64] Ex. Q, 2014 Agreement, § 1.1(d) (Villency Dep. Ex. 13).
[65] Ex. Q, 2014 Agreement, § 1.1(f) (Villency Dep. Ex. 13).



[66]

68.    In  the  2014  Agreement,  VDG ████████████████████████ ████████████████ .[67]

69.    In Section 8.2 of the 2014 Agreement, VDG expressly represented and warranted ████████████████████████████████████████████████████ ████████ ,"[68]

70.    In  the  2014  Agreement,  VDG  agreed  to ████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████ .[69]

71.    ██████████████████████████████████████████ ████████████████ [70]

72.    ████████████████████████████████████████████████ [71]

73.    Under the 2014 Agreement, Peloton agree ██████████████████ ████████ :

        (a)   $15,000  per  month  for  [Returns,  Refurbish,  and  Remote ████████

───────────────
[66] Ex. Q, 2014 Agreement, § 1.7(a) (Villency Dep. Ex. 13) (emphasis supplied).
[67] Ex. Q, 2014 Agreement, § 1.7(b) (Villency Dep. Ex. 13).
[68] Ex. Q, 2014 Agreement, § 8.2 (Villency Dep. Ex. 13) (emphasis supplied).
[69] Ex. Q, 2014 Agreement, § 7.1(b) (Villency Dep. Ex. 13).
[70] Ex. Q, 2014 Agreement, § 1.7(a) (Villency Dep. Ex. 13).
[71] Ex. Q, 2014 Agreement, p. 1 (Villency Dep. Ex. 13).



74.    Additionally,   Peloton   agreed

75.    Peloton paid VDG in full under the terms of the 2014 Agreement for all sums due and owing through the expiration of the 2014 Agreement.[73]

76.    Pursuant to Section 8.3(b) of the 2014 Agreement, all representations and warranties made by VDG in the 2014 Agreement survived the expiration of the 2014 Agreement.[74]

77.    Section 5.6 of the 2014 Agreement provides:



78.    Section 8.3(b) of the 2014 Agreement provides:



[72] Ex. Q, 2014 Agreement, § 4.1 (Villency Dep. Ex. 13).
[73] *See* Doc. 59, Third-Party Defs' Answer, ¶ 71; Ex. H, Coffey Dep. 178:20-183:7; 239:14-16; Ex. R, June 27, 2016, invoice to Peloton from VDG (Coffey Dep. Ex. 20); Ex. A, Foley Dep., 271:21-273:3, 318:18-319:4.
[74] Ex. Q, 2014 Agreement, § 8.3(b) (Villency Dep. Ex. 13) ("All representations and warranties of [VDG] and Peloton contained in this Agreement will survive the termination of this Agreement.").
[75] Ex. Q, 2014 Agreement, §5.6 (Villency Dep. Ex. 13).
[76] Ex. Q, 2014 Agreement, § 8.3(b) (Villency Dep. Ex. 13).

79.     Peloton's rights and remedies with respect to VDG's representations, warranties, and indemnification obligations in the 2014 Agreement survived the expiration of the 2014 Agreement.[77]

80.     The "Bike" that VDG claimed it "designed, developed and managed the manufacture of" in the 2014 Agreement is the same instrumentality that Villency and Coffey now accuse of infringing the '513 Patent through Plaintiff VRO.[78]

### **VDG, Villency, and Coffey's Secret Negotiation with Microsoft**

81.     Unknown to Foley and others at Peloton, beginning as early as January 2016 and more than six months before the 2014 Agreement's expiration, VDG, through their patent counsel who are also VRO's trial counsel in this matter, began negotiating with Microsoft Technology Licensing, LLC ("Microsoft") for the purchase of the '513 Patent.[79]

82.     On January 8, 2016, VRO's patent counsel and trial counsel in this case, Leif Sigmond, contacted Microsoft regarding ████████████████████████████████████ ███████████████ Microsoft's Geoffrey Hoggard ("Hoggard") ███████████████████ ████████████████████████████████████████████████████ ████████████.[81]

83.     On January 22, 2016, Hoggard tells Sigmond ██████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████.[82]

---

[77] Ex. Q, 2014 Agreement, §§ 5.6(b)-(c), 7.1(b), 8.3(b) (Villency Dep. Ex. 13).; Doc. 57, August 18, 2017 Opinion and Order, at *5.
[78] *Id.*; Doc. 1, Complaint; Ex. P, Lenz 2019.03.01 Infringement Report, at ¶17.
[79] Ex. E, Villency Dep. 243:15-244:24, 226:13-228:16, Ex. S, Jan. 22, 2016 email at MSFT-00000019-0001-0002 (Villency Dep. Ex. 18); Ex. T, at MSFT-00000040_0001-0002 (Villency Dep. Ex. 20); Coffey Dep. 104:1-108:1; Ex. U, at MSFT-00000019-0001-0002 (Coffey Dep. Ex. 8); Ex. A, Foley Dep. 228:2-6.
[80] Ex. H, Coffey Dep. 104:1-108:1; Ex. U, at MSFT-00000019_0002 (Coffey Dep. Ex. 8).
[81] *Id.*
[82] *Id.*

84.    On January 26, 2016, Sigmond and Hoggard ███████████████████████

█████████████████████████████████████. [83]

85.    Sigmond responds to Hoggard ███████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████ [84]

86.    VDG wanted to make sure that Peloton did not discover VDG's interest in or intent
to purchase the '513 Patent. [85]

87.    On January 29, 2016, Coffey and Villency ████████████████████████████

█████████████████████████████████████████████████████████████



88.    On January 29, 2016, Coffey ████████████████████████████████████████

█████████████████████████████████

[83] Ex. H, Coffey Dep. 108:20-109:23; Ex. V, MSFT-00000029_0001 (Coffey Dep. Ex. 9).
[84] *Id.*
[85] *Id.*
[86] Ex. H, Coffey Dep. 109:24-118:12; Ex. W, V_015535 (Coffey Dep. Ex. 10) (emphasis supplied).
[87] Ex. H, Coffey Dep. 120:24-123:21; Ex. X, Microsoft Non-Disclosure Agreement, MSFT-0000032_0001 (Coffey Dep. Ex. 11).

89.     On March 14, 2016, Sigmond e-mailed Hoggard on behalf of VDG[88] ███████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████ ██

90.     Microsoft ███████████████████████████████████

███████████████████[90]

91.     On March 18, 2016, Microsoft sent a copy of the '513 Patent file history to Leif

Sigmond and Mike Gannon.[91] █████████████████████████████████

████████████████████████████.[92]

92.     On March 23, 2016, Gannon (also VRO's patent counsel in this litigation) asked

Microsoft ████████████████████████ ██ ███████████████████████████

██████████████████

93.     The draft Patent Sales Agreement ██████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████ ██ ███████████████████████

█████████████████████████[96]

---

[88] Ex. H, Coffey Dep. 124: 2-126:8; Ex Y, MSFT-00000067_0001 (Coffey Dep. Ex. 12).
[89] *Id.*
[90] *Id.*
[91] Ex. H, Coffey Dep. 126:9-132:11; Ex. Z, MSFT-00000093_02 (Coffey Dep. Ex. 13);
[92] *Id.*
[93] Ex. H, Coffey Dep. 131:21-135:16; Ex. AA, MSFT-00000094_0005 (Coffey Dep. Ex. 13A).
[94] *Id.*
[95] *Id.*
[96] *Id.*

94.    On May 24, 2016, Microsoft followed-up with Sigmond and Gannon and requests



███████████████████████[97]

95.    Gannon responded to Hoggard and Microsoft the next day:



96.    VDG's ██████████████████████.[99]

97.    VDG included ██████████████████████████████

███████████████████████

98.    VDG ████████████████████ because VDG intended to sue Peloton for

patent infringement.[101]

---

[97] Ex. H, Coffey Dep. 133:4-139:24; Ex. BB, MSFT-00000117_0001-3 (Coffey Dep. Ex. 14).
[98] Ex. H, Coffey Dep. 141:5-145:19; Ex. CC, MSFT-0000119_0001-004 (Coffey Dep. Ex. 15) (emphasis added).
[99] Id.
[100] Ex. H, Coffey Dep. 141:5-145:19; 152:5-153:11; Ex. DD, Hoggard Dep. 102:5-104:18
[101] Id.

99.     On June 20, 2016, Nathan J. Seifert, an attorney at HDRBB, LLC (VDG's, Coffeys, and Villency's trial counsel in this action) filed Articles of Organization of VR Optics LLC with the State of New York.[102]

100.    All of the statements and activities described in Paragraphs 81-99 above occurred *before* the June 24, 2016, expiration of the 2014 Agreement with Peloton.[103]

101.    On July 8, 2016 – fourteen days after the 2014 Agreement expired[104] – Microsoft Technology Licensing, LLC and VRO ████████████████████████████████
████████████████████

102.    Under the agreement, Microsoft agreed to sell the '513 Patent for a total purchase price of ██████████

103.    Additionally, Microsoft Agreement Sections 2.1 and 2.2 expressly ████████████
████████████████████████



---

[102] Ex. H, Coffey Dep. 88:13-23; Ex. J, V_00001-03 (Coffey Dep. Ex. 5).
[103] *See* Ex. E, Villency Dep. 174:13-16; Ex. Q, 2014 Agreement, § 5.1 (Villency Dep. Ex. 13).
[104] *Id.*, ("Unless terminated sooner pursuant to the further provisions of this Article, this Agreement shall expire two (2) years from the date hereof."); Ex. B, Cortese Dep. 261:11-25.
[105] Ex. H, Coffey Dep. 146:6-153:11; Ex. EE, Microsoft Agreement, at MSFT-00000185-0001 (Coffey Dep. Ex. 16).
[106] Ex. H, Coffey Dep. 146:6-153:11; Ex. EE, Microsoft Agreement, ¶¶ 2.1, 2.2, 2.5; *see also id.*, Ex. A (List of Patents) (Coffey Dep. Ex. 16).
[107] The Microsoft Agreement defines ███████████████████████████████████
███████████████████████████████████████████████████████████████
§ 1 (Coffey Dep. Ex. 16); *see also id.*, Ex. A (List of Patents); Ex. H, Coffey Dep. 146:6-153:11.



108

104.    In Section 6.1(c)(3), Microsoft

109

105.    Exhibit B is entitled



10

---

108 Ex. EE, Microsoft Agreement, §§ 2.1, 2.2 (Coffey Dep. Ex. 16).
109 *Id.*, Microsoft Agreement, § 6.1(c)(3) (Coffey Dep. Ex. 16) (emphasis in original); Ex. H, Coffey Dep. 146:6-153:11.
110 Ex. EE., Microsoft Agreement, at MSFT-00000185_0011 (emphasis added); Ex. H, Coffey Dep. 146:6-153:11.

SMRH:4845-2234-9975.9                          -18-

106.    Exhibit B's ██████████████ is identical to ██████████ that Gannon sent to Hoggard and Microsoft ████████████ Even the typos are the same.[111]

107.    A day later, on May 26, 2016, Microsoft agreed ████████████████ ██



**VDG, Villency, and Coffey's** ████████████████████████████
████

108.    On March 22, 2016 (the day before Sigmond ████████████████
████████████████████,[113] Coffey met or spoke ████████████████████

---

[111] *Compare* Ex. CC, MSFT-00000119_0001 (Coffey Dep. Ex. 15) *to* Ex. EE, Microsoft Agreement, at MSFT-00000185_0011 (Coffey Dep. Ex. 16) (identifying ██████████████).
[112] Ex. FF, May 26, 2016 Email from M. Gannon MSFT-00000121_001-05.
[113] Ex. Z, MSFT-00000093_001-02, (Coffey Depo Ex. 13); Ex. AA, MSFT-00000094_0001-0015 (Coffey Depo Ex. 13A).

██████████████████████████████████████████████████████████████

████.[114]

109.   Biz2 Credit specializes in "[s]mall business loans, SBA loans, Traditional bank loans, Business lines of credit, Equipment financing, Business acquisition loans, Commercial real estate loans, Refinancing, and Merchant cash advances."[115]

110.   To memorialize the March 22, 2016 meeting, ████████ed Coffey at jcoffey@villency.com. In that e-mail, ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████[116]

111.   The "████████████████████████████████ refers to the '513 Patent.[117]

112.   All of Coffey's subsequent e-mail communications with █████ and relating to the █████ loan to purchase the '513 Patent use Coffey's jcoffey@villency.com e-mail address.[118]

113.   Two days later, on March 24, 2016, Coffey e-mails ████████████████ ████████████████████████████████████████?"[119]

114.   In response, █████ sends Coffey a ██████████████████████████ ██████████████████████████,█████████████████████████████████,

---

[114] Ex. GG, March 22, 2016, e-mail from ██████ to J. Coffey, V_031292.
[115] Ex. GG, V_031292-93.
[116] Ex. GG, V_031292 (emphasis supplied).
[117] *See id.*
[118] *See e.g.,* Ex. FF, March 22, 2016, e-mail from ████████ to J. Coffey V_031292-93; Ex. GG, March 24, 2016, email from █████ to J. Coffey, attaching ████████████████████, V_031294-97, Ex. HH, , March 25, 2012, e-mail from ████████ to J. Coffey attaching executed ████████████████████, V_031308-312; Ex. II, March 25, 2016, email from ████████ to J. Coffey, attaching complete document file, V_031344-427.
[119] Ex. HH, V_031294.
[120] Ex. II, V_031308-312.

█████████████████████████████████████████████████████

██████████████████.[121]

115.   On Friday, March 25, 2016, Coffey sends to ██████ the following documents: ██

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████

116.   The ████████████████████████████████████████

███████████████████████████████.[123]

117.   The ████████████████████████████████████████

████████████████████████████[124]

118.   ████████████████████████████████████████████

█████████████████████████████████████████████████████



---

[121] Ex. II,  at V_031310.
[122] Ex. JJ, V_031344-427.
[123] Ex. JJ, at V_031355.
[124] Ex. JJ, at V_031357.
[125] Ex. JJ, at V_031417



---

[126] Ex. JJ, at V_031404.
[127] Ex. JJ, at V_031392-93.
[128] Ex. JJ, at V_031360.
[129] Ex. JJ, at V_031382



123. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

125. On Monday, March 28, 2016, one business day after ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[132]

126. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,,[133]

127. Also on March 28, 2016, Coffey forwards ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮.[134]

128. On March 30, 2016, Coffey informs ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[135]

129. On April 11, 2016, Coffey met with ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[136]

130. On May 26, 2016, Coffey e-mails ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,

---

[130] Ex. JJ, at V_031371
[131] Ex. II, V_031308-312; *Id.,* at  V_031310; Ex. II, V_031344-427;
[132] Ex. KK, March 28, 2016, e-mail from ▮▮▮▮▮ to J. Coffey , V_031428-29.
[133] *Id.*
[134] Ex. LL, March 28, 2016 email from J. Coffey to E. Villency, V_031432-33.
[135] Ex. MM, April 6, 2016 email string from ▮▮▮▮▮ to J. Coffey, V_031434-36.
[136] Ex. NN, Calendar invite from ▮▮▮▮▮ to J. Coffey re business meeting, V_031437-39.

stating ███████████████████████████████████

███████████████████████████████████████

██████████████████████████████. [137]

131.    On June 3, 2016, in response to ███████ request for additional documents, Coffey

sent to ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████. [138]

132.    The ███████████████████████████████

████████████████████████████████▌

133.    ███████████████████████████████████

███████████████████████████████████████▌



[137] Ex. OO, May 27, 2016 email string from ███████ to J. Coffey, V_031455-58, at V_031455-56 (emphasis supplied).
[138] Ex. PP, June 3, 2016 email from J. Coffey to ███████, attaching additional documents, V_031493-531
[139] Ex. G, June 15, 2016 email from J. Coffey to ███████, attaching additional documents, V_031619-678, at V_031621.
[140] Ex. PP, at V_031506-07.
[141] Ex. PP, at V_031517-18

135.    Approximately ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ [42]

136.    VDG used its relationship with Peloton and monies paid by Peloton ████████

███████████████████████████████████. [143]

137.    A few hours after receiving updated financial information, ████████████

████████████████████████████████████████████████████████

████ . [144]

138.    Also on June 3, 2016, Coffey executes ████████████████████

████████████████████████████████████████████████████████

█████████████████████████████ ███

139.    The engagement agreement is entitled ████████████████████

████████████ ██

140.    VRO's patent and current trial counsel, Michael Gannon, ████████████

███████████████████████████████████ [147]

141.    On June 15, 2016, Coffey sends ████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ ;

[142] Ex. PP, at V_031506-07; *Id..,* at V_031517-18.
[143] Ex. HH, V_031308-312; Ex. JJ, V_031344-427; *id.,* at V_031355; *id.,* at V_031357; *id..,* at V_031404; *id.,* at V_031392-93; *id.,* at V_031360; *id.,* at V_031382.
[144] Ex. QQ, June 3, 2016 email from ████████ to J. Coffey enclosing loan contracts for review, V_031471-031492.
[145] Ex. RR, June 3, 2016, Engagement Agreement, V_031281-031289.
[146] *Id.,* at V_031281.
[147] *Id.,* at V_031289.



██████████████████████████████████████████████████████

████████████████ . [148]

142.   VDG's ████████████████████████████████████████████

████████████████ [149]

143.   On June 22, 2016, Coffey sends ███████████████████████████████

████████████████████ [150]

144.   ████████████████████████████████████████████ . [151]

145.   The June 3 ████████████████████████████████████ . [152]

146.   ████████████████████████████████████ ,, [153]

147.   The June 3 ████████████████████████ . [154]

148.   The June 3 ████████████████████████████████████████████

████████████████ [155]

149.   The June 3 ██████████████████████████████████████████████

████████████████████████ . [156]

150.   Villency was aware of the actions Coffey took ████████████████████████

████████████████████████████████████████ [157]

---

[148] Ex. G, June 15, 2016 email string from J. Coffey to ████████, V_031619-678, at V_031619

[149] *Id.*, at V_031621

[150] Ex. SS, June 22, 2016 email string from ████████ to J. Coffey, V_031984-032004.

[151] *Id.*

[152] *Id.*, at V_031985.

[153] Ex. MM, V_031434-36 at V_031434, ████████████████████████████████
████████████ )

[154] Ex. SS, V_031984-032004.

[155] *Id.*

[156] Ex. SS, V_031984-032004, at V_031987.

[157] Ex. LL, V_031432-33; Ex. LL, V_031434-36.

151.    Villency approved of the actions Coffey took on VDG's behalf ███████████████████ ████████████████████. [158]

152.    All terms ████████████████ were final prior to June 24, 2016 – the date VDG's 2014 Agreement with Peloton expired. [159]

153.    All of the statements and activities described in Paragraphs 108-152 above occurred *before* the June 24, 2016 expiration of VDG's 2014 Agreement with Peloton. [160]

154.    On Tuesday, July 5, 2016, Coffey e-mailed ████████████████████ ████████████████[161]

155.    Coffey's reference to ████████████████████████ ██████████████████. [162]

156.    As set forth above, the ████████████████████████ ███[163]

157.    Three days after the ████████████████████, [164] on July 11, 2016, Villency and Coffey ████████████████████████████████████ ███████[165]

158.    Except for the signatures, the contract date, and the repayment dates, the terms of the ███████████████████ are *identical* to the ████████████. [166]

159.    Both Villency and Coffey individually ████████████████████, [167]

---

[158] *Id*.
[159] Ex. SS, V_031984-032004, at V_031984
[160] *See* Ex. Q, 2014 Agreement, § 5.1 (Villency Dep. Ex. 13).
[161] Ex. TT, July 5, 2016 email from J. Coffey to ████████ V_032006.
[162] *Id*.
[163] Ex. H, Coffey Dep. 129:4-7, 146:13-19, 166:17-21; Ex. EE, Microsoft Agreement (Coffey Dep. Ex. 16) (identifying an effective date of July 8, 2016).
[164] *Id*.
[165] Ex. UU, 2016 Loan Agreement, V_032010-032031.
[166] *Compare* Ex. RR, at V_031985-032004 *with* Ex.TT, 2016 Loan Agreement, at V_032011-032030.
[167] Ex. UU, 2016 Loan Agreement, V_032010-032031, at V_032011.

160.    Both Villency and Coffey ████████████████████████████

████████████████████████████████████████████"██168



161.    Also on July 11, 2016, Coffey ██████████████████████

████████████████████69

162.    ████████████████████████████████████████████

█████████████████████170

163.    The  same  day  ███████████████████████████████

████████Coffey e-mails ████████████████████████████

████████████171

164.    On July 12, 2016, █████████████████████████████

█████████████████Coffey e-mails ████████████████████

████████████████████████"172

165.    When ██████ asks ████████████████████████████

responds and identifies ██████.173

---

168 *Id.*, at V_032027, V_032030.
169 Ex. UU, V_032031.
170 *Id.*
171 Ex. VV, July 11, 2016 email from J. Coffey to ██████ V_032110
172 Ex. WW, July 12, 2016 email from ██████ to J. Coffey V_032150-51 (emphasis supplied).
173 *Id.*.

166.    On July 12, 2016, Leif Sigmond represented only VDG. He did not represent VRO.[174]

167.    On July 14, 2016, Hoggard informs Gannon ████████████████

████████████████████████████████████████████████████████████████

████[175]

168.    On July 20, 2016, Gannon responds ████████████████████████

████████████"[176]

169.    Sometime between July 14, 2016, and July 20, 2016, McDonnell Boehnen Hulbert & Berghoff ████████████████████████████████████████

████████████████████████████.[177]

170.    On July 26, 2016, McDonnell Boehnen Hulbert & Berghoff (Sigmond and Gannon's firm) ████████████████████████████ ████████████████████

████████████████████████████████████████████████████████████████

████.[179]

171.    **VDG's** 2016 Balance Sheet ████████████████████████████

████.[180]

---

[174] Ex. RR, June 3, 2016, Engagement Agreement, V_031281-031289.
[175] Ex. XX, E-mail chain including Gannon, Sigmond, and Hoggard, MSFT-00000198_0001-0006, at MSFT_00000198_0001. Gannon latter follows up and asks for Microsoft to ████████████████████████. *Id.* The notarized patent assignment was executed on August 3, 2016.
[176] *Id.*
[177] *Id.*; *see also* Ex. WW, July 12, 2016 email from ████████ to J. Coffey V_032150-51; and Ex. UU, V_032031.
[178] Ex. YY, July 26, 2016, Amended Engagement Agreement,V_031290-91.
[179] *Id.*, at V_031291.
[180] Ex. ZZ, 430 West Broadway LLC 2016 Balance Sheet V_031275-78.



172.    VRO's 2016 Balance Sheet contains a ████████████████████████ ████████[81]



173.    Additionally, in 2016, VRO reported ███████████████████.[182]

174.    This ██████████████████████████████████████████████████████ ██████████████████████████████████████████████[183]

---

[181] Ex. AAA, VR Optics 2016 Balance Sheet V_031279-80.
[182] *Id.*
[183] Ex. ZZ, V_031275-78, at V_031278.

SMRH:4845-2234-9975.9



175.   The face of the ███████████████████████████████
███████████████████████

176.   ██████████████████████████████████████
████████████████████████████████████████████
██████████. [185]

177.   VRO's 2017 Balance Sheet and Profit and Loss Statement identify ████████
████████████████████████████████████████████
█████████████████████████████████

178.   VRO's 2018 Balance Sheet and Profit and Loss Statement identify ████████
████████████████████████████████████████████
███████████████████████████████[87]

179.   Similarly, VDG's 2017 Balance Sheet and Profit and Loss Statement identify ███
████████████████████████████████████████████
████████████████████████████████████████████
████████████ [188]

---

[184] Ex. UU, 2016 Loan Agreement, V_ 032010-031, at V_032011.
[185] Ex. H, Coffey Dep. 153:17-158:4.
[186] Ex. BBB, VRO 2017 Balance Sheet and Profit and Loss Statement, V_032197-98.
[187] Ex. CCC, VRO 2018 Balance Sheet and Profit and Loss Statement, V_032203-04.
[188] Ex. DDD, VDG 2017 Balance Sheet and Profit and Loss Statement, V_032194-96.

180.    VRO  did  not  use ███████████████████████████████████

███████████████████████

181.    No other documents evidencing the loan of $500,000 between VDG and VRO exist.

In other words, there is no executed contract between VDG and VRO evidencing the terms

182.    Additionally, more than two years after VRO filed this lawsuit,███████████████

██████████████████████████████.[190]

183.    On June 27, 2018, VDG executed a contract stating that VDG *and not VRO* owned

the '513 Patent:



[191]

184.    Below is a table illustrating the similarities between ██████████████████

█████████████████████████████████████████████████████████

███████

████████████                              ████████████

---

[189] Ex. H, Coffey Dep. 153:17-158:4; *see also id.* 91:12-93:8
[190] Ex. H, Coffey Dep. 194:12-24, 197:13-199:19, 202:5-203:19.
[191]  Ex.  H,  Coffey  Dep.  194:12-24,  197:13-199:19,  202:5-203:19;  Ex.  EEE,  Development  and  Manufacturing
Agreement, VRO_000097-111, at § 1.8 (Coffey Dep. Ex. 21) █████████████████").



185.     Below is a table illustrating the similarities between ████████████████



[192] Ex. F, 2012 Agreement, § 1.7 (Coffey Dep. Ex. 28).
[193] Ex. EEE, ████████████, § 1.8 (Coffey Dep. Ex. 21).



**VRO Sues Peloton for Infringing the '513 Patent.**

186.     On August 5, 2016, counsel for VRO received 

187.     Five days later, on August 10, 2016 Villency and Coffey met with Foley for drinks.[197]

188.     Before the meeting Foley had no idea that Villency and Coffey had been negotiating with Microsoft to purchase the '513 Patent.[198]

189.     Coffey testified that he did not tell anyone at Peloton

[199]

---

[194] Ex. Q, 2014 Agreement, § 1.7(a) (Villency Dep. Ex. 13).
[195] Ex. EEE,                          § 1.8 (Coffey Dep. Ex. 21).
[196] Ex. FFF, August 5, 2016, Letter attaching notarized assignment, VRO_000048-50 (Coffey Dep. Ex. 17).
[197] Ex. H, Coffey Dep. 169:3-12.
[198] Ex. H, Coffey Dep. 171:11-172:2, 176:5-177:2; Ex. E, Villency Dep. 243:9-245:7 ("We never informed anybody that we were going to buy this patent, the ['513 Patent]."); Ex. A, Foley Dep. 193:13-24, 194:2-12; 343:16-344:4.
[199] Ex. H, Coffey Dep., 176:1-177:2.

SMRH:4845-2234-9975.9



███████[200]

190.    Villency also testified that he did not tell anyone at Peloton ████████
████████████████████████████.[201]

191.    At the August 10, 2016 meeting, Coffey and Villency informed Foley for the first time that they had purchased the "Microsoft patent."[202]

192.    At the August 10, 2016 meeting, Coffey and Villency ███████████████
█████████████████████████████████████████
██████[203]

193.    Coffey testified that Peloton was ████████████████████████
███████████████████

194.    The next day, VRO initiated this lawsuit against Peloton.[205]

195.    Both VRO's Complaint and the Report of its technical expert, Steven Lenz, allege that the Peloton Bike infringes numerous claims of the '513 Patent.[206]

---

[200] Ex. H, Coffey Dep., 176:11-20.
[201] Ex. E, Villency Dep., 242:22-245:21.
[202] Ex. H, Coffey Dep. 170:19-171:18; Ex. E, Villency Dep. 245:18-246:7; Ex. A, Foley Dep. 39:13-23.
[203] Ex. H, Coffey Dep., 174:10-17.
[204] Ex. H, Coffey Dep., 174:10-17.
[205] *See* Doc. 1.
[206] *Id.*; *see also* Ex. P, Lenz 2019.03.01 Infringement Report, at ¶17

SMRH:4845-2234-9975.9

**Under VRO's Theory of Patent Infringement, VDG Designed and Contributed Portions of the Peloton Bike Accused of Infringement.**

196.    Both of the independent claims VRO accuses Peloton of infringing require "at least one operating component."[207]

197.    VRO's technical expert Steven Lenz opines that as to the accused Peloton bike, "operating components" include the braking mechanism and the flywheel with its associated speed sensor, which in turn is rotated through a user's operation of the bike's pedals and crankshaft.[208]



198.    VDG was responsible for ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████.[209]

199.    VDG contributed to ████████████████████████████.[210]

200.    VDG contributed ████████████████████████████████████████████ ████████████[211]

201.    VDG oversaw ██████████████████████████████████████████████████ ██████████

202.    VDG contributed to ████████████████████████████████████.[213]

---

[207] Ex. GGG, '513 Patent at 23:18 (claim 1) and 23:63 (claim 6).  The Court will note that in the August 30, 2005 Certificate of Correction issued by the United States Patent Office, column 23, like 63 was altered to "change 'operating element' to – 'operating component' –."
[208] Ex, HHH, 4/19/19 Lenz Dep,  159:21-160;23; 183:14-184:9; 308:5-309:3 Ex. P, Lenz 2019.03.01 Infringement Report; 67:9-68:3, 69:9-20; 70:14-71:8.
[209] Ex. M, Milstein Dep. 49:13-51:6, 53:4-54:12, 59:20-61:16, 63:7-64:24, 67:23-68:20, 81:11-86:21, 87:13-88:5, 267:20-268:9; Ex. III, Rendering of a Peloton bike (Milstein Dep. Ex. 1); Ex. JJJ, Early Rendering of Peloton Bike (Milstein Deo. Ex. 2); Ex. F, 2012 Agreement (Coffey Dep. Ex. 28); Ex. Q, 2014 Agreement (Villency Dep. Ex. 13)
[210] Ex. M. Milstein Dep. 92:7-94:12, 94:15-97:6, 101:23-102:11, 103:20-104:4,104:16-105:1, 108:17-21. 150:15-154:24. 156:21-157:15, 162:6-163:17, 267:20-268:9, 270:6-20, 317:10-319:17; Ex. O, April 26, 2012 Email from Tom Cortese (Milstein Dep. Ex. 4); Ex. KKK, Nov. 15, 2012 Email from Tom Cortese; Ex. LLL, November 20, 2012 Email from T. Cortese (Milstein Dep. Ex. 10).
[211] Ex. M, Milstein Dep. 131:20-132:3, 267:20-268:9, 270:6-20l; Ex. B, Cortese Dep. 202:15-23; 313:24-314:5
[212] Id.; Ex. M, Milstein Dep. 188:5-22, 196:4-8, 209:23-213:3, 215:6-21, 267:20-268:9, 270:6-20.
[213] Ex. MMM, Feng Dep. 76:25-77:25; Ex. B, Cortese Dep. 59:9-18; Ex. M, Milstein Dep. 220:3-222:12, 224:24-226:11, 267:20-268:9, 270:6-20; Ex. E, Villency Dep. 99:2-100:21; Ex. B, Cortese Dep. 59:9-18



206.    For purposes of calculating VRO's alleged damages for Peloton's infringement of the '513 Patent, VRO's damages expert opined and testified that the date of the parties' hypothetical negotiation would have occurred "as early as 2012."[217]

**Peloton Demanded VDG Indemnify, Defend, and Hold Peloton Harmless Against VRO's Claims.**

207.    On September 9, 2016, pursuant to Section 8.1 of the 2014 Agreement, Peloton served notice to VDG of VDG's obligation to indemnify, defend, and hold Peloton harmless against VRO's claims.[218]

208.    VDG refused to defend Peloton against VRO's claims of patent infringement.[219]

209.    Coffey testified that VDG ██████████████████████████████ ██████████████████████████[220]

210.    Villency and Coffey caused VDG to refuse Peloton's demand that VDG defend Peloton against VRO's claims.[221]

[214] Ex. B Cortese Dep. 59:9-18; Ex. M, Milstein Dep. 188:5-22, 196:4-8, 209:23-213:3, 215:6-21, 267:20-268:9, 270:6-20.
[215]Id.; See also Ex. M, Milstein Dep. 79:7-25, 164:3-167:9, 169:2-18, 267:20-268:9, 270:6-20; Ex. M, Milstein Dep. Ex. 14
[216] Id. See also SoF 199, 202 and 204
[217] Ex. NNN, 2019.03.01 Expert Damages Report of Mark A. Peterson at pp. 4-5.
[218] Ex. H, Coffey Dep. 214:5-15; Ex. H, Coffey Dep. Ex. 24; Ex. OOO, Sept. 9, 2016, Notice of Indemnification Obligation Letter (Kushi Dep. Ex. 12); Doc. 59, Third-Party Defs' Answer, ¶ 84 ("Admitted that Peloton requested VDG to indemnify, defend and hold harmless PELOTON.").
[219] Ex. H, Coffey Dep., 214:2-21.
[220] Ex. H, Coffey Dep., 214:2-21.
[221] Id.

Dated: New York, New York                    Respectfully submitted,
July 1, 2019

/s/ *Steven G. Schortgen*
Steven G. Schortgen (admitted *Pro Hac Vice*)
  sschortgen@sheppardmullin.com
Jennifer Klein Ayers (admitted *Pro Hac Vice*)
  jayers@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
2200 Ross Avenue, Suite 2400
Dallas, Texas 75201-6776
Telephone: (469) 391-7400
Facsimile: (469) 391-7401

Paul W. Garrity
  pgarrity@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Jonathan Hangartner
  jon@x-patents.com
**X-PATENTS, APC**
5670 La Jolla Boulevard
La Jolla, California 92037
Telephone: (858) 454.4313
Facsimile: (858) 454.4314

**ATTORNEYS FOR DEFENDANT AND
THIRD-PARTY PLAINTIFF PELOTON
INTERACTIVE, INC.**