**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VR OPTICS, LLC, | |
| Plaintiff, | |
| | |
| -v- | 16-CV-6392 (JPO) |
| | |
| PELOTON INTERACTIVE, INC., | |
| Defendant. | |
| | |
| PELOTON INTERACTIVE, INC., | |
| Third-Party Plaintiff, | |
| | |
| -v- | |
| | |
| VILLENCY DESIGN GROUP, LLC; ERIC VILLENCY; and JOSEPH COFFEY, | |
| Third-Party Defendants. | |

**PELOTON INTERACTIVE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS AGAINST VILLENCY DESIGN GROUP, ERIC VILLENCY AND JOSEPH COFFEY**

Dated: July 1, 2019

Steven G. Schortgen (*pro hac vice*)
 *SSchortgen@SheppardMullin.com*
Jennifer Klein Ayers (*pro hac vice*)
 *JAyers@SheppardMullin.com*
Galyn Gafford (*pro hac vice*)
 *GGafford@SheppardMullin.com*
**SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP
2200 Ross Avenue, 24th Floor
Dallas, TX  75201-6776
Tel:    (469) 391-7400
Fax:    (469) 391-7401

Respectfully submitted,

Paul W. Garrity
 *PGarrity@SheppardMullin.com*
**SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701

**Attorneys for Defendant and Third-Party Plaintiff PELOTON INTERACTIVE, INC.**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION & SUMMARY OF FACTS. ..................................................................1

II. VDG BREACHED THE 2012 AND 2014 AGREEMENTS. ...........................................5

    A. Peloton is Entitled to Judgment as a Matter of Law on Breach of the 2012 Agreement. ....................................................................................................6

    B. Peloton is Entitled to Judgment as a Matter of Law that VDG Breached the 2014 Agreement. ...................................................................................9

        1. VDG Represented and Warranted that the Peloton Bike "Does Not and Will Not Infringe" The '513 Patent. .....................................9

        2. VDG Breached The 2014 Agreement By Refusing to Defend Peloton. ................................................................................................10

III. VDG VIOLATED THE COVENANT OF GOOD FAITH AND FAIR DEALING. ..................................................................................................................13

IV. PELOTON IS ENTITLED TO SUMMARY JUDGMENT AGAINST VDG ON ITS CLAIM FOR FRAUDULENT CONCEALMENT. ....................................18

    A. VDG Owed Peloton a Duty to Disclose the Purchase of the '513 Patent. .............19

    B. VDG Concealed its Involvement in the '513 Patent Purchase with the Intent that Peloton Not Take Action. ...............................................................19

    C. Peloton Relied on VDG's Silence and Did Not Take Action. ...............................20

    D. Peloton Suffered Damages as a Result of VDG's Fraudulent Concealment. ........21

V. COFFEY AND VILLENCY TORTIOUSLY INTERFERED WITH PELOTON'S CONTRACTUAL RELATIONSHIP WITH VDG. ...........................21

    A. Villency and Coffey Knew About the 2012 and 2014 Agreements. ....................22

    B. Villency and Coffey Intentionally and Improperly Procured VDG's Breach of the 2012 Agreement. ..............................................................................22

    C. Villency and Coffey Intentionally and Improperly Procured VDG's Breach of the 2014 Agreement. ..............................................................................23

    D. Peloton Has Suffered Damages as a Result of VDG's Breach. ...........................23

VI. CONCLUSION. ..........................................................................................................24

TABLE OF AUTHORITIES

Page(s)

Cases

*Albert v. Loksen*
    239 F.3d 256 (2d Cir. 2001) ................................................................21

*Bank of China v. Chan*
    937 F.2d 780 (2d Cir. 1991) ................................................................14, 16, 17

*Bannister v. Agard*
    5 N.Y.S.3d 114 (N.Y. App. Div. 2015) ................................................18

*Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*
    601 F. Supp. 770 (S.D.N.Y. 1985) ......................................................18

*BIB Const. Co. Inc. v. City of Poughkeepsie*
    612 N.Y.S.2d 283 (1994) ....................................................................21

*Campaign v. Esterhay*
    85 N.Y.S.3d 687 (N.Y. Sup. Ct. 2018) ................................................18

*Chase Manhattan Bank, N.A. v. Keystone Distrib. Inc.*
    873 F. Supp. 808 (S.D.N.Y. 1994) ......................................................13

*Cross & Cross Properties, Ltd. v. Everett Allied Co.*
    886 F.2d 497 (2d Cir. 1989) ................................................................14

*Curtis v. Nutmeg Ins. Co.*
    204 A.D.2d 833 (3d Dep't. 1994) ........................................................10

*Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.*
    No. 14-cv-1561 (PKC), 2015 WL 3762592 (S.D.N.Y. May 15, 2015) ......5

*Dahingo v. Royal Caribbean Cruises, Ltd.*
    312 F. Supp. 2d 440 (S.D.N.Y. 2004) ..................................................13, 17

*De Sole v. Knoedler Gallery LLC*
    974 F. Supp. 2d 274 (S.D.N.Y. 2013) ..................................................18

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*
    631 F.3d 42 (2d Cir. 2011) ..................................................................5

*Don King Prods., Inc. v. Douglas*
    742 F. Supp. 741 (S.D.N.Y. 1990) ......................................................13

*Fitzpatrick v. Am. Honda Motor Co.*
    78 N.Y.2d 61 (1991) ..................................................................................................10, 12

*Finley v. Giacobbe*
    79 F.3d 1285 (2d Cir. 1996)..................................................................................................21

*Gaines Serv. Leasing Corp. v. Carmel Plastic*
    432 N.Y.S.2d 760 (N.Y.Civ.Ct.1980)..................................................................................18

*Garcia v. Chrysler Group, LLC*
    127 F. Supp. 3d 212 (S.D.N.Y. 2015)..................................................................................18

*Israel v. Wood Dolson Co.*
    1 N.Y.2d 116 (1956) ..............................................................................................................21

*Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*
    744 N.Y.S.2d 384 (App. Div. 1st Dep't 2002) ....................................................................21

*Logan Advisors, LLC v. Patriarch Partners, LLC*
    879 N.Y.S.2d 463 (2009) ........................................................................................................6

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*
    716 F. Supp. 1504 (S.D.N.Y. 1989)..............................................................................14, 17

*In re MF Glob. Holdings Ltd. Inv. Litig.*
    998 F. Supp. 2d 157 (S.D.N.Y. 2014)..................................................................................21

*Miele v. Am. Tobacco Co.*
    770 N.Y.S.2d 386 (App. Div. 2d Dep't 2003)....................................................................18

*In re Musicland Holding Corp.*
    386 B.R. 428 (S.D.N.Y. 2008), aff'd, 318 Fed. Appx. 36 (2d Cir. 2009) ............................6

*Rexnord Holdings, Inc. v. Bidermann*
    21 F.3d 522 (2d Cir.1994)........................................................................................................5

*Ross v. FSG PrivatAir, Inc.*
    No. 03 Civ. 7292 (NRB), 2004 WL 1837366 (S.D.N.Y. Aug. 17, 2004) ..............................5

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*
    959 F.2d 425 (2d Cir. 1992)..................................................................................................5, 6

*Smith Barney, Harris Upham & Co. Inc. v. Liechtensteinische Landesbank*
    No. 92 Civ. 2528 (RPP), 1993 WL 97286 (S.D.N.Y. Mar. 31, 1993)....................................13

*TVT Records v. Island Def Jam Music Group*
    412 F.3d 82 (2d Cir. 2005)....................................................................................................21

*TVT Records v. Island Def Jam Music Grp.*
    244 F. Supp. 2d 263 (S.D.N.Y. 2003)........................................................................13

*Van Gemert v. Boeing Co.*
    553 F.2d 812 (2d. Cir.1977)......................................................................................14

*W.W.W. Assocs., Inc. v. Giancontieri*
    77 N.Y.2d 157 (N.Y. Ct. App. 1990)......................................................................7, 9

<u>Statutes</u>

N.Y.U.C.C. Law § 1-304 (McKinney 2014) ...............................................................13

<u>Other Authorities</u>

Fed. R. of Civ. Proc. 56 ...............................................................................................1

Local Civ. Rule 56.1 ....................................................................................................1

Restatement (2d) of Contracts § 205, cmt. a (1981) ...................................................13

Pursuant to Federal Rule of Civil Procedure 56, Third-Party Plaintiff Peloton Interactive, Inc. ("Peloton")[1] submits this Memorandum of Law in Support of its Motion for Summary Judgment As to Claims Against Villency Design Group ("VDG"), Eric Villency ("Villency") and Joseph Coffey ("Coffey").[2] Because there is no genuine dispute as to any material fact, Peloton is entitled to summary judgment on each of its claims against the Third-Party Defendants as a matter of law.

## I.   INTRODUCTION & SUMMARY OF FACTS.

In 2012, Peloton's Chief Executive Officer and Co-Founder, John Foley, sought to partner with VDG for the design and manufacture of Peloton's interactive stationary bike.[3] Foley was particularly interested in partnering with VDG because of its experience designing and developing the ███████████████[4] On April 5, 2012, the parties executed the contract entitled "Design, Development, and Manufacturing Agreement."[5] In that agreement, VDG agreed to design, develop, and manufacture the Peloton Bike for Peloton.[6] VDG also represented and warranted that the Peloton Bike did not and would not infringe on any intellectual property rights.[7] At the time, Peloton became VDG's ████████████████████████[8]

In 2014, the parties re-negotiated their relationship and executed the Bike Development and Services Agreement.[9] In that agreement, VDG acknowledged its prior work designing,

---

[1] It is undisputed that Peloton Interactive, Inc. is the legal successor to Peloton Interactive, LLC. *See* SOF ¶ 1-2. Therefore, in this Motion, the term "Peloton" refers to Peloton Interactive, Inc. and Peloton Interactive, LLC, individually or collectively, as context requires.

[2] Pursuant to Local Civil Rule 56.1 and Judge Oetken's Individual Practices Section 3(E), Peloton is filing herewith a complete Statement of Material Facts ("SOF") to support this Motion. This motion assumes the Court's familiarity with the associated Statement of Facts, which is referenced herein, including certain defined terms used in the Statement of Facts.

[3] SOF, ¶¶ 3-5, 22-23.

[4] *Id*.

[5] SOF, ¶¶ 23-28.

[6] SOF, ¶¶ 29, 32-35, 46-48.

[7] SOF, ¶¶ 36-44.

[8] SOF, ¶ 28.

[9] SOF, ¶¶ 50-54.

developing, and manufacturing the Peloton Bike.[10] Like the 2012 Agreement, VDG represented and warranted that the Peloton Bike did not and would not infringe any intellectual property rights.[11] Importantly, VDG also promised to defend, indemnify, and hold Peloton harmless against any intellectual property claim that a third party made or alleged.[12]

From the inception of their relationship through the expiration of the 2014 Agreement, Peloton's co-founders and VDG's owners (Coffey and Villency) worked closely with one another.[13] It is undisputed that VDG contributed to the design and selection of the various parts comprising the Peloton Bike, including ██████████████████████████████████████

████ [14] It is also undisputed that VDG (through its agents and employees) oversaw the manufacturing of the Peloton Bike, ████████████████████████████████████████████

████ [15]

In late 2015 and early 2016, however, it became apparent that as Peloton grew, it needed VDG's services less and less.[16] True to its word, however, Peloton continued to pay VDG all sums due and owing under the 2014 Agreement and did not attempt to terminate the Agreement for convenience.[17] Instead, Peloton let the Agreement expire according to its terms.[18]

As Peloton became less dependent upon VDG, however, VDG, Coffey, and Villency began a scheme to purchase the '513 patent and assert it against the very Bike that Peloton paid VDG to design and develop.[19] The chronology speaks for itself. From January 2016 until August 2016,

---

[10] SOF, ¶¶ 59-61.
[11] SOF, ¶¶ 67-72.
[12] SOF, ¶¶ 67, 69-72.
[13] SOF, ¶¶ 46-48, 59-66, 73-74.
[14] SOF, ¶¶ 56-58
[15] SOF, ¶¶ 46-49, 59-66, 72-74, 80, 198-205.
[16] SOF, ¶¶ 57.
[17] SOF, ¶¶ 58, 75.
[18] SOF, ¶¶ 56-57.
[19] SOF, ¶¶ 81-195.

VDG, Coffey, and Villency undertook a course of conduct that was intended to and did in fact violate Peloton's contractual rights under the 2012 and 2014 Agreements and Peloton's common law rights under New York law.[20] From negotiating the purchase of the patent,[21] to financing and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ loan that paid for it,[22] at every step VDG, Coffey, and Villency were intricately and intimately involved in obtaining the '513 Patent for the express and hidden purpose of asserting it against the Bike they themselves designed. Indeed, without all three, VRO would not exist and would never have been able to secure the necessary financing to purchase the '513 Patent.[23] A brief chronology of VDG, Coffey, and Villency's duplicitous behavior is set forth below.[24]



| 1/8/16 | Leif Sigmond contacts ▮▮▮▮▮▮▮▮▮▮ on behalf of ▮▮.[25] |
| 1/27/16 | Sigmond asks Microsoft ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[26] |
| 1/29/16 | Coffey and Villency discuss what ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮.[27] |
| 3/14/16 | VDG offers to buy the '513 Patent for ▮▮▮▮▮[28] Microsoft ▮▮▮▮▮.[29] |
| 3/22/16 | Coffey seeks a ▮▮▮▮▮▮▮▮▮.[30] |

[20] *Id.*
[21] SOF, ¶¶ 81-107.
[22] SOF, ¶¶ 108-183.
[23] SOF, ¶¶ 81-195.
[24] Peloton's Statement of Facts incorporates these events and others. *See e.g.,* SOF, ¶¶ 81-195.
[25] SOF, ¶¶ 81-82.
[26] SOF, ¶¶ 83-85.
[27] SOF, ¶ 87.
[28] SOF, ¶¶ 89-90.
[29] *Id.*
[30] SOF, ¶¶ 108-128.



| | |
|---|---|
| 3/23/16 | Mike Gannon asks Microsoft ██████████████████████████ ██████████████████████████ ██████████████████████████ |
| 3/25/16 | Coffey sends ████████████'s financials, including bank statements.[34] The bank statements ████████████████████████[35] |
| 5/25/16 | Gannon sends Microsoft a ███████████████████████████ ███████████████████████████ ███████████████████ |
| 6/3/16 | Coffey and VDG ████████████████████████████ ███████████████████████████ |
| 6/20/16 | Coffey and Villency form Plaintiff VR Optics, LLC ("<u>VRO</u>") as a "single purpose" "holding company" for the '513 Patent.[40] |
| 6/24/16 | The 2014 Agreement expires.[41] |
| 7/8/16 | ██████████████ execute the ████████████████████ |
| 7/11/16 | ██████████████ execute the ████████████████████ guaranty the loan.[44] |
| 7/14-20/16 | Microsoft receives ████████████ payment.[45] |
| 7/26/16 | ██████████████████████████ Sigmond and Gannon's firm.[46] |

---

[31] SOF, ¶ 92.
[32] SOF, ¶¶ 92-93.
[33] SOF, ¶ 93.
[34] SOF, ¶¶ 115-125.
[35] *Id.*
[36] SOF, ¶¶ 94-96, 104-107.
[37] *Id.*
[38] SOF, ¶¶ 131-137, 145-149, 152.
[39] *Id.*
[40] SOF, ¶¶ 13-20.
[41] SOF, ¶¶ 56-57.
[42] SOF, ¶¶ 101, 107, 154-156.
[43] SOF, ¶¶ 157-160.
[44] *Id.*
[45] SOF, ¶ 169.
[46] SOF, ¶ 170.

| 8/5/16 | Microsoft sends ████████████████████████████████████[47] |
| 8/10/16 | Coffey and Villency meet with Foley and tell him ███████████████████████████████████████████████████████████████████████████████████████ |
| 8/11/16 | VRO sues Peloton alleging that the Peloton Bike infringes the '513 Patent.[50] |

## II.   VDG BREACHED THE 2012 AND 2014 AGREEMENTS.

Under New York law,[51] to prove breach of contract, a plaintiff must show "(1) the existence of a contract; (2) plaintiff's performance on the contract; (3) defendant's breach of contract; and (4) resulting damages." *Ross v. FSG PrivatAir, Inc.*, No. 03 Civ. 7292(NRB), 2004 WL 1837366, at *3 (S.D.N.Y. Aug. 17, 2004) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir.1994)). "The meaning of an unambiguous contract is likewise a matter of law." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 51 (2d Cir. 2011) (collecting cases). Therefore, a court has the obligation to determine the meaning of an unambiguous contract that is properly before it on a claim for breach of contract. Notably, VDG has not pleaded that either Agreement is ambiguous.[52]

Further, "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.*, No. 14-cv-1561(PKC), 2015 WL 3762592, at *6 (S.D.N.Y. May 15, 2015) (internal quotations omitted); *see Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) ("a trial court's primary

---

[47] SOF, ¶ 186.
[48] SOF, ¶¶ 187-195.
[49] SOF, ¶ 192.
[50] SOF, ¶¶ 194-195.
[51] Both the 2012 Agreement and the 2014 Agreement are governed by New York law.  *See* August 18, 2017 Opinion and Order, Dkt. 57, at *4 ("Both the 2012 Agreement and the 2014 Agreement dictate that New York law applies, and the parties do not argue otherwise."); SOF ¶¶ 30, 55.
[52] *See e.g.,* Doc. 59, Third-Party Defs' Answer.

objective is to give effect to the intent of the parties as revealed by the language they chose to use."). Indeed, "[u]nder New York law, before looking to evidence of what was in the parties' minds, a court must give due weight to what was in their contract." *In re Musicland Holding Corp.*, 386 B.R. 428, 438 (S.D.N.Y. 2008), aff'd, 318 Fed. Appx. 36 (2d Cir. 2009). "Courts may not, under the guise of contract interpretation, distort the meaning of the terms used" and deprive one party of "the benefit of its bargain." *Logan Advisors, LLC v. Patriarch Partners, LLC*, 879 N.Y.S.2d 463, 466 (2009). Accordingly, when a contract is properly construed by the court under these principles, "summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity." *Seiden Assocs., Inc.*, 959 F.2d at 428.

## A.    Peloton is Entitled to Judgment as a Matter of Law on Breach of the 2012 Agreement.

Because the clear and unambiguous words of the 2012 Agreement convey a definite and precise meaning relating to VDG's representation and warranty, Peloton requests that this Court interpret the 2012 Agreement as a matter of law to include the '513 Patent in VDG's representation and warranty to Peloton that the Peloton Bike "does not and will not infringe upon the rights of any third party[.]"

It is undisputed that the parties carefully negotiated each of their respective rights and obligations under the 2012 Agreement.[53] Accordingly, the meaning of the 2012 Agreement and it's terms are unambiguously "revealed by the language [Peloton and VDG] chose to use." *Seiden Assocs., Inc.*, 959 F.2d at 428.

There is also no dispute that the 2012 Agreement obligated VDG to ███████████████ ████████████████████████ The plain and ordinary meaning of Section 1.1 states as much:

███████████████████████████████████████████

---

[53] SOF, ¶¶ 24-27, 51-53.



Importantly, "████████" is defined as Peloton's ████████████████████ ████████ which shall include ███████████████████████████████████ ████████████████████████████████████ ■ Furthermore, the 2012 Agreement clearly defines █████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Furthermore, without limitation or reservation, VDG expressly and unambiguously represented and warranted to Peloton that "the Bike Intellectual Property ***does not and will not*** infringe upon the rights of any third party[.]"[57] In its 2016 Response to Peloton's Motion to Dismiss, VDG argued that it did not create or contribute to any component of the Peloton Bike that VRO now accuses of infringement. This is both legally irrelevant and factually incorrect.

"Bike Intellectual Property" is broadly defined as including ██████████████ ███████████████"[58] Furthermore, Device Bikes is also broadly defined ████████ ████████████████████████████████████████████████████████ ███████████████████████████[59] Essentially, VDG is asking the Court to re-write its representation and warranty to include the additional bolded clause: "the Bike Intellectual Property ***provided solely by VDG*** does not and will not infringe upon the rights of any



---

[54] SOF, ¶ 33 (bolded emphasis supplied, underline in original).
[55] SOF, ¶ 32 (emphasis in original).
[56] SOF, ¶¶ 36-38 (emphasis supplied).
[57] SOF, ¶ 40 (This warranty survived the termination of the 2012 Agreement. *See* SOF ¶¶ 42, 45) .
[58] SOF, ¶ 36 (emphasis supplied).
[59] SOF, ¶ 32.

third party."[60] The Court should decline VDG's request to re-write the parties' contract. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (N.Y. Ct. App. 1990) ("when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."). VDG's ███ owner, co-founder, and co-managing member, Coffey, is a lawyer barred in the state of New York.[61] It is undisputed that Coffey ███████████████ ███████████████████████████████████████████ ■ Coffey even admits █████████ ███████████████ ■ Peloton is entitled to the benefit of its bargain.

In any event, there is no dispute that the Peloton Bike, which VRO now accuses of infringement, is the same Peloton Bike that VDG designed.[64] It is also undisputed that the asserted '513 Patent claims require use of at least one "operating component" as an essential step of infringement.[65] VRO's own expert, Steven M. Lenz, testified that ███████████████ ███████████████████████████████████████████████ ███████████████████████████ ■ On an indoor exercise bike, such as the Peloton Bike.███ ███████████████████████████████████████████ ███████████████████████████ .[67]VDG was responsible for ███████████ ███████████████████████████████████████████████ .[68]

Accordingly, there is no dispute that ███████████████████████████ ███████████████████████████████████████████████ .[69]

---

[60] *Compare to* SOF, ¶ 40.
[61] SOF, ¶¶ 8-10, 21.
[62] SOF, ¶¶ 24-26.
[63] SOF, ¶ 25.
[64] SOF, ¶¶ 46-49, 80, 195-205.
[65] SOF, ¶ 196.
[66] SOF, ¶¶ 195-197.
[67] SOF, ¶¶ 195-210.
[68] *Id.*
[69] *Id.*

Furthermore, VRO's own damages expert asserts that the hypothetical negotiation between Peloton and VRO would have occurred in ███ making VDG's representation and warranty to Peloton false on the day that it was made if the Peloton Bike infringes the '513 Patent.[70] Because the words of the 2012 Agreement convey a definite and precise meaning, Peloton requests that this Court interpret the 2012 Agreement as a matter of law to include the '513 Patent in VDG's representation and warranty to Peloton that the Peloton Bike "does not and will not infringe upon the rights of any third party[.]" Any other interpretation ignores the plain and ordinary meaning of the parties' agreement and "effectively rewrites the bargain that was struck[.]" *W.W.W. Assocs.*, 77 N.Y.2d at 163.

### B. Peloton is Entitled to Judgment as a Matter of Law that VDG Breached the 2014 Agreement.

This Court should issue judgment as a matter of law that (1) VDG's representation and warranty to Peloton that the Peloton Bike "does not and will not infringe upon the rights of any third party" includes the '513 Patent and (2) VDG is liable to Peloton for breaching the 2014 Agreement by refusing to defend Peloton against allegations that the Peloton Bike infringes the '513 Patent.

### 1. *VDG Represented and Warranted that the Peloton Bike "Does Not and Will Not Infringe" The '513 Patent.*

Like the 2012 Agreement, the 2014 Agreement relies upon the use of broadly defined terms. Under the 2014 Agreement, ████████████████████████████ ██████████████████████████████[71] Furthermore, VDG clearly and unequivocally admits ██████████████████████████████[72]

---

[70] SOF, ¶ 206.
[71] SOF, ¶ 59.
[72] SOF, ¶¶ 60-61.

The 2014 Agreement also clearly and unequivocally defines ████████████ ████████████████████████████████████████"[73] In Section 8.2 of the 2014 Agreement, ████ expressly represented and warranted to Peloton ████████████████████████ ████████████████████████████████████[74] VDG's representation and warranty is neither narrow nor limited. Furthermore, as set forth above, the Court should soundly reject VDG's request to re-write the bargain it struck.

2. *VDG Breached The 2014 Agreement By Refusing to Defend Peloton.*

The duty to defend is exceedingly broad and different from the duty to indemnify. *Curtis v. Nutmeg Ins. Co.*, 204 A.D.2d 833,834 (3d Dep't. 1994). The duty to defend is not contingent upon the ultimate duty to indemnify. *Id.* Nor does it matter if additional claims, which fall outside the scope of the duty, are alleged. *Id.* Instead, the duty to defend arises anytime a claim alleges a covered occurrence. *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991). The 2014 Agreement unambiguously obligated VDG to defend Peloton from VRO's claim that the Peloton Bike infringes the '513 Patent. Accordingly, Peloton is entitled to summary judgment that VDG breached the 2014 Agreement.

***First,*** it is undisputed that the 2014 Agreement is a valid, written contract.[75] Furthermore, Peloton and VDG fully and carefully negotiated the 2014 Agreement.[76] VDG specifically agreed

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████[77] The Court's August 18, 2017, Opinion and Order (Doc. 57)

---

[73] SOF, ¶ 67 (emphasis supplied).
[74] SOF, ¶ 69 (emphasis supplied)
[75] SOF, ¶¶ 50-53.
[76] *Id.*
[77] SOF, ¶¶ 67, 70-72 (citing 2014 Agreement, § 7.1(b), emphasis supplied).

clearly and unequivocally forecloses any argument that the representations, warranties, and indemnity provisions do not survive termination of the 2014 Agreement:

> The Amended Third-Party Complaint alleges a breach of [the 2014 Agreement] *before* the agreement expired. Moreover, the 2014 Agreement contains a survival clause, which states that "[a]ll representations and warranties of [VDG] and Peloton contained in this Agreement will survive the termination of this Agreement. Section 8.2, titled "REPRESENTATIONS AND WARRANTIES," expressly provides that "the Bike Intellectual Property does not and will not infringe upon the rights of any third party." Under the 2014 Agreement, therefore, VDG's obligation to provide "Bike Intellectual Property" that does not infringe a third-party patent unambiguously survived the contract's termination in June 2016. [78]

*Second,* there is no dispute that Peloton has fully performed each of its obligations under the 2014 Agreement.[79] In fact, Peloton continued to pay VDG under the 2014 Agreement through its expiration even though Peloton had long stopped using many of VDG's services.[80]

*Third*, there is no dispute that VDG breached its obligation to defend Peloton against VRO's claim that the Peloton Bike infringes the '513 Patent. VDG's duty to defend Peloton against any violation or alleged violation of a third party's intellectual property rights is clear and unambiguous. Section 7.1 of the 2014 Agreement provides:



.[81]

---

[78] Doc. 57, Order Denying Motion to Dismiss, at pp. 5 (citing 2014 Agreement §§ 8.2(a)(3), 8.3(b); *see also* SOF, ¶¶ 76-79.
[79] *See* Doc. 59, Third-Party Defs' Answer, ¶ 71.
[80] SOF, ¶¶ 58, 75.
[81] SOF, ¶ 70.

As set forth above, the 2014 Agreement broadly defines ████████████ ████████████████████████████████ ██ duty to defend Peloton is not limited only to Bike Intellectual Property that VDG designed or developed.[83] Instead, VDG's duty to defend Peloton is clear, broad, and unequivocal – VDG must defend Peloton from ***any violation or alleged violation*** of ***any*** intellectual property rights regarding ████████████ ████████.[84]

On August 11, 2016, Plaintiff VRO sued Peloton for allegedly infringing the '513 Patent.[85] Both VRO's Complaint and its technical expert allege that the Peloton Bike infringes numerous claims of the '513 Patent.[86] On September 9, 2016, pursuant to Section 8.1 of the 2014 Agreement, Peloton served notice to VDG of VDG's obligation to indemnify, defend and hold Peloton harmless against VRO's claims.[87]  Coffey – VDG's ████████████████████ – testified that VDG did ████████████████████████████████████ ████.[88] VDG's refusal to defend Peloton against VRO's infringement allegations breaches Section 7.1 of the parties' 2014 Agreement. *Fitzpatrick*, 78 N.Y.2d at 63. Accordingly, as a matter of law, VDG is liable to Peloton for VDG's failure to perform under Section 7.1.

***Finally,*** it is undisputed that Peloton has suffered damages as a result of VDG's breach of the 2014 Agreement. Because VDG failed to assume Peloton's defense in September 2016, Peloton has been forced to advance substantial fees and incur substantial costs in its own defense against VRO's infringement claims. Furthermore, if Peloton is found to infringe the '513 Patent,

---

[82] SOF, ¶¶ 67, 71-72.
[83] SOF, ¶¶ 67, 70-72.
[84] SOF, ¶¶ 70.
[85] SOF, ¶¶ 191-195.
[86] SOF, ¶¶ 195-197.
[87] Doc. 59, Third-Party Defs' Answer, ¶ 84 ("Admitted that Peloton requested VDG to indemnify, defend and hold harmless PELOTON."); SOF, ¶ 207.
[88] SOF, ¶¶ 207-210.

then VDG would also be obligated to pay any damages due and owing to VRO under Section 7.1 of the parties' 2014 Agreement. Accordingly, Peloton respectfully requests that this Court enter judgment as a matter of law that VDG has breached the 2014 Agreement and is liable to Peloton for all attorney and expert fees and all costs expended in this defense, and further that, if Peloton is liable for infringing the '513 Patent, then VDG is liable to Peloton for breach of the 2014 Agreement in an amount equal to any damage award relating to the Peloton Bike.

## III.    VDG VIOLATED THE COVENANT OF GOOD FAITH AND FAIR DEALING.

Every contract and duty under New York law carries an "obligation of good faith in its performance and enforcement." N.Y.U.C.C. Law § 1-304 (McKinney 2014). A plaintiff claiming a violation of this covenant of good faith and fair dealing must show either "1) fraud; 2) malice; 3) bad faith; 4) other intentional wrongdoing; or 5) reckless indifference to the rights of others such as gross negligence." *Smith Barney, Harris Upham & Co. Inc. v. Liechtensteinische Landesbank*, No. 92 Civ. 2528(RPP), 1993 WL 97286, at *5 (S.D.N.Y. Mar. 31, 1993) (citations omitted). "The covenant is violated when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under their agreement." *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990); *see also TVT Records v. Island Def Jam Music Grp.*, 244 F. Supp. 2d 263, 278 (S.D.N.Y. 2003) ("The covenant protects a promisee not against a breach of the express terms of a contract but of the reasonable expectations and inferences otherwise derived from the agreement."); *Chase Manhattan Bank, N.A. v. Keystone Distrib. Inc.*, 873 F. Supp. 808, 815 (S.D.N.Y. 1994) ("A party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations.").

By contrast, *good faith* performance "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 448 (S.D.N.Y. 2004) (citing Restatement (2d) of Contracts § 205, cmt. a (1981)). Accordingly, the "boundaries set by the duty of good faith are generally defined by the parties' intent and reasonable expectations in entering the contract." *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir. 1989). Therefore, a party's actions violate the implied covenant of good faith when that party "acts so directly to impair the value of the contract for another party that it may be assumed that they are inconsistent with the intent of the parties." *Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991); *see Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1517 (S.D.N.Y. 1989) ("[A] court will read an implied covenant of good faith and fair dealing into a contract to ensure that neither party deprives the other of the fruits of the agreement.") (citing *Van Gemert v. Boeing Co.*, 553 F.2d 812, 815 (2d. Cir.1977)) (internal quotations omitted).

As set forth in Section I and the Statement of Facts, VDG violated the covenant of good faith and fair dealing when it secretly negotiated and ███████████████ of the '513 Patent for VRO to ultimately assert against Peloton and the very bike that VDG designed and indemnified.

***First,*** there is no dispute that Peloton paid VDG ███████ to design, develop and engineer the very bike that VRO accuses of infringement.[89] The 2012 Agreement broadly defined ███████ ███████ and there is no dispute that VDG designed the Bike that Peloton began selling in 2014 and continues to sell to this day.[90] Furthermore, as set forth above, the 2012 Agreement clearly defines ███████████████████ to include ████████████████████████████████████

---

[89] SOF, ¶¶ 31, 43-44.
[90] SOF, ¶¶ 32, 46-49, 80, 198-205.

**Second,** the 2014 Agreement clearly and unambiguously re-confirms VDG's role in the design and development of the Peloton Bike. There, VDG admits that ███████████████ ████████████████████████████████████████ where ██████ is defined as ████████ ███████████████████████████[91] Peloton paid VDG ███████████████ to design, develop, test, improve, change or alter the Peloton Bike and to manage all aspects of the factory relationship.[92]

**Third,** there is absolutely no dispute that – unknown to Foley or anyone else at Peloton – VDG began negotiating with Microsoft to purchase the '513 Patent at least six months before the 2014 Agreement expired.[93] By ████████████, VDG and Microsoft reached agreement as to: (a) ████████████████ and (b)████████████████████████████████████████████ ████████████████████ Additionally, on ████████████ – a month before the 2014 Agreement expired – VDG and Microsoft reached terms ████████████████████████████████ ████████████████████████████.[95] VDG's subsequent formation of VRO █████████████████████████████████████████████████ was a sham intended to separate VDG from its duplicitous acts. In fact, as late as █████████████ – more than two years after VRO filed this lawsuit – VDG held itself out as the owner of the '513 Patent ██ ████████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[91] SOF, ¶¶ 59-61.
[92] SOF, ¶¶ 118, 120-123, 133-34.
[93] SOF, ¶¶ 186-191.
[94] SOF, ¶¶ 92-93.
[95] SOF, ¶ 106-107.
[96] SOF, ¶¶ 182-183.



***Fourth,*** there is absolutely no dispute that that Coffey and Villency formed VRO on June 20, 2016 – four days before the 2014 Agreement expired – to act as a "holding company" for the '513 Patent.[98] VRO has ███████████████ ███████████████████[100] In fact, VRO and VDG share the same principal place of business (430 West Broadway), and █████████ █████████████████████ ■ Because VRO has ███████████████████████ ████ lacked any ability to finance the agreed █████████ purchase price Microsoft requested for the '513 Patent. VDG had a secret plan.

There is no dispute that at least by March 22, 2016, VDG – through its co-owner and co-managing member Coffey – ██████████████████████████████ ████████████ There is also no dispute that the parties reached agreement as to all terms of the █████████████████████████ – before the 2014 Agreement expired.[103] There is also no dispute that VDG instructed its counsel (and VRO's current trial counsel) to ███████████ ████████████████████████████ ■ Furthermore, as illustrated by documents VDG and VRO produced on June 28, 2019 in response to Peloton's second motion to compel, █████████████████████████[105] Instead,

---

[97] SOF, ¶¶ 183. (emphasis supplied). The La Fuga Agreement defines "Villency" to mean VDG. *Id.*
[98] SOF, ¶¶ 13, 15-20, 99.
[99] SOF, ¶¶ 17.
[100] SOF, ¶¶ 16-17.
[101] SOF, ¶¶ 14, 141 (discussing VDG's lease agreement and attaching same), 172, 177-178.
[102] SOF, ¶¶ 108-181.
[103] SOF, ¶¶ 108-149.
[104] SOF, ¶¶ 161-166.
[105] SOF, ¶¶ 171-181.

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████ [106]

 ***Finally***, VRO – an admitted single purpose patent "holding company"[107] – capitalized on

VDG, Villency and Coffey's duplicitous acts by suing Peloton for allegedly infringing the '513

Patent through the ***same bike that VDG itself designed, developed, sold and indemnified***.[108]

 These acts inherently put VDG on "both sides of the same transaction" with Peloton. *Bank*

*of China*, 937 F.2d at 784. Furthermore, these actions caused Peloton to suffer financial harm,

including in its defense against VRO's patent infringement claims, and in the lost value of both

the 2012 Agreement and the 2014 Agreement with VDG. If Peloton is liable to VRO for infringing

the '513 Patent, then VDG's actions have deprived Peloton of the fruits of both the 2012 and 2014

Agreements – ***a non-infringing, proprietary indoor bike design.*** Conspiring – behind Peloton's

back – to negotiate ████████ the acquisition of a patent to assert against the Peloton Bike so

directly impairs the value of the 2012 and 2014 Agreements that VDG's actions are legally

inconsistent with the parties' original intent. *See, e.g., Bank of China*, 937 F.2d at 789. In this

manner, VDG failed to demonstrate faithfulness to an agreed common purpose and consistency

with the justified expectations of Peloton, and such failure has deprived Peloton of the fruits of the

2012 and 2014 Agreements. *See, e.g., Dahingo*, 312 F. Supp. 2d at 448; *Metro. Life Ins. Co.*, 716

F. Supp. at 1517. Had VDG informed Peloton – at any point – of its intent to ███████████████

███ purchase of a patent to assert against the Peloton Bike, Peloton could have negotiated directly

with Microsoft to purchase the '513 Patent, among other possibilities. Peloton respectfully requests

that this Court enter judgment as a matter of law that VDG violated the implied covenant of good

---

[106] *Id.*
[107] SOF, ¶¶ 15-17.
[108] SOF, ¶¶ 32-33, 40-41, 46-49, 59-67, 69-74, 80, 195-210.

faith and fair dealing under the 2012 and 2014 Agreements, entitling Peloton to damages sufficient to place Peloton in as good a position as it would have been had VDG not violated the covenant and entitling Peloton to a constructive (fully paid-up royalty free) license to practice the '513 Patent.

## IV.   PELOTON IS ENTITLED TO SUMMARY JUDGMENT AGAINST VDG ON ITS CLAIM FOR FRAUDULENT CONCEALMENT.

This Court should issue judgment as a matter of law that VDG is liable to Peloton for VDG's fraudulent concealment of essential facts regarding the '513 Patent's purchase. "The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *De Sole v. Knoedler Gallery,* LLC, 974 F. Supp. 2d 274, 314 (S.D.N.Y. 2013) (internal citations and quotations omitted); *see also Garcia v. Chrysler Group, LLC*, 127 F. Supp. 3d 212, 234 (S.D.N.Y. 2015) (citing *Bannister v. Agard*, 5 N.Y.S.3d 114, 115 (N.Y. App. Div. 2015)). "With respect to a duty to disclose, 'New York recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair.'" *Id.* (quoting *Miele v. Am. Tobacco Co.*, 770 N.Y.S.2d 386, 391 (App. Div. 2d Dep't 2003)); *see also Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*, 601 F. Supp. 770, 773 (S.D.N.Y. 1985) (citing *Gaines Serv. Leasing Corp. v. Carmel Plastic*, 432 N.Y.S.2d 760, 762-63 (N.Y.Civ.Ct.1980) (advantage taken by silence "shock[s] the ethical sense of the community"), aff'd, 453 N.Y.S.2d 391 (Sup.Ct.App.Term 1981)). Further, "[c]oncealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact." *Campaign v. Esterhay*, 85 N.Y.S.3d 687, 692 (N.Y. Sup. Ct. 2018).

-18-

### A.   VDG Owed Peloton a Duty to Disclose the Purchase of the '513 Patent.

There is no dispute that VDG sold Peloton services through an arms-length transaction evidenced by the 2014 Agreement.[109] Accordingly, as a matter of law, VDG owed Peloton a duty to disclose essential facts about the transaction of which VDG had superior knowledge and which Peloton could not have discovered through ordinary diligence. *See Garcia*, 127 F. Supp. 3d at 236. One such essential fact is that VDG—while still under contract with Peloton for the continued design and development of Peloton's proprietary indoor cycling bike[110]—was secretly scheming to Peloton's detriment ████████████████ for the '513 Patent's purchase,[111] which VRO intended to (and did) assert against the very Peloton Bike VDG designed and indemnified.[112]

VDG had superior knowledge of this essential fact because both VDG and VRO are owned and controlled exclusively by the same two individuals—Villency and Coffey.[113] Further, Peloton could not have discovered this essential fact because VDG executed ██████████████████ ████████████████████████████████████████ █ Accordingly, only VDG, VRO, Coffey, Villency, and Microsoft were privy to the essential facts about the '513 Patent transaction,[115] despite serious adverse consequences to Peloton and despite VDG's duty as a matter of law to disclose such facts to Peloton.

### B.   VDG Concealed its Involvement in the '513 Patent Purchase with the Intent that Peloton Not Take Action.

It is undisputed that VDG concealed the '513 Patent transaction from Peloton.[116] In fact, during negotiations for the sale, VDG specifically demanded ██████████████████████

---

[109] SOF, ¶¶ 51-53.
[110] SOF, ¶¶ 56-57, 100, 153.
[111] SOF, ¶¶ 108-181.
[112] SOF, ¶¶ 32-33, 40-41, 46-49, 59-67, 69-74, 80, 195-210.
[113] SOF, ¶¶ 6-20.
[114] SOF, ¶¶ 84-89.
[115] *Id.*
[116] SOF, ¶¶ 187-191.

█████████████████████████████████████████████████████████ [117]

Indeed, VDG's intent in concealing the '513 Patent purchase was to ensure that Peloton was a sitting duck for VRO's imminent lawsuit – all for the benefit of Villency and Coffey:

**Q:** ████████████████████████████████████████████████████████

**A:** ███ . [118]

Accordingly, there can be no dispute that VDG concealed it's involvement in the '513 Patent purchase with the intent to induce Peloton not to act, so that VRO could later sue Peloton for infringement.

### C.     Peloton Relied on VDG's Silence and Did Not Take Action.

Because VDG intentionally concealed from Peloton the '513 Patent transaction, Peloton reasonably took no action in anticipation of VRO's patent infringement lawsuit. Indeed, based on Peloton's mistaken belief that ███████████████████████████████████████████

███████████████████████ [119] However, in reliance on VDG's silence when it had a legal duty to disclose, Peloton forwent strategic avenues it could have taken to protect itself. As Foley testified:



---

[117] SOF, ¶¶ 83-88.
[118] SOF, ¶¶ 189.
[119] *See* SOF, ¶ 188 (citing Foley Dep., 193:13-24, 194:2-12).
[120] *See id.* (citing Foley Dep. 343:16 – 344:4).

**D.      Peloton Suffered Damages as a Result of VDG's Fraudulent Concealment.**

Peloton has suffered damages as an actual and proximate result of VDG's fraudulent concealment. Particularly, without limitation, Peloton has been forced to advance substantial legal and expert fees and incur substantial costs in its defense against VRO's patent infringement claims. Furthermore, had VDG informed Peloton of its actions, Peloton could have ███████████ ████████████████████████████████████████████████████. VDG purposefully concealed its negotiations with Microsoft from Peloton to deprive Peloton of this opportunity. Peloton is entitled to damages equal to any damages awarded to VRO, or alternatively, to a constructive license (fully paid up royalty free).

**V.      COFFEY AND VILLENCY TORTIOUSLY INTERFERED WITH PELOTON'S CONTRACTUAL RELATIONSHIP WITH VDG.**

This Court should issue judgment as a matter of law that Coffey and Villency tortiously interfered with the 2012 and 2014 Agreements between Peloton and VDG. Under New York law, a tortious interference claim requires a showing that (1) a valid contract exists; (2) a third party had knowledge of the contract's existence; (3) that third party intentionally and improperly procured the breach of the contract; and (4) the breach resulted in harm to the plaintiff. *See TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 88 (2d Cir. 2005) (citing *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996)); *see also Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120 (1956). An employee or agent of a corporate party to the contract is considered a "third party" if the employee or agent "exceeded the bounds of his or her authority" in procuring the breach. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 186 (S.D.N.Y. 2014), aff'd sub nom. *In re MF Glob. Holdings Ltd. Inv. Litig. (DeAngelis v. Corzine)*, 611 Fed. Appx. 34 (2d Cir. 2015). Further, corporate officers are liable for inducing its principal to breach the contract when the officers' actions were motivated by their own personal gain. *Albert v. Loksen*, 239 F.3d 256, 275

-21-

(2d Cir. 2001) (quoting *BIB Const. Co. Inc. v. City of Poughkeepsie*, 612 N.Y.S.2d 283, 285 (1994)); *see also Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 744 N.Y.S.2d 384, 390 (App. Div. 1st Dep't 2002).

### A.   Villency and Coffey Knew About the 2012 and 2014 Agreements.

There is no dispute that Peloton and VDG entered into valid, written contracts with VDG.[121] There is also no dispute that Coffey ███████████████████████████████████ ███████████████████████████████████████████████████████████████.[122] Coffey even admits ████████████████████████.[123] Neither Villency nor Coffey can plausibly argue they were unaware of the 2012 and 2014 Agreements.[124]

### B.   Villency and Coffey Intentionally and Improperly Procured VDG's Breach of the 2012 Agreement.

Villency and Coffey own and exclusively control VDG.[125] As set forth above, VDG designed, developed and managed the manufacturing of the Peloton Bike.[126] In bad faith and for their own personal pecuniary gain, Villency and Coffey caused VDG to negotiate with Microsoft for the '513 Patent's purchase.[127] In bad faith and for their own personal pecuniary gain, Villency and Coffey ████████████, and caused VRO to █████████████████████████████ ████████████████████████████████ for the purpose of suing Peloton.[128]

As set forth above, VDG represented and warranted to Peloton that the Peloton Bike "does not infringe and will not infringe upon the rights of any third party."[129] By causing VDG to

---

[121] SOF, ¶¶ 23, 50.
[122] SOF, ¶¶ 24-27, 51-53.
[123] SOF, ¶ 25.
[124] SOF, ¶¶ 23-27, 50-53.
[125] SOF, ¶¶ 6-12.
[126] SOF, ¶¶ 32-33, 40-41, 46-49, 59-67, 69-74, 80, 195-210.
[127] SOF, ¶¶ 81-107.
[128] SOF, ¶¶ 81-206.
[129] SOF, ¶¶ 32-33, 36-37, 40.

███████████████████████████████████ both Coffey and Villency deliberately caused VDG to undertake a course of conduct to (1) violate its representations and warranty to Peloton and (2) breach its duty of good faith and fair dealing implied in the parties' Agreement.

**C.   Villency and Coffey Intentionally and Improperly Procured VDG's Breach of the 2014 Agreement.**

When Peloton demanded that VDG honor its indemnity obligations under the 2014 Agreement, Villency and Coffey—acting in bad faith and for their own personal pecuniary gain – induced VDG to breach the 2014 Agreement by not defending Peloton against VRO's patent infringement claims.[130]

Indeed, had VDG honored its obligation to defend Peloton, this litigation would not exist. VRO would have abandoned it because VRO's co-owners and co-managing members, Villency and Coffey, would have had no reason to pursue the case. VDG's contractual compliance means any verdict VRO obtains takes money from Villency's and Coffey's right pocket (at VDG) and places it in their left pocket (at VRO). Villency and Coffey intentionally, improperly and in bad faith committed predatory acts directed at Peloton for their personal pecuniary gain, which predatory acts caused VDG to breach its two contracts with Peloton.

**D.   Peloton Has Suffered Damages as a Result of VDG's Breach.**

Peloton has suffered damages and, if the Bike Intellectual Property infringes the '513 Patent, will suffer additional damages as an actual and proximate result of VDG's breach of the 2012 Agreement and the 2014 Agreement. Particularly, without limitation, Peloton has been forced to advance substantial fees and incur substantial costs in its defense against VRO's claims.

Accordingly, Peloton respectfully requests that this Court enter judgment as a matter of law that Villency and Coffey tortuously interfered with Peloton's contractual relationship with

---

[130] SOF, ¶¶ 108-210.

VDG under the 2012 and 2014 Agreements, and are individually liable to Peloton for at least Peloton's attorney and expert fees and costs and for damages, if any, ultimately awarded to VRO.

## VI.   CONCLUSION.

VDG, Villency, and Coffey undertook extreme and predatory conduct in direct violation of the obligations and duties each owed to Peloton under contract and the common law. The undisputed evidence demonstrates a bad faith conspiracy to shake down Peloton for "damages" directly relating to the very product that VDG, Villency, and Coffey designed, developed and indemnified. VDG, Villency, and Coffey betrayed the core of the parties' contractual relationship. This betrayal was not an accident – it occurred over many months and with the direct assistance of their trial counsel in this case. VDG, Villency, and Coffey each had numerous opportunities to honor and comply with the duties they owed to Peloton. Instead, each chose to knowingly and intentionally violate them. For the foregoing reasons, Peloton respectfully requests that this Court grant Peloton's Motion for Summary Judgment in its entirety.