**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VR OPTICS, LLC,<br><br>                              Plaintiff,<br><br>                    -v-<br><br>PELOTON INTERACTIVE, INC.,<br>                              Defendant. | 16-CV-6392 (JPO) |
| PELOTON INTERACTIVE, INC.,<br>                    Third-Party Plaintiff,<br><br>                    -v-<br><br>VILLENCY DESIGN GROUP, LLC; ERIC<br>VILLENCY; and JOSEPH COFFEY,<br>                    Third-Party Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PELOTON'S MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY**

Steven G. Schortgen (*pro hac vice*)
*SSchortgen@SheppardMullin.com*
Jennifer Klein Ayers (*pro hac vice*)
*JAyers@SheppardMullin.com*
Galyn Gafford (*pro hac vice*)
*GGafford@SheppardMullin.com*
**SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP**
2200 Ross Avenue, 24th Floor
Dallas, TX  75201-6776
Tel:     (469) 391-7400
Fax:     (469) 391-7401

Paul W. Garrity
*PGarrity@SheppardMullin.com*
**SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701

Attorneys for Defendant and Third-party
Plaintiff PELOTON INTERACTIVE, INC.

**TABLE OF CONTENTS**

Page

I.      BACKGROUND FACTS.................................................................................1

        A.      Overview of the '513 Patent .........................................................1

        B.      The Accused Peloton Bike and Treadmill. ........................................2

        C.      Peloton's Leaderboard Server and Leaderboard.................................2

II.     SUMMARY JUDGMENT STANDARD......................................................3

        A.      Non-infringement.........................................................................3

        B.      Invalidity. ...................................................................................4

III.    PELOTON'S  ACCUSED  PRODUCTS  DO  NOT  INFRINGE  THE  ASSERTED
        CLAIMS. ....................................................................................................4

        A.      The Peloton Bike and Treadmill do not have Logic to Conduct a Performance
                Comparison.................................................................................4

        B.      The Peloton Bike and Treadmill Do Not Communicate To Or Receive From The
                Leaderboard Server Multiple Performance Parameters. ......................9

        C.      The  Peloton  Treadmill's  Calculated  Total  Output  is  not  a  "Performance
                Parameter" As Required Under Claims 1 and 6. ................................11

        D.      The Peloton Bike And Treadmill Do Not Offer Simulated Interactive Exercise
                Events.........................................................................................14

        E.      There Is No Evidence Of "Logic" On The Peloton Bike And Treadmill To
                Perform The Claim Limitations. .....................................................14

        F.      There Is No Evidence Of The "Computer Program Executed By The Server"
                Element From Claim 1 For The Peloton Bike And Treadmill...............15

        G.      The Peloton Bike and Treadmill Do Not Have or Use "Course Data."..............15

IV.     THE ASSERTED CLAIMS OF THE '513 PATENT ARE INVALID. ......................16

        A.      U.S. Patent No. 6,997,852 to Watterson Anticipates and Invalidates The Asserted
                Claims of the '513 Patent.................................................................16

                1)      Watterson discloses the "logic configured to drive/control the display"
                        limitations. ............................................................... 18

2)      Watterson discloses a server. ................................................................. 19

B.      U.S. Patent No. 6,921,351 to Hickman Anticipates and Invalidates The Asserted Claims of the '513 Patent................................................................................21

C.      UltraCoach VR Anticipates and Invalidates The Asserted Claims of the '513 Patent.........................................................................................................23

V.      CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*EMD Millipore Corp. v. AllPure Tech., Inc.*
    768 F.3d 1196 (Fed. Cir. 2014)................................................................................................3

*Ericsson, Inc. v. D-Link Sys., Inc.*
    773 F.3d 1201 (Fed. Cir. 2014)................................................................................................3

*Ferring B.V. v. Watson Labs, Inc.*
    764 F.3d 1401 (Fed. Cir. 2014)........................................................................................3, 9, 13

*Golden Bridge Technology, Inc. v. Nokia, Inc.*
    527 F.3d 1318 (Fed. Cir. 2008)................................................................................................4

*Markman v. Westview Instruments, Inc.*
    52 F.3d 967 (Fed. Cir. 1995)....................................................................................................3

*Spectrum Pharm., Inc. v. Sandoz Inc.*
    802 F.3d 1326 (Fed. Cir. 2015)................................................................................................3

*Zenith Electronics Corp. v. PDI Comm. Systems, Inc.*
    522 F.3d 1348 (Fed. Cir. 2008)................................................................................................4

<u>Statutes</u>

35 U.S.C. § 102......................................................................................................................1, 4, 25

35 U.S.C. § 102(a) ...................................................................................................................23, 24

35 U.S.C. § 102(e) ...................................................................................................................16, 21

35 U.S.C. § 271(a) ..........................................................................................................................3

<u>Other Authorities</u>

Fed. R. Civ. P. 56.............................................................................................................................1

Local Civil Rule 56.1.......................................................................................................................1

Pursuant to Federal Rule of Civil Procedure 56, Peloton Interactive, Inc. ("Peloton") submits this Memorandum of Law in Support of its Motion for Summary Judgment of Non-Infringement and Invalidity.  Because there is no genuine dispute as to material facts, Peloton is entitled to judgment of non-infringement for both its bike and treadmill products and judgment that U.S. Patent No. 6,902,513 ("the '513 patent") is invalid under 35 U.S.C. § 102.

## I.    BACKGROUND FACTS

### A.    Overview of the '513 Patent

An overview of the asserted '513 patent is provided in paragraphs 1-21 of the Statement of Material Facts filed herewith.[1]  The '513 patent is "generally directed to computerized fitness equipment that is designed to *simulate, emulate, or implement actual race conditions* with other users."  (SoF ¶ 4).  Plaintiff VR Optics, LLC ("VRO") asserts claims 1-6, 12, 13, and 15-17 of the '513 patent against Peloton, of which claims 1 and 6 are independent claims.  (SoF ¶ 10).  Claim 1 is directed to a system for interactive fitness and comprises three main components: 1) a server, 2) a plurality of geographically-separated fitness equipment configured for communication with the server via a wide area network, and 3) a computer program executed by the server to configure the server for coordinating the communication among the plurality of fitness equipment, such that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events.  (SoF ¶¶ 12-13).  Further, claim 1 provides that *each* of the geographically-separated fitness equipment must include the features that are the subject of this Motion.  (SoF ¶¶ 14-15).

While claim 1 reads on a three element system, claim 6 is directed to a single piece of interactive fitness equipment.  (SoF ¶ 20).  Because claim 6 is directed solely to "*an* interactive

---

[1] Pursuant to Local Civil Rule 56.1, and Judge Oetken's Individual Practices Section 3(E), Peloton) is filing herewith a complete Statement of Material Facts ("SoF") to support this Motion. This Motion assumes the Court's familiarity with the associated Statement of Facts, which is referenced herein.

fitness equipment," (*i.e.,* a singular "an" antecedent in the preamble) each of the elements in claim 6 must be a part of each and every individual interactive fitness equipment.  (SoF ¶ 21).

**B.     The Accused Peloton Bike and Treadmill.**

An overview of the accused Peloton bike and treadmill is provided in Statement of Facts ¶¶ 33–56. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

**C.     Peloton's Leaderboard Server and Leaderboard.**

An overview of Peloton's leaderboard server and leaderboard is provided in Statement of Facts ¶¶ 57 – 74. ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

## II.      SUMMARY JUDGMENT STANDARD

Under Federal Circuit authority, Peloton is entitled to summary judgment of non-infringement and that the '513 patent is invalid.

### A.      Non-infringement.

A patent is infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent[.]" 35 U.S.C. § 271(a).  A two-step analysis is employed in making an infringement determination.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  First, the court must construe the asserted claims to ascertain their meaning and scope, a question of law. *Id.* at 976-77.  The Court must then compare the properly construed claims with the accused infringing product. *Id.* at 976. *Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1337 (Fed. Cir. 2015).

"To prove literal infringement, the patentee must show that the accused device contains *each and every limitation* of the asserted claims." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1215 (Fed. Cir. 2014) (emphasis in original).  "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG*, 212 F.3d at 1247. 2004). Summary judgment of no literal infringement is appropriate "'when no reasonable jury could find that every limitation recited in the properly construed claim … is … found in the accused device.'" *EMD Millipore Corp. v. AllPure Tech., Inc.*, 768 F.3d 1196, 1200-1201 (Fed. Cir. 2014).  It is axiomatic that "'[o]ne who does not infringe an independent claim cannot infringe a claim dependent (and thus containing all the limitations of) that claim.'" *Ferring B.V. v. Watson Labs, Inc.*, 764 F.3d 1401, 1411 (Fed. Cir. 2014).

### B.      Invalidity.

A patent is anticipated, and therefore invalid, when a single prior art reference discloses each and every element of the patent's claimed invention.  *See Zenith Electronics Corp. v. PDI Comm. Systems, Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008).  ("Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference.").  Invalidity by anticipation under 35 U.S.C. § 102 may be decided on summary judgment if the record reveals no genuine dispute of material fact.  *Golden Bridge Technology, Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008).

## III.  PELOTON'S ACCUSED PRODUCTS DO NOT INFRINGE THE ASSERTED CLAIMS.

There is no genuine dispute as to any material fact that the Peloton bike and Peloton treadmill do not infringe any of the asserted claims of the '513 patent.

### A.      The Peloton Bike and Treadmill do not have Logic to Conduct a Performance Comparison.

---

[2] Peloton does not concede that "total output" is a "performance parameter" as used in the '513 patent, but this specific summary judgment basis does not rely upon any non-infringement arguments Peloton has regarding "total output."

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████

████████████████████

████████████████████████

████████████████████████████

███ ███ ███ █████ ████ ███ ████ ██████

███████████████████

█████████████████████████████
█████████████████████████████

██████

██████████████████████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████

█████████



3 █████████████████████████████████████████
██████████████████



But claim 1 of the '513 patent is structured such that this "logic configured to drive the display" limitation is claimed as being part of, residing within and taking place exclusively within the exercise device alone. (SoF ¶¶ 12, 14). The limitation is indented and falls under the limitation ending with "***each of the fitness equipment comprising***:." (SoF ¶ 12). As such, this claim limitation is one of the subset of limitations ***that is directed to the fitness equipment alone, which means that both parts of the claim limitation must be found on the fitness equipment itself***. (SoF ¶ 14). In other words, both logic for (1) determining "a difference between the first and second performance parameters," and (2) and driving "the display to visually display a difference in performance between the fitness equipment and at least one remote fitness equipment based on" that difference must be found on the Peloton treadmill or bike. (SoF ¶¶ 12, 14). ████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████



SMRH:4847-2192-8091.1



██████    Lenz's admissions, when read against Claim 1's plain and ordinary claim language

entitle Peloton to summary judgment of non-infringement.[4]

Similarly, claim 6, the other asserted independent claim, contains the limitation "logic

configured to control the display in response to both the first and second performance parameters,

such that a performance comparison between the fitness equipment and at least one remote fitness

equipment is visually displayed."  (SoF ¶ 20).  But, claim 6 is directed solely to "***an interactive***

***fitness equipment comprising***," such that every limitation in claim 6 must be a found on the

individual interactive fitness equipment, not a geographically removed separate server.  (SoF ¶¶

---

[4] ███████████████████████████████████████

██████████████████

20-21). ████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ Because the bike and treadmill do not infringe the

asserted independent claims, then they also cannot infringe the asserted dependent claims that

depend from the independent claims as a matter of law.  *See Ferring B.V. v. Watson Labs, Inc.*,

764 F.3d 1401, 1411 (Fed. Cir. 2014) ("[o]ne who does not infringe an independent claim cannot

infringe a claim dependent (and thus containing all the limitations of) that claim.").  This issue is

dispositive of VRO's entire case.

       **B.**      **The Peloton Bike and Treadmill Do Not Communicate To Or Receive From The Leaderboard Server Multiple Performance Parameters.**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

The limitations of the asserted independent claims all require that ***multiple performance***

***parameters*** be obtained, communicated, received by each fitness equipment and be the basis for

SMRH:4847-2192-8091.1

the displayed comparison.  (SoF ¶¶ 12, 20).  For example, the relevant limitations of claim 1 of the

'513 patent are:

> logic configured to obtain first performance *parameters* from the at least one operating component;
>
> logic configured to communicate the first performance *parameters* to a remote fitness equipment via the wide-area network and the server;
>
> logic configured to receive second performance *parameters* communicated from at least one remote fitness equipment;
>
> …
>
> and logic configured to drive the display in response to both the first and second performance *parameters*, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed

(SoF ¶ 12).  In every instance, the independent claims' express language uses the plural

"parameter**s**."  (SoF ¶ 12, 20).



████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

**C.      The Peloton Treadmill's Calculated Total Output is not a "Performance Parameter" As Required Under Claims 1 and 6.**

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Specifically, claim 1 provides that the fitness equipment must have "logic configured to obtain first performance parameters from the at least one operating component."  (SoF ¶ 12).  Claim 1's plain language expressly requires that the "performance parameter" be obtained from the operating component. (*Id.*).  If the "performance parameter" is obtained from something other than "at least one operating component" then there is no infringement.  (*Id.*).

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

5 ████████████████████████████████████████████





Because the treadmill does not infringe the asserted independent claims, it does not infringe the asserted dependent claims. *See Ferring*, at 1411 ("[o]ne who does not infringe an independent claim cannot infringe a claim dependent (and thus containing all the limitations of) that claim.").

**D.    The Peloton Bike And Treadmill Do Not Offer Simulated Interactive Exercise Events.**

The last limitation of claim 1 of the '513 patent requires "that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events."  (SoF ¶ 12). As set forth in the Abstract and Summary of the Invention, the '513 patent is "generally directed to a computerized fitness equipment that is designed to ***simulate***, emulate, or implement ***actual race conditions*** with other users."  (SoF ¶ 4).  In other words, the patent is directed not to simulating exercise, which is real, but simulating a race between remote users, which is not real and thus simulated.  A simulated exercise event (*e.g.*, a simulated race) is by its definition not a real exercise event (*e.g.*, an actual race).

Peloton, on the other hand, offers users the ability to take live or on-demand group fitness classes from their home over the internet that are real exercise events with real participants on real exercise equipment.  (SoF ¶ 75).  These Peloton classes are like on-line classes offered by universities, which are real classes and not simulated.  Peloton's group fitness classes are not "simulated simulate interactive exercise events" under any plain and ordinary interpretation , and thus do not meet the last limitation of claim 1.

**E.    There Is No Evidence Of "Logic" On The Peloton Bike And Treadmill To Perform The Claim Limitations.**

Lenz has no evidence to support his opinions that the Peloton bike and treadmill meet any "logic configured to" claim limitations of claims 1 and 6.  ██████████████████

████████████████████████████████████████████████████

██████████████      ████████████████████████████████

---

[6] Peloton is filing herewith a motion to exclude these source code opinions of Lenz and incorporates that motion herein.

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ As such,

VRO cannot prove that the Peloton bike and treadmill meet the "logic configured to" claim

limitations of independent claims 1 and 6 of the '513 patent.

### F.    There Is No Evidence Of The "Computer Program Executed By The Server" Element From Claim 1 For The Peloton Bike And Treadmill

Similar to the section above, Lenz has no evidence to support his opinions that the Peloton

bike and treadmill meet claim 1's final "computer program executed by the server" limitation.

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████ Without Dr. Shasha, VRO cannot prove that the Peloton bike or treadmill meet this

claim element, which is dispositive of claim 1 and its dependent claims 2-5.

### G.    The Peloton Bike and Treadmill Do Not Have or Use "Course Data."

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████████████ In its claim construction order, the Court

rejected VRO's proposed construction of "course."   (SoF ¶ 18).   Because Lenz's opinion on

"course" is based entirely on arguments rejected by this Court during the claim construction

process, it should be excluded as the Court has already found that Peloton's classes do not include

a "course." (SoF ¶ 18).  The Peloton bike and treadmill do not infringe claim 5 of the '513 patent

as a matter of law.

## IV.    THE ASSERTED CLAIMS OF THE '513 PATENT ARE INVALID.

There is no genuine dispute as to any material fact that the '513 patents' asserted claims are invalid as anticipated because the prior art discloses every element of these claims.[7]

### A.    U.S. Patent No. 6,997,852 to Watterson Anticipates and Invalidates The Asserted Claims of the '513 Patent.

U.S. Patent No. 6,997,852 to Watterson ("Watterson") was filed on February 2, 2001 and is therefore prior art to the '513 patent under 35 U.S.C. §102(e) (pre-AIA).[8]  (SoF ¶ 76).  Like the '513 patent, Watterson discloses a system for interactive fitness including connecting multiple remotely located exercise devices over a network, and sharing performance parameters between these exercise devices to simulate races.  (SoF ¶ 77).  Watterson explicitly discloses each limitation of the '513 patent's asserted claims and therefore anticipates and renders these claims invalid. ▮

███████████████████████████████████████████████████████

███████████████████  Nonetheless, Lenz was explicitly asked whether Watterson expressly disclosed each limitation of claim 1.  The below chart catalogs Lenz's deposition admissions.

| Claim | '513 Claim Limitation | Watterson Disclosed | Lenz Admitted |
|---|---|---|---|
| 1 | A system for interactive fitness comprising: a server | SoF ¶ 80 | See    2) below |
| | a plurality of geographically-separated fitness equipment configured for communication with the server via a wide-area network, each of the fitness equipment comprising: | SoF ¶ 86 | SoF ¶87 |
| | at least one operating component | SoF ¶ 88 | SoF ¶ 89 |

---

[7] Peloton is moving for summary judgment of invalidity on these particular three pieces of prior art, but Peloton is not waiving its arguments regarding the additional anticipatory prior art references and obviousness arguments submitted in the expert report of Mr. Lee Rawls submitted on March 1, 2019.

[8] 35 U.S.C. §102(e) (pre-AIA) provides a person shall not be entitled to a patent if "the invention was described in — … (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent."

| | | | |
|---|---|---|---|
| | logic configured to obtain first performance parameters from the at least one operating component | SoF ¶ 90 | SoF ¶ 91 |
| | logic configured to communicate the first performance parameters to a remote fitness equipment via the wide-area network and the server | SoF ¶ 92 | SoF ¶ 93 |
| | logic configured to receive second performance parameters communicated from at least one remote fitness equipment | SoF ¶ 94 | SoF ¶ 95 |
| | a communication interface through which data may be communicated to and from the fitness equipment; | SoF ¶ 96 | SoF ¶ 97 |
| | a display associated with the fitness equipment | SoF ¶ 98 | SoF ¶ 99 |
| | and logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed | SoF ¶ 100, 102, 103 | See   1) below |
| | and a computer program executed by the server to configure the server for coordinating the communication among the plurality of fitness equipment, such that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events | SoF ¶ 106 | See   2) below |
| 6 | An interactive fitness equipment comprising: at least one operating component configured to provide an aspect of exercise for a user of the fitness equipment | SoF ¶ 88 | SoF ¶ 89 |
| | logic configured to obtain first performance parameters from the at least one operating element | SoF ¶ 90 | SoF ¶ 91 |
| | logic configured to communicate the first performance parameters to a remote fitness equipment | SoF ¶ 92 | SoF ¶ 93 |
| | logic configured to receive second performance parameters communicated from the remote fitness equipment | SoF ¶ 94 | SoF ¶ 95 |
| | a display associated with the fitness equipment | SoF ¶ 98 | SoF ¶ 99 |
| | and logic configured to control the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed | SoF ¶ 101-103 | See   1) below |

1)     **Watterson discloses the "logic configured to drive/control the display" limitations.**

<br>
<br>
<br>
<br>
<br>
<br>
<br>
<br>
<br>

However, had Lenz actually applied the Court's construction, then there is no disputed issue of material fact that Watterson explicitly discloses these limitations.  A comparison of the actual claim language to the Court's construction is instructive:

> Claim 1 language: "logic configured to drive the display in response to both the first and second performance parameters, such that *a performance comparison* between the fitness equipment and at least one remote fitness equipment *is visually displayed*"

> Court's construction: "logic configured to drive the display *to visually display a difference in performance* between the fitness equipment and at least one remote fitness equipment *based on a difference* between the first and second performance parameters"

As the Court found in its claim construction order, "the only substantive phrase added by VR Optics' proposed construction is the phrase 'a difference in performance,' which "does not alter the scope of the patent's already-claimed functions."  (Dkt. No. 112, p. 27).  The Court further

found that "the display of a 'comparison' between the performances of two users would look identical to the display of a 'difference' between the performances of those two users." (*Id.*).

Watterson discloses a display of a "comparison" between the performances of two users, which the Court has found would look identical to the display of a "difference" between the performances. Specifically, Watterson discloses:

> In the personalized race, two or more individuals schedule a live on live session, such as in a private room of personal training module 312 where they may race one against the other, ***while viewing graphical representations of the distant, time, and speed of the other competitors***. (SoF ¶ 102).

> Synchronization prepares the communication links between each competitor and generates the displays and data flow therebetween, such as but not limited to the audio and video data flows and displays that enable each competitor to view their progress against each other. For example, ***the display may include a racing track that shows a relative position of each competitor one with another, or a trail that each competitor races along***. (SoF ¶ 103).

There is no issue of material fact that Watterson explicitly discloses these limitations pursuant to the Court's construction. ███████████████████████████████████████████

███████████████████████████████████████████████

### 2)   Watterson discloses a server.

In his expert report and written opinions, Lenz did not disclose any other claim limitation that he contended was absent from Watterson. (SoF ¶ 79). During his deposition, however, he offered an undisclosed and new opinion—namely that Watterson did not disclose a server.[9] Specifically, he testified:

> Q. Do you see that there is a system for interactive fitness, including a server, displayed in those figures, 1, 7, 10 and 21, in combination?

> A. Okay. Well, Figure 1, item 18, is called a communication system. So I don't know that that includes a server. All it says is it's a communication system.

---

[9] Peloton separately moves to exclude Lenz's previously undisclosed opinions.

> Q. Do you believe that Figure 18 is intended in the '81 -- '852 Watterson patent to exclude the server?
>
> A. When I'm -- what I'm saying is there's no server identified on here. 18, according to Column 6, line 62, is a communication system.

(SoF ¶ 81).  Watterson, however, explicitly discloses that communication system 18 can be a server when it provides "each remote computer 170, **communication system 18**, and treadmill 12, 20 **may be** or include the structure and perform the function of another personal computer, **a server**, a router, a network PC, a peer device, or other common network node."  (SoF ¶ 80).  Watterson further provides:

> In one embodiment, user modules 252a-252n communicate with a communication module 254, via network 16. In one embodiment, communication module 254 has a similar configuration to that of communication system 18 and is capable of transmitting and receiving data from user modules 252a-252n.  (SoF ¶ 84).
>
> Generally, communication module 254 may act as and take the form of a server, with associated hardware and/or software modules to enable communication between the various modules of the illustrated system 250.  (SoF ¶ 85).

Watterson discloses that communication module 254 has a similar configuration to that of communication system 18 and that communication module 254 may take the form of a server. (SoF ¶¶ 83-85).  There is no issue of material fact that Watterson discloses a server.

For the last limitation of claim 1 (computer program executed by the server to configure the server for coordinating the communication), Lenz admitted that if communication system 18 is in fact a server, then Watterson expressly discloses this limitation.  He testified:

> Q. If the Court construes that the communication module of the Watterson '852 patent is, in fact, operating as a server, do you agree that the disclosure in Exhibit 7, starting on page 36, shows a computer program executed by the server to configure the server for coordinating the communication among the plurality of fitness equipment, such that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events such as live-on-live or time-adjusted competitions?
>
> A. If the Court would construe the communication module to be a server, I would probably agree with that statement, yes.

Q. Yeah. Or the -- the communication system 18, correct?

A. Communication system 18.  Excuse me.

(SoF ¶ 107).  Importantly, the Court does not have to construe the communication system 18 to be a server because Watterson explicitly does so itself.  (SoF ¶¶ 80, 83-85).

With the correct interpretation of the Court's construction of the "drive/control the display" limitations and Watterson's explicit disclosure of a server, Lenz admits that Watterson discloses all other claim limitations and that the '513 patent is invalid.  Because there is no issue of material fact that Watterson discloses each claim limitation of the asserted claims of the '513 patent, Peloton is entitled to a finding of summary judgment of invalidity.

**B.      U.S. Patent No. 6,921,351 to Hickman Anticipates and Invalidates The Asserted Claims of the '513 Patent.**

U.S. Patent No. 6,921,351 to Hickman ("Hickman") was filed on October 19, 2001 and is therefore prior art to the '513 patent under 35 U.S.C. §102(e) (pre-AIA).  (SoF ¶ 121).  Like the '513 patent, Hickman discloses a system for interactive fitness including connecting multiple remotely located exercise devices over a network, and sharing performance parameters between these exercise devices to simulate races.  (SoF ¶ 122).  Hickman explicitly discloses each limitation of each asserted claim from the '513 patent and therefore anticipates and renders the asserted claims invalid.

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████ █████ Hickman explicitly discloses these limitations and includes Figure 12. (SoF ¶ 132). Regarding Figure 12, Hickman provides:

> In FIG. 12, a "virtual exercise session" in a "virtual world" is illustrated. More particularly, an image I is developed on the screen 238 of the television 198 which simulates both the user 240 and one or more individuals 242. These one or more other individuals can be users at other local machines, or can be the "personal trainer" at another local system or at a remote system. In this instance, the user is riding a bicycle along a road 244 and is trailing behind the other user 242 also riding a bicycle. (SoF ¶ 132).



There is no issue of material fact that Hickman discloses a display of a "comparison" or "difference" between the performances of two users.



████████████████████ Specifically, Hickman discloses:

> In FIG. 10, *an* Internet linked version of the present invention is illustrated. …

> If a higher-bandwidth linkage or "link" is preferred between the local system 12a and the Internet access apparatus 196, *a cable or the like can be provided to connect the two.* Also, it will be appreciated by those skilled in the art that the Internet apparatus 196 is *only one method* for accessing the Internet, other methods including the use of personal computers, etc. (SoF ¶ 122).

---

10 ████████████████████████████████████████████

Hickman discloses that the display and/or internet access can be connected to the exercise bike by a cable, which would be then part of the fitness equipment.  (*Id.*).  This is further supported by the teachings in VRO's '513 patent, which uses the term "fitness equipment" broadly "to denote a variety of fitness equipment *and apparatus*."  (SoF ¶ 6).

Further, the inventor of the '513 patent filed a continuation application based on the '513 patent that included a claim with the same claim limitations ████████████████████ ████████████████████████████████████████ ████████████████████████████████████ The patent examiner rejected these same claim limitations in the continuation application based on Hickman's disclosures.  (SoF ¶¶ 24, 25. 29).  Like here, the rejected claim of the continuation application required that the fitness equipment comprise these same specific limitations, and the examiner found that Hickman did disclose fitness equipment comprising these limitations.  (*Id.*).  The '513 patent inventor did not respond to this rejection based on Hickman and allowed the application to go abandoned.  (SoF ¶¶ 31, 32). Because there is no issue of material fact that Hickman discloses each claim limitation of the asserted claims of the '513 patent, Peloton is entitled to a finding of summary judgment of invalidity based on this prior art patent.

**C.    UltraCoach VR Anticipates and Invalidates The Asserted Claims of the '513 Patent.**

UltraCoach VR was a commercially available product available for sale in the United States at least by 1998 and was demonstrated at public trade shows in the United States at least by the end of 1999 and is therefore prior art to the McClure '513 patent under 35 U.S.C. §102(a) (pre-

AIA)[11].  (SoF ¶¶ 144, 145, 172-175).  UltraCoach VR was a system for interactive fitness that allowed users on stationary fitness equipment the ability to virtually race other users on remotely located stationary fitness equipment and that was commercially available no later than 1998.  (SoF ¶¶ 144, 145, 148).  Paul Stewart was inventor and software engineer solely responsible for writing the software code for the UltraCoach VR product.   (SoF ¶¶ 146, 147).

During his deposition, Stewart described the operation of the UltraCoach VR.   By connecting a road bike to bike trainer (*i.e.,* a device designed to lift the road bike's rear wheel off the ground so that it could freely spin) and connecting the road bike and bike trainer to a standard PC computer, a user could race others around the world, over the Internet, in real time over courses that were "turn and grade" representations of famous race courses such as the Atlanta Olympics road course.  (SoF ¶¶ 148, 159).

Stewart was further asked whether his commercially available product practiced each of the limitations of the asserted independent claims at least as early as 1998, and he testified that the UltraCoach VR product



explicitly practiced each limitation of each asserted claim from the '513 patent and therefore anticipates and renders the asserted claims invalid.  (SoF ¶¶ 150-171).

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[11] 35 U.S.C. §102(a) (pre-AIA) provides that a person is not entitled to a patent if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████

First, Lenz ignores the teachings of the asserted '513 patent, which defines "fitness equipment" broadly, which would include a bike trainer and attached computer (apparatus). Specifically, the '513 patent provides:

> It should be understood that this term is broadly used to denote a variety of fitness equipment *and apparatus*. In this regard, the term "fitness equipment" includes, but is not limited to, treadmills, exercise bicycles (both upright and recumbent), rowing machines, skiing machines, stair or stepping machines, cross-trainers, climbing machines, etc. Most of these devices are stationary equipment that are utilized to achieve cardiovascular or aerobic exercise.  (SoF ¶ 6).

Second, Lenz ignores the deposition testimony of Paul Stewart who testified that UltraCoach VR also was sold for and used with traditional stationary bikes that had an integrated display.  (SoF ¶¶ 148, 161).  There is no issue of material fact that the UltraCoach VR product disclosed each claim limitation of the '513 patent's asserted claims and summary judgment is proper.

## V.     CONCLUSION

There is no genuine dispute as to material facts that Peloton's bike and treadmill do not practice all of the limitations of any asserted claim of the '513 patent, and therefore Peloton is entitled to a judgment of non-infringement.  Further, there is no genuine dispute as to material facts the '513 patent is invalid under 35 U.S.C. § 102 as being fully anticipated by Watterson, Hickman and UltraCoach VR.

Dated: New York, New York
       July 1, 2019

Respectfully submitted,

/s/ *Steven G. Schortgen*

Steven G. Schortgen (admitted *Pro Hac Vice*)
  sschortgen@sheppardmullin.com
Jennifer Klein Ayers (admitted *Pro Hac Vice*)
  jayers@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
2200 Ross Avenue, Suite 2400
Dallas, Texas 75201-6776
Telephone: (469) 391-7400
Facsimile: (469) 391-7401

Paul W. Garrity
  pgarrity@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

Jonathan Hangartner
  jon@x-patents.com
**X-PATENTS, APC**
5670 La Jolla Boulevard
La Jolla, California 92037
Telephone: (858) 454.4313
Facsimile: (858) 454.4314

**ATTORNEYS FOR DEFENDANT AND THIRD-PARTY PLAINTIFF PELOTON INTERACTIVE, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 1, 2019, the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system.

/s/ *Steven G. Schortgen*
Steven G. Schortgen