# EXHIBIT 51



Highly Confidential – Attorneys' Eyes Only

PELOTON032050

# EXHIBIT 52



Highly Confidential - Attorneys' Eyes Only

# EXHIBIT 53



Highly Confidential - Attorneys' Eyes Only

PELOTON0286984

# EXHIBIT 54

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| | Application Number | 13956087 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Filing Date | 07/31/2013 |
| | First Named Inventor | John Paul Foley, et al. |
| *(Use as many sheets as necessary)* | Art Unit | |
| | Examiner Name | |
| Sheet 1 of 9 | Attorney Docket Number | PEL-1 |

| U. S. PATENT DOCUMENTS | | | | | |
|---|---|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
| | | US- D532063 | 11-14-2006 | Myong Han Kim, et al. | |
| | | US- 7901323 | 03--08-2011 | Brady A. Olason, et al. | |
| | | US- 20010053735 | 12-20-2001 | Michael Alvarez Cohen, et al. | |
| | | US- 20070197345 | 08-23-2007 | Gregory Allen Wallace, et al. | |
| | | US- 7603255 | 10-13-2009 | Charles Whipple Case, Jr., et al. | |
| | | US- 8021270 | 09-20-2011 | Michael D'Eredita | |
| | | US- 8068858 | 11-29-2011 | Jon H. Werner, et al. | |
| | | US- 8092344 | 01-10-2012 | Roberto Tagliabue | |
| | | US- 20080096726 | 04-24-2008 | Raymond W. Riley, et al. | |
| | | US- 20080125288 | 05-29-2008 | Charles Whipple Case | |
| | | US- 5259611 | 11-09-1993 | William I. Dalebout, et al. | |
| | | US- 5645509 | 07-08-1997 | Dane P. Brewer, et al. | |
| | | US- 6059692 | 05-09-2000 | Paul L. Hickman | |
| | | US- 6458060 | 10-01-2002 | Scott R. Watterson, et al. | |
| | | US- 20110172059 | 07-14-2011 | Scott Watterson, et al. | |
| | | US- 6626799 | 09-20-2003 | Scott R. Watterson, et al. | |
| | | US- 6808472 | 10-26-2004 | Paul L. Hickman | |
| | | US- 6921351 | 07-26-2005 | Paul L. Hickman, et al | |
| | | US- 7556590 | 07-07-2009 | Scott R. Watterson, et al. | |

| FOREIGN PATENT DOCUMENTS | | | | | |
|---|---|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3) [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST 16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*


EXHIBIT
Cortese 15
1/9/19 CM

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 13956087 |
| | Filing Date | 07/31/2013 |
| | First Named Inventor | John Paul Foley, et al. |
| | Art Unit | |
| | Examiner Name | |
| Sheet 2 of 9 | Attorney Docket Number | PEL-1 |

| | | U. S. PATENT DOCUMENTS | | | |
|---|---|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Document Number<br><br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
| | | US- 7789800 | 09-07-2010 | Scott R. Watterson, et al. | |
| | | US- 20070254778 | 11-01-2007 | Darren C. Ashby | |
| | | US- 20110071003 | 03-24-2011 | Scott E. Watterson, et al. | |
| | | US- 4844451 | 07-04-1989 | George B. Bersonnet, et al. | |
| | | US- 4880225 | 11-14-1989 | James F. Lucas, et al. | |
| | | US- 4932650 | 06-12-1990 | Curt G. Bingham, et al | |
| | | US- 4955599 | 09-11-1990 | George Bersonnet, et al. | |
| | | US- 4971316 | 11-20-1990 | William T. Dalebout, et al. | |
| | | US- 4981294 | 01-01-1991 | William T. Dalebout, et al. | |
| | | US- 5000444 | 03-19-1991 | William T. Dalebout, et al. | |
| | | US- 5014980 | 05-14-1991 | George B. Bersonnet, et al. | |
| | | US- 5149312 | 09-22-1992 | Harold B. Croft, et al. | |
| | | US- 5203826 | 04-20-1993 | William T. Dalebout | |
| | | US- 5247853 | 09-28-1993 | William T. Dalebout | |
| | | US- 5259611 | 11-09-1993 | William T. Dalebout, et al. | |
| | | US- 5645509 | 07-08-1997 | Dane P. Brewer, et al. | |
| | | US- 6059692 | 05-09-2000 | Paul J. Hickman | |
| | | US- 6171217 | 01-09-2001 | Gordon L. Cutler | |
| | | US- 6458060 | 10-01-2002 | Scott R. Watterson, et al. | |

| | | FOREIGN PATENT DOCUMENTS | | | | |
|---|---|---|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br><br>Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3) [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 13956087 |
| | Filing Date | 07/31/2013 |
| | First Named Inventor | John Paul Foley, et al. |
| | Art Unit | |
| | Examiner Name | |
| Sheet  3  of  9 | Attorney Docket Number | PEL-1 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.¹ | Document Number — Number-Kind Code² *if known* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 6626799 | 09-30-2003 | Scott R. Watterson, et al. | |
| | | US- 6808472 | 10-26-2004 | Paul R. Hickman | |
| | | US- 6918858 | 07-19-2005 | Scott R. Watterson, et al. | |
| | | US- 6921351 | 07-26-2005 | Paul L. Hickman, et al. | |
| | | US- 6997852 | 02-14-2006 | Scott R. Watterson, et al. | |
| | | US- 7060006 | 06-13-2006 | Scott R. Watterson, et al. | |
| | | US- 7166062 | 01-23-2007 | Scott R. Watterson, et al. | |
| | | US- 7166064 | 01-23-2007 | Scott R. Watterson, et al. | |
| | | US- 7455622 | 11-25-2008 | Scott R. Watterson, et al. | |
| | | US- 7537546 | 05-26-2009 | Scott R. Watterson, et al. | |
| | | US- 7549947 | 06-23-2009 | Paul L. Hickman | |
| | | US- 7556590 | 07-07-2009 | Scott R. Watterson, et al. | |
| | | US- 7575536 | 08-28-2009 | Paul L. Hickman | |
| | | US- 7625315 | 12-01-2009 | Paul L. Hickman | |
| | | US- 7637847 | 12-29-2009 | Paul L. Hickman | |
| | | US- 7645213 | 01-12-2010 | Scott R. Watterson, et al. | |
| | | US- 7789800 | 09-07-2010 | Scott R. Watterson, et al. | |
| | | US- 7857731 | 12-29-2010 | Paul L. Hickman, et al. | |
| | | US- 7862478 | 01-04-2011 | Scott R. Watterson, et al. | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.¹ | Foreign Patent Document — Country Code³ ·Number⁴ ·Kind Code⁵ *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3) ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

| Substitute for form 1449/PTO | | | **Complete if Known** | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | 13956087 |
| | | | Filing Date | 07/31/2013 |
| | | | First Named Inventor | John Paul Foley, et al. |
| | | | Art Unit | |
| | | | Examiner Name | |
| Sheet | 4 | of 9 | Attorney Docket Number | PEL-1 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 7980996 | 07-19-2011 | Paul L. Hickman | |
| | | US- 7981000 | 07-19-2011 | Scott R. Watterson, et al. | |
| | | US- 8298123 | 10-30-2012 | Paul L. Hickman | |
| | | US- 20070254778 | 11-01-2007 | Darren C. Ashby | |
| | | US- 20110071003 | 03-24-2011 | Scott R. Watterson, et al. | |
| | | US- 20110172059 | 07-14-2011 | Scott R. Watterson, et al. | |
| | | US- 5512025 | 04-20-1996 | Willaim T. Dalebout, et al. | |
| | | US- 5527245 | 06-18-1996 | William T. Dalebout, et al. | |
| | | US- 5529553 | 06-25-1996 | Kurt E. Finlayson | |
| | | US- 5591106 | 01-07-1997 | William T. Dalebout, et al. | |
| | | US- 5595556 | 01-21-1997 | William T. Dalebout, et al. | |
| | | US- 5645509 | 07-08-1997 | Dane P. Brewer, et al. | |
| | | US- 5662557 | 09-02-1997 | Scottt R. Watterson, et al. | |
| | | US- 5669857 | 09-23-1997 | Scottt R. Watterson, et al. | |
| | | US- 5672140 | 09-30-1997 | Scottt R. Watterson, et al. | |
| | | US- 5674156 | 10-07-1997 | Scottt R. Watterson, et al. | |
| | | US- 5674453 | 10-07-1997 | Scottt R. Watterson, et al. | |
| | | US- 5676624 | 10-14-1997 | Scottt R. Watterson, et al. | |
| | | US- 5683332 | 11-04-1997 | Scottt R. Watterson, et al. | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document — Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| | Application Number | 13956087 |
| **INFORMATION DISCLOSURE** | Filing Date | 07/31/2013 |
| **STATEMENT BY APPLICANT** | First Named Inventor | John Paul Foley, et al. |
| *(Use as many sheets as necessary)* | Art Unit | |
| | Examiner Name | |
| Sheet 5 of 9 | Attorney Docket Number | PEL-1 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or<br>Applicant of Cited Document | Pages, Columns, Lines, Where<br>Relevant Passages or Relevant<br>Figures Appear |
|---|---|---|---|---|---|
| | | US- 5702325 | 12-30-1997 | Scottt R. Watterson, et al. | |
| | | US- 5704879 | 01-06-1998 | Scottt R. Watterson, et al. | |
| | | US- 5718657 | 02-17-1998 | William T. Dalebout, et al. | |
| | | US- 5722922 | 03-03-1998 | Scottt R. Watterson, et al. | |
| | | US- 5743833 | 04-28-1998 | Scottt R. Watterson, et al. | |
| | | US- 5772560 | 06-30-1998 | Scottt R. Watterson, et al. | |
| | | US- 5827155 | 10-27-1998 | Jon F. Jensen, et al. | |
| | | US- 5860893 | 01-19-1999 | Scottt R. Watterson, et al. | |
| | | US- 5860894 | 01-19-1999 | William T. Dalebout, et al. | |
| | | US- 5899834 | 05-04-1999 | William T. Dalebout, et al. | |
| | | US- 6033347 | 03-07-2000 | William T. Dalebout, et al. | |
| | | US- 6280362 | 08-28-2001 | William T. Dalebout, et al. | |
| | | US- 6312363 | 11-06-2001 | Scottt R. Watterson, et al. | |
| | | US- 6350218 | 02-26-2002 | William T. Dalebout, et al. | |
| | | US- 6458060 | 10-01-2002 | Scott R. Watterson, et al. | |
| | | US- 6471622 | 10-29-2002 | Rodney L. Hammer, et al. | |
| | | US- 6626799 | 09-30-2003 | Scott R. Watterson, et al. | |
| | | US- 6730002 | 05-04-2004 | Patrick Hald, et al. | |
| | | US- 6761667 | 07-13-2004 | Gordon L. Cutler, et al. | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]·Number[4]·Kind Code[5] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or<br>Applicant of Cited Document | Pages, Columns, Lines,<br>Where Relevant Passages<br>Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3) [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| | Application Number | 13956087 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Filing Date | 07/31/2013 |
| | First Named Inventor | John Paul Foley, et al. |
| *(Use as many sheets as necessary)* | Art Unit | |
| | Examiner Name | |
| Sheet 6 of 9 | Attorney Docket Number | PEL-1 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 6918858 | 07-19-2005 | Scott R. Watterson, et al. | |
| | | US- 6974404 | 12-13-2005 | Scott R. Watterson, et al. | |
| | | US- 6997852 | 02-14-2006 | Scott R. Watterson, et al. | |
| | | US- 7060006 | 06-13-2006 | Scott R. Watterson, et al. | |
| | | US- 7060008 | 06-13-2006 | Scott R. Watterson, et al. | |
| | | US- 7166062 | 01-23-2007 | Scott R. Watterson, et al. | |
| | | US- 7166064 | 01-23-2007 | Scott R. Watterson, et al. | |
| | | US- 7192388 | 03-20-2007 | Willaim T. Dalebout, et al. | |
| | | US- 7285075 | 10-23-2007 | Gordon Cutler, et al. | |
| | | US- 7455622 | 11-25-2008 | Scott R. Watterson, et al. | |
| | | US- 7510509 | 03-31-2009 | Paul L. Hickman | |
| | | US- 7537546 | 05-26-2009 | Scott R. Watterson, et al. | |
| | | US- 7537549 | 05-26-2009 | Gerald Nelson, et al. | |
| | | US- 7540828 | 06-02-2009 | Scott R. Watterson, et al. | |
| | | US- 7549947 | 06-23-2009 | Paul L. Hickman, et al. | |
| | | US- 7556590 | 07-07-2009 | Scott R. Watterson, et al. | |
| | | US- 7575536 | 08-18-2009 | Paul L. Hickman | |
| | | US- 7618350 | 11-17-2009 | William T. Dalebout, et al | |
| | | US- 7625315 | 12-01-2009 | Paul L. Hickman | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 13956087 |
| | Filing Date | 07/31/2013 |
| | First Named Inventor | John Paul Foley, et al. |
| | Art Unit | |
| | Examiner Name | |
| Sheet 7 of 9 | Attorney Docket Number | PEL-1 |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 7628730 | 12-08-2009 | Scott R. Watterson, et al. | |
| | | US- 7637847 | 12-29-2009 | Paul L. Hickman | |
| | | US- 7645212 | 01-12-2010 | Darren C. Ashby, et al. | |
| | | US- 7658698 | 02-09-2010 | Chad R. Pacheco, et al. | |
| | | US- 7674205 | 03-09-2010 | William T. Dalebout, et al. | |
| | | US- 7713171 | 05-11-2010 | Paul L. Hickman | |
| | | US- 7713172 | 05-11-2010 | Scott R. Watterson, et al. | |
| | | US- 7717828 | 05-18-2010 | Roy Simonson, et al. | |
| | | US- 7740563 | 06-22-2010 | William T. Dalebout, et al. | |
| | | US- 7766797 | 08-03-2010 | William T. Dalebout, et al. | |
| | | US- 7775940 | 08-17-2010 | William T. Dalebout, et al. | |
| | | US- 7789800 | 09-07-2010 | Scott R. Watterson, et al. | |
| | | US- 7857731 | 12-28-2010 | Paul L. Hickman, et al. | |
| | | US- 7862478 | 01-04-2011 | Scott R. Watterson, et al. | |
| | | US- 7862483 | 01-04-2011 | Rick W. Hendrickson, et al. | |
| | | US- 7909740 | 03-22-2011 | William T. Dalebout, et al. | |
| | | US- 7980996 | 07-19-2011 | Paul L. Hickman | |
| | | US- 7981000 | 07-19-2011 | Scott R. Watterson, et al. | |
| | | US- 8029415 | 10-04-2011 | Darren C. Ashby, et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST 16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office: U.S DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| | Application Number | 13956087 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Filing Date | 07/31/2013 |
| | First Named Inventor | John Paul Foley, et al. |
| (Use as many sheets as necessary) | Art Unit | |
| | Examiner Name | |
| Sheet 8 of 9 | Attorney Docket Number | PEL-1 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.¹ | Document Number — Number-Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 8298123 | 10-30-2012 | Paul L. Hickman | |
| | | US- 20080051256 | 02-28-2008 | Darren C. Ashby, et al. | |
| | | US- 20080300110 | 12-04-2008 | Tony Smith, et al. | |
| | | US- 7575536 | 08-18-2009 | Paul L. Hickman | |
| | | US- 6902513 | 06-07-2005 | Daniel R. McClure | |
| | | US- 20080096725 | 04-24-2008 | Dennis L. Keiser | |
| | | US- 7874957 | 01-25-2011 | Elisa Hurwitz, et al. | |
| | | US- 20080015089 | 01-17-2008 | Elisa Hurwitz, et al. | |
| | | US- 6921351 | 07-26-2005 | Paul L. Hickman, et al. | |
| | | US- 7465257 | 12-16-2008 | Robert Bowman Morgan, Jr | |
| | | US- 20070232452 | 10-04-2007 | Reed Hanoun | |
| | | US- 20090098980 | 04-16-2009 | Rolland M. Waters | |
| | | US- 20090233769 | 09-17-2009 | Timothy Pryor | |
| | | US- 5089960 | 02-18-1992 | James S. Sweeney, Jr. | |
| | | US- 5462503 | 10-31-1995 | Michael H. Benjamin, et al. | |
| | | US- 5466200 | 11-14-1995 | W. Thatcher Ulrich, et al. | |
| | | US- 5690582 | 11-25-1997 | W. Thatcher Ulrich, et al. | |
| | | US- 5888172 | 03-30-1999 | Bryan DeWitt Andrus, et al. | |
| | | US- 5890995 | 04-06-1999 | Aaron F. Bobick, et al. | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.¹ | Foreign Patent Document — Country Code³·Number⁴·Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3) ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST 16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | Application Number | 13956087 |
| | Filing Date | 07/31/2013 |
| | First Named Inventor | John Paul Foley, et al. |
| | Art Unit | |
| | Examiner Name | |
| Sheet 9 of 9 | Attorney Docket Number | PEL-1 |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Document Number — Number-Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 6059692 | 05-09-2000 | Paul L. Hickman | |
| | | US- 6155927 | 12-05-2000 | Jacques Levasseur, et al. | |
| | | US- 6283896 | 09-04-2001 | Sarah Grunfeld, et al. | |
| | | US- 6749537 | 06-15-2004 | Paul L. Hickman | |
| | | US- 6808472 | 10-26-2004 | Paul L. Hickman | |
| | | US- 6921351 | 07-26-2005 | Paul L. Hickman, et al. | |
| | | US- 7060006 | 06-12-2006 | Scott R. Watterson, et al. | |
| | | US- 7166064 | 01-23-2007 | Scott R. Watterson, et al. | |
| | | US- RE36574 | 02-15-2000 | Peter Hochstein, et al. | |
| | | US- 5213555 | 05-25-1993 | Robert L. Hood, et al. | |
| | | US- 20100234185 | 09-16-2010 | Jonathan B. Watt, et al. | |
| | | US- 532063 | 11-14-2006 | Myong Han Kim, et al. | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Foreign Patent Document — Country Code³·Number⁴·Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3) ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EXHIBIT 55

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Coffey D
1/3/19

MSFT-00000019_0001



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT 56

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MSFT-00000032_0001

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# EXHIBIT 57

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MSFT-00000119_0001

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

> To: Geoffrey Hoggard (CELA)
> Subject: RE: Call to Discuss Patent Sale
> When: Wednesday, March 16, 2016 9:00 AM-9:30 AM (UTC-08:00) Pacific Time (US & Canada).
> Where: Skype Meeting
>
> Need a call in code
>
> _____
> This message and any attachments may contain confidential information protected by the attorney-client or other privilege. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error, and then delete the message from your system.
>

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MSFT-00000121_0004



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY





HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# EXHIBIT 58

1              UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF NEW YORK

3

4    VR OPTICS, LLC,

5           Plaintiff,

6    v.                                    Civil Action No.
                                           1:16-cv-06392-JPO
7    PELOTON INTERACTIVE, INC.,

8           Defendant.
     _____

9

10   PELOTON INTERACTIVE, INC.,

11          Third-Party Plaintiff,

12   v.

13   VILLENCY DESIGN GROUP, LLC,
     ERIC VILLENCY, AND JOSEPH
14   COFFEY,

15          Third-Party Defendants.
     _____

16

17

18      ***HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY***

19          VIDEOTAPED 30(b)(6) DEPOSITION OF

20                  GEOFFREY HOGGARD

21          November 16, 2018; 9:01 a.m.

22          300 112th Avenue SE, 2nd Floor

23                Bellevue, Washington

24

25   REPORTED BY:  Darcy J. Brokaw, CCR No. 3455, RPR, CRR

```
 1   APPEARANCES:

 2

 3   For the Plaintiff, VR Optics, LLC:

 4              BAKER HOSTETLER
                MICHAEL D. GANNON, ESQ.
 5              191 North Wacker Drive, Suite 3100
                Chicago, Illinois  60606
 6              312.416.6294
                mgannon@bakerlaw.com

 7

 8   For the Plaintiff, VR Optics, LLC, and the Third-Party
     Defendants, Joseph Coffey, Eric Villency, and Villency
 9   Design Group:

10              HARTMANN DOHERTY ROSA BERMAN BULBULIA
                PAUL S. DOHERTY III, ESQ.
11              65 Route 4 East
                River Edge, New Jersey  07661
12              201.441.9056
                pdoherty@hdrbb.com

13

14   For the Defendant and the Third-Party Plaintiff, Peloton
     Interactive, Inc.:
15
                SHEPPARD MULLIN
16              GALYN GAFFORD, ESQ.
                2200 Ross Avenue, 24th Floor
17              Dallas, Texas  75201
                469.391.7400
18              ggafford@sheppardmullin.com

19
     For Microsoft Corporation, Microsoft Technology
20   Licensing, LLC, and the deponent:

21              MICROSOFT CORPORATION
                DAVID E. KILLOUGH, ESQ.
22              One Microsoft Way
                Redmond, Washington  98052
23              425.703.8865
                davkill@microsoft.com

24

25   Also present:  Lucas Cheadle, Videographer
```

























































# EXHIBIT 59

From: Joe Coffey on behalf of Joe Coffey -jcoffey@villency.com-
(jcoffey@villency.com)
Sent: Wednesday, August 10, 2016 6:51:31 PM
To:   Graham Stanton (Graham Stanton -graham@pelotoncycle.com-)
Cc:   esv@villency.com ( esv@villency.com -esv@villency.com-)
Bcc:
Subject:   Re: Patent

Hey Graham,

Thanks for reaching out.

Think next best step it to have a call.

Lemme know your availability.

Joe

> On Aug 10, 2016, at 7:35 PM, Graham Stanton <graham.@pelotoncycle.com>
wrote:
>
> Joe and Eric,
>
> John just gave me the update on your new acquisition. How much would
you want for for us to buy the patent from you?
>
> Graham



# EXHIBIT 60

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| VR OPTICS, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>      Defendant. | Civil No. 1:16-cv-6392 (JPO) |
| PELOTON INTERACTIVE, INC.,<br><br>      Third-Party Plaintiff,<br><br>v.<br><br>VILLENCY DESIGN GROUP, LLC, ERIC VILLENCY, AND JOSEPH COFFEY,<br><br>      Third-Party Defendants. | **DEFENDANT AND THIRD-PARTY PLAINTIFF PELOTON INTERACTIVE, INC.'S RESPONSES TO THIRD-PARTY DEFENDANTS' REQUESTS FOR ADMISSION, SET ONE** |

PROPOUNDING PARTIES: Villency Design Group, LLC; Eric Villency; Joseph Coffey

RESPONDING PARTY:     Peloton Interactive, Inc.

SET NO.:          ONE

       Pursuant to Federal Rule of Civil Procedure 36, Defendant and Third-Party Plaintiff

Peloton Interactive, Inc. ("Peloton"), by and through its undersigned counsel, hereby objects and

responds to Third-Party Defendants Villency Design Group, LLC's, Eric Villency's, and Joseph

Coffey's ("Third-Party Defendants") First Set of Requests for Admission as follows:

<u>**PRELIMINARY STATEMENT**</u>

       Any portion of any request not specifically admitted is denied, and Peloton reserves the

right to supplement or add specific objections as additional facts or understandings arise.

By responding to Third-Party Defendants' Requests for Admission, Peloton does not waive any objection that may be applicable to: (1) the use, for any purpose, by Third-Party Defendants of any information or documents given in response to Third-Party Defendants' Requests; or (2) the admissibility, privilege, relevance, authenticity, or materiality of any of the information or other documents to any issue in this case. Peloton expressly reserves the right to object to the use of these responses, the subject matter contained herein, or the documents produced in connection herewith during any subsequent proceeding, including the trial of this or any other action.

Peloton's responses to Third-Party Defendants' Requests for Admission are made to the best of Peloton's present knowledge, information, and belief. Discovery in this case continues and Peloton's investigation is ongoing, and Peloton is currently gathering and determining the accuracy and completeness of the information available. Accordingly, Peloton reserves the right to supplement or amend these responses as discovery in this matter progresses, should future discovery or investigation indicate that supplementation or amendment is necessary. Peloton also reserves the right to produce or use any documents produced and/or discovered after service of these responses in support of, or in opposition to, any motion, in depositions, or at trial.

## GENERAL OBJECTIONS

1.   Because Peloton has not concluded its discovery, investigation, and review of the accuracy and completeness of the information available, Peloton specifically reserves the right to amend and supplement these objections and responses.

2.   To the extent Third-Party Defendants' definitions or instructions purport to impose obligations on Peloton beyond those set forth in the Federal Rules of Civil Procedure, Peloton objects to such definitions or instructions.

3.      Peloton's reservation of rights and general objections relate to all discovery responses.  To the extent any one or more of the general objections are cited in a specific response, the citation(s) are provided because they are believed to be particularly applicable to the specific Request, and such citation(s) is/are not to be construed as a waiver of any other general objection to that Request.

## OBJECTIONS TO DEFINITIONS

4.      Peloton objects to the definitions of "you" and "your" and "Peloton" because they are overly broad, without reasonable limitation in scope, vague, ambiguous, and unintelligible as they include not only Peloton Interactive, Inc., but also "any company name under which Peloton is doing business; and its predecessor or successor, and any past or present parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, distributors, salespersons, sales representatives, and each person acting or purporting to act on its or their behalf or under its or their control."  The definitions of these terms extend the scope of the Requests to information beyond the possession, custody, or control of Peloton Interactive, Inc., and seek admission as to distinct parties separate and apart from Peloton Interactive, Inc.  Peloton will construe the Requests as being limited to Peloton Interactive, Inc. and its employees involved in the subject claims and will respond accordingly.

5.      Peloton objects to the definition of "VDG" because it is overly broad, without reasonable limitation in scope, vague, ambiguous, and unintelligible as it includes not only Villency Design Group, LLC, but also "its directors, officers, employees, agents, distributors, salespersons, sales representatives, and each person acting or purporting to act on its or their behalf or under its or their control."  The definition of this term extends the scope of the Requests to

3

information beyond Peloton's possession, custody, or control.  Peloton will construe the definition

in the Requests as being limited to Villency Design Group, LLC and will respond accordingly.

6.      Peloton objects to the definition of "'513 Patent" to the extent that any Request

with this term seeks implicit admission of the validity of said patent.

7.      Peloton objects to the definition of "Peloton Bike" to the extent that any Request

with this term seeks implicit admission that the said bike infringes any patent.

8.      Peloton objects to the definition of "Peloton Interactive System" to the extent that

any Request with this term seeks implicit admission that the said system infringes any patent.

**REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION No. 1**

The Peloton Bike has a "ride only" function.

**RESPONSE TO REQUEST FOR ADMISSION No. 1**

Peloton incorporates its objection to the definition of the term "Peloton Bike" as set forth

above.  Peloton objects to this Request as vague and ambiguous as to the undefined term "ride

only" because it fails to specify the features or capabilities to which it refers.

Subject to and without waiving the foregoing objections, Peloton responds as follows:

Peloton admits that a Peloton exercise bicycle may mechanically be pedaled regardless of whether

the device has power.

**REQUEST FOR ADMISSION No. 2**

The Peloton Bike's "ride only" function means that the rider rides the Peloton Bike without

being logged-in to the Peloton Interactive System.

**RESPONSE TO REQUEST FOR ADMISSION No. 2**

Peloton incorporates its objections to the definitions of the terms "Peloton Bike" and

4

"Peloton Interactive System" as set forth above.  Peloton objects to this Request as impermissibly compound, conjunctive or disjunctive in violation of Federal Rule of Civil Procedure 36(a)(2).

Subject to and without waiving the foregoing objections, Peloton responds as follows: Peloton admits that a Peloton exercise bicycle may mechanically be pedaled regardless of whether the device has power.

**REQUEST FOR ADMISSION No. 3**

A rider can exercise on the Peloton Bike without the Peloton Interactive System being on.

**RESPONSE TO REQUEST FOR ADMISSION No. 3**

Peloton incorporates its objections to the definitions of the terms "Peloton Bike" and "Peloton Interactive System" as set forth above.  Peloton objects to this Request as vague and ambiguous as to the undefined term "exercise" because it fails to specify the act or method to which it refers.

Subject to and without waiving the foregoing objections, Peloton responds as follows: Peloton admits that a Peloton exercise bicycle may mechanically be pedaled regardless of whether the device has power.

**REQUEST FOR ADMISSION No. 4**

Peloton offers its riders the ability to ride the Peloton Bike as guests in Peloton's studio.

**RESPONSE TO REQUEST FOR ADMISSION No. 4**

Peloton incorporates its objections to the definitions of the terms "Peloton" and "Peloton Bike" as set forth above.  Peloton objects to this Request as vague and ambiguous as to the undefined term "studio" because it fails to specify the physical or virtual place to which it refers. Peloton objects to this Request as vague and ambiguous as to the undefined term "guests."  Peloton objects to this Request as impermissibly compound, conjunctive or disjunctive in violation of

Federal Rule of Civil Procedure 36(a)(2).

Subject to and without waiving the foregoing objections, Peloton responds as follows: Peloton admits that users can ride a Peloton exercise bicycle at the Peloton facility at 140 West 23rd Street, New York, New York 10011.

**REQUEST FOR ADMISSION No. 5**

Riders who ride the Peloton Bike as guests are not logged-in to the Peloton Interactive System.

**RESPONSE TO REQUEST FOR ADMISSION No. 5**

Peloton incorporates its objections to the definitions of the terms "Peloton Bike" and "Peloton Interactive System" as set forth above.  Peloton objects to this Request as vague and ambiguous as to the undefined term "guests" because it fails to specify the riders to which it refers. Peloton objects to this Request as impermissibly compound, conjunctive or disjunctive in violation of Federal Rule of Civil Procedure 36(a)(2).

Subject to and without waiving the foregoing objections, Peloton responds as follows: DENIED.

**REQUEST FOR ADMISSION No. 6**

The '513 Patent was disclosed in one or more Peloton patent applications.

**RESPONSE TO REQUEST FOR ADMISSION No. 6**

Peloton incorporates its objections to the definitions of the terms "'513 Patent" and "Peloton" as set forth above.  Peloton objects to this Request as vague and overbroad, and seeks information that is irrelevant to the subject matter of the litigation.

Subject to and without waiving the foregoing objections, Peloton responds as follows: ADMITTED.

**REQUEST FOR ADMISSION No. 7**

VDG's scope of work under its contracts with Peloton was limited to the physical design of the Peloton Bike.

**RESPONSE TO REQUEST FOR ADMISSION No. 7**

Peloton incorporates its objections to the definitions of the terms "VDG," "Peloton," and "Peloton Bike" as set forth above.  Peloton objects to this Request as vague and overbroad as to time, and seeks information that is irrelevant to the subject matter of the litigation.  Peloton objects to this Request as vague and ambiguous as to the undefined term "contracts" because it fails to specify the documents to which it refers.   Peloton objects to this Request as impermissibly compound, conjunctive or disjunctive in violation of Federal Rule of Civil Procedure 36(a)(2).

Subject to and without waiving the foregoing objections, Peloton responds as follows: DENIED.

**REQUEST FOR ADMISSION No. 8**

VDG's scope of work under its contracts with Peloton did not include software design, app design, or programming.

**RESPONSE TO REQUEST FOR ADMISSION No. 8**

Peloton incorporates its objections to the definitions of the terms "VDG" and "Peloton" as set forth above.  Peloton objects to this Request as vague and overbroad as to time, and seeks information that is irrelevant to the subject matter of the litigation.  Peloton objects to this Request as vague and ambiguous as to the undefined term "contracts" because it fails to specify the documents to which it refers.  Peloton objects to this Request as vague and ambiguous as to the undefined terms "software design," "app design," and "programming" because the Request fails to specify the types of activity or services to which the terms refer.  Peloton objects to this Request

as impermissibly compound, conjunctive or disjunctive in violation of Federal Rule of Civil Procedure 36(a)(2). Peloton also objects because, by its terms, the Request seeks multiple admissions as to multiple activities and services.

Subject to and without waiving the foregoing objections, Peloton responds as follows: DENIED.

**REQUEST FOR ADMISSION No. 9**

VDG did not design the Peloton Bike's integrated tablet computer.

**RESPONSE TO REQUEST FOR ADMISSION No. 9**

Peloton incorporates its objections to the definitions of the terms "VDG" and "Peloton Bike" as set forth above. Peloton objects to this Request as vague and ambiguous as to the undefined term "integrated tablet computer" because it fails to specify the item to which it refers. Peloton objects to this Request as impermissibly compound, conjunctive or disjunctive in violation of Federal Rule of Civil Procedure 36(a)(2). Peloton objects to this Request as it seeks admissions for another party and seeks admission of a fact to which Peloton cannot admit; whether VDG designed a certain product is not within Peloton's possession, custody, or control.

Subject to and without waiving the foregoing objections, Peloton responds as follows: Peloton admits that VDG did not design the form factor of the Peloton Bike's integrated tablet computer but denies that VDG's scope of work did not interface with the functions and features of the Peloton Bike's integrated tablet computer.

**REQUEST FOR ADMISSION No. 10**

VDG did not design or program the Peloton Interactive System software.

**RESPONSE TO REQUEST FOR ADMISSION No. 10**

Peloton incorporates its objections to the definitions of the terms "VDG" and "Peloton

Interactive System" as set forth above.  Peloton objects to this Request as vague and ambiguous as to the undefined terms "design" and "program" because the Request fails to specify the activity or service to which the terms refer.  Peloton objects to this Request as impermissibly compound, conjunctive or disjunctive in violation of Federal Rule of Civil Procedure 36(a)(2).  As phrased, the Request seeks multiple admissions, including acceptance of Third-Party Defendants' definitions of "VDG" and "Peloton Interactive System," and admissions as to multiple activities and services.

Subject to and without waiving the foregoing objections, Peloton responds as follows: Peloton admits that VDG did not program the Peloton Interactive System software but denies that VDG's scope of work did not interface with the functions and features of the Peloton Bike's integrated tablet computer.

## REQUEST FOR ADMISSION No. 11

Peloton obtained and relied on the advice of its patent counsel with respect to patents affecting the Peloton Interactive System.

## RESPONSE TO REQUEST FOR ADMISSION No. 11

Peloton incorporates its objections to the definitions of the terms "Peloton" and "Peloton Interactive System" as set forth above.  Peloton objects to this Request as vague and overbroad as to time, and seeks information that is irrelevant to the subject matter of the litigation.  Peloton objects to this Request as vague and ambiguous as to the undefined terms "relied on" and "affecting."   Peloton objects to this Request as impermissibly compound, conjunctive or disjunctive in violation of Federal Rule of Civil Procedure 36(a)(2).  By its terms, this Request seeks admissions as to multiple actions by Peloton, and implicit admission as to the existence and validity of certain patents.  Peloton objects to the extent this Request seeks disclosure of attorney-

client or attorney-work-product privileged information. This Requests impermissibly calls for the disclosure of attorney client communications and further calls for Peloton to draw legal conclusions concerning what patents do or do not "affect the Peloton Interactive System."

Subject to and without waiving the foregoing objections, Peloton responds as follows: Peloton admits that it has consulted with patent counsel.

**REQUEST FOR ADMISSION No. 12**

Peloton was aware of the existence of the '513 patent before August 4, 2016.

**RESPONSE TO REQUEST FOR ADMISSION No. 12**

Peloton incorporates its objections to the definitions of the terms "Peloton" and "'513 Patent" as set forth above.

Subject to and without waiving the foregoing objections, Peloton responds as follows: Admitted.

**REQUEST FOR ADMISSION No. 13**

Peloton never made any offer to Microsoft Technology Licensing, LLC to purchase the '513 patent from Microsoft Technology Licensing, LLC before August 4, 2016.

**RESPONSE TO REQUEST FOR ADMISSION No. 13**

Peloton incorporates its objections to the definitions of the terms "Peloton" and "'513 Patent" as set forth above.  Peloton further objects to this Request to the extent that it seeks a legal conclusion.

Subject to and without waiving the foregoing objections, Peloton responds as follows: Admitted.

**REQUEST FOR ADMISSION No. 14**

Soul Cycle is a competitor of Peloton.

**RESPONSE TO REQUEST FOR ADMISSION No. 14**

Peloton incorporates its objection to the definition of the term "Peloton" as set forth above. Peloton objects to this Request as vague and ambiguous as to the undefined terms "competitor," and because it seeks information that is irrelevant to the subject matter of the litigation.

Subject to and without waiving the foregoing objections, Peloton responds as follows: DENIED.

**REQUEST FOR ADMISSION No. 15**

At the time Peloton entered into its first contract with VDG, Peloton was aware that VDG had performed bicycle design work for Soul Cycle.

**RESPONSE TO REQUEST FOR ADMISSION No. 15**

Peloton incorporates its objections to the definitions of the terms "Peloton" and "VDG" as set forth above.  Peloton objects to this Request as vague and ambiguous as to the undefined term "design" because the Request fails to specify the activity or service to which the term refers. Peloton objects to this Request as impermissibly compound, conjunctive or disjunctive in violation of Federal Rule of Civil Procedure 36(a)(2).  Peloton objects to this Request as vague, and further that it seeks information that is irrelevant to the subject matter of the litigation.

Subject to and without waiving the foregoing objections, Peloton responds as follows: Admitted.

**REQUEST FOR ADMISSION No. 16**

One reason Peloton hired VDG to design the Peloton Bike was that VDG had performed bicycle design work for Soul Cycle.

**RESPONSE TO REQUEST FOR ADMISSION No. 16**

Peloton incorporates its objections to the definitions of the terms "Peloton," "VDG," and

11

"Peloton Bike" as set forth above.  Peloton objects to this Request as impermissibly compound, conjunctive or disjunctive in violation of Federal Rule of Civil Procedure 36(a)(2).  As phrased, the Request seeks multiple admissions, including acceptance of Third-Party Defendants' definitions of "Peloton," "VDG," and "Peloton Bike," that Peloton hired VDG, and implicitly that VDG was hired to design the said Peloton Bike and that VDG had performed bicycle design work for Soul Cycle.  Peloton objects to this Request to the extent it seeks admissions for another party and therefore seeks admission of a facts to which Peloton cannot admit.

Subject to and without waiving the foregoing objections, Peloton responds as follows: DENIED.

## REQUEST FOR ADMISSION No. 17

On August 10, 2016, Coffey and Villency met with John Foley at The Soho House and told him that they had purchased the '513 Patent.

## RESPONSE TO REQUEST FOR ADMISSION No. 17

Peloton incorporates its objection to the definition of the term "'513 Patent" as set forth above.  Peloton objects to this Request as impermissibly compound, conjunctive or disjunctive in violation of Federal Rule of Civil Procedure 36(a)(2).  As phrased, the Request seeks multiple admissions, including acceptance of Third-Party Defendants' definition of the "'513 Patent," that the said parties met on the said date, that the said meeting occurred at the said location, and that the parties discussed the said topic.

Subject to and without waiving the foregoing objections, Peloton responds as follows: Admitted.

//

//

Dated:  New York, New York

June 4, 2018

/s/ *Steven G. Schortgen*

Steven G. Schortgen (admitted *Pro Hac Vice*)
Jennifer Klein Ayers (admitted *Pro Hac Vice*)
**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**
2200 Ross Avenue, 24th Floor
Dallas, TX  75201-6776
Telephone: (469) 391-7400
Facsimile: (469) 391-7401
sschortgen@sheppardmullin.com
jayers@sheppardmullin.com

Paul W. Garrity
**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**
pgarrity@sheppardmullin.com
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701

Jonathan Hangartner
**X-PATENTS, APC**
5670 La Jolla Blvd.
La Jolla, CA 92037
Tel: 858.454.4313
Fax: 858.454.4314
jon@x-patents.com

**ATTORNEYS FOR DEFENDANT AND**
**THIRD-PARTY PLAINTIFF PELOTON**
**INTERACTIVE, INC.**

EXHIBIT 61

EXHIBIT

PELOTON102578



Highly Confidential - Attorneys' Eyes Only

Highly Confidential – Attorneys' Eyes Only

PELOTON102580

Highly Confidential - Attorneys' Eyes Only

PELOTON102581



Highly Confidential - Attorneys' Eyes Only

PELOTON102582

# EXHIBIT 62

CONFIDENTIAL

Page 1

1          IN THE UNITED STATES DISTRICT COURT
2             FOR THE DISTRICT OF NEW YORK
3    VR OPTICS, LLC,                    )
                                        )
4         Plaintiff                     )
                                        )
5    VS.                                )CIVIL ACTION
                                        )NO. 1:16-cv-06392 (JPO)
6    PELOTON INTERACTIVE, INC.,         )
     a Delaware Corporation,            )
7                                       )
          Defendant                     )
8    _____
9    PELOTON INTERACTIVE, INC.,         )
     a Delaware Corporation,            )
10                                      )
          Third-Party Plaintiff        )
11                                      )
     VS.                                )
12                                      )
     VILLENCY DESIGN GROUP, LLC,        )
13   ERIC VILLENCY and JOSEPH           )
     COFFEY,                            )
14                                      )
          Third-Party Defendants  )
15   _____
16         -------------------------------------
17            VIDEOTAPED ORAL DEPOSITION OF
18                   R. LEE RAWLS
19                 APRIL 25, 2019
20              ****CONFIDENTIAL****
21         -------------------------------------
22
23
24   REPORTED BY KATHRYN R. BAKER, RPR, CSR
25   JOB #159419

CONFIDENTIAL

Page 2

1          VIDEOTAPED ORAL DEPOSITION OF R. LEE RAWLS,

2     produced as a witness at the instance of the PLAINTIFF,

3     and duly sworn, was taken in the above-styled and numbered

4     cause on the 25th day of April, 2019, from 9:13 a.m. to

5     4:05 p.m., before Kathryn R. Baker, CSR, RPR, in and for

6     the State of Texas, reported by machine shorthand, at the

7     offices of Sheppard, Mullin, Richter & Hampton, LLC,

8     2200 Ross Avenue, 24th Floor, in the City of Dallas, State

9     of Texas, pursuant to the Federal Rules of Civil

10    Procedure.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

```
 1                    A P P E A R A N C E S
 2   FOR THE PLAINTIFF:
     Mr. Charles Carson
 3   BAKER & HOSTETLER
     1050 Connecticut Avenue
 4
     Washington, DC 20036
 5
 6
     -and-
 7
     Mr. James Hatten
 8   BAKER & HOSTETLER
     1170 Peachtree Street NE
 9
     Atlanta, Georgia 30309
10
11
12   FOR THE DEFENDANT/THIRD-PARTY PLAINTIFF:
     Mr. Steven Schortgen
13   Mr. Galyn Gafford
     SHEPPARD, MULLIN, RICHTER & HAMPTON
14   2200 Ross Avenue
15   Dallas, Texas 75201
16
17
18   ALSO PRESENT:
     Mr. Brandon Drake, Videographer
19
20
21
22
23
24
25
```

Page 197



EXHIBIT 63



Rawls Non-Infringement Report



Rawls Non-Infringement Report

EXHIBIT 64

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| PELOTON INTERACTIVE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:18-cv-00390-RWS-RSP |
| v. | § | |
| | § | |
| FLYWHEEL SPORTS, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Defendant Flywheel Sports, Inc. (hereinafter "Flywheel") filed a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), which is now before the Court. (Dkt. No. 17.)[1] This Motion seeks to transfer this case from the Eastern District of Texas to the Southern District of New York. Proper venue is not contested, as both parties have regular and established places of business in this district and Plaintiff has more than 100 employees at its "second headquarters" in the district. After consideration of the parties' briefing, the Court finds that Flywheel has not established that venue would be clearly more convenient in the SDNY.

### I.   APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To determine whether venue transfer is appropriate under § 1404(a), the Fifth Circuit has adopted several private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)

---

[1] The Court will not consider the new evidence that Defendant attached to its Reply Brief.  *Chrimar Systems, Inc. v. Dell, Inc.*, 2016 WL 9275408 (E.D. Tx. 2016).

("*Volkswagen II*"). The private interest factors include (1) the availability of compulsory process to secure the attendance of witnesses; (2) the cost of attendance for willing witnesses; (3) the relative ease of access to sources of proof; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *Id*.

A plaintiff's choice of venue is not an express factor in the analysis. *Seven Networks, LLC v. Google LLC*, 2:17-CV-00442-JRG, 2018 U.S. Dist. LEXIS 146375, at *8 (citing *Volkswagen II*, 545 F.3d at 315). However, a moving defendant must demonstrate that the proposed venue is clearly more convenient that the original venue. *Id*. (citing *Volkswagen II*, 545 F.3d at 315). By applying this heightened standard, the plaintiff's choice of forum is given the appropriate deference. *Id*. (citing *Volkswagen II*, 545 F.3d at 315).

Motions to transfer venue "are to be decided based on 'the situation which existed when suit was instituted.'" *Evolutionary Intelligence, LLC v. Apple, Inc*., Case No. 6:12-cv-00783, 2013 U.S. Dist. LEXIS 187467, *11 (E.D. Tex. Aug. 27, 2013) (quoting *In re EMC Corp*., 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960))). However, the analysis may consider circumstances that were "apparent at the time the suit was filed." *In re EMC Corp*., 501 Fed. Appx. at 976.

"'A district court should assess the relevance and materiality of the information the witness may provide' and where a party has 'identified witnesses relevant to [the] issues [present in a case], [] the identification of those witnesses weighs in favor of [the identifying party].'" *Seven Networks*, 2018 U.S. Dist. LEXIS 146375, at *8 (quoting *In re Genentech, Inc*., 566 F.3d 1338, 1344 (Fed.

Cir. 2009)). "[T]o properly analyze convenience, specific witnesses should be identified with, at a minimum, a general statement providing the expected relevant and material information to the litigation at hand." *Realtime Data, LLC v. Rackspace US, Inc.*, 2017 WL 772653, at *10 (E.D. Tex. Feb. 28, 2017).

## II. ANALYSIS

As an initial matter, the Court notes that this case could have been brought in the S.D.N.Y. Peloton does not contest this point. (Dkt. No. 25 at 2.) Accordingly, the Court focuses its analysis on the convenience factors to see whether SDNY is a clearly more convenient forum than EDTX.

The parties do not argue that either "the avoidance of unnecessary problems of conflict of laws" or the "familiarity of the forum with the law that will govern the case" factors weigh one way or the other. (Dkt. No. 17 at 14; *see* Dkt. No. 25 at 11–15 (providing no discussion of these factors when addressing the public interest factors).) The Court therefore finds these factors to be neutral. The Court will address each of the remaining public and private interest factors below.

### a. The availability of compulsory process to secure the attendance of witnesses

This factor is directed towards unwilling third-party witnesses. *Seven Networks,* 2018 WL 4026760, at *7 (citing *Volkswagen II*, 545 F.3d at 316). Flywheel identifies Yu Feng[2] and Christopher Sira, who were inventors of the asserted patents. (Dkt. No. 17 at 8; U.S. Pat. No. 9,174,085 at [72]; U.S. Pat. No. 9,233,276 at [72].) However, Feng is a party witness as he currently serves as Peloton's Chief Technology Officer. (Dkt. No. 25 at 7 (citing Foley Decl. at ¶ 4).) Further, Sira is willing to attend the trial, making compulsory process unnecessary for him. (*Id.* (citing Dkt. No. 25-6 at ¶ 4).) Accordingly, the Court concludes that Feng and Sira would be

---

[2] The parties discuss a Yu Feng and a Yony Feng, but it appears that both of these names are referring to the same person.

more appropriately considered under other factors and that they do not provide support for this factor.

Flywheel also identifies Eric Villency and Joseph Coffey of the Villency Design Group (hereinafter "VDG") as potential witnesses. (Dkt. No. 17 at 9.) However, the Court concludes that Villency and Coffey do not provide any support for a transfer to SDNY.

VR Optics, LLC., a company owned by Villency and Coffey, is currently asserting U.S. Patent No. 6,902,513 (hereinafter "'513 Patent") against Peloton in SDNY,[3] and Peloton filed a third-party complaint in that action against Villency, Coffey, and VDG, which is another company owned by Villency and Coffey. *VR Optics*, Dkt. No. 57 at 1–2. VR Optics, LLC purchased the '513 Patent and then sued Peloton for infringement in *VR Optics*. *VR Optics*, Dkt. No. 1 at ¶ 8 (stating within VR Optics' Complaint that "VR Optics purchased the '513 patent from Microsoft. . . .").

Flywheel states that "Villency and Coffey were involved in the development of the Peloton bike, and Peloton has alleged that their design firm [VDG] represented that Peloton's bike did not infringe certain prior art patents closely related to the Asserted Patents." (Dkt. No. 17 at 9.) Flywheel asserts that Villency and Coffey will testify about "technology at the heart of the asserted patents" and its relationship to the prior art. (Dkt. No. 28 at 3.) Flywheel asserts that the '513 Patent is one of those prior art patents and that the patent is closely related to the technology at issue in this case. (*Id*.) Peloton argues that VDG "was involved solely in the design of the physical Peloton bike" and "had zero involvement with any of the patented technology at issue in this case." (Dkt. No. 25 at 7.)

---

[3] *VR Optics, LLC v. Peloton Interactive, Inc*., 1:16-cv-06392 (S.D.N.Y.). The Court will refer to this case as "*VR Optics*."

The Court concludes that Flywheel has failed to show that Villency and Coffey will provide information that has any significant relevance to this case. While Flywheel asserts that it intends to call Villency and Coffey to testify about "technology at the heart of the asserted patents" and its relationship to the prior art, Flywheel does not explain how the technology that Villency and Coffey may testify about is at the heart of the asserted patents. (Dkt. No. 28 at 3.) This is a conclusory statement that is contradicted by the patents themselves—the claims of the asserted patents are largely directed to methods for providing live and archived cycling classes to remote users, focusing on telecommunications and the management of data rather than any aspects of the physical bike. Peloton has asserted that Villency and Coffey were only involved in the design of the physical Peloton bike, and Flywheel has not persuasively rebutted that assertion.

In the *VR Optics* case, Peloton alleged that (1) VDG represented and warranted that Peloton's bike did not infringe upon any patent rights of others and (2) VDG should therefore indemnify Peloton for the infringement claims based on the '513 Patent. (Dkt. No. 17 at 3–4 (citing Dkt. No. 17-5 at ¶ 46; *VR Optics,* Dkt. No. 42 at ¶ 46 (citing language from a Design, Development and Manufacturing Agreement between VDG and Peloton that "the Bike Intellectual Property does not and will not infringe upon the rights of any third party.")). While Flywheel points to those allegations made by Peloton for support, none of those alleged representations show that VDG's owners, Villency and Coffey, will be able to provide testimony with any significant relevance to this case, which involves entirely different patents.[4]

Flywheel does not specify Villency's or Coffey's anticipated testimony other than to say that they will talk about the technology generally. However, "[p]rior art inventors, while theoretically relevant, rarely testify, and their locations should be given little weight." *Affinity Labs*

---

[4] Peloton was asserting that VDG was responsible for incorporating the placement and design of a tablet into the structure of the stationary bike and that the stationary bike was part of the allegedly infringing system in that case.

*of Texas v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 857 (E.D. Tex. 2013) (citing *PersonalWeb Techs., LLC v. NEC Corp. of Amer., Inc.*, 2013 WL 9600333, at *8 n.13 (E.D. Tex. Mar. 21, 2013)). Here, Villency and Coffey were not even inventors of the other patent—their company, VR Optics, was assigned the patents. Thus, Villency and Coffey appear to have even less relevance to these patents than the inventor would. Because the parties have not identified any other witnesses that should be considered under this factor, the Court concludes that this factor is neutral.

### b. The cost of attendance for willing witnesses.

When considering this factor, the court should consider all potential material and relevant witnesses. *Seven Networks*, 2018 WL 4026760, at *9. However, "[t]his factor primarily concerns the convenience of nonparty witnesses," and "the convenience of party witnesses is given little weight." *Id.* (quoting *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, No. 3:10-CV-2466-D, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011)).

### i. Willing nonparty witnesses

Because Christopher Sira is a willing nonparty witness (Dkt. No. 25-6 at ¶ 4), he is appropriately considered under this factor. Flywheel asserts that Sira resides in the New York City Metropolitan Area. (Dkt. No. 17 (citing Dkt. No. 17-8 at 3) (showing Sira as having a New York City address on an application data sheet for the asserted patents)). Flywheel asserts that Sira "is likely to have relevant information regarding the development and prosecution of the Asserted Patents. . . ." (*Id.* at 8.) Sira would have to travel a much greater distance if the trial took place in EDTX instead of SDNY, suggesting that SDNY would be more convenient for him.

Peloton argues that a trial in EDTX would be more convenient than SDNY for Hans S. Woolley. (Dkt. No. 25 at 9.) Woolley is a nonparty witness as he states that he is not an employee of Peloton, and he is another named inventor on the patents-in-suit. (Dkt. No. 25-7 at ¶¶ 2–3.)

Peloton provides a declaration from Woolley, which states that "because of my residence in Los Angeles, attending trial in Eastern District of Texas would be more convenient for me than the Southern District of New York." (*Id*. at ¶¶ 4, 6.) Accordingly, the inconvenience of a trial in SDNY to Woolley weighs against transfer.

### ii. Willing party witnesses

Where the vast number of a defendant's employees, including those that were responsible for projects related to the accused products, work in the proposed venue, the Federal Circuit determined that this fact supported transfer. *In re Google Inc*., No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017). Here, Flywheel states that all of its employees responsible for the design, development, testing, marketing, and sales of the accused product work and reside in the SDNY and surrounding communities. (Dkt. No. 17 at 7 (citing Cohen Decl. at ¶¶ 4–5, 8–10).) However, Peloton has shown that less than 8% of Flywheel's employees actually work in the SDNY, and Flywheel does not identify any specific employee that they will have testify. This failure limits the weight that should be given to this factor—without specific people and locations identified, the Court cannot fully analyze the convenience in one forum versus another. *Seven Networks,* 2018 WL 4026760, at *5 (quoting *Oyster Optics, LLC v. Coriant Am. Inc*., No. 2:16-cv-1302, 2017 WL 4225202, at *6 (E.D. Tex. Sept. 22, 2017)). Further, "the convenience of party witnesses is given little weight." *Id*. at *9.

Flywheel also asserts that most of Peloton's employees involved in the production of their competing product are also located in or near SDNY based on representations made by Peloton in 2016 that its operations were based in New York. (*Id*. (citing Dkt. No. 27-3 at 2–3, 8).) However, this representation does not apply two years later, especially since Peloton had opened a new

headquarters in Texas before the lawsuit was commenced. (Dkt. No. 25 (citing Dkt. No. 25-3 at ¶ 5).) Accordingly, Peloton's 2016 representations provide negligible support for this factor.

Flywheel's arguments with respect to Yu Feng fit within this factor as he is a party witness for Peloton. (Dkt. No. 25-2 at ¶ 4.) Flywheel argues that Feng is "likely to have relevant information regarding the development and prosecution of the Asserted Patents, and Flywheel expects to seek [his] testimony. . . ." (Dkt. No. 17.) Since Feng has declared his preference for a trial in this district, he adds little support for transfer under this factor.

Both parties have shown inconvenience to a willing nonparty witness that supports their positions under this factor, and the overall amount of inconvenience will be approximately the same in either venue with respect to those willing nonparty witnesses. However, the showing with regard to willing party witnesses weighs in favor of transfer but that factor does not weigh heavily in the analysis.

### c. The relative ease of access to sources of proof.

This is an action between competitors, both of which have extensive relevant documents. Flywheel argues that "all of its documents that are likely to be most relevant to this action are located in the Southern District of New York." (Dkt. No. 17 at 10.). Similarly, Peloton points to its second headquarters in this district. The purpose of §1404 is not to transfer the convenience from one party to the other. Flywheel has not established that the sources of proof are clearly more accessible to the SDNY.

### d. Other practical problems that make trial of a case easy, expeditious, and inexpensive.

Flywheel argues that two infringement lawsuits have already been filed against Peloton in SDNY. (Dkt. No. 17 at 11.) These two cases are *Icon Health & Fitness, Inc. v. Peloton Interactive, Inc.*, 16-CV-8303 (S.D.N.Y.) and the *VR Optics* case referenced above.

"[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Id.* (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).

Neither *Icon Health* nor *VR Optics* provides any support for transferring this case to SDNY. Neither case had anything to do with the Peloton patents asserted here. Peloton was merely defending against claims involving other competitors. Nor was Flywheel a party to those cases. Thus, the SDNY is not familiar with the patents being asserted here and no risk of contradictory decisions exists if this Motion to Transfer is denied. Furthermore, SDNY is a large district, and there is no guarantee that this case would be presented to the same judge that is presiding over the *VR Optics* case. The identification of one case involving stationary bikes in that district does not provide support for a transfer. The Court therefore concludes that this factor is neutral.

### e. Administrative difficulties flowing from court congestion.

This factor weighs against transferring the case. "The relevant inquiry under this factor is '[t]he speed with which a case can come to trial and be resolved . . . .'" *Seven Networks*, 2018 WL 4026760, at *14 (quoting *Genentech*, 566 F.3d at 1347).

Peloton shows that the average length of time between filing and trial in EDTX is 10.6 months less than it is in SDNY. (Dkt. No. 25 at 11–12 (citing Federal Judicial Caseload Statistics

2018 Tables, Table C-5 (Mar. 31, 2018), available at: http://www.uscourts.gov/federal-judicial-caseload-statistics-2018-tables).) Flywheel does not attempt to rebut Peloton's argument in Flywheel's Reply. Because the statistics show that a trial would likely occur more than 10 months earlier if the case proceeds in EDTX, this factor weighs against a transfer. Peloton further argues that this case involves competitors, increasing the importance of this factor due to the increased harm from delay of trial.

### f.    Local interest in having localized interests decided at home.

"The Court must also consider local interest in the litigation because '[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-CV-376-JRG, 2014 WL 1652603, at *4 (E.D. Tex. Apr. 24, 2014) (quoting *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("*Volkswagen I*")). This Court has found the localized interest factor to be neutral in past cases where this venue and the proposed venue both possessed a localized interest in the case. *Seven Networks*, 2018 WL 4026760, at *14 (Aug. 15, 2018); *Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*, 2018 WL 4444097, *8 (E.D. Tex. 2018); *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-CV-00621-JRG-RSP, 2016 WL 4196663, at *6 (E.D. Tex. Aug. 9, 2016); *Mears*, 2014 WL 1652603, at *4 (Apr. 24, 2014).

SDNY has a local interest in the case. Flywheel argues that SDNY is where both parties were founded, where both parties are headquartered, and where the design of the accused and patent practicing products were designed and developed. However, the Court disagrees with Flywheel's assertion that the EDTX has no particularized interest in this controversy. Peloton has shown that "Peloton headquarters has been open and hiring employees in Plano since June 2018, three months before the Complaint in this case was filed." (Dkt. No. 25 at 13 (Olson Decl. ¶ 5).)

Based the opening of that facility, it was apparent at that time the suit was instituted that a large number of employees would be hired in that location. Peloton had 135 employees in its Plano headquarters on November 29, 2018 (Dkt. No. 25-3 at 12), and it likely had a large number of employees on September 12, 2018 when this case was filed. Further, Peloton points out that "Peloton has also had a showroom in Plano since March 2018, has seven showrooms throughout Texas, and has thousands of members in Texas, including 6,000 in this district alone." (*Id.* at 12 (Olson Decl. ¶ 8–9).) This evidences a local interest in the EDTX, as well.

Because both districts have local interests in this case, this factor is neutral.

### III.   CONCLUSION

Considering all of the evidence in the record, Flywheel has failed to show that trial in the SDNY would be clearly more convenient. Accordingly, the Court **DENIES** Defendant Flywheel Sports, Inc.'s Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 17.)

**SIGNED this 30th day of May, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

EXHIBIT 65

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VR OPTICS, LLC,<br><br>　　　Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., a Delaware Corporation,<br><br>　　　Defendant.<br>―――――――――――――――<br>PELOTON INTERACTIVE, INC.,<br><br>　　　Third-Party Plaintiff,<br><br>v.<br><br>VILLENCY DESIGN GROUP, LLC, ERIC VILLENCY and JOSEPH COFFEY,<br><br>　　　Third-Party Defendants. | Civil No. 16-6392 (JPO)<br><br><br>**PLAINTIFF VR OPTICS, LLC'S SUPPLEMENTAL INFRINGEMENT CONTENTIONS** |

Pursuant to Local Patent Rule 6 of the U.S. District Court for the Southern District of New York, Plaintiff VR Optics, LLC ("VRO") hereby submits its Supplemental Disclosure of Asserted Claims and Infringement Contentions to Defendant Peloton Interactive, Inc. ("Peloton"). VRO's disclosures demonstrate infringement with respect to certain claims and certain Accused Instrumentalities; however, VRO reserves the right to identify additional claims and additional accused instrumentalities as further investigation or discovery may warrant. VRO notes that this analysis is necessarily preliminary for reasons including that discovery is ongoing and no claim construction order has been issued. Further, VRO expects to present expert testimony in support of its infringement contentions at a later time and date in accordance with the Case Management

Plan and Scheduling Order.  Accordingly, VRO expressly reserves its right to further supplement or amend its infringement contentions based upon further information obtained during the discovery process, claim construction, or from further analysis.

## I.      DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS

### A.      Infringed Claims

VRO alleges infringement of the following claims of U.S. Patent No. 6,902,513 ("the '513 Patent"): 1, 2, 3, 4, 5, 6, 12, 13, 15, 16, 17, 18, and 19.  Peloton directly infringes the '513 Patent under 35 U.S.C. § 271(a) by making, using, selling and/or offering for sale the Accused Instrumentalities.  Peloton indirectly infringes the '513 Patent under 35 U.S.C. § 271(b) by knowingly inducing its customers and/or end users to commit direct infringement when the customers use the Accused Instrumentalities.  Peloton provides extensive instructions and support for the operation of the Accused Instrumentalities.  Peloton also induces infringement through, for example, subscription agreements and/or licenses, advertisements, marketing materials, and/or manuals.  Peloton contributorily infringes the '513 Patent under 35 U.S.C. § 271(c) offering for sale, selling, and/or importing in the United States the Accused Instrumentalities that constitute material components of the claimed inventions having no substantial noninfringing uses.  Peloton's customers and/or end users commit direct infringement when they use the Accused Instrumentalities.

### B.      Accused Instrumentalities

Based upon information presently available to it, VRO identifies the following Accused Instrumentalities with respect to each of the asserted claims:

(a) any of Peloton's fitness equipment, past or present, including the Peloton Bike (or Cycle) and the Peloton Tread;

(b) Peloton's system that enables the Peloton Bike (or Cycle) to (i) communicate with other Peloton Bikes (or Cycles) and (ii) display "live" classes, "on-demand" classes, and "scenic rides;" and

(c) Peloton's system that enables the Peloton Tread to (i) communicate with other Peloton Treads and (ii) display "live classes" and "on-demand" classes.

### C.     Claim Charts

VRO's supplemental claim charts relating the Accused Instrumentalities to the Asserted Claims are provided as Exhibits A and B.  Exhibit A is VRO's claim chart relating to the Peloton Bike (or cycle) and Exhibit B is VRO's claim chart relating to the Peloton Tread.

### D.     Doctrine of Equivalents

VRO alleges that Defendant literally infringes all claims identified above.  To the extent that Defendant alleges that a claim element is not present in the Accused Instrumentalities, VRO contends that the Accused Instrumentalities also meet each element under the doctrine of equivalents.  More specifically, in its investigation and analysis of the Accused Instrumentalities, VRO did not identify any differences, either substantial or otherwise, between the elements of the '513 Patent and the corresponding features of the Accused Instrumentalities, as set forth in Exhibits A and B.  In each instance, the identified features of the Accused Instrumentalities perform substantially the same function in substantially the same way to achieve substantially the same result as the corresponding claim elements.

Dated: October 1, 2018                          Respectfully submitted,


By:     */s/ Michael D. Gannon*
        Leif R. Sigmond, Jr
        E-mail: lsigmond@bakerlaw.com
        Michael D. Gannon
        (*admitted pro hac vice*)
        E-mail: mgannon@bakerlaw.com
        Jennifer M. Kurcz
        (*admitted pro hac vice*)
        E-mail: jkurcz@bakerlaw.com
        **BAKER & HOSTETLER LLP**
        191 North Wacker Drive
        Suite 3100
        Chicago, IL 60606-1901
        T +1.312.416.6200
        F +1.312.416.6201

        Paul S. Doherty III, Esq.
        pdoherty@hdrbb.com
        Mark Allan Berman, Esq.
        mberman@hdrbb.com
        **HARTMANN DOHERTY ROSA
        BERMAN & BULBULIA LLC**
        666 Fifth Avenue 28th Floor
        New York, NY 10103
        212-344-4619
        Fax: 201-441-9435

        *Attorneys for Plaintiff VR Optics, LLC*

4

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing Plaintiff VR Optics, LLC's Supplemental

Infringement Contentions was served upon the following via email on October 1, 2018:

        Steven G. Schortgen
        Jennifer Klein Ayers
        Galyn Gafford
        Robert E. Hough II
        Sheppard, Mullin, Richter & Hampton LLP
        2200 Ross Avenue, 24th Floor
        Dallas, TX 75201-6776
        SSchortgen@SheppardMullin.com
        JAyers@SheppardMullin.com
        GGafford@SheppardMullin.com
        RHough@SheppardMullin.com

        Paul W. Garrity
        Sheppard, Mullin, Richter & Hampton LLP
        30 Rockefeller Plaza
        New York, NY 10112
        PGarrity@SheppardMullin.com

        Jonathan Hangartner
        X-Patents APC
        5670 La Jolla Boulevard
        La Jolla, CA 92037
        jon@x-patents.com

        *Attorneys for Defendant Peloton Interactive, Inc.*

                      */s/ Michael D. Gannon*
                      Michael D. Gannon

# EXHIBIT A

**Plaintiff VR Optics, LLC ("VR Optics") provides the following infringement contentions with respect to infringement by Defendant Peloton Interactive, Inc. ("Peloton" or "Defendant") of U.S. Patent No. 6,902,513 ("the '513 Patent") in connection with the Accused Instrumentalities.**

This chart demonstrates infringement with respect to certain claims and certain Accused Instrumentalities; however, VR Optics reserves the right to identify additional claims and additional accused instrumentalities as further investigation or discovery may warrant.  VR Optics further notes that this analysis is necessarily preliminary for reasons including that fact discovery is ongoing and not complete, Defendant has not produced all relevant core technical documents, and no claim construction order has been issued.  Further, VR Optics expects to present expert testimony in support of its infringement contentions at a later time and date in accordance with the procedural schedule.  Accordingly, VR Optics expressly reserves its right to supplement and/or amend its infringement contentions based upon further information obtained during the discovery process, claim construction, or from further analysis.

| Claim | | Accused Instrumentalities |
|---|---|---|
| 1 | A system for interactive fitness comprising: | Peloton makes, uses, sells, or offers to sell systems for interactive fitness. The Accused Instrumentalities include a plurality of geographically-separated fitness equipment that is configured to communicate with a server via a wide area network, such as the Internet. The fitness equipment includes at least one operating component, such as a flywheel, belt, or motor. The system includes logic configured to obtain first performance parameters from the at least one operating component, logic configured to communicate the first performance parameters to a remote fitness equipment via the wide-area network and the server, and logic configured to receive second performance parameters communicated from at least one remote fitness equipment. The system also includes a communication interface through which data may be communicated to and from the fitness equipment. The system includes a display, such as a touchscreen display of a tablet, associated with the fitness equipment, and logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed. The system includes a computer program executed by the server to configure the server for coordinating the communication among the plurality of fitness equipment, such that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(a)** | a server; | The Accused Instrumentalities include a server. The server communicates live and on-demand classes to the fitness equipment of end users and/or customers. |

THE RIDES

Choose from a variety
of daily live rides,
or from hundreds
of on-demand
rides whenever you
like. Coached by
the industry's top
instructors, our rides
track your progress,
allow you to compete
with others, and
keep you motivated.

Complaint, Ex. B at 2.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(b)** | a plurality of geographically-separated fitness equipment configured for communication with the server via a wide-area network, each of the fitness equipment comprising: | The Accused Instrumentalities include a plurality of geographically separated fitness equipment configured for communication with the server via a wide-area network. One Peloton bike (or cycle) may be in a customer's and/or end user's home, while another may be in a different customer's and/or end user's home. The Peloton bikes communicate with a Peloton server via a wide-area network, such as the Internet. <br><br> EXPLORE OUR CLASSES<br>Each ride helps you tap into the expertise of top instructors and<br>the energy of group workouts, all from the comfort of your home. <br> Complaint, Ex. B at 6. |

| **Claim** | | **Accused Instrumentalities** |
|---|---|---|
| **1(c)** | at least one operating component; | The Peloton bike (or cycle) includes at least one operating component, such as a flywheel, belt, or motor.  For example, the Peloton bike includes at least a flywheel and a belt drive. <br><br> MEET THE PELOTON BIKE <br><br> Beautifully built for the smoothest ride. Top-of-the-line materials for easy maintenance. A perfect bike for the perfect workout. <br><br> **DESIGN** <br> A streamlined design made for showcasing anywhere in your home. <br><br> **CONSTRUCTION** <br> The carbon steel frame makes the bike sturdy while the magnetic resistance makes your ride smooth and means there are no brake pads to care for. <br><br> **ADJUSTABLE FEATURES** <br> Customizable settings optimize effectiveness and maximize comfort for any rider. <br><br> **NEAR-SILENT OPERATION** <br> Unlike the chain on most stationary bikes, the near-silent belt drive lets you work out any time of day, in any room, without disturbing anyone. <br><br> Complaint, Ex. B at 4 (highlighting added). |



Complaint, Ex. B at 9 (highlighting added).

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(d)** | logic configured to obtain first performance parameters from the at least one operating component; | The Accused Instrumentalities include logic configured to obtain first performance parameters from the at least one operating component.<br><br><br><br>Complaint, Ex. B at 5 (highlighting added). |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(e)** | logic configured to communicate the first performance parameters to a remote fitness equipment via the wide-area network and the server; | The Accused Instrumentalities include logic configured to communicate the first performance parameters to a remote fitness equipment via the wide area network and the server. The Accused Instrumentalities distribute performance parameters of a customer and/or end user to the fitness equipment of other customers and/or end users.<br><br>**THE RIDES**<br>Choose from a variety of daily live rides, or from hundreds of on-demand rides whenever you like. Coached by the industry's top instructors, our rides track your progress, allow you to compete with others, and keep you motivated.<br><br>Complaint, Ex. B at 2 (highlighting added). |



Complaint, Ex. B at 5 (highlighting added).

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(f)** | logic configured to receive second performance parameters communicated from at least one remote fitness equipment; | The Accused Instrumentalities include logic configured to receive second performance parameters communicated from at least one remote fitness equipment. The Accused Instrumentalities receive performance parameters of other customers and/or end users.<br><br><br><br>Complaint, Ex. B at 5 (highlighting added). |

| Claim | | Accused Instrumentalities |
|-------|---|---------------------------|
| **1(g)** | a communication interface through which data may be communicated to and from the fitness equipment; | The Accused Instrumentalities include a communication interface through which data may be communicated to and from the fitness equipment. The Peloton bike (or cycle) and/or the tablet are able to communicate using IEEE 802.11 a/b/g/n/ac Wi-Fi, Bluetooth, ANT+, and ethernet.<br><br>**DISCOVER THE PELOTON RIDE**<br><br>Our sweat-resistant 21.5" HD touchscreen, featuring WiFi and Bluetooth connectivity, puts you in the middle of the action.<br><br>Complaint, Ex. B at 5 (highlighting added).<br><br>Connection   WiFi 802.11 a/b/g/n/ac<br>ANT+ wireless<br>Bluetooth 4.0<br>100 Mbps ethernet<br><br>"Technology," https://www.onepeloton.com/bike. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(h)** | a display associated with the fitness equipment; and | The Peloton bike (or cycle) includes a display associated with the fitness equipment. The Peloton bike is associated with a tablet with a touchscreen display.<br><br><br><br>Complaint, Ex. B at 2 (highlighting added). |

**DISCOVER
THE PELOTON RIDE**

Our sweat-resistant 21.5" HD touchscreen, featuring WiFi and Bluetooth connectivity, puts you in the middle of the action.

*Id.* at 5.

**THE TOUCHSCREEN**

The immersive HD touchscreen instantly connects you to the motivation you can only get from an instructor, and the energy you can only get from a group. Each ride offers in-depth personal metrics that feed into your unique rider profile.

*Id.* at 2.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(i)** | logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed; and | The Accused Instrumentalities include logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed. The touchscreen display of the tablet Peloton bike (or cycle) is updated to reflect a customer and/or end user's performance parameters and the performance parameters of other customers and/or end users. The touchscreen display visually displays performance comparisons of the performance parameters of the customer and/or end user and the performance parameters of others, including, for example, through a "leaderboard."<br><br>**THE RIDES**<br>Choose from a variety of daily live rides, or from hundreds of on-demand rides whenever you like. Coached by the industry's top instructors, our rides track your progress, allow you to compete with others, and keep you motivated.<br><br>**KNOW YOUR METRICS**<br>Each ride features in-depth personal metrics that measure every aspect of your ride, including heart rate. The real-time leaderboard engages you by showing the metrics of fellow riders, while your rider profile captures your robust ride data to show your progress over time.<br><br>Complaint, Ex. B at 2, 5 (highlighting added). |



*Id.* at 5 (highlighting added).

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(j)** | a computer program executed by the server to configure the server for coordinating the communication among the plurality of fitness equipment, such that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events. | The Accused Instrumentalities include a computer program executed by the server to configure the server for coordinating the communication among the plurality of fitness equipment, such that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events. The Peloton server executes a computer program to coordinate communication among the Peloton bikes (or cycles) to simulate interactive exercise events. |

EXPLORE OUR CLASSES

Each ride helps you tap into the expertise of top instructors and the energy of group workouts, all from the comfort of your home.

THE RIDES

Choose from a variety of daily live rides, or from hundreds of on-demand rides whenever you like. Coached by the industry's top instructors, our rides track your progress, allow you to compete with others, and keep you motivated.

METRICS
*Ride by the numbers*
Measure the effectiveness of your ride using defined resistances and specific cadences.

RHYTHM
*Ride by the beat*
You'll be guided through a full body workout to an inspiring soundtrack that will lift your spirit, transform your body, and clear your mind.

LIVE DJ
*Ride with the DJ*
For this ride, coaches are joined by a Live DJ spinning creatively mixed and carefully curated playlists.

THEME
*Keep things fun and festive*
Show your appreciation for your favorite musical genre, decade, or holiday in our special theme rides.

TEAM CANNONDALE-GARMIN
*Practice with the pros*
Train with the guys who actually ride the Tour de France. Expect heavy intervals and all-out effort to build your endurance.

SCENIC RIDES
*Take your ride outside*
Get a change of pace and choose from beautiful outdoor trails all over the world. Where will your ride take you?

Complaint, Ex. B at 2 (highlighting added), 6.



*Id.* at 5 (highlighting added).

| Claim | | Accused Instrumentalities |
|---|---|---|
| **2** | The system as defined in claim 1, wherein the fitness equipment is one selected from the group consisting of a treadmill, a skiing machine, an exercise bike, a rowing machine, a stepping machine, and a orbital stepping machine. | The Accused Instrumentalities include the Peloton bike (or cycle).<br><br><br><br>Complaint, Ex. B at 2. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **3** | The system as defined in claim 1, wherein the display is one selected from the group consisting of a virtual-reality display, an augmented-reality display, a cathode-ray tube, a liquid-crystal display, a light-emitting diode display, and a gas-plasma display. | The Accused Instrumentalities include an LCD touchscreen display of a tablet.  Complaint, Ex. B at 2 (highlighting added). |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **4** | The system as defined in claim 1, wherein the at least one operating component is one selected from the group consisting of a motor, a flywheel, a conveyor, a wheel, and a magnetic arrangement. | The Peloton bike (or cycle) includes at least a flywheel and a belt drive.<br><br>## MEET THE PELOTON BIKE<br><br>Beautifully built for the smoothest ride. Top-of-the-line materials for easy maintenance. A perfect bike for the perfect workout.<br><br>**DESIGN**<br>A streamlined design made for showcasing anywhere in your home.<br><br>**ADJUSTABLE FEATURES**<br>Customizable settings optimize effectiveness and maximize comfort for any rider.<br><br>**CONSTRUCTION**<br>The carbon steel frame makes the bike sturdy while the magnetic resistance makes your ride smooth and means there are no brake pads to care for.<br><br>**NEAR-SILENT OPERATION**<br>Unlike the chain on most stationary bikes, the near-silent belt drive lets you work out any time of day, in any room, without disturbing anyone.<br><br>Complaint, Ex. B at 4 (highlighting added). |



Complaint, Ex. B at 9 (highlighting added).

| Claim | | Accused Instrumentalities |
|---|---|---|
| 5 | The system as defined in claim 1, where each fitness equipment further includes logic to download data defining course data for a selected course through the communication interface. | The Peloton bike (or cycle) includes logic to download data defining course data for a selected course through the communication interface.<br><br>**EXPLORE OUR CLASSES**<br><br>Each ride helps you tap into the expertise of top instructors and the energy of group workouts, all from the comfort of your home.<br><br>**METRICS**<br>*Ride by the numbers*<br>Measure the effectiveness of your ride using defined resistances and specific cadences.<br><br>**RHYTHM**<br>*Ride by the beat*<br>You'll be guided through a full body workout to an inspiring soundtrack that will lift your spirit, transform your body, and clear your mind.<br><br>**LIVE DJ**<br>*Ride with the DJ*<br>For this ride, coaches are joined by a Live DJ spinning creatively mixed and carefully curated playlists.<br><br>**THEME**<br>*Keep things fun and festive*<br>Show your appreciation for your favorite musical genre, decade, or holiday in our special theme rides.<br><br>**TEAM CANNONDALE-GARMIN**<br>*Practice with the pros*<br>Train with the guys who actually ride the Tour de France. Expect heavy intervals and all-out effort to build your endurance.<br><br>**SCENIC RIDES**<br>*Take your ride outside*<br>Get a change of pace and choose from beautiful outdoor trails all over the world. Where will your ride take you?<br><br>Complaint, Ex. B at 6. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| 6 | An interactive fitness equipment comprising: | Peloton makes, uses, sells, or offers to sell interactive fitness equipment. The Accused Instrumentalities include at least one operating component, such as a flywheel, belt, or motor, configured to provide an aspect of exercise for a user of the fitness equipment. The Accused Instrumentalities include logic configured to obtain first performance parameters from the at least one operating component, logic configured to communicate the first performance parameters to a remote fitness equipment, logic configured to receive second performance parameters communicated from the remote fitness equipment. The Accused Instrumentalities also include a display associated with the fitness equipment, and logic configured to control the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| 6(a) | at least one operating component configured to provide an aspect of exercise for a user of the fitness equipment; | The Peloton bike (or cycle) includes at least one operating component, such as a flywheel, belt, or motor. For example, the Peloton bike includes at least a flywheel and a belt drive.<br><br>**MEET THE PELOTON BIKE**<br><br>Beautifully built for the smoothest ride. Top-of-the-line materials for easy maintenance. A perfect bike for the perfect workout.<br><br>**DESIGN**<br>A streamlined design made for showcasing anywhere in your home.<br><br>**ADJUSTABLE FEATURES**<br>Customizable settings optimize effectiveness and maximize comfort for any rider.<br><br>**CONSTRUCTION**<br>The carbon steel frame makes the bike sturdy while the magnetic resistance makes your ride smooth and means there are no brake pads to care for.<br><br>**NEAR-SILENT OPERATION**<br>Unlike the chain on most stationary bikes, the near-silent belt drive lets you work out any time of day, in any room, without disturbing anyone.<br><br>Complaint, Ex. B at 4 (highlighting added). |



Complaint, Ex. B at 9 (highlighting added).

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **6(b)** | logic configured to obtain first performance parameters from the at least one operating component; | The Accused Instrumentalities include logic configured to obtain first performance parameters from the at least one operating component.  Complaint, Ex. B at 5 (highlighting added). |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **6(c)** | logic configured to communicate the first performance parameters to a remote fitness equipment; | The Accused Instrumentalities include logic configured to communicate the first performance parameters to a remote fitness equipment. The Accused Instrumentalities communicate performance parameters of a customer and/or end user to the fitness equipment of other customers and/or end users.<br><br>**THE RIDES**<br>Choose from a variety of daily live rides, or from hundreds of on-demand rides whenever you like. Coached by the industry's top instructors, our rides track your progress, allow you to compete with others, and keep you motivated.<br><br>Complaint, Ex. B at 2 (highlighting added). |

27

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **6(d)** | logic configured to receive second performance parameters communicated from the remote fitness equipment; | The Accused Instrumentalities include logic configured to receive second performance parameters communicated from the remote fitness equipment. The Accused Instrumentalities receive performance parameters of other customers and/or end users.<br><br>**KNOW YOUR METRICS**<br><br>Each ride features in-depth personal metrics that measure every aspect of your ride, including heart rate. The real-time leaderboard engages you by showing the metrics of fellow riders, while your rider profile captures your robust ride data to show your progress over time.<br><br><br><br>Complaint, Ex. B at 5 (highlighting added). |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **6(e)** | a display associated with the fitness equipment; and | The Peloton bike (or cycle) includes a display associated with the fitness equipment. The Peloton bike is associated with a tablet with a touchscreen display.<br><br><br><br>Complaint, Ex. B at 2 (highlighting added). |

**DISCOVER
THE PELOTON RIDE**

Our sweat-resistant 21.5" HD touchscreen, featuring WiFi and Bluetooth connectivity, puts you in the middle of the action.

*Id.* at 5.

**THE TOUCHSCREEN**

The immersive HD touchscreen instantly connects you to the motivation you can only get from an instructor, and the energy you can only get from a group. Each ride offers in-depth personal metrics that feed into your unique rider profile.

*Id.* at 2.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **6(f)** | logic configured to control the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed. | The Accused Instrumentalities include logic configured to control the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed. The touchscreen display of the tablet Peloton bike (or cycle) is updated to reflect a customer and/or end user's performance parameters and the performance parameters of other customers and/or end users. The touchscreen display visually displays performance comparisons of the performance parameters of the customer and/or end user and the performance parameters of others, including, for example, through a "leaderboard."<br><br>**THE RIDES**<br>Choose from a variety of daily live rides, or from hundreds of on-demand rides whenever you like. Coached by the industry's top instructors, our rides track your progress, allow you to compete with others, and keep you motivated.<br><br>**KNOW YOUR METRICS**<br>Each ride features in-depth personal metrics that measure every aspect of your ride, including heart rate. The real-time leaderboard engages you by showing the metrics of fellow riders, while your rider profile captures your robust ride data to show your progress over time.<br><br>Complaint, Ex. B at 2, 5 (highlighting added). |



*Id.* at 5 (highlighting added).

| Claim | | Accused Instrumentalities |
|---|---|---|
| **12** | The interactive fitness equipment as defined in claim 6, further including a communication interface. | The Accused Instrumentalities include a communication interface through which data may be communicated to and from the fitness equipment. The Peloton bike (or cycle) and/or the tablet are able to communicate using IEEE 802.11 a/b/g/n/ac Wi-Fi, Bluetooth, ANT+, and ethernet.<br><br>**DISCOVER**<br>**THE PELOTON RIDE**<br><br>Our sweat-resistant 21.5" HD touchscreen, featuring WiFi and Bluetooth connectivity, puts you in the middle of the action.<br><br>Complaint, Ex. B at 5 (highlighting added).<br><br>Connection       WiFi 802.11 a/b/g/n/ac<br><br>      ANT+ wireless<br><br>      Bluetooth 4.0<br><br>      100 Mbps ethernet<br><br>"Technology," https://www.onepeloton.com/bike. |

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **13** | The interactive fitness equipment as defined in claim 12, wherein the communication interface includes logic configured to control communication with the remote fitness equipment over a communication link, wherein the communication link includes one selected from the group consisting of: a wireless link, a direct electrical connection, a local-area network, and a wide-area network. | The Accused Instrumentalities include logic configured to control communication with the remote fitness equipment over a communication link wherein the communication link includes one selected from the group consisting of: a wireless link, a direct electrical connection, a local-area network, and a wide-area network. The communication interface of a Peloton cycle (or bike) includes logic to control communication with a remote Peloton cycle (or bike) over a communication link, such as a link over a wide-area network, such as the Internet.<br><br>**DISCOVER THE PELOTON RIDE**<br>Our sweat-resistant 21.5" HD touchscreen, featuring WiFi and Bluetooth connectivity, puts you in the middle of the action.<br><br>**KNOW YOUR METRICS**<br>Each ride features in-depth personal metrics that measure every aspect of your ride, including heart rate. The real-time leaderboard engages you by showing the metrics of fellow riders, while your rider profile captures your robust ride data to show your progress over time.<br><br>**STAY CONNECTED**<br>See the live rides your friends signed up for or the on-demand ones they already took as you choose your next ride. Connect with friends by sharing your ride reservation and post-ride stats to Facebook or utilize the video chat feature during your ride.<br><br>Complaint, Ex. B at 5. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **15** | The interactive fitness equipment as defined in claim 12, wherein the communication interface is configured to communicate with the remote fitness equipment through at least one intermediate computer. | The communication interface of the Peloton bike (or cycle) is configured to communicate with another Peloton bike (or cycle) through at least one intermediate computer, such as a Peloton computer or third-party computer. A third-party computer may be, for example, an internet service provider's (ISP's) computer. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **16** | The interactive fitness equipment as defined in claim 6, further including a microphone and logic for communicating an audible input to the microphone to a remote fitness equipment in the form of audio data. | The Accused Instrumentalities include a microphone and logic for communicating an audible input to the microphone to a remote fitness equipment in the form of audio data. A Peloton bike (or cycle) includes a microphone and can send audio data to another Peloton bike (or cycle). For example, audio data may be sent to another Peloton bike (or cycle) during a video chat session. |

**STAY CONNECTED**

See the live rides your friends signed up for or the on-demand ones they already took as you choose your next ride. Connect with friends by sharing your ride reservation and post-ride stats to Facebook or utilize the video chat feature during your ride.

Complaint, Ex. B at 5.

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **17** | The interactive fitness equipment as defined in claim 6, further including a speaker and logic for audibly outputting audio data received from a remote fitness equipment. | The Accused Instrumentalities include speakers and logic for audibly outputting audio data received from a remote fitness equipment. The Peloton bike (or cycle) includes speakers and/or headphones, which audibly output audio data received from a remote fitness equipment. For example, audio data may be received from another Peloton bike (or cycle) and audibly output during a video chat session.<br><br>**STAY CONNECTED**<br><br>See the live rides your friends signed up for or the on-demand ones they already took as you choose your next ride. Connect with friends by sharing your ride reservation and post-ride stats to Facebook or utilize the video chat feature during your ride.<br><br>Complaint, Ex. B at 5. |

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **18** | An interactive fitness equipment comprising: | Peloton makes, uses, sells, or offers to sell interactive fitness equipment. The Accused Instrumentalities include at least one operating component, such as a flywheel, belt, or motor, configured to provide an aspect of exercise for a user of the fitness equipment. The Accused Instrumentalities include logic configured to obtain first performance parameters from the at least one operating component, a memory for storing course data, and a display. The Accused Instrumentalities also include at least one element selected from the group consisting of: |
| | | (1) logic configured to control an aspect of the at least one operating component based on both the first performance parameters and information from stored course data; |
| | | (2) logic configured to control the display in response to both the first performance parameters and information from stored course data; |
| | | (3) logic configured to permit a user to select at least one competitive racer, the at least one competitive racer being defined by data stored in a memory; |
| | | (4) a communications interface and logic for controlling the download of course data through a communication interface; |
| | | (5) speech processing logic configured to recognize certain spoken commands and adjust operating parameters of the fitness equipment in response thereto; |
| | | (6) a communications interface and logic for controlling the download and installation of a software upgrade through a communication interface; and |
| | | (7) a heart-rate sensor and logic configured to control the display to display a current position of a user in a course defined by the course data, the current position of the user being based upon the first performance parameters, further including logic configured to control the display to display a simulated competitive racer, wherein the position and speed of the competitive racer are based upon a combination of the first performance parameters, an output from the heart-rate sensor, and a target heart rate the user, whereby when the output from the heart-rate sensor exceeds the target heart rate, the speed of the simulated competitive racer is less than the speed measured from the first performance parameters and |

| | | when the target heart rate exceeds the output from the heart-rate sensor, the speed of the simulated competitive racer is greater than the speed measured from the first performance parameters. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **18(a)** | at least one operating component configured to provide an aspect of exercise for a user of the fitness equipment; | The Peloton bike (or cycle) includes at least one operating component, such as a flywheel, belt, or motor, configured to provide an aspect of exercise for a user of the fitness equipment.  For example, the Peloton bike includes at least a flywheel and a belt drive.<br><br>**MEET THE PELOTON BIKE**<br><br>Beautifully built for the smoothest ride. Top-of-the-line materials for easy maintenance. A perfect bike for the perfect workout.<br><br>**DESIGN**<br>A streamlined design made for showcasing anywhere in your home.<br><br>**CONSTRUCTION**<br>The carbon steel frame makes the bike sturdy while the magnetic resistance makes your ride smooth and means there are no brake pads to care for.<br><br>**ADJUSTABLE FEATURES**<br>Customizable settings optimize effectiveness and maximize comfort for any rider.<br><br>**NEAR-SILENT OPERATION**<br>Unlike the chain on most stationary bikes, the near-silent belt drive lets you work out any time of day, in any room, without disturbing anyone.<br><br>Complaint, Ex. B at 4 (highlighting added). |



Complaint, Ex. B at 9 (highlighting added).

| Claim | | Accused Instrumentalities |
|---|---|---|
| **18(b)** | logic configured to obtain first performance parameters from the at least one operating component; | The Accused Instrumentalities include logic configured to obtain first performance parameters from the at least one operating component.<br><br><br><br>Complaint, Ex. B at 5 (highlighting added). |

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **18(b)** | a memory for storing course data; | The Accused Instrumentalities include a memory for storing course data. The Peloton bike (or cycle) is associated with a tablet with a memory.<br><br><br><br>Complaint, Ex. B at 2 (highlighting added). |

**DISCOVER
THE PELOTON RIDE**

Our sweat-resistant 21.5" HD
touchscreen, featuring WiFi and
Bluetooth connectivity, puts you
in the middle of the action.

*Id.* at 5.

**THE TOUCHSCREEN**

The immersive HD
touchscreen instantly
connects you to
the motivation you
can only get from an
instructor, and the
energy you can only
get from a group. Each
ride offers in-depth
personal metrics that
feed into your unique
rider profile.

*Id.* at 2.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **18(c)** | a display; and | The Accused Instrumentalities include a display. The Peloton bike (or cycle) includes a display associated with the fitness equipment. The Peloton bike is associated with a tablet with a touchscreen display.<br><br><br><br>Complaint, Ex. B at 2 (highlighting added). |

**DISCOVER
THE PELOTON RIDE**

Our sweat-resistant 21.5" HD
touchscreen, featuring WiFi and
Bluetooth connectivity, puts you
in the middle of the action.

*Id.* at 5.

**THE TOUCHSCREEN**

The immersive HD
touchscreen instantly
connects you to
the motivation you
can only get from an
instructor, and the
energy you can only
get from a group. Each
ride offers in-depth
personal metrics that
feed into your unique
rider profile.

*Id.* at 2.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **18(d)** | at least one element selected from the group consisting of: (1) logic configured to control an aspect of the at least one operating component based on both the first performance parameters and information from stored course data; (2) logic configured to control the display in response to both the first performance parameters and information from stored course data; (3) logic configured to permit a user to select at least one competitive racer, the at least one competitive racer | The Accused Instrumentalities include at least: <br><br> <u>Logic configured to control the display in response to both first performance parameters and information from stored course data</u> <br><br> The Accused Instrumentalities include logic configured to control the display in response to both the first and second performance parameters and information stored from course data. The touchscreen display of the tablet Peloton bike (or cycle) is updated to reflect a customer and/or end user's performance parameters and the performance parameters of other customers and/or end users. The touchscreen display visually displays performance comparisons of the performance parameters of the customer and/or end user and the performance parameters of others, including, for example, through a "leaderboard." <br><br> **THE RIDES** <br> Choose from a variety of daily live rides, or from hundreds of on-demand rides whenever you like. Coached by the industry's top instructors, our rides track your progress, allow you to compete with others, and keep you motivated. <br><br> **KNOW YOUR METRICS** <br> Each ride features in-depth personal metrics that measure every aspect of your ride, including heart rate. The real-time leaderboard engages you by showing the metrics of fellow riders, while your rider profile captures your robust ride data to show your progress over time. <br><br> Complaint, Ex. B at 2, 5 (highlighting added). |

| | |
|---|---|
| being defined by data stored in a memory;<br><br>(4) a communications interface and logic for controlling the download of course data through a communication interface;<br><br>(5) speech processing logic configured to recognize certain spoken commands and adjust operating parameters of the fitness equipment in response thereto;<br><br>(6) a communications interface and logic for controlling the download and installation of a software upgrade through a communication interface; and | <br><br>*Id.* at 5 (highlighting added).<br><br><u>Logic configured to permit a user to select at least one competitive racer, the at least one competitive racer being defined by data stored in a memory</u><br><br>The Accused Instrumentalities include logic configured to permit a user to select at least one competitive racer, the at least one competitive racer being defined by data stored in a memory. The touchscreen display of the Peloton bike (or cycle) allows a customer and/or end user to select others to compete with. |

| | |
|---|---|
| (7) a heart-rate sensor and logic configured to control the display to display a current position of a user in a course defined by the course data, the current position of the user being based upon the first performance parameters, further including logic configured to control the display to display a simulated competitive racer, wherein the position and speed of the competitive racer are based upon a combination of the first performance parameters, an output from the heart-rate sensor, and a target heart rate the user, whereby when the output from the heart- | **THE RIDES** Choose from a variety of daily live rides, or from hundreds of on-demand rides whenever you like. Coached by the industry's top instructors, our rides track your progress, allow you to compete with others, and keep you motivated.  **KNOW YOUR METRICS** Each ride features in-depth personal metrics that measure every aspect of your ride, including heart rate. The real-time leaderboard engages you by showing the metrics of fellow riders, while your rider profile captures your robust ride data to show your progress over time.  *Id.* at 2, 5 (highlighting added).  <u>A communications interface and logic for controlling the download of course data through a communication interface</u>  The Accused Instrumentalities include a communications interface through which course data may be downloaded to the fitness equipment. The Peloton bike (or cycle) and/or the tablet are able to communicate using IEEE 802.11 a/b/g/n/ac Wi-Fi, Bluetooth, ANT+, and ethernet.  **DISCOVER THE PELOTON RIDE** Our sweat-resistant 21.5" HD touchscreen, featuring WiFi and Bluetooth connectivity, puts you in the middle of the action. |

| | | |
|---|---|---|
| | rate sensor exceeds the target heart rate, the speed of the simulated competitive racer is less than the speed measured from the first performance parameters and when the target heart rate exceeds the output from the heart-rate sensor, the speed of the simulated competitive racer is greater than the speed measured from the first performance parameters. | Complaint, Ex. B at 5 (highlighting added).<br><br>"Technology," https://www.onepeloton.com/bike.<br><br><u>A communications interface and logic for controlling the download and installation of a software upgrade through a communication interface</u><br><br>The Accused Instrumentalities include a communications interface and logic for controlling the download and installation of a software upgrade through a communication interface. The Peloton bike (or cycle) and/or the associated tablet are able to communicate using IEEE 802.11 a/b/g/n/ac Wi-Fi, Bluetooth, ANT+, and ethernet.<br><br>Complaint, Ex. B at 5 (highlighting added). |

"Technology," https://www.onepeloton.com/bike. The communications interface controls the download and installation of software upgrades from at least Peloton.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **19** | The interactive fitness equipment as defined in claim 18, having at least three elements selected from the group consisting of:<br><br>(1) logic configured to control an aspect of the at least one operating component based on both the first performance parameters and information from stored course data;<br><br>(2) logic configured to control the display in response to both the first performance parameters and information from stored course data;<br><br>(3) logic configured to permit a user to | *See* claim 18(d). |

| | |
|---|---|
| select at least one competitive racer, the at least one competitive racer being defined by data stored in a memory; | |
| (4) a communications interface and logic for controlling the download of course data through a communication interface; | |
| (5) speech processing logic configured to recognize certain spoken commands and adjust operating parameters of the fitness equipment in response thereto; | |
| (6) a communications interface and logic for controlling the download and installation of a software upgrade | |

| | | |
|---|---|---|
| | through a communication interface; and | |
| | (7) a heart-rate sensor and logic configured to control the display to display a current position of a user in a course defined by the course data, the current position of the user being based upon the first performance parameters, further including logic configured to control the display to display a simulated competitive racer, wherein the position and speed of the competitive racer are based upon a combination of the first performance parameters, an output from the heart-rate | |

| | |
|---|---|
| sensor, and a target heart rate the user, whereby when the output from the heart-rate sensor exceeds the target heart rate, the speed of the simulated competitive racer is less than the speed measured from the first performance parameters and when the target heart rate exceeds the output from the heart-rate sensor, the speed of the simulated competitive racer is greater than the speed measured from the first performance parameters. | |

# EXHIBIT B

**Plaintiff VR Optics, LLC ("VRO") provides the following supplemental infringement contentions with respect to infringement by Defendant Peloton Interactive, Inc. ("Peloton" or "Defendant") of U.S. Patent No. 6,902,513 ("the '513 Patent") in connection with the Accused Instrumentalities.**

This chart demonstrates infringement with respect to certain claims and certain Accused Instrumentalities; however, VRO reserves the right to identify additional claims and additional accused instrumentalities as further investigation or discovery may warrant. VRO further notes that this analysis is necessarily preliminary for reasons including that the Peloton Tread was publicly announced in January 2018[1] and is currently available for reservation,[2] fact discovery is ongoing and not complete, Defendant has not produced all relevant core technical documents (including no documents related to the Peloton Tread), and no claim construction order has been issued. Further, VRO expects to present expert testimony in support of its infringement contentions at a later time and date in accordance with the procedural schedule. Accordingly, VRO expressly reserves its right to supplement and/or amend its infringement contentions based upon further information obtained during the discovery process, claim construction, or from further analysis.

---

[1] *See* Peloton Tread | Introducing The Latest In Total Body Fitness, YouTube (Jan. 9, 2018), https://www.youtube.com/watch?v=pxk88-K9mGQ.
[2] *See* Peloton Tread Reservation Terms ("We expect the Peloton Tread will be available for purchase and delivery beginning in Fall 2018."), https://support.onepeloton.com/hc/en-us/articles/115005750723 (last visited Sept. 24, 2018).

| Claim | | Accused Instrumentalities |
|---|---|---|
| 1 | A system for interactive fitness comprising: | Peloton makes, uses, sells, or offers to sell systems for interactive fitness. The Accused Instrumentalities include a plurality of geographically-separated fitness equipment (Peloton Treads) that are configured to communicate with a server via a wide area network, such as the Internet. The fitness equipment includes at least one operating component, such as a flywheel, belt, or motor. The system includes logic configured to obtain first performance parameters from the at least one operating component, logic configured to communicate the first performance parameters to a remote fitness equipment via the wide-area network and the server, and logic configured to receive second performance parameters communicated from at least one remote fitness equipment. The system also includes a communication interface through which data may be communicated to and from the fitness equipment. The system includes a display, such as a touchscreen display of a tablet, associated with the fitness equipment, and logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed. The system includes a computer program executed by the server to configure the server for coordinating the communication among the plurality of fitness equipment, such that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(a)** | a server; | The Accused Instrumentalities include a server. The server communicates live and on-demand classes to the fitness equipment of end users and/or customers.  |



"The Peloton Tread," https://www.onepeloton.com/tread.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(b)** | a plurality of geographically-separated fitness equipment configured for communication with the server via a wide-area network, each of the fitness equipment comprising: | The Accused Instrumentalities include a plurality of geographically separated fitness equipment configured for communication with the server via a wide-area network. One Peloton Tread may be in a customer's and/or end user's home, while another may be in a different customer's and/or end user's home. The Peloton Treads communicate with a Peloton server via a wide-area network, such as the Internet.  "The Peloton Tread," https://www.onepeloton.com/tread. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(c)** | at least one operating component; | The Peloton Tread includes at least one operating component, such as a belt or motor.  For example, the Peloton Tread includes at least a drive belt.<br><br><br><br>"Peloton Tread" (highlighting added), https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(d)** | logic configured to obtain first performance parameters from the at least one operating component; | The Accused Instrumentalities include logic configured to obtain first performance parameters from the at least one operating component.<br><br><br><br>"The Peloton Tread," https://www.onepeloton.com/tread. |



The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(e)** | logic configured to communicate the first performance parameters to a remote fitness equipment via the wide-area network and the server; | The Accused Instrumentalities include logic configured to communicate the first performance parameters to a remote fitness equipment via the wide area network and the server. The Accused Instrumentalities distribute performance parameters of a customer and/or end user to the fitness equipment of other customers and/or end users.  "The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(f)** | logic configured to receive second performance parameters communicated from at least one remote fitness equipment; | The Accused Instrumentalities include logic configured to receive second performance parameters communicated from at least one remote fitness equipment. The Accused Instrumentalities receive performance parameters of other customers and/or end users.<br><br><br><br>"The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread. |

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **1(g)** | a communication interface through which data may be communicated to and from the fitness equipment; | The Accused Instrumentalities include a communication interface through which data may be communicated to and from the fitness equipment. The Peloton Tread and/or the tablet are able to communicate using IEEE 802.11 a/b/g/n/ac Wi-Fi, ANT+, Bluetooth, and ethernet. <br><br> **Connection**  WiFi 802.11 a/b/g/n/ac, MIMO 2x2 Antenna <br><br> ANT+ <br><br> Bluetooth <br><br> 100 Mbps Ethernet <br><br> "Technology," https://www.onepeloton.com/tread/preorder. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(h)** | a display associated with the fitness equipment; and | The Peloton Tread includes a display associated with the fitness equipment. The Peloton Tread includes a tablet with a touchscreen display.<br><br><br><br>"Peloton Tread" (highlighting added), https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |



"The Peloton Tread," https://www.onepeloton.com/tread.

## Technology

**Screen**                32" 1080p HD touchscreen

"Technology," https://www.onepeloton.com/tread/preorder.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **1(i)** | logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed; and | The Accused Instrumentalities include logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed. The touchscreen display of the tablet of the Peloton Tread is updated to reflect a customer and/or end user's performance parameters and the performance parameters of other customers and/or end users. The touchscreen display visually displays performance comparisons of the performance parameters of the customer and/or end user and the performance parameters of others, including, for example, through a "leaderboard." |



"The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread.

| Claim | | Accused Instrumentalities |
|-------|---|---------------------------|
| **1(j)** | a computer program executed by the server to configure the server for coordinating the communication among the plurality of fitness equipment, such that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events. | The Accused Instrumentalities include a computer program executed by the server to configure the server for coordinating the communication among the plurality of fitness equipment, such that a plurality of the geographically-separated fitness equipment may simulate interactive exercise events. The Peloton server executes a computer program to coordinate communication among the Peloton Treads to simulate interactive exercise events.<br><br> |



"The Peloton Tread," https://www.onepeloton.com/tread.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **2** | The system as defined in claim 1, wherein the fitness equipment is one selected from the group consisting of a treadmill, a skiing machine, an exercise bike, a rowing machine, a stepping machine, and a orbital stepping machine. | The Accused Instrumentalities include the Peloton Tread—a treadmill.<br><br><br><br>"Peloton Tread" (highlighting added), https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **3** | The system as defined in claim 1, wherein the display is one selected from the group consisting of a virtual-reality display, an augmented-reality display, a cathode-ray tube, a liquid-crystal display, a light-emitting diode display, and a gas-plasma display. | The Peloton Tread includes an LCD touchscreen display of a tablet.<br><br><br><br>"Peloton Tread" (highlighting added), https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **4** | The system as defined in claim 1, wherein the at least one operating component is one selected from the group consisting of a motor, a flywheel, a conveyor, a wheel, and a magnetic arrangement. | The Peloton Tread includes at least a motor and a belt.<br><br><br><br>"Peloton Tread" (highlighting added), https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **5** | The system as defined in claim 1, where each fitness equipment further includes logic to download data defining course data for a selected course through the communication interface. | The Peloton Tread includes logic to download data defining course data for a selected course through the communication interface.<br><br><br><br>"Peloton Tread," https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |





"The Peloton Tread," https://www.onepeloton.com/tread.

**Connection**   WiFi 802.11 a/b/g/n/ac, MIMO 2x2 Antenna

ANT+

Bluetooth

100 Mbps Ethernet

"Technology," https://www.onepeloton.com/tread/preorder.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **6** | An interactive fitness equipment comprising: | Peloton makes, uses, sells, or offers to sell interactive fitness equipment such as the Peloton Tread. The Accused Instrumentalities include at least one operating component, such as a flywheel, belt, or motor, configured to provide an aspect of exercise for a user of the fitness equipment. The Accused Instrumentalities include logic configured to obtain first performance parameters from the at least one operating component, logic configured to communicate the first performance parameters to a remote fitness equipment, logic configured to receive second performance parameters communicated from the remote fitness equipment. The Accused Instrumentalities also include a display associated with the fitness equipment, and logic configured to control the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed. |

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **6(a)** | at least one operating component configured to provide an aspect of exercise for a user of the fitness equipment; | The Peloton Tread includes at least one operating component, such as a belt or motor.  For example, the Peloton Tread includes at least a belt.<br><br><br><br>"Peloton Tread" (highlighting added), https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **6(b)** | logic configured to obtain first performance parameters from the at least one operating component; | The Accused Instrumentalities include logic configured to obtain first performance parameters from the at least one operating component.<br><br><br><br>"The Peloton Tread," https://www.onepeloton.com/tread. |



The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread.

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **6(c)** | logic configured to communicate the first performance parameters to a remote fitness equipment; | The Accused Instrumentalities include logic configured to communicate the first performance parameters to a remote fitness equipment. The Accused Instrumentalities communicate performance parameters of a customer and/or end user to the fitness equipment of other customers and/or end users.<br><br><br><br>"The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread. |

| Claim | | Accused Instrumentalities |
|-------|---|---------------------------|
| **6(d)** | logic configured to receive second performance parameters communicated from the remote fitness equipment; | The Accused Instrumentalities include logic configured to receive second performance parameters communicated from the remote fitness equipment. The Accused Instrumentalities receive performance parameters of other customers and/or end users.  "The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **6(e)** | a display associated with the fitness equipment; and | The Peloton Tread includes a display associated with the fitness equipment. The Peloton Tread is associated with a tablet with a touchscreen display.<br><br><br><br>"Peloton Tread" (highlighting added), https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **6(f)** | logic configured to control the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed. | The Accused Instrumentalities include logic configured to control the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed. The touchscreen display of the tablet Peloton Tread is updated to reflect a customer and/or end user's performance parameters and the performance parameters of other customers and/or end users. The touchscreen display visually displays performance comparisons of the performance parameters of the customer and/or end user and the performance parameters of others, including, for example, through a "leaderboard." |



"The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread.

| Claim | | Accused Instrumentalities |
|-------|---|---------------------------|
| **12** | The interactive fitness equipment as defined in claim 6, further including a communication interface. | The Accused Instrumentalities include a communication interface through which data may be communicated to and from the fitness equipment. The Peloton Tread is are able to communicate using IEEE 802.11 a/b/g/n/ac Wi-Fi, ANT+, Bluetooth, and ethernet.<br><br>**Connection**  WiFi 802.11 a/b/g/n/ac, MIMO 2x2 Antenna<br><br>ANT+<br><br>Bluetooth<br><br>100 Mbps Ethernet<br><br>"Technology," https://www.onepeloton.com/tread/preorder. |

| Claim | | Accused Instrumentalities |
|-------|---|--------------------------|
| **13** | The interactive fitness equipment as defined in claim 12, wherein the communication interface includes logic configured to control communication with the remote fitness equipment over a communication link, wherein the communication link includes one selected from the group consisting of: a wireless link, a direct electrical connection, a local-area network, and a wide-area network. | The Accused Instrumentalities include logic configured to control communication with the remote fitness equipment over a communication link wherein the communication link includes one selected from the group consisting of: a wireless link, a direct electrical connection, a local-area network, and a wide-area network. The communication interface of a Peloton Tread includes logic to control communication with a remote Peloton Tread over a communication link, such as a link over a wide-area network, such as the Internet. |
| | | **Connection**    WiFi 802.11 a/b/g/n/ac, MIMO 2x2 Antenna |
| | | ANT+ |
| | | Bluetooth |
| | | 100 Mbps Ethernet |
| | | "Technology," https://www.onepeloton.com/tread/preorder. |



"The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread.

| Claim | | Accused Instrumentalities |
|---|---|---|
| **15** | The interactive fitness equipment as defined in claim 12, wherein the communication interface is configured to communicate with the remote fitness equipment through at least one intermediate computer. | The communication interface of the Peloton Tread is configured to communicate with another Peloton Tread through at least one intermediate computer, such as a Peloton computer or third-party computer. A third-party computer may be, for example, an internet service provider's (ISP's) computer. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **16** | The interactive fitness equipment as defined in claim 6, further including a microphone and logic for communicating an audible input to the microphone to a remote fitness equipment in the form of audio data. | The Accused Instrumentalities include a microphone and logic for communicating an audible input to the microphone to a remote fitness equipment in the form of audio data. A Peloton Tread includes a microphone and can send audio data to another Peloton Tread. For example, audio data may be sent to another Peloton Tread during a video chat session.<br><br>**Sound**    20 W soundbar with 70Hz to 20KHz frequency response<br><br>Digital signal processing system for enhanced bass response, voice clarity and overall loudness<br><br>USB charging for wireless headphones<br><br>3.5 mm jack for wired headphones<br><br>Bluetooth audio-ready for external devices<br><br>**Connection**    WiFi 802.11 a/b/g/n/ac, MIMO 2x2 Antenna<br><br>ANT+<br><br>Bluetooth<br><br>100 Mbps Ethernet<br><br>**Camera**    5 megapixel front-facing<br><br>"Technology," https://www.onepeloton.com/tread/preorder. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **17** | The interactive fitness equipment as defined in claim 6, further including a speaker and logic for audibly outputting audio data received from a remote fitness equipment. | The Accused Instrumentalities include speakers and logic for audibly outputting audio data received from a remote fitness equipment. The Peloton Tread) includes speakers and/or headphones, which audibly output audio data received from a remote fitness equipment. For example, audio data may be received from another Peloton Tread and audibly output during a video chat session.<br><br>Sound      20 W soundbar with 70Hz to 20KHz frequency response<br>Digital signal processing system for enhanced bass response, voice clarity and overall loudness<br>USB charging for wireless headphones<br>3.5 mm jack for wired headphones<br>Bluetooth audio-ready for external devices<br><br>"Technology," https://www.onepeloton.com/tread/preorder. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **18** | An interactive fitness equipment comprising: | Peloton makes, uses, sells, or offers to sell interactive fitness equipment. The Accused Instrumentalities include at least one operating component, such as a flywheel, belt, or motor, configured to provide an aspect of exercise for a user of the fitness equipment. The Accused Instrumentalities include logic configured to obtain first performance parameters from the at least one operating component, a memory for storing course data, and a display. The Accused Instrumentalities also include at least one element selected from the group consisting of: |
| | | (1) logic configured to control an aspect of the at least one operating component based on both the first performance parameters and information from stored course data; |
| | | (2) logic configured to control the display in response to both the first performance parameters and information from stored course data; |
| | | (3) logic configured to permit a user to select at least one competitive racer, the at least one competitive racer being defined by data stored in a memory; |
| | | (4) a communications interface and logic for controlling the download of course data through a communication interface; |
| | | (5) speech processing logic configured to recognize certain spoken commands and adjust operating parameters of the fitness equipment in response thereto; |
| | | (6) a communications interface and logic for controlling the download and installation of a software upgrade through a communication interface; and |
| | | (7) a heart-rate sensor and logic configured to control the display to display a current position of a user in a course defined by the course data, the current position of the user being based upon the first performance parameters, further including logic configured to control the display to display a simulated competitive racer, wherein the position and speed of the competitive racer are based upon a combination of the first performance parameters, an output from the heart-rate sensor, and a target heart rate the user, whereby when the output from the heart-rate sensor exceeds the target heart rate, the speed of the simulated competitive racer is less than the speed measured from the first performance parameters and |

| | | when the target heart rate exceeds the output from the heart-rate sensor, the speed of the simulated competitive racer is greater than the speed measured from the first performance parameters. |
|---|---|---|

| Claim | | Accused Instrumentalities |
|---|---|---|
| **18(a)** | at least one operating component configured to provide an aspect of exercise for a user of the fitness equipment; | The Peloton Tread includes at least one operating component, such as a flywheel, belt, or motor, configured to provide an aspect of exercise for a user of the fitness equipment.  For example, the Peloton Tread includes at least a motor and a belt.<br><br><br><br>"Peloton Tread" (highlighting added), https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |

| Claim | | Accused Instrumentalities |
|-------|---|---------------------------|
| **18(b)** | logic configured to obtain first performance parameters from the at least one operating component; | The Accused Instrumentalities include logic configured to obtain first performance parameters from the at least one operating component.<br><br><br><br>"The Peleton Tread," https://www.onepeloton.com/tread. |



The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread.

| Claim | | Accused Instrumentalities |
|-------|--|---------------------------|
| **18(b)** | a memory for storing course data; | The Accused Instrumentalities include a memory for storing course data. The Peloton Tread is associated with a tablet with a memory.  "Peloton Tread" (highlighting added), https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **18(c)** | a display; and | The Peloton Tread includes a tablet with a touchscreen display.<br><br><br><br>"Peloton Tread" (highlighting added), https://www.onepeloton.com/tread/preorder (select the "Gallery" link). |

45

| Claim | | Accused Instrumentalities |
|---|---|---|
| **18(d)** | at least one element selected from the group consisting of: (1) logic configured to control an aspect of the at least one operating component based on both the first performance parameters and information from stored course data; (2) logic configured to control the display in response to both the first performance parameters and information from stored course data; (3) logic configured to permit a user to select at least one competitive racer, the at least one competitive racer | The Accused Instrumentalities include at least: <br><br> <u>Logic configured to control the display in response to both first performance parameters and information from stored course data</u> <br><br> The Accused Instrumentalities include logic configured to control the display in response to both the first and second performance parameters and information stored from course data. The touchscreen display of the tablet Peloton Tread is updated to reflect a customer and/or end user's performance parameters and the performance parameters of other customers and/or end users. The touchscreen display visually displays performance comparisons of the performance parameters of the customer and/or end user and the performance parameters of others, including, for example, through a "leaderboard." |

being defined by data stored in a memory;

(4) a communications interface and logic for controlling the download of course data through a communication interface;

(5) speech processing logic configured to recognize certain spoken commands and adjust operating parameters of the fitness equipment in response thereto;

(6) a communications interface and logic for controlling the download and installation of a software upgrade through a communication interface; and



"The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread.

Logic configured to permit a user to select at least one competitive racer, the at least one competitive racer being defined by data stored in a memory

The Accused Instrumentalities include logic configured to permit a user to select at least one competitive racer, the at least one competitive racer being defined by data stored in a memory. The touchscreen display of the Peloton Tread allows a customer and/or end user to select others to compete with.

(7) a heart-rate sensor and logic configured to control the display to display a current position of a user in a course defined by the course data, the current position of the user being based upon the first performance parameters, further including logic configured to control the display to display a simulated competitive racer, wherein the position and speed of the competitive racer are based upon a combination of the first performance parameters, an output from the heart-rate sensor, and a target heart rate the user, whereby when the output from the heart-



"The Peloton Tread" (highlighting added), https://www.onepeloton.com/tread.

A communications interface and logic for controlling the download of course data through a communication interface

The Accused Instrumentalities include a communications interface through which course data may be downloaded to the fitness equipment. The Peloton Tread is able to communicate using IEEE 802.11 a/b/g/n/ac Wi-Fi, ANT+, Bluetooth, and ethernet.

| | |
|---|---|
| rate sensor exceeds the target heart rate, the speed of the simulated competitive racer is less than the speed measured from the first performance parameters and when the target heart rate exceeds the output from the heart-rate sensor, the speed of the simulated competitive racer is greater than the speed measured from the first performance parameters. | **Connection**   WiFi 802.11 a/b/g/n/ac, MIMO 2x2 Antenna<br><br>ANT+<br><br>Bluetooth<br><br>100 Mbps Ethernet<br><br>"Technology," https://www.onepeloton.com/tread/preorder.<br><br>A communications interface and logic for controlling the download and installation of a software upgrade through a communication interface<br><br>The Accused Instrumentalities include a communications interface and logic for controlling the download and installation of a software upgrade through a communication interface. The Peloton Tread is able to communicate using IEEE 802.11 a/b/g/n/ac Wi-Fi, ANT+, Bluetooth, and ethernet.<br><br>**Connection**   WiFi 802.11 a/b/g/n/ac, MIMO 2x2 Antenna<br><br>ANT+<br><br>Bluetooth<br><br>100 Mbps Ethernet<br><br>"Technology," https://www.onepeloton.com/tread/preorder. |

| Claim | | Accused Instrumentalities |
|---|---|---|
| **19** | The interactive fitness equipment as defined in claim 18, having at least three elements selected from the group consisting of:<br><br>(1) logic configured to control an aspect of the at least one operating component based on both the first performance parameters and information from stored course data;<br><br>(2) logic configured to control the display in response to both the first performance parameters and information from stored course data;<br><br>(3) logic configured to permit a user to | *See* claim 18(d). |

select at least one competitive racer, the at least one competitive racer being defined by data stored in a memory;

(4) a communications interface and logic for controlling the download of course data through a communication interface;

(5) speech processing logic configured to recognize certain spoken commands and adjust operating parameters of the fitness equipment in response thereto;

(6) a communications interface and logic for controlling the download and installation of a software upgrade

| | |
|---|---|
| through a communication interface; and<br><br>(7) a heart-rate sensor and logic configured to control the display to display a current position of a user in a course defined by the course data, the current position of the user being based upon the first performance parameters, further including logic configured to control the display to display a simulated competitive racer, wherein the position and speed of the competitive racer are based upon a combination of the first performance parameters, an output from the heart-rate | |

| | | |
|---|---|---|
| | sensor, and a target heart rate the user, whereby when the output from the heart-rate sensor exceeds the target heart rate, the speed of the simulated competitive racer is less than the speed measured from the first performance parameters and when the target heart rate exceeds the output from the heart-rate sensor, the speed of the simulated competitive racer is greater than the speed measured from the first performance parameters. | |