**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VR OPTICS, LLC,<br>　　　　　　　　　　　　　Plaintiff,<br><br>　　　　-v-<br><br>PELOTON INTERACTIVE, INC.,<br>　　　　　　　　　　　　　Defendant. | 16-CV-6392 (JPO) |
| PELOTON INTERACTIVE, INC.,<br>　　　　　　　　　Third-Party Plaintiff,<br><br>　　　　-v-<br><br>VILLENCY DESIGN GROUP, LLC; ERIC VILLENCY; and JOSEPH COFFEY,<br>　　　　　　　　Third-Party Defendants. | **PELOTON'S RESPONSE TO VRO'S COUNTER-STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PELOTON'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY** |

　　　　Pursuant to Federal Rule of Civil Procedure 56(c), Local Civil Rule 56.1, and Judge Oetken's Individual Practices Section 3(E), Defendant and Third-Party Plaintiff Peloton Interactive, Inc. ("Peloton") submits this Response to Plaintiff VR Optics, LLC's ("VRO) Counter-Statement of Material Facts in opposition to Peloton's Motion for Summary Judgment of Non-Infringement and Invalidity, and responds as follows:

　　　　176. The Peloton Bike obtains total output, output, distance, cadence, and resistance. (Ex. C at Figure 14, ¶ 58)

　　　　**RESPONSE:** Denied. ███████████

███████████████████████████

███████████████████████████████████████."[1] Peloton specifically denies that these items are "obtain[ed]" from an "operating component" of the fitness equipment as required by claims 1 and 6 of U.S. Patent No. 6,902,513 ("the '513 patent").[2]

177. The Peloton Tread obtains total output, output, elevation, distance, speed, pace, and incline. (Ex. O.)

**RESPONSE:** Denied. ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ VRO's expert Lenz testified that determining output on a treadmill requires knowing a user's body mass and running efficiency, neither of which are obtained by the treadmill or any operating component thereon.[5] Peloton specifically denies that these items are "performance parameters" that are "obtain[ed]" from an "operating component" of the fitness equipment as required by claims 1 and 6 of the '513 patent.[6]

178. The Peloton Bike obtains total output, output, distance, cadence, and resistance periodically when a user of the Bike is engaged in a class or scenic ride. (Ex. 1 at 172:17-22, 217:23-218:13, 246:1-16; Ex. 17; Ex. C at ¶¶ 80, 97.)

**RESPONSE:** Denied. ███████████████████████████
████████████████████████████████████████████████████████████

---

[1] Peloton's Statement of Facts in Support of its Motion for Summary Judgment of Non-infringement and Invalidity Dkt. 200, (hereinafter "SoF") ¶¶ 36, 38, 39, 40, 41.
[2] SoF ¶¶ 12, 20.
[3] SoF ¶¶ 47, 48, 49, 50, 56.
[4] SoF ¶¶ 50, 51.
[5] SoF ¶¶ 53, 54.
[6] SoF ¶¶ 12, 20.

███████████████████████████████████[7] Peloton specifically denies that these items are "performance parameters" that are "obtain[ed]" from an "operating component" of the fitness equipment as required by claims 1 and 6 of U.S. Patent No. 6,902,513 ("the '513 patent").[8]

179. The Peloton Bike receives total output, output, distance, cadence, and resistance values originating at remote Peloton Bikes, and the Peloton Tread receives total output values originating at remote Peloton Treads. (Ex. 1 at 172:17-22, 217:23-218:13, 246:1-16; Ex. 17; Ex. C at ¶¶ 80, 97.)

**RESPONSE:** Denied. ███████████████████████████████████

███████████████████████████████████

████████████[9] Additionally, output, distance, cadence and resistance data for other users is not displayed on the leaderboard and Lenz agrees that Peloton's scorecard functionality does not infringe the asserted claims.[10] Peloton specifically denies that these values meet the "logic configured to drive/control the display" limitations from claims 1 and 6 of the '513 patent, a position with which VRO's expert Steven Lenz agrees.[11]

180. The leaderboard displays a user's personal best total output as well as the ranked total outputs of other users at that point in the ride or run. (Ex. 7 at 7; Ex. C at 31 (Figure 14)), Ex. 17.)

**RESPONSE:** Denied. A leaderboard is only displayed if a user enables it.[12] If it is displayed, a leaderboard may display a filtered list of certain users in ordinal rank.[13]

---

[7] SoF ¶¶ 36, 38, 39, 40, 41.
[8] SoF ¶¶ 12, 20.
[9] SoF ¶¶ 41, 56, 61, 69, 70, 71, 72, 73.
[10] SoF ¶¶ 67, 68.
[11] SoF ¶¶ 65, 66.
[12] SoF ¶ 57.
[13] SoF ¶ 61.

181. The values received by the Bikes/Treads via the leaderboard server and non-leaderboard server are continually updated as the ride or run progresses. (Ex. 1 at 180:5-14; 179:9-14, 216:25-217:20.)

**RESPONSE:** Denied. Any values received by the Bike/Tread via the leaderboard server and non-leaderboard server may be periodically updated[14] and the leaderboard is only displayed if a user so chooses. Peloton specifically denies that any such updates are continual.[15]

182. The Bike and Tread send total output values to what Peloton refers to as a "leaderboard server" approximately every second during a class or a scenic ride/run which continually compares total output values. (Ex. 1 at 179:9-14, 216:25-217:20.)

**RESPONSE:** Denied. While a Peloton Bike or Tread sends a user's local total output to a Peloton leaderboard server on a periodic basis, the Bike and Tread do not "continually compare total output values."[16] No part of any comparison of total output values occurs on a Peloton Bike or Tread.[17] A user's total output is not sent by the Peloton bike or treadmill to the leaderboard server when the user is participating in a scenic ride or scenic run as there is no leaderboard displayed during those, a fact admitted by VRO's expert.[18] Further, the Yony Feng deposition cites provided at Ex. 1 by VRO reference only Peloton's classes and do not relate to the scenic run or scenic ride feature.

183. Mr. Rawls testified that cadence and resistance on the Bike, and incline, distance, speed, and pace on the Tread are performance parameters. (Ex. 5 at 138:8-139:7.)

---

[14] Dkt. 233, Ex. 1 at 179:15-180:18; SoF ¶ 57.
[15] Dkt. 233, Ex. 1 at 179:15-180:18.
[16] Dkt. 233, Ex. 1 at 179:15-180:18.
[17] SoF ¶ 64.
[18] Dkt. 202, Ex. C, ¶ 81.

**RESPONSE:** Admitted that Mr. Rawls testified that cadence and resistance on the Bike, and incline, distance, speed, and pace on the Tread are performance parameters, but Peloton specifically denies that these "performance parameters" that are "communicate[d]" or "receive[d]" by the fitness equipment to "drive/control the display" as required by claims 1 and 6 of the '513 patent.[19].

184. The leaderboard server sorts total output values into an array that is then sent at regular intervals to the individual Bikes and Treads, which generate the leaderboard user interface on the displays. (Ex. 1 at 172:4-6, 281:16-19.)

**RESPONSE:** Denied. A leaderboard is only displayed if a user enables it,[20] and the leaderboard server never sends the array to a Bike or Tread.[21] If the leaderboard is displayed, a leaderboard may display a filtered list of certain users in ordinal rank.[22] It is not clear what VRO means by "leaderboard user interface," but Peloton specifically denies that any logic necessary to driver/control the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed resided in any piece of accused "fitness equipment."[23]

185. Peloton offers "live" content on the Bike and Tread. (Ex. 3 at 147:5-16, 148:12-18.)

**RESPONSE:** Admitted to the extent VRO construes "live content" to mean an exercise class that is streamed over the Internet in reasonable temporal proximity to the events being streamed.

---

[19] SoF ¶¶ 12, 20.
[20] SoF ¶¶ 57, 61.
[21] Dkt. 233, Ex. 1 at 171:15-172:24, 200:20-25.
[22] SoF ¶ 61.
[23] SoF ¶¶ 59, 60, 61.

186. Peloton offers "on-demand" content on the Bike and Tread. (Ex. 3 at 147:5-16, 148:12-18.)

**RESPONSE:** Admitted to the extent VRO construes "on demand" to mean an exercise class that is streamed over the Internet when requested by a user and where that class was previously recorded.

187. Peloton offers "scenic rides" and "scenic runs" on the Bike and Tread, respectively. (Ex. 3 at 155:20-156:12.)

**RESPONSE:** Admitted.

188. Examiner Glenn E. Richman, the same examiner for the patent application that issued as the '513 patent, examined the patent application that issued as U.S. Patent No. ("Watterson"). (Ex. Q at 1.)

**RESPONSE:** Admitted, but deny that Watterson was listed in the "References Cited" on the face of the '513 Patent,[24] and therefore VRO cannot assert that Examiner Richman considered Watterson when examining the '513 patent, ▓▓▓▓▓▓▓▓▓▓▓▓.[25]

189. Watterson was classified by the United States Patent and Trademark Office in U.S. classifications 482/1; 482/8; 482/9. (Ex. Q at 1.)

**RESPONSE:** Admitted but deny that Watterson was listed in the "References Cited" on the face of the '513 Patent,[26] and therefore VRO cannot assert that Examiner Richman considered Watterson when examining the '513 patent, ▓▓▓▓▓▓▓▓▓▓▓▓.[27]

190. The patent application which issued as Watterson issued on February 14, 2006. (Ex. Q at 1.)

---

[24] SoF ¶ 1.
[25] ▓▓▓▓▓▓▓▓▓▓▓▓
[26] SoF ¶ 1.
[27] ▓▓▓▓▓▓▓▓▓▓▓▓

**RESPONSE:** Admitted.

191. Examiner Glenn E. Richman, the same examiner for the patent application that issued as the '513 patent, examined the patent application that issued as U.S. Patent No. 6,921,351 ("Hickman"). (Ex. S at 1.)

**RESPONSE:** Admitted, but deny that Hickman was listed in the "References Cited" on the face of the '513 Patent,[28] and therefore VRO cannot assert that Examiner Richman considered Hickman when examining the '513 patent, ▮.[29]

192. Hickman was classified by the United States Patent and Trademark Office in U.S. classifications 482/1, 482/8, and 482/9. (Ex. S at 1.)

**RESPONSE:** Admitted, but deny that Hickman was listed in the "References Cited" on the face of the '513 Patent,[30] and therefore VRO cannot assert that Examiner Richman considered Hickman when examining the '513 patent, ▮.[31]

193. Examiner Richman searched U.S. classifications 428/8 when examining the patent application that issued as the '513 patent. (Dkt. No. 1-1 at 1.)

**RESPONSE:** Denied. Only Examiner Richman knows what he actually searched and VRO did not seek or obtain his testimony. Peloton further denies that VRO can assert that Examiner Richman considered any prior art references not listed on the face of the '513 patent when examining the '513 patent, ▮.[32]

194. Peloton issued a subpoena to Daniel McClure. (Ex. 13.)

**RESPONSE:** Admitted.

---



[28] SoF ¶ 1.
[29] ▮
[30] SoF ¶ 1.
[31] ▮
[32] ▮

195. Daniel McClure produced documents in response to Peloton's subpoena, including a document labeled MC-001358. (Ex. 14.)

**RESPONSE:** Admitted.

196. Metadata for MC-001358 is shown below. The metadata includes: "Authors: Dan McClure"; "Revision number: 21"; and "Content created: 10/15/2001 6:56 AM."



**RESPONSE:** Admitted that the native version of the word document produced by Daniel McClure as MC-001358 purports to possess the metadata shown.  Neither VRO nor McClure have made any effort to authenticate this document or its metadata and it is, therefore, entirely inadmissible hearsay.  Furthermore, Peloton denies that this document is sufficient to establish a date of invention of the '513 patent before its filing date of April 2, 2002.[33]   When Examiner

---

[33] SoF ¶¶ 22-32.

Richman rejected similar claims in a continuation application claiming priority to the '513 patent based on Hickman, inventor McClure responded in October 2005 to the office action rejection by providing a declaration swearing that he conceived of the idea for the patent application prior to the filing date of Hickman and then proceeded with diligence from the time of conception until the filing of the parent application, which issued as the '513 patent.[34] McClure attached to his declaration a one page bullet point outline he labeled as Exhibit A, which he swore in his declaration to the Patent Office was "the latest version of this outline."[35] McClure did not attach the document produced as MC-001358 to his declaration provided to the Patent Office, nor claim that it satisfied the requirements necessary to swear behind the reference.[36] Examiner Richman conclusively found that "the evidence submitted is insufficient to establish a conception of the invention prior to the effective date of the Hickman reference" because "conception is more than a vague idea of the invention," and that "the evidence submitted is insufficient to establish diligence from a date prior to the date of reduction to practice of the Hickman reference to either a constructive reduction to practice or an actual reduction to practice."[37] (*Id.*). McClure did not otherwise respond to this rejection based on Hickman and allowed the application to go abandoned.[38]

---

[34] SoF ¶ 26.
[35] SoF ¶ 26-28.
[36] *Id.*
[37] Gafford Dec. Ex. Y, MC-000506 – MC-000516.
[38] SoF ¶¶ 31, 32.

Dated: New York, New York    Respectfully submitted,
       August 15, 2019

                                        /s/ *Steven G. Schortgen*
                                        Steven G. Schortgen (admitted *Pro Hac Vice*)
                                           sschortgen@sheppardmullin.com
                                        Jennifer Klein Ayers (admitted *Pro Hac Vice*)
                                           jayers@sheppardmullin.com
                                        **SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
                                        2200 Ross Avenue, Suite 2400
                                        Dallas, Texas 75201-6776
                                        Telephone: (469) 391-7400
                                        Facsimile: (469) 391-7401

                                        Paul W. Garrity
                                           pgarrity@sheppardmullin.com
                                        **SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
                                        30 Rockefeller Plaza
                                        New York, New York 10112
                                        Telephone: (212) 653-8700
                                        Facsimile: (212) 653-8701

                                        Jonathan Hangartner
                                           jon@x-patents.com
                                        **X-PATENTS, APC**
                                        5670 La Jolla Boulevard
                                        La Jolla, California 92037
                                        Telephone: (858) 454.4313
                                        Facsimile: (858) 454.4314

                                        **ATTORNEYS FOR DEFENDANT AND THIRD-PARTY PLAINTIFF PELOTON INTERACTIVE, INC.**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on August 15, 2019, the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system.

                                        */s/ Steven G. Schortgen*
                                        Steven G. Schortgen