UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VR OPTICS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., a Delaware Corporation,<br><br>    Defendant.<br>───────────────────────────────<br>PELOTON INTERACTIVE, INC.,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>VILLENCY DESIGN GROUP, LLC, ERIC VILLENCY and JOSEPH COFFEY,<br><br>    Third-Party Defendants. | Civil No. 16-6392 (JPO) |

**PLAINTIFF AND THIRD-PARTY DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Paul S. Doherty III, Esq.
Mark A. Berman, Esq.
Jeremy B. Stein, Esq.
Janel Alania, Esq.
**HARTMANN DOHERTY ROSA
BERMAN & BULBULIA, LLC**
800 Third Avenue, 28th Floor
New York, NY 10022
(212) 344-4619
pdoherty@hdrbb.com

*Attorneys for Plaintiff VR Optics, LLC and Third-Party Defendants Villency Design Group, LLC, Eric Villency, and Joseph Coffey*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.     VDG IS ENTITLED TO SUMMARY JUDGMENT ON PELOTON'S BREACH OF CONTRACT CLAIM. ................................................................. 2

          A.     VDG Only Represented That Its Own Design Did Not Infringe Anyone Else's Intellectual Property Rights. .................................................................... 2

          B.     VDG Did Not Provide the Interactive Technology That Infringes the '513 Patent. ........................................................................................................... 6

    III.    PELOTON IS RESPONSIBLE FOR ITS OWN PATENT INFRINGEMENT AND VDG IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS. ............................................................................................................... 9

CONCLUSION .............................................................................................................................. 10

**PRELIMINARY STATEMENT**

The bike that VDG designed for Peloton is exceptionally good looking but, in the end, it is a conventional exercise bike, functionally no different than exercise bikes used in gyms and homes throughout the world. The bike VDG designed can be used without any of the interactive technology Peloton added. As Peloton concedes, the bike is ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ Therefore, the bike VDG designed does not infringe the '513 Patent directly or contributorily.

Faced with this reality, Peloton contends that VDG represented and warranted in the parties' Agreements that the entire Peloton Bike – the intellectual property created by VDG and the intellectual property Peloton added to it – would not infringe *any* intellectual property whatsoever, regardless of who created that intellectual property. That is not what the parties' Agreements say. The Agreements unambiguously provide that VDG provided only a limited representation that its own design work would not violate intellectual property rights of third parties. The only way Peloton can read the Agreements to say more is by cherry-picking words from complete sentences. But, contracts must be read as a whole in order to be given the meaning intended by the parties. Since it is undisputed that VDG's work did not infringe any third-party intellectual property, VDG is entitled to summary judgment on Peloton's breach of contract claim.

VDG also is entitled to summary judgment on Peloton's other claims. Most fundamentally, these other claims fail because Peloton is responsible for its own product's infringement of the '513 Patent.  The Peloton Bike infringes the '513 Patent no matter who owns it and, consequently, Peloton owes compensation to whoever owns it. Nothing VDG or VRO did, by buying and asserting the Patent, caused this.  Peloton also knew about the '513 Patent before it decided to develop the Peloton Bike and bring it to market and specifically identified the risk that its product

infringed the Patent. Peloton nonetheless decided not to purchase the Patent and to take the risk that the Patent would one day be asserted against it. Again, nothing VDG or VRO did caused any liability that Peloton was not already facing and already knew about. Peloton's founders may feel that they were personally betrayed, but that does not give rise to a cause of action; Peloton is itself responsible for its own actions.

## ARGUMENT

**I.   VDG IS ENTITLED TO SUMMARY JUDGMENT ON PELOTON'S BREACH OF CONTRACT CLAIM.**

   **A.   VDG Only Represented That Its Own Design Did Not Infringe Anyone Else's Intellectual Property Rights.**

VDG represented that its own design work for Peloton would not infringe anyone else's intellectual property rights.  VDG did not represent that the entire Peloton Bike system, in which Peloton combined VDG's bike design with Peloton's interactive technology, would not infringe any intellectual property rights then in existence.  VDG's representation reads:

[REDACTED]

(Doherty Decl. Ex. 17 (2012 Agreement) § 2.7(c); Ex. 45 (2014 Agreement) § 8.2(a)(3).)  Reading this one sentence *as one sentence*, this means that whatever VDG creates for Peloton under the Agreements will be an original work created by VDG *and will therefore* not infringe on any existing intellectual property.  There is a clear cause and effect here: Because VDG's own work will be original, it will not infringe any intellectual property.  In its opposition, Peloton insists that this sentence be read as two entirely distinct, unrelated representations, but that only works if the reader completely ignores that this is *one sentence*.  Indeed, if – as Peloton insists – the second clause of the sentence were interpreted to mean that VDG warranted that every single component of the entire Peloton Bike system (regardless of whether VDG created it) does not infringe anyone

- 2 -

else's intellectual property rights, then the first phrase of the sentence would be superfluous because the Bike Intellectual Property provided by VDG obviously is just a subset of all of the intellectual property in the entire Peloton Bike. Clearly, that one sentence, read as a whole, means that VDG only represented that its own work will be original and will therefore not infringe on any intellectual property.

Similarly, the definition of Bike Intellectual Property is limited to the intellectual property rights to the work created by VDG under the Agreements. The sentence defining Bike Intellectual Property in the 2012 Agreement provides: ▌

▌

▌ (Doherty Decl. Ex. 17 § 1.7(a).) In this sentence, VDG agreed to transfer to Peloton the Bike Intellectual Property it would create under the 2012 Agreement in exchange for payment of the ▌; it did not and could not agree to sell to Peloton anyone else's intellectual property. Thus, Bike Intellectual Property cannot possibly mean anything more than the intellectual property owned by VDG at the time the Agreements were executed in 2012 and 2014.

It is not just the definition of Bike Intellectual Property that only makes sense if it is limited to the intellectual property to be created by VDG under the Agreements. Multiple other provisions of the Agreements also only make sense if the term Bike Intellectual Property refers only to intellectual property within VDG's control at the time the parties entered the Agreements:

- ▌ (Doherty Decl. Ex. 17 § 1.7(b); *see also* Doherty Decl. Ex. 45 § 1.7(b).) VDG could only agree to transfer to Peloton the sole and exclusive right to file intellectual property registrations with respect to intellectual property VDG created.

- ▌

- ███████████████████████████████████████
███████████████████████████████ (Doherty Decl. Ex. 17 § 1.7(b); Doherty Decl. Ex. 45 § 1.7(b).) VDG could only execute and deliver assignment documents relating to intellectual property VDG created.

- ███████████████████████████████████████
████████████ (Doherty Decl. Ex. 17 § 1.7(c), Doherty Decl. Ex. 45 § 1.7(c).) It makes sense to restrict VDG's freedom to give others the intellectual property VDG created for Peloton (and for which Peloton paid VDG); it makes no sense to restrict VDG from giving others intellectual property VDG did not create because such intellectual property was never within VDG's power to supply to someone else in the first place.

- ███████████████████████████████████████
██████████████████████ (Doherty Decl. Ex. 17 § 1.9; Doherty Decl. Ex. 45 § 1.9.) It makes sense for Peloton to agree to allow VDG to continue to use intellectual property VDG created (and for which Peloton paid VDG); it makes no sense for Peloton to agree to allow VDG to use a third party's intellectual property that VDG did not create and did not have any rights to in the first instance.

There is no way to read the Agreements as a whole, giving a consistent meaning to all of their provisions, and conclude that Bike Intellectual Property means anything more than the intellectual property VDG created for Peloton under the Agreements.

Peloton's argument in opposition, on the other hand, is premised on a misleading misquotation of the definition of Bike Intellectual Property. Peloton quotes the definition in the 2012 Agreement like this: ████████████████████████████████████████
████████████████████████████ (Docket #225 at 3.) That quotation *omits* the first part of the sentence: ████████████████████████████████████████
████████████████████████ The words Peloton omits make it clear that Bike Intellectual Property is limited to intellectual property VDG had within its power to sell to Peloton. Peloton also points to the fact that, in the two sentences following the definition of Bike Intellectual Property, the 2012 Agreement includes the words "created by Villency" and "created by or contributed to by Villency" after Bike Intellectual Property; according to Peloton, those phrases

- 4 -

would be unnecessary if Bike Intellectual Property meant only intellectual property in VDG's own work. (Docket #225 at 5.) Peloton ignores the fact that the phrase Bike Intellectual Property appears four times in those two sentences, but only two of those are followed by the phrase "created by ...":



(Doherty Dec. Ex. 17 § 1.7(a) (emphasis added).)[1] Even Peloton concedes that the Bike Intellectual Property referenced in these two sentences is the intellectual property in VDG's own designs, even though the phrase Bike Intellectual Property is not qualified by the phrase "created by Villency" every time it appears; read as a whole, the qualification is implicit but still clear and unambiguous. Thus, the only reasonable way to read the Agreements as a whole is that Bike Intellectual Property is limited to intellectual property associated with the bike designs VDG created under the Agreements.

Even if Bike Intellectual Property is interpreted (erroneously) to mean all intellectual property relating to the Peloton Bike, no matter whether it was provided by VDG, the non-infringement representation VDG made is still limited to its own design work because that is the natural, cause and effect reading of the sentence, as discussed above. Moreover, it would be both unfair and absurd to read it more broadly. Joe Coffey and Eric Villency – a non-practicing attorney

---

[1] In its brief, Peloton actually omits the opening words ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ just like it omitted the opening words of the definition of Bike Intellectual Property (Docket #225 at 5), because those words make it obvious that Bike Intellectual Property is something that VDG was transferring to Peloton, and VDG can only transfer what it already owns.

and a furniture designer – had no capacity whatsoever to represent to Peloton that the entire interactive technology Peloton coupled with VDG's bike design would not infringe any and all of the pre-existing intellectual property in the world. They were neither hired nor paid to make that sort of assessment, which would require the expertise of patent lawyers or search agents, electrical engineers and computer programmers, that is, the expertise of Peloton's founding fathers. Peloton's only response to this is that VDG cannot rely on parol evidence, but parol evidence is evidence of prior agreements introduced to modify a later agreement. This is not parol evidence; this is common sense.

### B. VDG Did Not Provide the Interactive Technology That Infringes the '513 Patent.

As the Court found in its Opinion on VDG's motion to dismiss: "Peloton's claim for breach of contract hinges on whether the product produced by VDG contributorily infringes the '513 patent. … Certainly, if there is no contributory or direct infringement of the product created pursuant to the Agreements, there is no breach of contract." (Docket #57 at 6-7.) The bike VDG designed does not directly infringe because it does not include any of the interactive technology covered by the '513 Patent, and it also does not contributorily infringe because ███████████ ███████████████████████████████████████████ (*See* Docket #210 at 11-13.) Because VDG's design does not infringe the '513 Patent, VDG did not breach its representation in the Agreements that its own work would not infringe any intellectual property:

Peloton concedes, both in its opposition brief and in its *Flywheel* complaint, that VDG did not provide the Peloton Bike's interactive technology that simulates the experience of competing against other geographically dispersed users. (*See* Docket #210 at 10 (citing Peloton's description of "The Journey to the Peloton Bike" and the characterization of Feng as Peloton's "technological guru").) Peloton now argues instead that VDG designed or contributed to "operating components"

- 6 -

of the Peloton Bike, like the brake and the flywheel. (Docket #225 at 12-14.) That is right; VDG designed a standard stationary bike, which includes certain of the "conventional" operating components of standard fitness equipment.[2] As explained in the Patent:

> As used herein, the term "operating components" denotes those conventional components that are utilized in fitness equipment for carrying out the functionality or purpose of the fitness equipment. Such components may include motors, flywheels, drags, brakes, belts, pulleys, magnetic arrangements, etc. For example, some exercise bicycles use some sort of flywheel and implement tension control either through direct physical resistance devices such as belts and chains, while others vary the resistance through the use of magnetic arrangements. Again, and for purposes of this disclosure, the term "operating component" should be given its broadest possible construction to cover these and other components that are conventionally provided in fitness equipment to carry out the operation and function (i.e., the intended exercise) of the equipment.

(Docket #1-1 at 28.) VDG provided a design for a fitness bike, which included the usual "conventional components" that allow a bike "to carry out … the intended exercise," and this is what Peloton paid VDG for, a conventional exercise bike who's look, feel and colors made it ▮▮▮▮▮▮▮▮▮▮ (Docket #209 ¶ 82.) VDG did *not* provide or contribute to the interactive computer technology for simulating interactive exercise events, such as spinning classes, including, for example, a "server," "a computer program executed by the server," "fitness equipment configured for communication with the server via wide-area network," "logic configured to communicate the first performance parameters to a remote fitness equipment via wide-area network," "logic configured to receive second performance parameters communicated from the remote fitness equipment," and "logic configured to drive the display … such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed." (Docket #1-1 at 33.)

---

[2] *See* Docket #210 at 9-11; Docket #209 ¶¶ 69-76, 78-80; Docket #228 Response to ¶¶ 48, 199 (detailing the limits to VDG's design and production work, including which components VDG did contribute to and which it did not).

- 7 -

- 8 -

Nevertheless, Peloton argues that the Patent claims at issue list "at least one operating component." That is true, but beside the point. The '513 Patent claims include fitness equipment and their incorporated operating components, but no one is suing Peloton for selling conventional fitness equipment, like a stationary bike, because that is not patented under the '513 Patent. The innovative aspect of the '513 Patent is the interactive technology that links fitness equipment (not just bikes, but also treadmills, rowing machines, stepping machines, or ski machines) together and simulates interactive exercise events. (*Id.* at 2-7.) There is nothing special about the bike VDG designed, with its "conventional components," that causes the Peloton Bike, as a whole, to infringe the '513 Patent.

Peloton's conduct also makes clear that Peloton well knows that VDG is not required to defend and indemnify Peloton against intellectual property claims that are not related to VDG's design work. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ which it certainly would have done if it truly believed that VDG had represented that the entire Peloton Bike would not infringe any intellectual property rights under the sun. To the contrary, ███████████████████████

████████████████████████████████████████████ (Doherty Reply Decl. Ex.3.) Thus, Peloton's own conduct belies its assertion that VDG had any responsibility for the Peloton Bike infringing any intellectual property other than the intellectual property created by VDG under the parties' Agreements.[3]

### III. PELOTON IS RESPONSIBLE FOR ITS OWN PATENT INFRINGEMENT AND VDG IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS.

Peloton's claims for fraudulent concealment, breach of the duty of good faith, and tortious interference all fail for multiple reasons, as set forth in VDG's July 1, 2019 motion for summary judgment and in its August 1, 2019 opposition to Peloton's motion. These claims also all fail because they are based on the allegation that VDG/VRO bought the '513 Patent without telling Peloton beforehand and then asserted the Patent against Peloton. (Docket #225 at 20-25.) The reality is, however, that the '513 Patent exists, the Peloton Bike infringes it, and Peloton owes compensation to whoever owns the Patent. VRO's buying and asserting the Patent did not cause this reality and it did not create or alter Peloton's potential or actual liability for patent infringement. Peloton is no worse off as a result of VRO's having purchased and asserted the Patent as opposed to anyone else who owned the Patent in the past, now, or in the future. ████████

████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

---

[3] VDG is also not obligated to defend or indemnify Peloton for all of the additional reasons set forth in VDG's August 1, 2019 opposition to Peloton's motion for summary judgment, and VDG incorporates those arguments herein. (*See* Docket #227 at 11-13.) Further, there is no argument to be made that VDG would have any obligation to defend or indemnify Peloton for the claim that the Peloton Tread infringes the '513 Patent. The Tread was not the subject of the Agreements between Peloton and VDG, and VDG had nothing to do with the Tread. Therefore, VDG is certainly entitled to summary judgment on Peloton's claim for defense and indemnity with respect to the claim that the Tread infringes the '513 Patent.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████ (Docket #209 ¶¶ 103-110.) Each of these

claims therefore fails:

- Fraudulent Concealment: Even if VDG failed to disclose the efforts to purchase the Patent and its intent to file a lawsuit, there can be no dispute that that did not cause any damage to Peloton because, by 2016, ███████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████

- Breach of the Duty of Good Faith: Peloton says VDG denied Peloton "a non-infringing, proprietary indoor bike." That is false. Peloton denied itself a non-infringing bike when it chose to run the risk that ████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████

- Tortious Interference: Even if the representation that the Bike Intellectual Property does not infringe any existing intellectual property is not true, neither Coffey, Villency, nor VRO caused that alleged breach. The '513 Patent exists, the Peloton Bike infringes the Patent, and Peloton owes compensation to whoever owns the '513 Patent, no matter whether VRO bought the Patent and asserted it or not. Coffey, Villency and VRO did not cause any damage to Peloton that Peloton was not already facing.

Peloton, and John Foley in particular, may be personally offended that it was VRO that ultimately asserted the Patent against Peloton, as opposed to any other past or future owner of the Patent, but that does not state a cause of action against VRO, VDG, Coffey, or Villency, because the Peloton Bike infringes the Patent regardless of who owns it, and Peloton is liable for that infringement.

## CONCLUSION

For these reasons, the Court should enter summary judgment against Peloton on all of Peloton's third-party claims and on Peloton's third counterclaim for intentional interference with contractual relationship.

Dated: August 15, 2019

                            Respectfully submitted,

                            s/ Paul S. Doherty III
                            Paul S. Doherty III, Esq.
                            Mark A. Berman, Esq.
                            Jeremy B. Stein, Esq.
                            Janel Alania, Esq.
                            **HARTMANN DOHERTY ROSA BERMAN & BULBULIA, LLC**
                            800 Third Avenue, 28th Fl.
                            New York, NY 10022
                            (212) 344-4619
                            pdoherty@hdrbb.com

                            *Attorneys for Plaintiff and Third-Party Defendants*