UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

VR OPTICS, LLC, a Delaware Corporation,

                        Plaintiff,

          -v-

PELOTON INTERACTIVE, INC.,

                        Defendant.

---------------------------------------------------------------

PELOTON INTERACTIVE, INC.,

                        Third-Party Plaintiff,

          -v-

VILLENCY DESIGN GROUP, LLC, ERIC
VILLENCY, and JOSEPH COFFEY,

                        Third-Party Defendants.

16-CV-6392 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      In 2012, fitness company Peloton Interactive, Inc. ("Peloton") recruited Villency Design Group LLC ("VDG") to design, develop, and manufacture an interactive stationary bike with an integrated tablet computer. Before their agreement expired, VDG learned of a patent that might be infringed by the contemplated bike and one of Peloton's other products. The sole owners and members of VDG formed a new LLC, VR Optics ("VRO"), and VRO acquired the patent. VRO brought this action against Peloton for infringing the patent. Peloton counter-sued and brought contract and tort claims against VDG and its two members.

      Before the Court now are Peloton's motion for summary judgment of patent noninfringement and invalidity, cross-motions for summary judgment on Peloton's claims against VDG and its members, and a smattering of evidentiary motions and motions to seal

1

related to the dispositive motions. The Court concludes that there is no genuine dispute of fact that the asserted patent is invalid because it is anticipated by prior art. Peloton's motion for summary judgment of invalidity is therefore granted, and the Court has no occasion to reach the issues regarding noninfringement or the admissibility of the parties' related expert opinions, except to the extent necessary to decide invalidity. As to the claims against VDG and its members, the Court grants in part and denies in part each cross-motion for summary judgment.

I. **Background**

The following facts are taken from the parties' statements of undisputed material facts. The Court eschews recitation of facts not directly pertinent to the Court's disposition of the pending motions.

VDG is a limited liability company of which Defendants Joseph Coffey ("Coffey") and Eric Villency ("Villency") are the owners and sole members. (Dkt. No. 209 ("VRO/VDG SOF") ¶¶ 1–2, 5, 8.) Villency serves as Chief Executive Officer. (*Id.* ¶ 5.) Peloton is a hardware, software, and media company that brings fitness class experiences to users in their homes through live and on-demand content. (Dkt. No. 197 ("Peloton Contract SOF") ¶ 3.)

A. **The 2012 and 2014 Agreements**

In 2012, Peloton contracted with VDG to design and produce at least some portion of Peloton's first product, an interactive stationary bike equipped with an integrated computerized touchscreen console and streaming technology (the "Peloton Bike"). (VRO/VDG SOF ¶¶ 52–55; Peloton Contract SOF ¶ 5.) The exact scope of VDG's work under that agreement (the "2012 Agreement") is disputed by the parties, but they agree it included at least designing the bike's physical frame. (*See* Dkt. No. 286 ¶ 5.) Pursuant to the 2012 Agreement's terms, VDG guaranteed that "[a]ll Bike Intellectual Property provided by [VDG] . . . [would] be originally

created exclusively by" VDG and would "not infringe upon the rights of any third party." (Dkt. No. 262, Ex. 17 ("2012 Agmt.") at § 2.7(c).)

On June 24, 2014, Peloton and VDG executed a second, more comprehensive written agreement, entitled "Bike Development and Services Agreement" (the "2014 Agreement"). (*See* Peloton Contract SOF ¶ 50.) This agreement provided, among other things, that "All Bike Intellectual Property provided by [VDG] is, has been and will be originally created exclusively by [VDG] and that the Bike Intellectual Property does not and will not infringe upon the rights of any third party[.]" (Dkt. No. 262, Ex. 45 ("2014 Agmt.") § 8.2(a)(3).) It further provided that VDG would "indemnify, defend and hold harmless Peloton" against claims "arising out of, or relating to, any violation or alleged violation of any intellectual property rights regarding any of the Bike Intellectual Property." (*Id.* ¶ 7.1(b).)

B. The '513 Patent

In January 2016, before the expiration of the 2014 Agreement, VDG's representative began discussions to acquire U.S. Patent 6,902,513 (the "'513 Patent"), titled "Interactive Fitness Equipment," from the patent's then-owner. (*See* Dkt. No. 286 ¶¶ 82–87.) On June 20, 2016, articles of organization of a new limited liability company, VR Optics ("VRO"), were filed with the State of New York. (*See* VRO/VDG SOF ¶ 99.) Coffey and Villency — the owners and sole members of VDG — are also the owners and sole members of VRO. (*Id.* ¶ 16.) Shortly after the expiration of the 2014 Agreement in July 2016, VRO and the seller executed an agreement transferring ownership of the '513 Patent to VRO. (*Id.* ¶ 18.)

The '513 patent is "generally directed to computerized fitness equipment," such as a stationary bike, ski machine, or treadmill, that "simulate[s] . . . actual race conditions with other users." *See* U.S. Patent No. 6,902,513 col. 2 ll. 57–59 (filed June 7, 2005). For example, in one embodiment of the claimed invention, a "system having a plurality of exercise bikes" is

3

"configured to exchange operational and performance information over a communication link." *Id.* col. 10 ll. 52–55. The "bikes . . . may include displays to . . . provide visual, audible, or other information to the users." *Id.* col. 10 ll. 55–57. VRO has produced a report from its expert, Steven Lenz, opining that Peloton infringes claims 1, 2, 3, 4, 5, 6, 12, 13, 15, 16, and 17 of the '513 patent, of which claims 1 and 6 are independent.[1] (*See* Dkt. No. 218, Ex. E ("Lenz Opening Rpt.") ¶ 17.)

### C. Procedural History

On August 11, 2016, VRO initiated this patent action, alleging that Peloton had infringed the '513 Patent. (*See* Dkt. No. 1.) On December 30, 2016, Peloton filed an answer to the operative complaint, alleging counterclaims against VRO (Dkt. No. 41), as well as a third-party complaint against VDG, Eric Villency, and Joseph Coffey (Dkt. No. 42). VRO, VDG, and the individual third-party defendants moved to dismiss claims against them, but this Court issued an opinion and order denying the motions on August 18, 2017. *See VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-CV-6392, 2017 WL 3600427 (S.D.N.Y. Aug. 18, 2017) (Dkt. No. 57). On August 2, 2018, the Court held a *Markman* hearing to construe the '513 patent's disputed terms, and an opinion and order on claim construction followed on November 4, 2018. *See VR Optics, LLC v. Peloton Interactive, Inc.,* 345 F. Supp. 3d 394, 397 (S.D.N.Y. 2018) (Dkt. No. 112).

Pending now are Peloton's motion for summary judgment on the patent claims (Dkt. No. 199), cross-motions for summary judgment on Peloton's claims against VDG, Coffey, and Villency (Dkt. Nos. 196, 207), several evidentiary motions (Dkt. Nos. 172, 173, 180, 187, 190),

---

[1] Lenz's report also opined that Peloton infringed claims 18 and 19 of the '513 patent, but VRO has not pursued those claims. (*See* Dkt. No. 218, Ex. A ("Lenz Rebuttal Rpt.") ¶ 18 & n.2.)

4

and numerous motions to seal. (*See* Dkt. Nos. 178, 185, 189, 195, 203, 219, 223, 229, 230, 234, 241, 254, 255, 256.) These motions are fully briefed and ripe for the Court's consideration.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While "[s]ummary judgment must be granted against a party who has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial," it is the party moving for summary judgment that "has the initial responsibility of identifying the legal basis of its motion, and of pointing to those portions of the record that it believes demonstrate the absence of a genuine issue of material fact." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

In the context of a patent infringement suit, "the ultimate burden of proving infringement rests with the patentee," so "an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Id.*; *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). But "[b]ecause patents are presumed valid, 'a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise.'" *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1340 (Fed. Cir. 2010) (quoting *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006)).

### III. Discussion

#### A. VRO's Patent Claims

The Court first addresses Peloton's motion for summary judgment of noninfringement and invalidity, because the disposition of VRO's patent claims bears on the outcome of Peloton's claims against VDG and the Individual Defendants. The Court concludes that the '513 patent is invalid because it is anticipated by prior art.

Anticipation requires "that a single prior art reference disclose each and every limitation of the claimed invention, either expressly or inherently." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1306 (Fed. Cir. 2019). Anticipation is a question of fact, but it nonetheless may be decided on summary judgment if there are no genuine issues of material fact to be decided. *See Hazani v. U.S. Int'l Trade Comm'n,* 126 F.3d 1473, 1477 (Fed. Cir. 1997).

U.S. Patent No. 6,997,852 (the "Watterson Patent"), an allegedly anticipatory reference identified by Peloton, discloses a system intended to recreate the motivational and instructional benefits of group exercise in a home setting using a remote communication system. *See* U.S. Patent No. 6,997,852, at [57] (filed Feb. 14, 2006). As to the Watterson Patent, several basic matters are undisputed. First, there is no dispute that the Watterson patent is a single reference that describes prior art. And there is also no dispute that the Watterson patent discloses all of the independent claims' limitations, save one. The validity of the patent at the heart of this sprawling, years-long litigation rests, then, on the thin reed of this single element.

The limitation on which VRO rests its case discloses "logic configured to drive the display in response to both the first and second performance parameters, such that a performance comparison between the fitness equipment and at least one remote fitness equipment is visually displayed." '513 Patent col. 23 ll. 30–35. (In claim 6, the word "drive" is replaced by "control," but the difference is immaterial. *See id.* col. 24 l. 2; *VR Optics*, 345 F. Supp. 3d at 401.) This

6

Court previously construed the limitation, consistent with its plain and ordinary meaning, to disclose "logic configured to drive the display to visually display a difference in performance between the fitness equipment and at least one remote fitness equipment based on a difference between the first and second performance parameters." *Id.* at 411. In reaching that conclusion, this Court noted that such a construction is "consistent with all of the numerous descriptions of the 'comparison' displays provided in the ['513] specification," which include, among other things, "a visual read indication [that] *show[s] where the particular user is in relation to the user or users that are operating the coupled fitness equipment*." *Id.* at 411 (second quoting '513 Patent col. 5 ll. 29–33 (alterations in original) (emphasis added)).

Peloton argues that the Watterson Patent discloses the "difference in performance" display element because it contemplates a "personalized race" between "two or more individuals . . . where they may race one against the other, *while viewing graphical representations of the distan[ce], time, and speed of the other competitors*," and a "display [that] may include a racing track that *shows a relative position of each competitor one with another*, or a trail that each competitor races along." ('852 Patent col. 44 ll. 32–37, 60–62.) The Court agrees. Indeed, in its claim construction opinion, this Court previously cited as an exemplar of the "performance difference" limitation an embodiment from the '513 specification — "a visual read indication [that] show[s] *where the particular user is in relation to the user or users that are operating the coupled fitness equipment*" — that is materially indistinguishable from that described in the Watterson Patent. *See VR Optics*, 345 F. Supp. 3d at 411 (quoting '513 Patent col. 5 ll. 29–33 (alterations in original) (emphasis added)).

The report of VRO's expert, Steven Lenz, fails to create a genuine factual dispute on this issue. In Lenz's view, Watterson does not disclose the "difference in performance" element

7

because each of the embodiments described in the Watterson specification requires "users to make their own comparisons." (Lenz Rebuttal Rpt. ¶ 40–41.) Because the prior art shunts the mental burden of the comparison onto a user, Lenz opines, the track display falls outside the ambit of the '513 limitation as construed by the Court, which requires the display of a difference in performance, not merely the display of raw, noncomparative data. (*See id.*)

"[E]xpert witnesses," however, may not "offer testimony that conflicts with the Court's construction of the claim." *Plew v. Ltd. Brands, Inc.*, No. 08-CV-3741, 2012 WL 379933, at *3 (S.D.N.Y. Feb. 6, 2012). Lenz's opinion rests on an unduly cramped reading of this Court's prior construction. A display of the relative position of each competitor on a simulated track is a spatial representation of the competitors' relative performance; it is, in short, a performance comparison, just as an ordinal ranking is a numerical representation of the competitors' relative performance. The embodiment described in the Watterson Patent no more requires a user to manually execute the comparison than any other conceivable display of relative performance. Lenz's opinion is therefore inconsistent with the plain and ordinary meaning of the claim's terms as set out in the Court's prior construction. It is thus excluded, and in the absence of Lenz's opinion, VRO has introduced no evidence to controvert Peloton's evidence of anticipation.

Next, VRO contends that, invalidity of the *independent* claims notwithstanding, the *dependent* claims of the '513 patent survive summary judgment. (Dkt. No. 231 at 15 n.12.) That is because, according to VRO, Peloton did not argue that the dependent claims were anticipated by the Watterson Patent in its opening brief. (*See id.*) Not so. Though Peloton directed the bulk of its briefing to the limitations with respect to which VRO's expert disputed anticipation, Peloton's opening brief unambiguously asserted that "Watterson explicitly discloses *each* limitation of the '513 patent's *asserted claims* and therefore anticipates and renders these claims

invalid." (Dkt. No. 278 at 16–17 (emphases added).) In response, VRO did not lodge any substantive defense of the validity of the dependent claims, instead focusing its briefing on the independent claims.

Moreover, Peloton's Local Rule 56.1 Statement of Material Facts methodically cataloged, with citations to admissible evidence, where Watterson disclosed each limitation of the dependent claims. (*See* Peloton Patent SOF ¶¶ 111–120.) VRO marked each of these statements as disputed in its counterstatement of material facts, but did not identify any contrary evidence. Instead, it repeated a rote complaint that each statement was conclusory and implausibly claimed the statements were ambiguous.[2] (*See* Dkt. No. 232 at 85–86.) Contrary to VRO's protestations, each of the paragraphs at issue stated a factual proposition respecting the content of the Watterson patent and supported that proposition by citing the relevant portion of the patent and record. Though these statements bear legal consequence, they were factual statements validly included in the Rule 56.1 statement. Anticipation is, after all, a question of fact. *See Hazani,* 126 F.3d at 1477. When a party opposing summary judgment fails to controvert a fact set forth in the moving party's Rule 56.1 statement with its own admissible evidence, that fact is deemed admitted. *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d

---

[2] By way of illustration, paragraph 111 states: "Watterson discloses that the fitness equipment can be a treadmill, a skiing machine, an exercise bike, a rowing machine, a stepping machine, and an orbital stepping machine." (*See* Peloton Patent SOF ¶ 111 (citing '852 Patent, col. 6, ll. 39-44 & fig. 1.)). VRO's counterstatement asserts that this is a "conclusory argument that the cited portions of Watterson discloses a claim element," and that the statement is ambiguous insofar as it does not identify to what "fitness equipment" it refers. (*See* Dkt. No. 232 at 86.) But it is obvious from the context that "the fitness equipment" as used in that paragraph refers to the fitness equipment described in the preceding paragraphs of the same section (*see, e.g.*, *id.* at ¶ 77), and the statement is not conclusory insofar as it states a factual proposition about the content of the Watterson patent and supports that proposition with admissible evidence.

9

Cir. 2003). Accordingly, these facts are deemed admitted, and summary judgment as to the dependent claims too is warranted.

Because the conclusion that the asserted claims of the '513 patent are invalid is fatal to VRO's patent claims, the Court does not reach Peloton's remaining arguments for invalidity and noninfringement.[3]

**B.     Peloton's Common Law Claims**

Peloton and the VDG Defendants both move for summary judgment on Peloton's claims as Third-Party Plaintiff. Those claims include alleged breaches of the 2012 Agreement, the 2014 Agreement, and the covenant of good faith and fair dealing; fraudulent inducement; and, as against Coffey and Villency individually, tortious interference with Peloton's contractual relationship with VDG. The Court addresses each claim in turn.

**1.     Breach of the Warranties in the 2012 and 2014 Agreements**

The success of Peloton's argument for invalidity dooms its claim for breach of the warranties in the 2012 and 2014 Agreements. Those agreements obligated VDG to furnish a product that would not infringe the intellectual property rights of third parties. (*See* 2012 Agmt. § 2.7(c); 2014 Agmt. § 8.2(a)(3).) The alleged violation of those provisions is therefore

---

[3] For the same reason, the parties' motions to preclude the testimony and reports of various experts are denied as moot. These motions include Peloton's motion to exclude the testimony and report of Mark Peterson regarding patent damages (Dkt. No. 172); VRO's motion to exclude the expert testimony and report of Christopher Bakewell regarding patent damages (Dkt. No. 173); VRO's motion to exclude the expert testimony and report of Richard Goodin regarding UltraCoach VR, an allegedly anticipatory prior art reference (Dkt. No. 180); Peloton's motion to exclude Lenz's report and testimony (Dkt. No. 187), except to the extent that Lenz's opinion on anticipation by the Watterson Patent is precluded as explained above; and VRO's motion to exclude the testimony of Peloton's expert Lee Rawls regarding invalidity and noninfringement (Dkt. No. 190).

premised on the infringement of a valid patent, a premise which the Court has now rejected. Summary judgment to VDG on this claim is therefore granted.

### 2. Breach of the Covenant of Good Faith and Fair Dealing

For similar reasons, summary judgment in VDG's favor is also appropriate on Peloton's claim that VDG violated the covenant of good faith and fair dealing. "The covenant is violated when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under their agreement." *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990). VRO's conduct, sharp as it may have been, has not deprived Peloton of the fruits of the 2012 and 2014 Agreements: in Peloton's words, "a non-infringing, proprietary indoor bike." (Dkt. No. 225 at 22.)

### C. Fraudulent Concealment

The parties each have moved for summary judgment on Peloton's claim for fraudulent concealment. "The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *De Sole v. Knoedler Gallery,* LLC, 974 F. Supp. 2d 274, 314 (S.D.N.Y. 2013) (citations and internal quotation marks omitted). "Under New York law, each element of a fraud claim must be shown by clear and convincing evidence." *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995).

At the motion to dismiss stage, this Court held that Peloton could proceed with its fraudulent concealment claim on the theory alleged, that is, "that VDG fraudulently concealed the imminent likelihood of an infringement claim against the Peloton Bike[,] . . . render[ing] the transaction inherently unfair." *VR Optics*, 2017 WL 3600427, at *5 (citations and internal

quotation marks omitted).  VDG now contends that Peloton has not adduced any evidence that VDG knew at the time it entered into the 2014 Agreement that the patent infringement suit was in the offing, let alone enough that a reasonable jury could find knowledge by clear and convincing evidence.

Peloton emphasizes that it has proffered evidence that VDG knew of the *existence* of the '513 patent before entering the 2014 Agreement.  But, as the Court noted at the motion to dismiss stage, Peloton must show a failure to disclose not the patent's existence (Peloton undisputedly knew about the patent), but rather the threat of an imminent lawsuit.  *See VR Optics*, 2017 WL 3600427, at *5.  By the same token, it must show VDG's knowledge of the imminent litigation threat, not merely knowledge of the patent's existence.  Even after several years of discovery, Peloton identifies no evidence that *at the time the parties entered the contract*, roughly two years before VRO initiated suit, Villency and Coffey had already hatched their plan.  Even drawing all reasonable inferences in Peloton's favor, the Court cannot conclude that evidence of Villency and Coffey's mere knowledge of the contract, without more, creates a genuine dispute on this issue.

In the alternative, Peloton urges that VDG at least knew of the threat of an impending lawsuit by January 2016 — after entering into the 2014 Agreement but before the contract's expiration — when VDG had already initiated negotiations with the patent's then-holder.  (*See* Peloton Contract SOF ¶¶ 81–91.)  Had Peloton been informed at that time of the looming litigation threat, it theorizes, it could have acquired the '513 patent itself or ceased its ongoing payments under the 2014 Agreement to VDG, depriving VDG (and therefore VRO) of the

capital necessary to acquire the patent.[4] (*See* Dkt. No. 225 at 23.) But, conjecture notwithstanding, Peloton has identified no evidence — let alone clear and convincing evidence, as New York law requires — that it "actually relied" on VDG's omission in forgoing these potential routes. Merely hypothesizing a road not taken is not enough at this late stage to show reliance. Thus, Peloton has failed to create a genuine dispute as to VDG's knowledge during the pre-Agreement period and Peloton's reliance during the Agreement's term. Summary judgment to VDG on the fraudulent concealment claim is warranted.

### D. Breach of the 2014 Agreement's Obligation to Defend

Peloton's claim that VDG breached the 2014 Agreement by failing to defend Peloton against the present action by VRO fares better. The contract's unambiguous terms, the Court concludes, obligated VDG to defend Peloton against VRO's patent action.

The contract contains an express provision imposing an obligation to "defend" Peloton against claims "arising out of, or relating to, any violation or alleged violation of any intellectual property rights regarding any of the Bike Intellectual Property." (2014 Agmt. § 7.1(b).) Notwithstanding that language, VDG contends that outside the insurance context, contractual duties to defend are coextensive with the duty to indemnify, and thus are not triggered absent a finding of liability. (Dkt. No. 227 at 12–13.)

It is true that "[u]nder New York law, the 'duty to defend' is *presumed* only in insurance policies[, and] the common law imposes no such duty on contractual indemnitors more generally." *Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 14-CV-7222, 2015 WL 4254033, at *7 (S.D.N.Y. July 14, 2015) (emphasis added). "Accordingly, an indemnitor's obligation to defend

---

[4] VDG does not contest, and the Court therefore assumes for the purposes of these motions, that VDG owed an ongoing duty to disclose material facts to Peloton while the 2014 Agreement was operative.

13

must emanate (if at all) from the language of the contract." *Id.* But "[i]f a contractual defense obligation is, by its own terms, exceedingly broad, a court will not artificially circumscribe it simply because the indemnitor is not an insurer." *Id.*; *see also McCleary v. City of Glens Falls*, 819 N.Y.S.2d 607, 609 (App. Div. 3d Dep't 2006) ("Although [Defendant] contends that its duty to defend is no broader than its duty to indemnify because it is not an insurer . . . , that distinction has no significance here, where the [Plaintiff] is due the full benefit of the bargain it reached . . . under the clear and unambiguous terms of the licensing agreement."). In short, "[o]utside the context of insurance policies, contractual defense obligations are generally treated like any other contractual provision." *Dresser-Rand Co.*, 2015 WL 4254033, at *7. Here, the defense clause admits of no limiting construction; VDG expressly agreed to "defend . . . Peloton . . . against any claim . . . arising out of, or relating to, any violation or alleged violation" of the relevant rights, and no doctrine of New York law requires the Court to disregard that unambiguous command.

VDG also contends that even if it has an independent contractual obligation to defend, that obligation nonetheless does not extend to this suit, because the alleged violation here does not "regard[] any of the Bike Intellectual Property." *Id.* VDG understands the "Bike Intellectual Property" to encompass only the intellectual property designed, made, or produced by VDG (according to VDG, solely the bike frame).[5] (*See* Dkt. No. 227 at 11–12.) On VDG's

---

[5] The provision of the 2014 Agreement defining "Bike Intellectual Property" reads: "Peloton shall be the sole and exclusive owner of all intellectual property relating to the Bikes, including, without limitation, all [intellectual property] conceived, made or produced by Villency . . . [or] as the result of the joint efforts of Peloton and Villency prior to or during the Term of this Agreement (collectively, the 'Bike Intellectual Property')." (2014 Agmt. § 1.7(a).) The interpretive dispute therefore hinges on whether the designatum of the term "Bike Intellectual Property" is "all intellectual property relating to the Bikes," or, instead, only that intellectual property "conceived, made or produced by Villency . . . [or] as the result of the joint efforts of Peloton and Villency."

14

understanding, this suit does not "regard" that frame, but rather "regards" Peloton's interactive technology, which it maintains was designed and supplied by other contractors.

Peloton vigorously contests VDG's interpretation of the term "Bike Intellectual Property," but the Court finds it unnecessary to resolve that disagreement. Even if VDG is correct that "Bike Intellectual Property" refers to only those components of the bike undisputedly designed by VDG, the Agreement's terms unambiguously obligate VDG to defend Peloton against VRO's suit. The Agreement places upon VDG an obligation to defend Peloton against infringement claims "regarding any of the Bike Intellectual Property." (2014 Agmt. § 7.1(b).) VRO's patent claims rest in part on the assertion that the bike frame itself satisfies some limitations of the '513 Patent. For example, independent claim 1 discloses "geographically-separated fitness equipment" comprising "at least one operating component," '513 Patent col. 23 ll.14, 18, independent claim 2 discloses the system in claim 1 "wherein the fitness equipment is one selected from the group . . . [including] an exercise bike," *id.* col. 23 ll. 41–43, dependent claim 4 discloses the system defined in claim 1 wherein the operating component "is one selected from the group consisting of[, inter alia] . . . a flywheel," *id.* col. 23 ll. 52–53, and independent claim 6 discloses "fitness equipment" comprising "at least one operating component configured to provide an aspect of exercise for a user of the fitness equipment," *id.* col. 23 ll. 59–61. The alleged violation therefore "regard[s] Bike Intellectual Property," even on VDG's narrow understanding of that term, because the violation is predicated on the Bike Intellectual Property satisfying certain necessary elements of VDG's case.

In response, VDG opines that "no one is suing Peloton for selling conventional fitness equipment, like a stationary bike," because the "innovative aspect of the '513 Patent is the interactive technology." (Dkt. No. 250 at 8.) Fair enough, but that observation cannot override

the unambiguous terms of the contract, which require VDG to defend Peloton against actions that "regard" the Bike Intellectual Property — *not* solely against actions wherein the Bike Intellectual Property is alleged to embody the "innovative aspect" of the asserted patent. The Bike Intellectual Property, as VDG defines it, was an essential part of VRO's patent case. Had VDG preferred a narrower defense obligation, it could have bargained for one.[6] VDG is bound to the terms of the agreement struck.

VDG also cites this Court's prior opinion at the motion to dismiss stage in service of its cause. That opinion stated that "if there is no contributory or direct infringement of the product created pursuant to the Agreements, there is no breach of contract." *VR Optics*, 2017 WL 3600427, at *3. That remark, however, pertained to the Agreements' guarantee that the Bike Intellectual Property would not infringe any third parties' rights — *not* to the duty to defend. *See id.* It is thus of no help to VDG here.

It is undisputed that on September 9, 2016, Peloton served notice to VDG invoking the 2014 Agreement's indemnification and defense clause, and VDG has so far failed to fulfill those putative obligations. (*See* Dkt. No. 286 ¶ 206.) Accordingly, summary judgment in favor of Peloton is warranted on its claim that VDG breached the 2014 Agreement by failing to defend against VRO's claims.

### E. Tortious Interference

Finally, Villency and Coffey seek summary judgment on Peloton's claim that they tortiously interfered with the contract between Peloton and VDG. Under New York law, a

---

[6] Indeed, a comparison of the 2012 Agreement and the 2014 Agreement illustrates that VDG knew how to phrase a narrower defense obligation. The 2012 Agreement's terms obligate VDG only to defend against alleged violations of VDG's warranty of noninfringement, which in turn is limited to circumstances where VDG's contributions themselves infringe a third party's rights. (*See* 2012 Agmt. §§ 2.7(c), 6.1.)

tortious interference claim requires a showing that (1) a valid contract exists; (2) a third party had knowledge of the contract's existence; (3) that third party intentionally and improperly procured the breach of the contract; and (4) the breach resulted in harm to the plaintiff. *See TVT Records v. The Island Def Jam Music Grp.*, 412 F.3d 82, 88 (2d Cir. 2005) (citing *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996)); *see also Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120 (1956). An employee or agent of a corporate party to the contract is considered a "third party" if the employee or agent "exceeded the bounds of his or her authority" in procuring the breach. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 186 (S.D.N.Y. 2014), *aff'd sub nom. In re MF Glob. Holdings Ltd. Inv. Litig. (DeAngelis v. Corzine)*, 611 Fed. App'x. 34 (2d Cir. 2015) (quoting *Finley*, 79 F.3d at 1295). Further, a corporate officer is liable for inducing a principal to breach the contract when the officer's actions were motivated by his or her own personal gain, as distinguished from the corporation's interest. *Albert v. Loksen*, 239 F.3d 256, 275 (2d Cir. 2001).

Because the Court has determined that VRO did not breach any warranty, Peloton's claim for tortious interference must be premised on the breach of the duty to defend. But Peloton has produced no evidence that Villency and Coffey were acting outside the bounds of their authority or in their own interest, as distinguished from VDG's, when they induced VDG to refuse to defend Peloton in this action. Summary judgment in Villency and Coffey's favor is warranted.

### F. Motions to Seal

Finally, the parties move to seal portions of most of the submissions filed in connection with their substantive motions, including the briefs, exhibits, and Rule 56.1 statements and counterstatements. (*See* Dkt. Nos. 178, 185, 189, 195, 203, 219, 223, 229, 230, 234, 241, 254, 255, 256.) The public has both a common law and a "qualified First Amendment right" of access to "judicial documents" and judicial proceedings. *See Lugosch v. Pyramid Co. of*

*Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir.2004)). "The presumption of access is based on the need for federal courts, although independent — indeed, particularly because they are independent — to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir.1995)).

The three-step process articulated in *Lugosch v. Pyramid Co. of Onondaga* governs whether a document may be placed under seal:

> First, a court must determine whether the presumption of access attaches. A presumption of access attaches to any item that constitutes a "judicial document" — i.e., an "item . . . relevant to the performance of the judicial function and useful in the judicial process." Second, if the court determines that the item to be sealed is a "judicial document," the court must then determine the weight of the presumption of access. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure."

*Mut. Marine Office, Inc. v. Transfercom Ltd.*, No. 08-CV-10367, 2009 WL 1025965, at *4 (S.D.N.Y. Apr. 15, 2009) (quoting *Lugosch*, 435 F.3d at 119, 120) (internal citations omitted). "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to preserve that interest. Broad and general findings by the trial court, however, are not sufficient to justify closure." *Lugosch*, 435 F.3d at 120 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir.1987)) (internal citations omitted). "The party seeking the sealing of judicial documents bears the

burden of showing that higher values overcome the presumption of public access." *Alexandria Real Estate Equities, Inc. v. Fair*, No. 11-CV-3694, 2011 WL 6015646, at *2 (S.D.N.Y. Nov. 30, 2011) (citing *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir.1997)).

The parties have done little more in support of their present motions than note that relevant portions of the evidentiary record are designated as "Attorney's Eyes Only" or "Confidential" under the governing protective order. But at the motion to dismiss stage, this Court admonished the parties for their failure to heed *Lugosch*'s teaching, noting that the mere existence of a protective order does not perforce justify sealing documents under *Lugosch*. *VR Optics*, 2019 WL 2121690, at *8.[7]

Admittedly, the presumption's force is at its nadir with respect to filings in support of the motions that have now been denied as moot, given that those documents have come within the Court's "purview solely to [e]nsure their irrelevance." *Lugosch*, 435 F.3d at 119 (citation omitted). Nonetheless, even a weak presumption of access governs in the absence of countervailing interests, and the parties have made little effort to demonstrate or explain why specific filings implicate their countervailing interests or how the proposed redactions are tailored to protecting those interests.

Accordingly, on or before April 27, 2020, the parties are directed to file on the public docket unredacted versions of all documents previously filed under seal in connection with the substantive motions. Alternatively, on or before April 27, 2020, the parties may move for leave

---

[7] Peloton argues that the presumption of access does not attach to deposition testimony and other pretrial discovery because such material has not "historically been open to the press and general public." *Lugosch*, 435 F.3d at 120 (citation omitted). But as *Lugosch* makes abundantly clear, "documents submitted to a court for its consideration in a summary judgment motion are — as a matter of law — judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Id.* at 121.

to file under seal revised redacted versions of these documents, provided that any proposed redactions are limited to those portions of the documents that independently satisfy the standards set forth in *Lugosch* and provided that the party proposing the redaction supply a specific explanation of how those standards are met.

**IV.     Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment of noninfringement and invalidity is GRANTED.  Defendant's motion to exclude the testimony of Steven Lenz is GRANTED in part and DENIED in part as moot.  Third-Party Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part.  Third-Party Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  The remaining evidentiary motions are DENIED as moot.  The motions to seal are DENIED without prejudice to renewal.

The Clerk of Court is directed to close the motions at Docket Numbers 172, 173, 178, 180, 185, 187, 189, 190, 195, 196, 199, 203, 207, 219, 223, 229, 230, 234, 241, 254, 255, and 256.

SO ORDERED.

Dated: April 2, 2020
       New York, New York

_____
                    J. PAUL OETKEN
                    United States District Judge