UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VR OPTICS, LLC,<br><br>                     Plaintiff,<br><br>        -v-<br><br>PELOTON INTERACTIVE, INC., a Delaware<br>Corporation,<br><br>                    Defendant. | 16-CV-6392 (JPO)<br><br><u>OPINION AND ORDER</u> |
| PELOTON INTERACTIVE, INC.,<br><br>             Third-Party Plaintiff,<br><br>        -v-<br><br>VILLENCY DESIGN GROUP, LLC, ERIC<br>VILLENCY and JOSEPH COFFEY,<br><br>            Third-Party Defendants. | |

J. PAUL OETKEN, District Judge:

On April 2, 2020, this Court issued an Opinion and Order granting summary judgment in favor of Peloton on its claim that Villency Design Group, L.L.C. ("VDG") breached its contractual duty to defend Peloton against certain intellectual property claims.  (Dkt. No. 308.) *See VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-cv-6392, 2020 WL 1644204 (S.D.N.Y. Apr. 2, 2020).  The Opinion and Order resolved all questions of liability in this case, but it did not decide the quantum of damages that VDG owes to Peloton in light of the breach.  (*Id.*)  On June 16, 2020, Peloton moved for $5,152,503.62 in attorney's fees (Dkt. No. 315), which it claims as damages for the breach (Dkt. No. 42 ¶ 88).  For the reasons that follow, the motion is granted.

## I.   Discussion

In opposition to Peloton's motion, VDG argues that: (1) the motion is procedurally improper because the quantum of damages should have been raised in Peloton's motion for summary judgment or should be determined at trial; (2) Peloton is not entitled to attorney's fees insofar as those fees relate to Peloton's advancement of its affirmative claims in this case; and (3) Peloton's claimed fees are unreasonably high, given the invoices and information submitted in support of the present motion.  These arguments are considered in turn.

### A.   The Propriety of a Motion for Attorney's Fees

To prevail on a breach of contract claim under New York law, a party must show, *inter alia*, "damages resulting from the breach."  *Dee v. Rakower*, 112 A.D.3d 204, 208–09 (2d Dep't 2013).  VDG contends that Peloton is precluded from proving damages now, in a motion for attorney's fees, because Peloton failed to provide evidence regarding its damages in discovery or in support of its motion for summary judgment.  VDG is correct that, for a typical breach of contract claim, a party's failure to disclose damages pursuant to Federal Rule of Civil Procedure 26 can limit recovery.  *See, e.g., Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009).  This, however, is not a typical breach of contract claim.

Here, the only damages Peloton claims are the legal fees it incurred as a result of VDG's default on its duty to defend.  Exempting this class of claims from the general rule that damages must be established on a motion for summary judgment or at trial, the Second Circuit has held that, "when a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees," and "then the judge is to determine a reasonable amount of fees."  *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993).  Consistent with this exemption, courts in the Second Circuit regularly assess damages for violations of indemnitification or defense provisions on a motion for attorney's fees, not on a motion for

2

summary judgment or at trial.  *See id.*; *Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co.*,
930 F. Supp. 159, 165 (S.D.N.Y. 1996) (granting summary judgment on the plaintiff's
duty-to-defend claim and directing the plaintiff to submit "supporting documentation detailing
the attorneys' fees and costs incurred").

      Nevertheless, VDG maintains that Peloton's motion is procedurally improper.  VDG
suggests that the exemption should apply only in insurance cases, citing *Dresser-Rand Co. v.
Ingersol Rand Co.*, No. 14-cv-7222, 2015 WL 4254033, at *7 (S.D.N.Y. July 14, 2015), for the
proposition that, "[o]utside the context of insurance policies, contractual defense obligations are
generally treated like any other contractual provision" (Dkt. No. 322 at 1).  *Dresser-Rand Co.* is
of no assistance to VDG.  First, the language that VDG quotes is taken out of context.
*Dresser-Rand Co.* did not address the procedure for seeking attorney's fees but instead the
interpretive principles applicable to insurance contracts vis-à-vis regular contracts.  2015 WL
4254033, at *7.  Second, the language from *Dresser-Rand Co.* is not absolute; it states that
defense obligations are *generally* treated like other contractual obligations, allowing the
possibility that, in some circumstances, defense obligations may be treated differently.  *Id.*  Third
and most important, VDG provides no explanation for why limiting the exemption to the
insurance context makes sense or is otherwise required by the case law.  *See McGuire*, 1 F.3d
1306, 1313 (grounding the exemption in "common sense").  Trial courts are regularly
responsible for, are expert at, and have a procedural mechanism for assessing attorney's fees.
This is true irrespective of whether the party seeking to enforce an indemnification or defense
obligation is an insured.

      VDG has not shown any procedural impropriety in Peloton's decision to move for
attorney's fees instead of proving damages through a summary judgment motion or at trial.

B.        **The Duty to Defend Affirmative Claims**

VDG also problematizes Peloton's decision to seek full reimbursement for its attorney's

fees, including those fees associated with Peloton's affirmative claims against VDG, VR Optics

LLC ("VRO"), Eric Villency, and Joseph Coffey.  There is some merit to this challenge.  In

addition to its defense against VRO's patent claim, Peloton brought the following affirmative

claims: (1) counterclaims against VRO seeking declaratory judgments of non-infringement or the

invalidity of the patent at issue; (2) counterclaims and third-party claims against VRO, Villency,

and Coffey regarding their supposed intentional interference with the contract between Peloton

and VDG; (3) third-party claims against VDG regarding its supposed breach of the contract's

non-infringement warranties, breach of the covenant of good faith and fair dealing, and

fraudulent concealment of the potential infringement claim that was ultimately brought by VRO;

and (4) a third-party claim against VDG seeking damages for VDG's default on its duty to

defend.  In general, a party "cannot recover its legal expenses for prosecuting [a] counterclaim"

or third-party claim.  *Commercial Union Ins. Co. v. Int'l Flaors & Fragrances, Inc.*, 639 F.

Supp. 1401, 1402 (S.D.N.Y. 1986); *see also Johnson v. Gen. Mut. Ins. Co.*, 24 N.Y.2d 42, 50

(1969).

Despite the general rule, Peloton can again avail itself of an exception to claim some

amount of attorney's fees.  Courts in this district have held that, when "two cases are mirror

images of each other," as when an insurer and insured file competing claims for declaratory

relief, the party owed a defense may claim attorney's fees for its responsive affirmative claim.

*Am. Motorist Ins. Co. v. GTE Corp.*, No. 99-cv-512, 2000 WL 1459813, at *6 (S.D.N.Y. Sept.

29, 2000).  In other words, the party "is entitled to recover costs incurred in connection with its

[affirmative] claims . . . that were or would have been incurred in any event in connection with

its defense." *Smart Style Indus., Inc.*, 930 F. Supp. at 165.  Without question, Peloton's

4

counterclaims against VRO seeking declaratory judgment of non-infringement or the invalidity of the patent at issue mirrored VRO's infringement claim.  Peloton can seek attorney's fees arising from the prosecution of these counterclaims.

Relying on *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1997), Peloton argues that it can additionally recover for any affirmative claim "inextricably intertwined" with VRO's infringement claim, such that the claim and Peloton's defense "involved a common core of facts" or "related legal theories."  (Dkt. No. 331 at 5.)  Although the inextricably-intertwined standard applies to the allocation of attorney's fees under federal fee-shifting provisions, *see Quaratino*, 166 F.3d at 424 & n.4 (interpreting Title VII's fee-shifting provision), the Court is not aware of any New York case employing this standard to identify the bounds of a defense obligation, *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, No. 14-cv-8002, 2015 WL 5440694, at *11 & n.15 (S.D.N.Y. Sept. 9, 2015) (acknowledging that "other jurisdictions" use the inextricably-intertwined standard to identify covered affirmative claims but that "[t]he Court has not come across any case applying New York law that has considered this standard").  Instead, New York courts have hewed to the relatively restrictive mirror-image standard, which requires more than "common" facts and "related" legal theories.  To implicate the duty to defend, a party's affirmative claims cannot be "separable from the main action on any coherent grounds" and cannot go "further than merely seeking the opposite of the relief demanded" of the party. *Commercial Union Ins. Co.*, 639 F. Supp. at 1402–03.  Aside from the claims for declaratory judgment, Peloton's counterclaims and third-party claims address facts and law not directly pertinent to VRO's infringement claim.

Furthermore, and contrary to Peloton's suggestion, New York law does not provide, as an absolute rule, that "a party owed a duty to defend may recover its fees [] for . . . bringing the

action to enforce the duty to defend."  (Dkt. No. 331 at 5.)  To be sure, an insured may recover attorney's fees for a claim to enforce the duty to defend when that claim is the inverse of an insurer's initial action to disclaim liability.  In such cases, the party's affirmative claim to enforce is the mirror image of an earlier claim against which the party is defending.  *See, e.g., Lancer Ins. Co. v. Saravia*, 967 N.Y.S.2d 593, 599 (Sup. Ct. Kings Cnty. 2013) (permitting an insured to recover attorney's fees for its declaratory judgment action filed in response to an insurer's earlier action disclaiming liability); *Admiral Ins. Co. v. Weitz & Luxenberg, P.C.*, No. 02-cv-2195, 2002 WL 31409450, at *5 (S.D.N.Y. Oct. 24, 2002) (accord).  By contrast, when an affirmative claim to enforce is not a mirror-image claim, "[t]here is nothing in the nature of [the] suit . . . that should cause [courts] to add to the exceptions to" "the universal rule in this country not to allow a litigant to recover damages for the amounts expended in the successful prosecution . . . of its rights."  *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21–22 (1979).  New York courts have held "that [an] insurer is not liable for attorneys' fees and disbursements necessarily incurred in the policyholder's successful prosecution of the action it brought to compel the insurer to comply with its policy obligations."  *Id.* at 561; *AFA Protective Sys., Inc. v. Atlantic Mut. Ins. Co.*, 549 N.Y.S.2d 783, 786 (2d Dep't 1990) ("[The plaintiff] is entitled to recover its legal fees thus far expended by it for its defense. . . . However, [it] is not entitled to reimbursement for legal fees incurred in connection with the prosecution of this declaratory judgment action [to enforce the duty to defend]." (citation omitted)).  VDG never initiated an action to free itself from its defense obligations.  It follows that Peloton is not entitled to attorney's fees in relation to the third-party claim seeking damages for VDG's default on those obligations.

Having concluded that Peloton can claim attorney's fees for just two its affirmative claims, the Court must determine what portion of its claimed $5,152,503.62 Peloton may actually seek. VDG contends that many of the invoices submitted by Peloton in support of its motion are "so hopelessly vague" or otherwise deficient "that it is impossible to apportion the time" between reimbursable and non-reimbursable claims. (Dkt. No. 329 at 9.) VDG therefore concludes that "Peloton is not entitled to any of these fees." (*Id.*) VDG misapprehends the role of the Court in assessing attorney's fees. As the Supreme Court explained in *Fox v. Vice*, "the determination of fees should not result in a second major litigation," and "trial courts need not, and indeed should not, become green-eyeshade accountants." 563 U.S. 826, 838 (2011) (internal quotation marks and citation omitted). The Court may achieve "rough justice" by taking into account the documentation submitted, as well as its "overall sense of the suit," and then estimating the allocation of attorneys' time. *Id.*

VDG has helpfully provided an accounting of the invoices. In a declaration appended to its opposition to Peloton's motion, VDG states that around 900 of the hours billed by Peloton's attorneys were "clearly identified as reflecting work that was performed in defending the patent" claim or as "solely related to the prosecution of the third-party claims." (Dkt. No. 330 ¶¶ 10–11.) Eighty-one percent of those roughly 900 hours were spent on the former. (*Id.*) From this sizeable sample of billing information, which the Court assumes to be representative given the case's heavy focus on the patent issue, it can reasonably be extrapolated that 81% of the hours billed by Peloton's attorneys were spent defending against VRO's infringement claim. *See Firstland Int'l, Inc. v. I.N.S.*, No. 02-cv-4043, 2008 WL 11504220, at *1 (E.D.N.Y. Oct. 1, 2008) (approving of mathematical extrapolation as a means of estimating an appropriate fee award). Because of the near-total overlap between Peloton's defense against the infringement claim and

Peloton's affirmative claims for declaratory judgment, the Court determines that the covered affirmative claims warrant reimbursement of an additional 2% of the hours billed — for a total of 83% for all covered claims.  VDG does not contend that any of the experts retained by Peloton worked on issues other than those bearing on the content and validity of the contested patent. Accordingly, the Court determines that Peloton is entitled to full reimbursement of its experts' fees.

> ### C.   The Reasonableness of the Fees Sought

Finally, VDG challenges that the fees sought are simply too high for the work reflected on Peloton's invoices.  Specifically, VDG argues that the fees should be reduced based on (1) the "presence of significant redactions" in the invoices, (2) the attorneys' use of block-billing, (3) the inefficiency of Peloton's attorneys, (4) the lack of information provided by Peloton on the prevailing rates for comparable attorneys, and (5) the overly high rates charged for paralegals and support staff.  (Dkt. No. 330 at 18–20.)  VDG is correct that "[a]n award of an attorney's fee pursuant to a contract provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered."  *Citicorp Trust Bank, FSB v. Vidaurre*, 155 A.D.3d 934, 935 (2d Dep't 2017).  Still, VDG, in presenting its arguments, fails to recognize that the "reasonable" compensation of an attorney depends on the factors of the case at bar, including the nature of the case and the difficulty of the questions presented.  *See id*.  This dampens the persuasive power of VDG's challenge, which is largely meritless.

VDG's complaint about Peloton's use of redactions, for instance, reads as disingenuous given the nature of this case: a hotly contested patent dispute in which briefing was often redacted and nearly all deposition transcripts and expert reports were filed under seal.  (*See, e.g.,* Dkt. No. 210; Dkt. No. 237.)  Peloton's heaviest redactions (*see, e.g.,* Dkt. No. 317-8; Dkt. No. 317-11 at 14; Dkt. No. 319-8 at 4–8) appear to correspond with its attorneys' preparation for

depositions, management of the privilege log, and client communications.  *See Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 970 F. Supp. 333, 342 (S.D.N.Y. 1997) ("[C]ourts may attempt to decipher [time entries] by reference to the context in which these entries occur to determine what work was involved." (internal quotation marks and citation omitted)).  This is to be expected and does not, as VDG suggests, "prevent any meaningful review by this Court." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 645 (S.D.N.Y. 2018).

Nor does Peloton's block-billing trouble the Court.  Block-billing is not inherently objectionable and warrants the kind of across-the-board reduction that VDG seeks only in "situations where there is evidence that the hours billed are independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate."  *Danaher Corp. v. Travelers Indem. Co.*, No. 10-cv-121, 2015 WL 409525, at *14 (S.D.N.Y. Jan. 16, 2015) (internal quotation marks and citation omitted). VDG does not suggest that this is one such situation.  Indeed, the block-billed entries that VDG highlights as "particularly egregious" reflect entirely compensable work.  (Dkt. No. 13–15.)  The Court's own review of the invoices turned up just one instance of questionable block-billing: an entry from December 5, 2018, that grouped travel time with time spent on deposition preparation.  (Dkt. No. 318-16 at 2.)  This is not a circumstance in which the invoices are so deficient, by virtue of their structure or redactions, as to warrant a fee reduction.  *See Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510, 521 (S.D.N.Y. 1994) ("[C]ourts in this Circuit intermittently have seen fit to adopt roughly a 30% fee reduction rule for an attorney's *failure to keep* contemporaneous time records of their services." (emphasis added)).

VDG is no more persuasive in urging that Peloton's fees should be reduced because its attorneys performed duplicative work.  This argument appears to be rooted in Peloton's retention

of two law firms, rather than one, as well as a partner's numerous time entries dedicated to
reviewing others' work product and conferring with other attorneys.  (Dkt. No. 329 at 10.)  In a
complex patent dispute, this is a thin reed on which to rest argument.  This case is unlike
*Martinez v. Paramount Country Club, LLC*, No. 18-cv-4668, 2019 WL 2450856 (S.D.N.Y. Apr.
1, 2019), the case VDG relies on to cast doubt on the attorneys' efficiency.  (Dkt. No. 329 at 10.)
*Martinez* "did not enter discovery or involve significant or complex motion practice," and the
plaintiff's "retained counsel worked on [the] matter for about five months after the initial
complaint had already been filed."  2019 WL 2450856, at *5.  There was no explanation in
*Martinez* for why the plaintiff there "retained two law firms instead of one."  *Id*.  Here, by
contrast, the litigation has carried on for over four years, involved numerous dispositive motions
and discovery disputes, and produced 331 docket entries.  Moreover, based on the issues in this
case, Peloton's decision to retain both a firm specializing in patent disputes and a more
traditional "big law" firm like K&L Gates LLP (and subsequently Sheppard, Mullin, Richter &
Hampton LLP, after Peloton's lead counsel from K&L Gates joined that practice) is
unspectacular.  Given the stakes of a patent infringement lawsuit targeting the core of Peloton's
business, it is hardly surprising that the company took it seriously.

So too are the rates billed by Peloton's attorneys unspectacular, notwithstanding VDG's
argument that they were unsupported and unsupportable.  It is, as VDG argues, incumbent on the
movant to make "a showing of . . . the prevailing hourly rate for similar legal work in the
community."  *Gamache v. Steinhaus*, 776 N.Y.S.2d 310, 311–12 (2d Dep't 2004).  Peloton has
attempted to make this showing by offering that Peloton's attorneys charged their standard rate
and their invoices reflect what Peloton was actually charged and agreed to pay.  This suffices,
when considered alongside the "rates awarded in prior cases" and the Court's "own knowledge

of hourly rates charged in the district." *Suk Joon Ryu v. Hope Bancorp, Inc.*, No. 18-cv-1236, 2018 WL 4278353, at *5 (S.D.N.Y. Aug. 29, 2018).  With respect to Peloton's showing, "[c]ourts in this district . . . have recognized that an attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of a reasonable hourly rate."  *Id.* (internal quotation mark and citation omitted).  And with respect to the rates awarded in prior cases, the highest-billed partner in this case, lead counsel, had an hourly billing rate of $845, which falls well within the permissible range for experienced big law partners litigating in the district.  *Vista Outdoor Inc. v. Reeves Family Trust*, a case regarding rates from 2018, assessed that hourly billing rates as high as $1,260 "are not excessive in the New York City 'big firm' market."  No. 16-cv-5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (collecting cases).  Peloton's hourly billing rates for associates, the highest of which is $690, similarly fall within the rates awarded in prior cases.  *See, e.g., id.* (approving an hourly billing rate of $693.75 for associates).

Altogether, VDG's reasonableness arguments succeed on one front:  The hourly billing rates for Peloton's paralegals and support staff were too high.  Courts in this district have been loath to approve hourly billing rates in excess of $200 for paralegals and support staff.  *See id.*; *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 56–57 (S.D.N.Y. 2015).  The hourly billing rates claimed here range from $250 to $345.  Following the example set in *Beastie Boys v. Monster Energy Co.*, which also involved Sheppard Mullin's paralegals and support staff, the Court "finds that a fee reduction to a $200 per hour rate for such personnel, but no greater reduction, is merited."  112 F. Supp. 3d at 57.

In total, the value of the legal work performed on behalf of Peloton, as adjusted, comes to $4,568,444.47.[1]  As discussed, the Court awards Peloton 83% of this figure, or $3,791,808.91, in relation to the work performed by Peloton's lawyers, paralegals, and support staff on the patent infringement and invalidity claims.  The Court additionally awards Peloton the full cost of its expert services, or $507,354.65.[2]  Combined, this results in an award of $4,299,163.56.

### D.      Prejudgment Interest

Peloton requests prejudgment interest on its award, and VDG does not address the point.  Neither party addresses how interest should be calculated.

Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract. . . ."  N.Y. C.P.L.R. § 5001(a).  The statutory interest rate is nine percent.  *Id.* § 5004.  Prejudgment interest is calculated "from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  *Id.* § 5001(b).  In a duty-to-defend case, damages are "incurred" when a party pays legal fees and expenses that the breaching party has refused to cover.  Thus, courts in such cases ordinarily calculate prejudgment interest as running from the date each legal bill was invoiced to or paid by the party.  *See, e.g., United Parcel Serv. v. Lexington Ins. Grp.*, 983 F. Supp. 2d 258, 268 (S.D.N.Y. 2013); *Harleysville Worcester Ins. Co. v. Wesco Ins. Co., Inc.*, 314 F. Supp. 3d 534, 552 (S.D.N.Y. 2018).  That calculation can be quite

---

[1] To reach this figure, the Court totaled the legal fees calculated by Peloton, subtracted the amount billed to paralegals and support staff, and added back the number of hours billed by paralegals and support staff, multiplied by $200:  [($417,512.19 + $401,900.44 + $3,825,736.84) – ($33,955.00 + $1,884.00 + $261,245.00 + $4,275.00 + $5,917.50 + $2,247.00 + $1,885.00 + $224.00 + $472.50) + $200*(118.5 + 5.6 + 1.7 + 996.4 + 15 + 23.1 + 7.9 + 6.5 + 0.8 + 1.5)].

[2] To reach this figure, the Court totaled the cost of the expert services performed by Duff & Phelps, Goodin & Associates, and IMS Expert Services: ($252,132.00 + $72,215.28 + $183,007.37).

complicated, especially where, as here, the Court has applied reductions to certain categories of legal fees. Fortunately, New York law also provides that where damages were incurred at "various times," interest may be calculated "upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b).

Peloton served notice on VDG invoking the latter's duty to defend on September 9, 2016. VDG's initial breach of contract was shortly thereafter — the Court deems it October 9, 2016 — when VDG declined to undertake its duty to defend against the patent claim asserted by VRO. *See Peloton*, 2020 WL 1644204, at *8. Peloton was incurring significant expenses in connection with this case relatively consistently through August 15, 2019, when the parties' dispositive motions were fully briefed. The Court finds that a "reasonable intermediate date" for Peloton's damages is March 15, 2018. Therefore, prejudgment interest will be calculated from that date.[3]

## II.    Conclusion

For the foregoing reasons, Peloton's motion for attorney's fees is GRANTED. VDG must pay Peloton $4,299,163.56, plus interest, for the reasonable attorney's fees, costs, and expenses Peloton incurred in defending against VRO's patent infringement claim and bringing its claims seeking declaratory judgment.

The pending motions to seal are also GRANTED.

The Clerk of Court is directed to enter final judgment in favor of Peloton Interactive, Inc. against Villency Design Group, L.L.C. in the amount of $4,299,163.56, plus nine percent interest calculated from March 15, 2018. All other claims in this case are dismissed.

---

[3] Peloton also requests postjudgment interest on its award of damages. Postjudgment interest, which is also nine percent, runs automatically from the date the judgment is entered. *See* N.Y. C.P.L.R. §§ 5003, 5004.

The Clerk of Court is directed to close the motions at Docket Numbers 309, 311, 312, and 315, and to close this case.

SO ORDERED.

Dated: March 30, 2021
       New York, New York

_____
J. PAUL OETKEN
United States District Judge